UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE: ) | |
| ) | |
| VISA CHECK/MASTERMONEY ) | MASTER FILE NO. |
| ANTITRUST LITIGATION ) | CV-96-5238 |
| ) | |
| This Document Relates To: ) | |
| ) | (Gleeson, J.) (Mann, M.J.) |
| ALL ACTIONS ) | |

**OBJECTIONS OF ATTORNEYS JOHN J. PENTZ AND J. SCOTT KESSINGER TO THE SPECIAL MASTER'S RECOMMENDATION AND REPORT CONCERNING FEES FOR OBJECTORS' COUNSEL**

NOW COME attorneys John J. Pentz and J. Scott Kessinger and hereby object to the Special Master's April 2, 2004 Recommendation and Report concerning fees for objectors' counsel, and, in support thereof, state as follows:

**ARGUMENT**

Following submission by several objectors' counsel of petitions for fees, this Court referred the fee requests to Special Master Robin Wilcox for consideration. On or about April 2, 2004, Special Master Wilcox issued her Report and Recommendation ("Report") on this matter. Attorneys Pentz and Kessinger object to the Report because it evaluates risk in hindsight, penalizes rather than rewards efficiency, fails to adequately account for the benefits conferred upon the Class by objectors, and would serve as a disincentive for counsel to file similar objections in the future. The facts of this case support an award of fees based on a percentage of the benefit created, with the use of a lodestar crosscheck to avoid a windfall. For these reasons, the Court should award attorneys Pentz and Kessinger a fee based upon a percentage of the fund preserved by the objectors for the Class, and use the lodestar only as a crosscheck on the fee's reasonableness.

    **I.    The Percentage Of The Fund Method Is The Preferred Method Of Awarding Attorney's Fees In This Circuit.**

In its Memorandum and Order approving the settlement and awarding attorneys' fees, this Court found that the trend in the Second Circuit is toward awarding fees using the percentage method, which "spares the court and the parties the 'cumbersome, enervating and often surrealistic process" of lodestar computation.[1] Order at 28, quoting <u>Goldberger v. Integrated Resources, Inc.</u>, 209 F.3d 43, 50 (2d Cir. 2000). The Report nonetheless relies entirely upon the lodestar method, recommending to the Court that it award fees pursuant to an analysis inconsistent with this Court's previous rulings. The Report's sole assertion in opposition to use of the percentage approach is that it would create a windfall for objectors' counsel, disregarding undersigned counsel's suggestion that a very small percentage be used. Notably, the Special Master did not even use the percentage method as a crosscheck on the reasonableness of the recommended fee awards calculated based upon counsel's respective lodestars. Had she done so, she may have realized that the total fees awarded -- $54,515.62 – constitute less than two one-hundredths of one percent of the $388 million by which class counsel's fee request was reduced. This percentage is simply too miniscule to be reasonable, and renders the recommended fee awards based upon counsel's unenhanced, audited lodestars unreasonable.

## II. The Special Master Incorrectly Applied The <u>Goldberger</u> Factors.

The first <u>Goldberger</u> factor is the time and labor expended by counsel. The Report correctly states that the hours submitted by objectors' counsel is small compared with the time expended by class counsel. Report at 14-15. However, it provides no analysis of this factor's relevance. As stated by this Court, a higher multiplier is warranted when counsel has expended less time in obtaining a significant result, in order to properly reward efficiency and encourage counsel to bring similar cases in the future. Order at 36. Clearly,

---

[1] The hours submitted by objectors' counsel have undergone more judicial scrutiny than those of class counsel.

2

because fewer hours were expended by objectors' counsel, a higher multiplier is warranted given the results achieved. [2]

The second factor is the magnitude and complexity of the litigation. The Report states that that the law regarding attorneys' fees in this matter is well developed. Report at 15. However, even class counsel concedes that "previous case law was of limited help in framing a specific request. You must know this is true since the Court labored under the same disability, and in essence was left to navigated in unchartered (sic) waters." Letter from Lloyd Constantine to Judge Gleeson dated December 23, 2003. While the undersigned have admitted that their clients' objections were not overly complex, the issues raised by Constantine's request for fees and the supporting affidavits required analysis of numerous prior fee awards and refutation of expert testimony. Certainly, in a case where class counsel requested a landmark amount in fees, there was little direct precedent to guide either the objectors or the Court.

