**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

-----------------------------------------------------------------x
IN RE                                            :
                                                 :
VISA CHECK/MASTERMONEY ANTITRUST                 :
LITIGATION                                       :
-----------------------------------------------------------------x
This Document Relates To:                        :
All Actions                                      :
                                                 :
-----------------------------------------------------------------x

**MASTER FILE NO.**
**CV-96-5238**
**(Gleeson, J.) (Mann, M.J.)**


### MEMORANDUM  IN SUPPORT OF THE PLAINTIFF CLASS'S MOTION FOR AN INJUNCTION PURSUANT TO 28 U.S.C. §§ 1651(a), 2283

**CONSTANTINE CANNON P.C.**
Robert L. Begleiter (RB-7052)
Matthew L. Cantor (MC-8183)
Lloyd Constantine (LC-8465)
Ankur Kapoor (AK-9752)
Stacey Anne Mahoney (SM-5425)
Michelle A. Peters (MP-7804)
Amy N. Roth (AR-4534)
Gordon Schnell (GS-2567)
Jonathan Shaman (JS-8481)
Jeffrey I. Shinder (JS-5719)
477 Madison Avenue - 11th Floor
New York, New York 10022
(212) 350-2700
*Lead Counsel for the Class*

46032.5

# TABLE OF CONTENTS

I.   Preliminary Statement ...................................................................... 1

II.  Background ................................................................................... 3

     A.  The *In re Visa Check* Litigation ................................................  3

     B.  The Bennett Actions .................................................................. 10

III. Argument ..................................................................................... 15

     A.  The Standard ........................................................................... 15

     B.  *Bennett II* Should Be Enjoined as Necessary in Aid of This Court's
         Continuing Jurisdiction over the Settlement Fund. ............................. 17

     C.  *Bennett II* Should Be Enjoined in Order to Protect and Effectuate This
         Court's Judgments. ................................................................... 19

IV.  Conclusion ................................................................................... 21

46421.1

## I.    PRELIMINARY STATEMENT

Pursuant to the All Writs Act, 28 U.S.C. § 1651(a), and the Anti-Injunction Act, 28 U.S.C. § 2283, the certified class in this action by their lead counsel Constantine Cannon (formerly Constantine & Partners) moves this Court to enjoin all proceedings in *Bennett v. Wal Mart Stores, Inc.*, Case No. 24139 (Tenn. Cir. Ct. filed Feb. 17, 2005) ("*Bennett II*"), an action in Tennessee State Court that has and will continue to: (i) usurp and interfere with this Court's continuing jurisdiction over *In re Visa Check/MasterMoney Antitrust Litigation*, Civ. A. No. 96-5238 ("*In re Visa Check*"); and (ii) prevent the effectuation of this Court's judgment in *In re Visa Check* and conflict with and seek to overturn many of this Court's rulings therein.

*Bennett II* frivolously and in bad faith alleges that Visa, MasterCard, and each and every member of the *In re Visa Check* Class combined and conspired in an attempt to monopolize the debit card market and in the arrangement tying debit card transaction acceptance to Visa/MasterCard credit card acceptance. *Bennett II* alleges that this was done in order to overcharge virtually every shopper in the United States and, more specifically, every shopper in Tennessee.

*Bennett II*'s new allegation is a revision of its original case, a 2003 "indirect purchaser" antitrust suit, which followed the *In re Visa Check* Settlements and alleged that Visa/MasterCard forced the Class to accept Visa/MasterCard debit cards as a condition of their being allowed to accept Visa/MasterCard credit cards, and conspired and attempted to monopolize the debit card market. *Bennett v. Visa U.S.A. Inc. and MasterCard International, Inc.*, Civ. A. No. 35126 (Tenn. Ch. Ct. filed Nov. 26, 2003) ("*Bennett I*"). After the antitrust claims in *Bennett I* were dismissed by the Tennessee Chancery Court, Bennett filed *Bennett II*, the action here sought to

be enjoined, now alleging that the tying arrangements, the monopolization scheme, the *In re Visa Check* litigation and its Settlement were all part of a grand conspiracy in which five million merchants participated.

In other words, *Bennett II* alleges that the *In re Visa Check* Class willingly and deliberately paid Visa and MasterCard billions of dollars of excess interchange fees as part of their grand scheme to overcharge consumers. According to *Bennett II*, the instant nine-year *In re Visa Check* litigation between the merchants and the associations – including the five-million-page document production, the 400 depositions, the 200 non-parties, the 54 expert reports, the sanctions, disqualification, and severance motions, the 18 class certification briefs, the 16 briefs and 38 declarations on summary judgment, the massive Pre-Trial Order, the mediation/settlement process (which included this Court), and the resulting Settlements – were collusive and a sham despite this Court's findings to the contrary.