Further, the magnitude of this case supports the use of a multiplier. Objectors argued for, and the court granted, a reduction of fees in an amount that exceeds the total value of nearly all other class actions cited by either party. The Report is silent on the magnitude of the case. Under the second <u>Goldberger</u> factor, the use of a multiplier is clearly justified.

The third <u>Goldberger</u> factor – the risk of litigation – also warrants the use of a multiplier. The Report's assessment of risk in this matter is faulty for two reasons. First, risk is assessed with the luxury of hindsight. The Report asserts that "in my opinion, there was little chance that this Court would grant the request for $609 million." Report at 16.

---

[2] Indeed, those hours were kept low by design by attorneys Pentz and Kessinger, who stated in their affidavits submitted in support of their fee petition that they coordinated their efforts "in order to avoid duplication of effort and to maximize efficiency." Not only was this not taken into account by Special Master Wilcox, it was penalized by her method of awarding fees. Efforts to achieve efficiency and avoid duplication are inherently penalized by fee awards based upon counsel's straight lodestars. Attorney

But the objectors were not afforded the luxury of knowing the Court's inclinations prior to filing their objections.  According to the Report's analysis, the objectors' counsel should have known that the Court would reduce class counsel's fees, and that they therefore would receive compensation at least for the time they devoted to the representation of their objector-clients.  There was nothing apparent on the record of this case, however, that would have led the objectors or their counsel to that conclusion.  As Pentz and Kessinger have already pointed out in their Fee Petition and Reply, the presence in this case of an Affidavit of Professor Coffee made approval of the fee request appear more likely than not.

Moreover, adoption of the Report's analysis would create the curious result that objectors will be deterred from objecting to the worst settlements and fee requests, which courts are most likely to disapprove *sua sponte*, thus removing the adversarial process from those cases most in need of it.  Such a result is against public policy.  Second, the total time to be expended by objectors' counsel was unknown at the time of the objectors' involvement, just as it is today.  Because of the complexity and lack of precedent governing class counsel's request for attorneys' fees, an appeal was likely.  In addition, the court may have required substantial additional briefing due to the unprecedented nature of the case.  Using the total hours expended to this point in the case to argue against a multiplier is inappropriate from the standpoint of risk, which must be assessed *ex ante*.  Because the risk of prolonged litigation by objectors' counsel was great, the use of a multiplier is warranted.

The fourth Goldberger factor is the quality of representation.  The Report summarily dismisses this factor by stating that the Court would have reduced the award even if the objectors were not involved.  This fails to properly address the quality of the representation.  At most, it is an assertion that the quality of representation was irrelevant, since, even if the representation had been poor, the Court's own reasoning would have overcome it.  Undersigned counsel submit that this was not the case, however, and that the

---

Kessinger would have received a higher fee award had he traveled to the fairness hearing and made an oral argument that largely repeated arguments made by other objectors.

4

arguments advanced on their clients' behalf gave this Court several sound bases on which to reduce class counsel's fee award to the level it did, despite the fact that this Court chose not to explicitly reference any of those reasons in its Order.[3] Clearly, the results of this Court's decision – a reduction of fees in excess of $380 million – indicate quality representation.[4] For these reasons, the quality of representation supports the application of a multiplier to counsel's lodestar.

The fifth factor, as stated in the Report, is the "relationship of the fee to the settlement." Report at 17. Under the circumstances, this should be modified to "the relationship of the fee to the benefit conferred on the class," *i.e.*, the difference between the fee requested and that awarded, or approximately $389 million. Again, given the huge reduction of the fee, the undersigned have asked for 0.1% of the benefit created. The fee recommended by Special Master Wilcox for attorneys Pentz and Kessinger represents a mere 0.005 (five one-thousandths) of one percent of the reduction of attorneys' fees. Clearly, the amount recommended, when compared to the reduction of class counsel's fees and corresponding savings to the class, is infinitesimal. Just as a percentage fee award must be found reasonable when subjected to a lodestar crosscheck, so a lodestar fee award must bear some reasonable relationship to the value of the fund preserved for the benefit of the class. The percentage fee recommended here fails to do so.