According to *Bennett II*, the Court was wrong when it found, among other things, that: (i) "[c]ollusion or coercion could not conceivably have tainted the process" (297 F. Supp. 2d 503, 510); and (ii) the Visa/MasterCard Honor All Cards ("HAC") tying rules forced the Class to accept Visa/MasterCard debit cards (2003 WL 1712568, at *2).

*Bennett II* interferes with and seeks to usurp this Court's continuing jurisdiction over *In re Visa Check*. *Bennett II* also threatens to prevent the effectuation of this Court's judgment and attempts to overturn many of this Court's key findings. Finally, *Bennett II* seeks to overturn one of the principal components of the Settlements and this Court's judgment – the Settlement Fund payment by Visa and MasterCard of more than $3 billion to the Class. *Bennett II* alleges that every cent of the Settlement Fund that is to be allocated and distributed to Tennessee class

46032.5

members under the Court Approved Plan of Allocation is an illegal "double recovery" planned

and executed by the five million-plus conspirators who conscripted this Court and almost nine

years of its work and jurisdiction in their scheme to overcharge Tennessee shoppers.

The Class asks this Court to enjoin all proceedings in *Bennett II*. *Bennett II*'s purpose is

to invade through litigation in another forum the Settlement Fund approved by this Court. This

Court has authority under the All Writs Act and the Anti-Injunction Act to enjoin this assault on

the Court's jurisdiction and judgment.

## II.   BACKGROUND

### A.   The *In re Visa Check* Litigation

For a full recitation of the procedural history of *In re Visa Check*, the Class respectfully

refers the Court to the declaration of Lloyd Constantine dated March 24, 2005 (the "Constantine

Decl."), and the Court's three reported decisions in that case: 297 F. Supp. 2d 503 (settlement

approval and Fee Award), *aff'd*, *Wal-Mart Stores, Inc. v. Visa USA Inc.*, 396 F.3d 96, 117 (2d

Cir. Jan. 4, 2005); No. 96-CV-5238, 2003 WL 1712568 (Apr. 1, 2003) (summary judgment); and

192 F.R.D. 68 (2000) (class certification), *aff'd*, 280 F.3d 124 (2d Cir. 2001).

#### 1.   The Lawsuit

The original complaint in *In re Visa Check* was filed on October 25, 1996. Constantine

Decl. ¶ 3. In May 1999, the operative Second Amended Consolidated Class Action Complaint

was filed. *Id.*, Ex. A. The case involved two basic claims. First, the Visa/MasterCard HAC

tying rules, which required merchants that accepted Visa and MasterCard credit cards also to

accept Visa and MasterCard's signature debit cards, were tying arrangements that violated

46032.5

Section 1 of the Sherman Act.  Constantine Decl. ¶ 4.  Second, Visa and MasterCard used their

respective tying arrangements, exclusionary rules, price-fixing regime, and other anticompetitive

conduct in an attempt and conspiracy to monopolize the debit card market in violation of Section

2 of the Sherman Act.  *Id.*  The complaint alleged that, as a result of Visa and MasterCard's

anticompetitive conduct, the Class was forced to pay supracompetitively priced credit and debit

card interchange fees amounting to hundreds of millions of dollars of overcharge damages.  The

claimed overcharges rose to billions of dollars during the nearly seven years of active adversarial

litigation.  *Id.*

> 2.      Discovery

In total, more than five million pages of documents were produced.  Non-party discovery

involved virtually every part of the payments industry.  In addition to American Express and

Discover, nearly 200 non-parties – including banks, processors, consultants, vendors, and

regional debit networks – were served with subpoenas resulting in the production of more than

450,000 pages of documents.  The parties took approximately 400 depositions over 500 days,

including depositions of 21 experts who collectively submitted 54 expert reports.  *Id.* ¶ 5.

> 3.      Substantive Motions

> a.      MasterCard's Rule 11 Motion

On March 19, 1999, the named plaintiffs in *In re Visa Check* moved for leave to amend

the existing complaint and file what became the operative Second Amended Consolidated Class

Action Complaint.  The amended complaint added Wal-Mart, Sears and seven smaller merchants

as plaintiffs against MasterCard.  MasterCard objected to the motion and moved for sanctions

46032.5

under Rule 11.  MasterCard claimed that the amended claims against MasterCard by Wal-Mart,

Sears, and the other plaintiffs were made in bad faith, would cause undue delay and prejudice,

and had no reasonable basis in fact or law.  On May 21, 1999, the Court granted leave to file the

amended complaint and denied MasterCard's sanctions motion.  *Id.* ¶ 6.

b.      Class Certification

The named plaintiffs moved for class certification in April 1999.  The Court granted class

certification in February 2000, concluding that "[w]ithout class certification, there are likely to

be numerous motions to intervene, and millions of small merchants will lose any practical means

of obtaining damages for defendants' allegedly illegal conduct."  192 F.R.D. at 88.