The final factor is public policy. The Report, relying again on the assumption that the Court would have come to the same result without the participation of objectors, states that "the award of any compensation at all to these Objectors is itself sufficient inducement for lawyers to make similar efforts in the future." Report at 17 (citing <u>Goldberger</u>). This

---

[3] Those reasons are certain to be cited by the Second Circuit, however, in its review of this Court's fee award. Indeed, were it not for the numerical analysis provided by the objectors' memoranda to this Court, the Second Circuit may well have difficulty upholding this Court's fee award on appeal.

[4] The Report is troubling in that it apparently equates the quality of representation with length of written submissions and oral arguments. There is simply no analysis

assertion is wrong for several reasons. First, in complicated cases producing large recoveries, it is "not just to make a fee depend solely on the on the reasonable amount of time expended." In re: Sumitomo Copper Litig., 74 F. Supp. 2d 393, 396 (S.D.N.Y. 1999). Further, "[n]o one expects a lawyer whose compensation is contingent on success of his services to charge, when successful, as little as he would charge a client who in advance has agreed to pay for his services, regardless of success." Id. In addition, according to the Report, neither attorney Pentz nor attorney Kessinger would receive their full lodestar incurred in the case despite substantial efforts to eliminate duplication and achieve efficiency.[5]

Mr. Pentz's hours are reduced by 1.5 hours for failing to identify the Saragians, the natural persons who own the businesses Mr. Pentz represents, and further reduced by one-half of the travel time required to appear at the hearing. Mr. Kessinger's hours are reduced from 57.4 to 25 hours based on the arbitrary determination that "this work could have been accomplished in 25 hours." Report at 33-34. No facts whatsoever are offered for this significant reduction in hours.[6]

---

whatsoever of the content of the respective objections, or the potential contribution of each objection and oral argument to the Court's ultimate decision.

[5] Special Master Wilcox recommends that attorney Pentz' lodestar be reduced by 1.5 hours for time he spent in telephone conversation with counsel for the Saragians, who are the persons who own the various restaurants which attorney Pentz represents in this matter. Mr. Pentz did not correct this item, which verges on the petty, because he assumed that the lodestar would be used as a crosscheck only and therefore that 1.5 hours of attorney time would have no effect on the ultimate fee award. If the fee awards to objectors' counsel are to be based upon lodestar alone, the 1.5 hours eliminated by Special Master Wilcox should be added back into attorney Pentz' lodestar, because those hours represent critical attorney-client communications directly related to Mr. Pentz' representation of his clients in this matter.

[6] As further justification for the reduction, the Report cites Mr. Kessinger's failure to provide dates on which the work was performed. However, there is no rational relationship between the dates the work was performed and the substantial reduction in hours. In addition, although the Report recommends reducing Mr. Kessinger's time to 25 hours for objection and hearing preparation, the Report recommends that other objectors be compensated for 30 hours – at a much higher hourly rate – for the same work performed, see, e.g., Helfand/Davis objection (30 hours for objection and hearing

6

Given the voluminous filings by class counsel to justify the settlement and their award of fees, such reductions are clearly not warranted.[7] The Special Master also declines to award fees based upon the substantial work that will be required to defend the appeal of class counsel. However, in awarding fees to class counsel, courts frequently award fees based upon work still to be performed after a settlement has been reached. See, e.g., Brunson v. City of New York, 2000 U.S. Dist. LEXIS 18434 at *13 (S.D.N.Y. 2000)(awarding $40,000 in fees "for future work in connection with the settlement.").

The Special Master suggests a different procedure here that will require the filing of a second fee petition after the appeals are concluded. See Cush-Crawford v. Adchem Corp., 234 F. Supp. 2d 207 (E.D.N.Y. 2002) (awarding $30,358 in fees spent defending an appeal one year after appeal concluded). Again, if counsel's lodestar is to be used as a crosscheck only, it would seem to be expedient to include a reasonable estimate of fees to be incurred defending this Court's Order on appeal in the lodestar figure. If, on the other hand, counsel's fee is to be limited to a strictly calculated lodestar, then the further process envisioned by Cush-Crawford may be necessary.

---

preparation), Report at 22; Griffis/Hutsler/Thompson objection (29.19 hours for objection and hearing preparation for "substantially similar" three-page objections where no cases were cited, and consolidated brief). Report at 27. Such determinations are clearly arbitrary. The arbitrariness of the Report is also highlighted by its failure to analyze the hourly rates requested based on the "skill, experience, and reputation" of comparable counsel, despite acknowledging that requirement for determination of a reasonable rate. Report at 12.