The Second Circuit granted Visa/MasterCard's Rule 23(f) petition in March 2000.  In

October 2001, the Second Circuit affirmed the district court's class certification decision,

concluding that "this is precisely the type of situation for which the class action device is suited."

280 F.3d at 146.  The Second Circuit denied Visa/MasterCard's petition for rehearing and

rehearing *en banc*.  The Supreme Court denied Visa/MasterCard's petition for a writ of

*certiorari* in June 2002.  *Visa U.S.A. Inc. v. Wal-Mart Stores, Inc.*, 536 U.S. 917 (2002).  In total,

the four rounds of class certification submissions involved 18 briefs, including

Visa/MasterCard's failed *Daubert* motion.  Constantine Decl. ¶ 7.

c.      Summary Judgment

During the summer of 2000, with supplementation in December 2002, the parties moved

for summary judgment on virtually every issue in the case.  In total, the four rounds of summary

judgment submissions involved 16 briefs, more than 1,750 evidentiary exhibits, and 38

declarations.  *Id.* ¶ 8.

5

On April 1, 2003, the Court denied Visa/MasterCard's eleven motions for summary judgment in their entirety, and granted six of the Class's summary judgment motions. 2003 WL 1712568. The Court granted the Class summary judgment on the following issues: (i) debit cards and credit cards are distinct products; (ii) credit and charge card services to merchants constitutes a relevant market; (iii) Visa has market power in the market for credit and charge card services to merchants; (iv) Visa and MasterCard tied their credit card services to their debit card services, thereby forcing merchants to accept the debit cards; (v) debit card services to merchants constitutes a relevant market; and (vi) Visa/MasterCard's tying arrangements affected a not insubstantial amount of commerce. Constantine Decl. ¶ 10.

> d.   Visa and MasterCard's Attempt to Disqualify and Sanction Wal-Mart

On September 11, 2000, Visa and MasterCard moved for sanctions against, and/or dismissal of, Wal-Mart for alleged discovery abuses. The principal basis for their claim was that Wal-Mart hid or destroyed evidence, which Wal-Mart subsequently discovered after engaging in a nationwide search of roughly 2,500 of its stores. The Court denied Visa and MasterCard's motion from the bench during oral argument on November 17, 2000. Constantine Decl. ¶ 9.

> e.   MasterCard's Attempt to Sever the Action or Obtain a Separate Trial

On March 14, 2003, after six and a half years of litigation, three years after the close of fact discovery, and just six weeks before the start of trial, MasterCard filed a motion for severance, or in the alternative, for a separate trial. MasterCard claimed that the Class would introduce evidence of Visa's conduct against MasterCard, which would cause jury confusion and

46032.5

prejudice to MasterCard. *Id.* ¶ 11. By Order dated April 1, 2003, the Court denied MasterCard's motion.

        4.     The Settlements

      Prior to the Class's summary judgment victory, the likelihood that this case would settle was remote. The centrality and importance of the tying arrangements and Visa and MasterCard's commitment to defend them vigorously was explained by Visa's lead counsel, Laurence Popofksy, at the first court appearance in this case, responding to the Court's suggestion that an early settlement conference be scheduled:

> I don't think we should hold any delusions about it. . . . The practice at issue is a fundamental business practice in both associations, the cost of adjusting that business practice is enormous . . . and settlement discussions before the parties have flexed their muscles [at] summary judgment strikes me as probably a waste of the Court's time.

Constantine Decl. ¶ 12, Ex. B.

      More than six years later – after the Court granted most of the Class's summary judgment motions and denied all of Visa and MasterCard's motions – mediation and settlement activities, which began late in 2002, intensified. During the week prior to trial, around-the-clock settlement negotiations were conducted by the parties, assisted by two mediators and United States District Judge John Gleeson. MasterCard agreed to settle at 4:45 A.M. on April 28, 2003, hours before a jury was seated. Visa agreed to settle two days later. On April 30, 2003, the parties entered into binding Memoranda of Understanding which were the framework for the formal Settlement Agreements executed on June 4, 2003. Constantine Decl. ¶ 14, Exs. C and D.

      In approving the Settlement Agreements without any change, the Court described the relief and placed it in its proper historical perspective:

46032.5

- The compensatory relief by itself constitutes the largest settlement ever approved by a federal court.  [297 F. Supp. 2d at 511 (internal quotes omitted).]

- The discounted present value of the total compensatory relief, on which Lead Counsel base their requested fee, amounts to $3,383,400,000 (the "Fund").  [*Id.* at 509.]

- The injunctive relief will result in future savings to the class valued from approximately $25 to $87 billion or more.  [*Id.* at 512.]

- Despite the size of the Net Settlement Funds, the far more significant relief for the individual merchants is the injunctive relief – the absence of artificially high and mandatory debit card transaction fees.  [*Id.* at 520.]