[7] In addition to the several hundred pages of documents provided online prior to the objection deadline, objectors' counsel were served with hundreds of additional pages of documents in further support of the settlement and class counsel's request for fees. While the Report indicates that the Special Master reviewed some of these documents, objectors' counsel were required not only to review them, but to be able to respond to them and incorporate their contents into their arguments. Significantly, the Report is silent on the time required by the Special Master to review and analyze the substance of these voluminous filings. In contrast, Mr. Pentz was required to know the contents sufficiently that, if questioned by the judge, that he was aware of their salient contents and able to respond to their contents during the course of oral argument.

Attorneys Pentz and Kessinger submit that their fee should be based upon a percentage of the fund preserved, and that this Court therefore should include a reasonable estimate of the fees to be incurred by attorneys Pentz and Kessinger on appeal of between $30,000 and $50,000 in applying the lodestar crosscheck.

## CONCLUSION

The fees requested by attorneys Kessinger and Pentz are not excessive, are supported by the facts of the case, and are warranted by public policy. The Report and Recommendation is not supported by appropriate application of the <u>Goldberger</u> factors, and would serve to deter counsel from pursuing similar objections in the future. For the foregoing reasons, as well as for all of the reasons provided in the previously-filed Petition for and Award of Attorney's Fees and Expenses By John J. Pentz and J. Scott Kessinger, and their Reply Brief, attorneys Pentz and Kessinger request that the Court refuse to adopt the recommendations set forth in the Report and Recommendation filed by the Special Master, and award them attorney's fees and expenses in the amount of $389,000.

Dated:  April 14, 2004                    Respectfully submitted,

*John J. Pentz*
_____
John J. Pentz
Class Action Fairness Group
736 Boston Post Road/3
Sudbury, MA  01776
(978) 440-9828
**Counsel for Round House, Inc.,**
**Ron Fred, Inc., and Ron Jen, Inc.**

J. Scott Kessinger
7304 Michigan Avenue
St. Louis, MO  63111
**Counsel for Kickers Corner of America**

## CERTIFICATE OF SERVICE

      I hereby certify that I caused the foregoing document to be served upon counsel of record electronically through the Eastern District of New York's ECF program, and upon the counsel listed below by depositing one copy of the same in the United States mail in Sudbury, Massachusetts, with first class postage affixed, this 16th day of April 2004 addressed to the counsel listed below:

*John J. Pentz*
_____
John J. Pentz

Keila Ravelo, Esq.
Clifford Chance
200 Park Avenue
New York, NY  10166

Kenneth A. Gallo, Esq.
Paul Weiss Rifkind Wharton & Garrison LLP
1615 L Street, NW
Washington, DC  20036-5694

Joseph F. Tringali, Esq.
Simpson Thacher & Bartlett
425 Lexington Avenue
New York, NY  10017

Brian Brosnahan, Esq.
Heller Ehrman White & McAuliffe, LLP
333 Bush Street, Suite 3100
San Francisco, CA  94104-2878

Robert C. Mason, Esq.
Arnold & Porter
399 Park Avenue
New York, NY  10022-4690

John W. Rasmussen, Esq.
Johnson Rasmussen Robinson & Allen, PLC
48 N. Macdonald
Mesa, AZ  85201
Lawrence W. Schonbrun, Esq.
86 Eucalyptus Road
Berkeley, CA  94705

Stanley M. Grossman, Esq.
Pomerantz Haudek Block Grossman & Gross LLP
100 Park Avenue, 26th floor
New York, NY  10017-5516

William Kenneth C. Dippel, Esq.
Dippel & Davis, PLLC
12201 Merit Drive, Suite 230
Dallas, TX  75251

John W. Davis, Esq.
Steven Helfand, Esq.
Helfand Law Offices
225 Bush Street, 16th floor
San Francisco, CA 94104

Matthew Flamm, Esq.
26 Court Street, Suite 600
Brooklyn, NY 11242

Richard Archer, Esq.
Archer & Hanson
3110 Bohemian Highway
Occidental, CA 95465

John F. Duane, Esq.
99 Park Avenue, Suite 800
New York, NY 10016

R. Stephen Griffis, Esq.
Law Office of R. Stephen Griffis, PC
2142 Highland Avenue South
Birmingham, AL 35205