- The Settlement Agreements are the proposed culmination of approximately seven years of litigation, and represent the largest antitrust settlement in history.  [*Id.* at 508.]

- [T]he Settlements have produced significant and lasting benefits for America's merchants and consumers.  [*Id.* at 524.]

The Court concisely summarized the main provisions of the Settlements as follows:

- [T]he cessation, as of January 1, 2004, of defendants' "Honor All Cards" rules, by which the defendants' debit card services to merchants were tied to their credit card services . . . .  [*Id.* at 508.]

- [T]he creation of a $3.05 billion settlement fund . . . .  [*Id.*]

- [T]he creation of clear, conspicuous and uniform visual identifiers on Visa and MasterCard debit cards by January 1, 2007 (80% by July 1, 2005), so merchants and consumers can distinguish these products from credit cards . . . .  [*Id.*]

- [T]he lowering, by roughly one third, of the interchange rates on debit products for the period from August 1, 2003, through December 31, 2003 . . . .  [*Id.*]

- [O]ther injunctive relief, such as the provision of signage from defendants to merchants communicating the merchants' acceptance of defendants' untied debit products; and a prohibition on

8

46032.5

> defendants enacting any rules that prohibit merchants from
> encouraging or steering customers to use forms of payment other
> than defendants' debit cards . . . . [*Id.*]

The Court also approved the Plan of Allocation, finding it "both fair and reasonable." *Id.* at 518-19.

### 5.      The Court's Final Approval of the Settlements

On September 25, 2003, the Court held a Fairness Hearing to hear argument on the proposed Settlements and Plan of Allocation.  On December 19, 2003, the Court issued its Memorandum and Order approving the Settlements and Plan of Allocation.  297 F. Supp. 2d at 503.  In granting final approval to the Settlements and Plan of Allocation, the Court emphasized the procedural integrity that surrounded the litigation and the ultimate Settlements reached therein:

> In this case, there could not be any better evidence of procedural
> integrity.  Experienced and able counsel on all sides fought
> aggressively (albeit always with professionalism) for many years,
> and negotiated feverishly (with the same professionalism) to
> produce the Settlement Agreements at the eleventh hour.
> *Collusion or coercion could not conceivably have tainted the
> process.*

*Id.* at 510 (emphasis added).

On January 23, 2004, the Court entered its Order and Final Judgments approving the Settlements and Plan of Allocations, and directing the parties to carry out their terms.  Constantine Decl., Exs. E and F.  In addition, the Order and Final Judgments provided for this Court's continuing jurisdiction to effectuate the terms of the Settlements and Plan of Allocation:

> [T]he Court retains jurisdiction of this Settlement and the
> Settlement Agreement, including the administration and
> consummation of the Settlement and in order to determine issues
> relating to any distribution to Class members . . . .  In addition, . . .

46032.5

> the Court retains exclusive jurisdiction, and [Visa and MasterCard]
> and each member of the Class are hereby deemed to have
> submitted irrevocably to the exclusive jurisdiction of this Court for
> any suit, action, proceeding or dispute arising out of or relating to
> this Order and Final Judgment, the Settlement Agreement or the
> applicability of the Settlement Agreement and exhibits thereto.

Constantine Decl., Ex. E ¶ 16, Ex. F ¶ 15.

On January 4, 2005, the United States Court of Appeals for the Second Circuit affirmed the Court's final approval of the Settlements. *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96 (2d Cir. 2005), *petition for reh'g and suggestion for reh'g en banc denied,* --- F.3d --- (Mar. 1, 2005). The Second Circuit described the Settlements as follows:

> According to settlement mediator Eric Green, "the court system and the
> mediation process worked exactly as they are supposed to work at their
> best; a consensual resolution was achieved based on full information and
> honest negotiation between well-represented and evenly balanced parties."
> Green Decl. ¶ 12. Concluding that "there could not be any better evidence
> of procedural integrity" than the aggressive litigation spanning nearly a
> decade and the impassioned settlement negotiations that produced an
> agreement on the brink of trial, the district court affirmed Green's
> sentiments by finding that "[c]ollusion or coercion could not conceivably
> have tainted the process." We agree with this assessment and conclude
> that the district court did not abuse its discretion in determining that a
> presumption of fairness arose.

396 F.3d at 117.

### B.   The Bennett Actions

1.   *Bennett v. Visa/MasterCard* ("*Bennett I*")

On May 20, 1993, as subsequently amended on November 26, 2003, two Tennessee residents, Roger Bennett and Richard Allen Combs, filed a putative class action against Visa and MasterCard in the *Chancery Court* for Washington County, Johnson City, Tennessee. The action, styled *Bennett v. Visa U.S.A. Inc. and MasterCard International, Inc.*, was filed on behalf

10

of all Tennessee residents who purchased goods from merchants operating in the state "who accept or have accepted Visa and/or MasterCard credit cards and who are (or were) required to accept *Visa Check* and/or *MasterMoney* debit cards under the challenged arrangements . . . ." Constantine Decl., Ex. G ¶ 23.  The operative complaint in *Bennett I* in large part was taken verbatim from the operative complaint filed in *In re Visa Check*.  *Compare, e.g.*, Constantine Decl., Ex. G ¶¶ 34-113 (*Bennett I* Compl.) *with* Ex. A ¶¶ 34-37, 43-79, 81-83, 85, 88-95, 98-117, 119-26 (*In re Visa Check* Compl.).

The basic claims of *Bennett I* were that Visa and MasterCard had violated Tennessee's antitrust and consumer protection laws through the identical conduct about which the merchants complained in *In re Visa Check*.  *Bennett I* claimed that the Visa and MasterCard HAC tying rules constituted illegal tying arrangements under the Tennessee Trade Practices Act and Consumer Protection Act; that Visa and MasterCard used their respective tying arrangements, exclusionary rules, price-fixing regime, and other anticompetitive conduct in an attempt and conspiracy to monopolize the debit card market in violation of the Trade Practices Act; and that this conduct forced merchants to pay supracompetitively priced debit card interchange fees which were passed on to Tennessee consumers.  *Bennett I* also asserted claims for unjust enrichment and for "money had and received."

*Bennett I* did *not* allege that the merchants conspired with Visa and MasterCard in the commission of the alleged anticompetitive acts.  On the contrary, central to *Bennett I* were the repeated allegations that the HAC tying rules *forced* merchants to accept Visa and MasterCard debit cards.  In this regard, the *Bennett I* complaint alleged that merchants had been "forced" or "coerced" to accept these cards, had accepted them "involuntarily," had "virtually no choice" but

46032.5

to accept them, "did not and do not want to accept" them, and accepted them "under coercion and/or unwittingly." Constantine Decl., Ex. G ¶¶ 1, 3-5, 7, 11, 60, 67, 77, 86, 99, 145, 149, 153-54, 157-59, 162, 168-70, 173.

The *Bennett I* complaint further alleged that most merchants were not even aware that they were being forced to accept Visa and MasterCard debit cards because of Visa and MasterCard's efforts to keep merchants from recognizing them. *Id.* ¶¶ 78-85. Those few merchants that were aware could not distinguish Visa/MasterCard debit cards from Visa/MasterCard credit cards at the point-of-sale. *Id.* ¶ 86. And with respect to this handful of sophisticated merchants, the *Bennett I* complaint alleged that they "explicitly demanded that Visa and MasterCard cease the tying arrangements and allow them to refuse" the cards. *Id.* In particular, the complaint highlighted that "Wal-Mart explicitly demanded that Visa cease the tying arrangement and allow Wal-Mart to reject *Visa Check* cards. *Id.* ¶ 98.

Visa and MasterCard moved to dismiss *Bennett I* for failing to state a cause of action upon which relief can be granted. In a Memorandum and Order dated August 27, 2004, the *Chancery Court* granted Visa and MasterCard's motion with respect to the antitrust and consumer protection claims. Constantine Decl. ¶ 20, Ex. H. The court denied the motion with respect to the common law claims.

On March 7, 2005, the *Bennett I* Court denied Bennett's motion for reconsideration of the court's dismissal of the antitrust and consumer protection claims. Constantine Decl. ¶ 21, Ex. I. On the same day, the *Bennett I* Court granted Bennett's motion for permission to file an interlocutory appeal of its dismissal decision. *Id.* That appeal is currently pending.

46032.5

### 2. *Bennett v. The In re Visa Check Class ("Bennett II")*

On February 17, 2005,[1] Bennett and Combs, the same plaintiffs who filed *Bennett I*, filed a putative class action in a different Tennessee state court, the *Circuit Court* for Washington County, Johnson City, Tennessee, against Wal-Mart and a Defendant Class consisting of the precise class of merchants certified by this Court in *In re Visa Check*.  Indeed, the Defendant Class members sued in *Bennett II* have been sued in their capacity as class members in the instant action.  Constantine Decl., Ex. J.  *Bennett II* was filed on behalf of the same class of Tennessee residents on whose behalf Bennett and Combs filed the earlier *Bennett I* action against Visa and MasterCard – those who purchased goods from Tennessee merchants "who were required to accept Visa and/or MasterCard debit cards under the challenged arrangements . . . ." Constantine Decl., Ex. J ¶ 32.  The Defendant Class asserted in *Bennett II* includes every member of the *In re Visa Check* Class that does business in Tennessee.  *Id.* ¶ 33.  Further, the *Bennett II* complaint is in large part taken verbatim from the operative complaint filed in *In re Visa Check*.  *Compare, e.g.*, Constantine Decl., Ex. J ¶¶ 49-81 (*Bennett II* Compl.) *with* Ex. A ¶¶ 40-60, 62-70, 73, 75-78 (*In re Visa Check* Compl.).

The basic claims asserted against the merchants in *Bennett II* are virtually identical to those asserted against Visa and MasterCard in *Bennett I*.  The new allegation is that every member of the *In re Visa Check* Class doing business in Tennessee conspired with Visa and MasterCard to effectuate the tying arrangements and the attempted monopolization scheme, all with the purpose of overcharging virtually every shopper in Tennessee.  *Bennett II* seeks to

---

[1] The *Bennett II* complaint was filed the day before the Class Action Fairness Act of 2005 was signed into law by President Bush, which would have prevented Bennett from maintaining the action in state court.  Class Action Fairness Act of 2005, Pub. L. No. 109-2, § 4(a), 119 Stat. 9 (2005) (codified at 28 U.S.C.S. § 1332(d) (2005)); *id.* § 9 (act applies to class actions filed on or after date of enactment, February 18, 2005).

46032.5

recover the *In re Visa Check* Settlement Fund attributable to these alleged overcharges. *Bennett II* does not claim merely that the merchants passed the Visa/MasterCard overcharges along to consumers in the form of higher prices. Rather, *Bennett II* claims that the tying arrangements, monopolization scheme, and indeed the protracted litigation over these restraints of trade and the settlement, were all part of a conspiracy among Visa, MasterCard, and five million merchants to overcharge Tennessee shoppers, and that the Settlement Fund constitutes the spoils. *Bennett II* also asserts common law claims for civil conspiracy, unjust enrichment, "money had and received," equitable subrogation, and punitive damages.

Contrary to the allegations in the largely dismissed *Bennett I* complaint, the *Bennett II* complaint does not allege that the merchants were forced to accept Visa/MasterCard debit cards. Instead, *Bennett II* alleges that the merchants "agreed" to accept them, or accepted them for "business reasons." Constantine Decl., Ex. J ¶¶ 15, 100, 104. This directly contradicts this Court's findings that the merchants *were* forced to accept Visa debit cards. 2003 WL 1712568, at *4. Nor does *Bennett II* allege, as did *Bennett I*, that most merchants were unaware that they were accepting Visa and MasterCard debit cards, which flies in the face of this Court's approval of "the creation of clear, conspicuous and uniform visual identifiers on Visa and MasterCard debit cards . . . so that merchants and consumers can distinguish these products from credit cards." 297 F. Supp. 2d at 508. Nor does *Bennett II* allege, as did *Bennett I*, that sophisticated merchants demanded that Visa and MasterCard cease the tying arrangements. Instead, *Bennett II* alleges that the merchants had "full knowledge" of, "affirmatively participated" in, actually took steps to conceal, and acted "willfully, knowingly, and intentionally" with regard to, Visa and MasterCard's anticompetitive practices in the debit market. Constantine Decl., Ex. J ¶¶ 3 ("Wal-

14

Mart and the Defendant Class had full knowledge of the conduct of Visa and MasterCard alleged herein and affirmatively participated in the conspiracy alleged herein long before they filed suit against Visa and MasterCard. Wal-Mart and the Defendant Class therefore were co-conspirators with Visa and MasterCard and continued to be co-conspirators until the United States Court of Appeals for the Second Circuit affirmed the settlements on January 4, 2005, reported as *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc. and MasterCard International, Inc.*, 2005 WL 15056 (2d Cir. 2005)."), 97, 129, 154.

The *Bennett II* complaint was served on February 23, 2005. Constantine Decl. ¶ 28. The summons and complaint were not served on Lead Counsel for the Class, or on Lead Counsel for Wal-Mart or any of the other Lead Plaintiffs in *In re Visa Check*, despite the fact that the merchants are being sued in their capacities as members of the *In re Visa Check* Class and Wal-Mart was sued in its capacity as representative of the *In re Visa Check* Class. *Id.* On March 1, 2005, Bennett and Combs served a Request for Admission containing 132 requests, the majority of which deal with the *In re Visa Check* action and Settlements and the positions taken in this case by the merchants and their expert economist. *Id.*, Ex. K. An answer or other response to these requests is due on April 11, 2005. No other action has been taken by the parties or the court in *Bennett II*.

## III.   ARGUMENT

### A.   <u>The Standard</u>

Under the All Writs Act, federal courts have broad authority to issue injunctions "necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). Under the Anti-Injunction Act, a federal court may

15

46032.5

enjoin a state court proceeding under the All Writs Act "where necessary in aid of its

jurisdiction" or in order "to protect or effectuate its judgments." 28 U.S.C. § 2283.[2]

Pursuant to this authority, a federal court may enjoin a state court action even if the

parties to that action are not, and have not, been before the federal court. *Baldwin*, 770 F.2d at

338 ("An important feature of the All-Writs Act is its grant of authority to enjoin and bind non-

parties to an action when needed to preserve the court's ability to reach or enforce its decision in

a case over which it has proper jurisdiction.") (citing *United States v. N.Y. Tel. Co.*, 434 U.S.

159, 174 (1977)).

As discussed below, this Court should permanently enjoin *Bennett II* for two reasons.

First, an injunction is necessary to assist this Court in its continuing jurisdiction over *In re Visa*

*Check* and administration of the Settlement Fund and Plan of Allocation therein. *Bennett II*

seeks to block or interfere with this Court's distribution of the Settlement Fund to those who the

Court has held are entitled to it. Second, an injunction is necessary to protect and effectuate the

Court's judgment in *In re Visa Check*, including its final approval of the Settlements and Plan of

Allocation and its findings that the Class was forced to accept Visa and MasterCard debit cards,

and that these proceedings were not the product of collusion.

---

[2] Because of the similarity in the "necessary in aid of jurisdiction" language in the All Writs Act and the Anti-Injunction Act, the Second Circuit cites cases applying this language interchangeably. *See Ret. Sys. of Ala. v. J.P. Morgan Chase & Co.*, 386 F.3d 419, 425 n.5 (2d Cir. 2004) (applying Anti-Injunction Act); *In re Baldwin-United Corp. (Single Premium Deferred Annuities Ins. Litig.)*, 770 F.2d 328, 335 (2d Cir. 1985) (applying All Writs Act). The only difference in application of the statutes is that the Anti-Injunction Act applies only to injunctions of ongoing state court proceedings, whereas the All Writs Act applies both to injunctions of ongoing state proceedings and to injunctions of future state court proceedings.

46032.5

**B.**     ***Bennett II*** **Should Be Enjoined as Necessary in Aid of This Court's Continuing Jurisdiction over the Settlement Fund.**

It is well-settled that federal courts may enjoin state court actions in order to preserve the federal court's jurisdiction over a settlement. *Baldwin*, 770 F.2d at 335; *Ret. Sys.*, 386 F.3d at 428. In *Baldwin*, the Second Circuit analogized a district court's interest in protecting a settlement to the interest of a district court in protecting a *res* in an *in rem* action before it "where it is intolerable to have conflicting orders from different courts." 770 F.2d at 337 (quoting 17 C. Wright & A. Miller & E. Cooper, *Federal Practice & Procedure* § 4225 at 105 n.8 (Supp. 1985)). In upholding the district court's injunction of a state court proceeding that threatened the district court's jurisdiction over a class action settlement, the Second Circuit held that "the district court had before it a class action proceeding so far advanced that it was the virtual equivalent of a res over which the district judge required full control." *Id.*

The Second Circuit concluded that because "'exercise by the state court of jurisdiction over the same *res* necessarily impairs, and may defeat, the jurisdiction of the federal court already attached,' the federal court is empowered to enjoin any state court proceeding affecting that res." *Id.* at 336 (quoting *Kline v. Burke Constr. Co.*, 260 U.S. 226, 229 (1922));[3] *accord Ret. Sys.*, 386 F.3d at 426. In *Retirement Systems*, the Second Circuit recently reaffirmed its holding in *Baldwin* that a federal court may enjoin a state court proceeding for the purpose of "protecting an actual or impending settlement in a federal action from being undone or thwarted by state-court litigation." 386 F.3d at 428.

---

[3] The district court found that the state suits would "impair" "the adequacy and fairness of the settlements," "would jeopardize its ability to rule on the settlements, would substantially increase the cost of the litigation, would create a risk of conflicting results, and would prevent the plaintiffs from benefiting from any settlement already negotiated." *Id.* at 333.

46032.5

Other United States Courts of Appeals have similarly held that federal courts may enjoin state court actions in order to preserve jurisdiction over a settlement. *See, e.g., In re Am. Honda Motor Co., Inc. Dealerships Relations Litig.*, 315 F.3d 417, 437-38 (4th Cir. 2003) (affirming district court's permanent injunction of state court arbitration award to two former class action plaintiffs "to protect its exclusive jurisdiction to resolve interpretive questions under the MDL Settlement Agreement" and "to prevent direct frustration of the district court's Settlement Approval Order"); *Battle v. Liberty Nat'l Life Ins. Co.*, 877 F.2d 877, 882 (11th Cir. 1989) ("'Any state court judgment would destroy the settlement worked out over seven years, nullify this court's work in refining its Final Judgment over the last ten years, add substantial confusion in the minds of a large segment of the state's population, and subject the parties to added expense and conflicting orders.' This lengthy, complicated litigation is the 'virtual equivalent of a res.'") (quoting *Baldwin*, 770 F.2d at 337).

In its final approval of the Settlements, this Court expressly retained exclusive jurisdiction over the Settlements, "including the administration and consummation of the Settlement and in order to determine issues relating to any distribution to Class members." Constantine Decl., Ex. E ¶ 16, Ex. F ¶ 15. Thus, the Settlement is "the virtual equivalent of a res over which [this Court] require[s] full control." *Baldwin*, 770 F.2d at 337.

*Bennett II* is a direct attack on the *res* that is the *In re Visa Check* Settlement Fund over which this Court maintains continuing jurisdiction. In seeking to recover the precise monetary damages that the Class has recovered, and that this Court has approved, *Bennett II* attempts to impair the Settlement and "prevent the plaintiffs from benefiting from any settlement already negotiated." *Baldwin*, 770 F.2d at 333. If successful, *Bennett II* would severely undermine the

18

46032.5

conclusion to nearly nine years of litigation that has "produced significant and lasting benefits for America's merchants and consumers." *In re Visa Check*, 297 F. Supp. 2d at 524. The Court should permanently enjoin *Bennett II* to avoid such a result.

### C. *Bennett II* Should Be Enjoined in Order to Protect and Effectuate This Court's Judgments.

The Court should also enjoin *Bennett II* to "protect and effectuate its judgments" in the *In re Visa Check* action, including the propriety, adequacy, and procedural integrity of the Settlements, Settlement Fund, and Plan of Allocation. A principal reason for employing the All Writs Act to enjoin a state court proceeding is to "preclud[e] litigation in state courts of issues determined by a federal court." *Smith v. Woosley*, --- F.3d ---, 2005 WL 503650, at \*4 (2d Cir. Mar. 4, 2005); *see also Thomas v. Powell*, 247 F.3d 260, 262-64 (D.C. Cir. 2001) (affirming injunction of former federal class action plaintiffs' state malpractice action against class counsel based on "secret agreement to settle the case" because "the district court squarely decided otherwise").

*Bennett II* seeks to relitigate issues already decided by this Court and affirmed by the Second Circuit. Other than the merchant conspiracy theory they propound, the *Bennett II* complaint is a virtual copycat of the complaint filed by the Class in *In re Visa Check*. But with regard to the merchant conspiracy claim, the *Bennett II* complaint directly contradicts numerous findings made by this Court in *In re Visa Check*. It contradicts this Court's finding that "[c]ollusion or coercion could not conceivably have tainted the [settlement] process," 297 F. Supp. 2d at 510, and that the tying arrangements forced the merchants to accept Visa and MasterCard debit cards. 2003 WL 1712568, at \*2.

19

*Bennett II* also contradicts the claims made by the same litigants in *Bennett I* that:  (1) merchants have been "forced" or "coerced" to accept Visa and MasterCard debit cards, have accepted them "involuntarily," have had "virtually no choice" but to accept them, "did not and do not want to accept" them, and accepted them "under coercion and/or unwittingly"; (2) most merchants were not even aware they were being forced to accept them; and (3) sophisticated merchants demanded that Visa and MasterCard drop the tying rules.  *See supra* pp. 11-12.

The idea that all five million members of the *In re Visa Check* Class conspired with Visa and MasterCard to enter into a twenty-year scheme – including almost nine years of intense litigation involving an expenditure of time and resources of historic proportions – under which the merchants would agree to pay tens of billions of dollars in interchange overcharges is preposterous.  By contradicting and eviscerating this Court's prior findings and *Bennett I*'s own allegations in the largely dismissed complaint against Visa and MasterCard, the merchant conspiracy theory contradicts any notion of reality or common sense.  Most importantly, it contradicts the underlying basis for this Court's final approval of the Settlements, which should not be countenanced.

46032.5

IV.   **CONCLUSION**

For the reasons set forth above, the *In re Visa Check* Class respectfully requests that this

Court permanently enjoin *Bennett II*.  The Class also respectfully requests that this Court issue a

temporary restraining order staying all proceedings in *Bennett II* pending resolution of the instant

motion.

Dated:   March 24, 2005
         New York, New York

                                 **CONSTANTINE CANNON P.C.**

                           By: _____
                                 Robert L. Begleiter (RB-7052)
                                 Matthew L. Cantor (MC-8183)
                                 Lloyd Constantine (LC-8465)
                                 Ankur Kapoor (AK-9752)
                                 Stacey Anne Mahoney (SM-5425)
                                 Michelle A. Peters (MP-7804)
                                 Amy N. Roth (AR-4534)
                                 Gordon Schnell (GS-2567)
                                 Jonathan Shaman (JS-8481)
                                 Jeffrey I. Shinder (JS-5719)
                           477 Madison Avenue - 11th Floor
                           New York, New York 10022
                           (212) 350-2700
                           *Lead Counsel for the Class*

21

46032.5