UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x
IN RE:

VISA CHECK/MASTERMONEY ANTITRUST
LITIGATION
----------------------------------------------------------x
This Document Relates to
All Actions:
----------------------------------------------------------x

MASTER FILE NO.
CV-96-5238
(Gleeson, J.) (Mann, M.J.)

# AMENDED PLAN OF ALLOCATION

**SUBMITTED BY**
**CONSTANTINE CANNON**
**August 16, 2005**

## <u>SUMMARY</u>

Constantine Cannon (formerly Constantine & Partners, and hereinafter "Lead Counsel") submits this summary of the "Amended Plan of Allocation"[1] to provide a concise explanation to members of the Class about the manner in which their claims will be treated.  This summary is not a substitute for the more detailed descriptions and explanations contained below.[2]

## <u>FUNDS TO BE DISTRIBUTED TO CLASS MEMBERS</u>

The Settlements obligate Visa and MasterCard to deposit $3.05 billion into Settlement Accounts by December 22, 2012, beginning with $350 million in 2003 and $300 million yearly installment payments thereafter until 2012.

The amount to be distributed to Class Members is this $3.05 billion less the sums paid for administration of the Settlements, such as the costs of processing claims and mailing checks to Class Members, and the expenses and attorneys fees which were and may be awarded by the Court to the merchants and lawyers who litigated the case on behalf of the Class and who obtained the Settlements for the Class.

The net amount of money which will be distributed to Class Members also may be reduced if the Court approves a plan to "securitize" the Visa and MasterCard payments. Securitization is a process which would assign these multiple Visa and MasterCard payments to financial institutions in return for a single early lump sum payment for distribution to Class Members.  While this process of securitization, if approved, will likely save tens of millions of

---

[1]     Upon approval by the Court, this Amended Plan of Allocation shall supersede the Plan of Allocation that was submitted by Lead Counsel on August 18, 2003 ("Original Plan of Allocation").

[2]     All capitalized terms shall have the definitions set forth below.

i

dollars in administration costs, greatly speed up the process and potentially provide Class

Members with an early payment instead of multiple payments until 2013, it will reduce the sum

to be distributed to Class Members by an undetermined amount.  That reduced sum may,

however, represent a greater present value to Class Members than the amount they would receive

in payments over time, both because of the savings on administration costs and because of the

effects of inflation.

<u>**DESCRIPTION OF DAMAGES TO CLASS**</u>

The Class is made up of millions of United States merchants who accepted Visa and/or

MasterCard credit card transactions for payment and therefore were required to accept Visa

and/or MasterCard signature off-line debit card transactions under Visa and MasterCard's

so-called "Honor All Cards" rules, at any time between October 25, 1992 and June 21, 2003 (the

"Class Period").

The merchants claimed that these Visa and MasterCard rules tying debit acceptance to

credit acceptance damaged merchants in three ways.

• First, merchants paid more for off-line debit than they would have paid had they

been free to reject the debit transactions without losing the ability to accept Visa and MasterCard

credit card transactions.  These damages are called the "off-line debit damages."

• Second, the merchants claimed that the defendants' conduct, including the tying

arrangements, raised the price of Visa and MasterCard credit card transactions above the price

merchants should have paid.  These damages are called the "credit card damages."

• Third, the merchants claimed that the defendants' conduct forced merchants to

pay higher prices for on-line PIN-secured debit transactions offered by NYCE, Star, Pulse,

Shazam, Accel, Interlink, Maestro and other networks.  These damages are called the "on-line debit damages."

Consistent with opinions offered by the merchants' expert witnesses and the proof developed during the case, approximately 70% of the damages suffered by Class Members were off-line debit damages; 21% were credit card damages; and 9% were on-line debit damages.

Each Class Member is entitled to receive a portion of the Net Settlement Funds, which is directly proportional to its Visa and MasterCard off-line debit and credit card purchase volume and on-line debit transactions during the Class Period.

## THE VISA TRANSACTIONAL DATABASE

However, in order to pay each of the millions of Class Members their precise portion of the Net Settlement Funds, it would be necessary to ask each merchant to submit documents showing the dollar amount of all Visa and MasterCard off-line debit and credit purchase transactions that the merchant received during the roughly ten-year Class Period.  Providing this level of transaction information is extremely difficult, if not impossible, for the largest merchants in the Class, let alone for very small Class Members.  To avoid the need to search for these potentially unobtainable records and to spare small Class Members extensive search costs to obtain relatively modest monetary recoveries, Lead Counsel has designed a plan which extensively utilizes a database provided by Visa ("Visa Transactional Database") to compute a Class Member's recovery from the Net Settlement Funds.

The Visa Transactional Database provides extensive records of merchant acceptance of credit and debit card transactions from October 1996 to July 2003, a period accounting for 90% of the damages due to Visa and/or MasterCard off-line debit and credit transactions received by

iii

Class Members during the interval of the Class Period after October 1996.

Working with the Visa Transactional Database, Lead Counsel, Garden City Group, Inc. (the "Claims Administrator"), and the merchants' economic experts also have devised a method for estimating the dollar amount of Visa off-line debit and credit transactions received by most Class Members in the earlier part of the Class Period, that is from October 25, 1992 through September 1996; the dollar amount of MasterCard off-line debit and credit transactions received by most Class Members throughout the entire Class Period; and the dollar amount of PIN debit transactions throughout the entire Class Period.

Using the Visa Transactional Database and statistical techniques, Class Members can receive a monetary recovery without having to submit detailed purchase volume information about their acceptance of Visa and MasterCard off-line debit and credit transactions and/or PIN debit transactions.  The calculation of these monetary recoveries will be made by the Claims Administrator, as explained below, and is subject to a procedure by which any Class Member can submit more detailed information in an effort to receive what that Class Member believes is a more accurate monetary recovery than calculated by the Claims Administrator.

## CALCULATION OF MONETARY RECOVERIES

*(i)*     ***Class Members Identified in the Visa Transactional Database***

For Class Members identified in the Visa Transactional Database, actual Visa debit and credit purchase volumes for the period October 1996 - July 2003 will be used by the Claims Administrator to calculate Estimated Cash Payments for overcharges associated with Visa debit and credit transactions.  The Visa Transactional Database will also be utilized to estimate all Visa purchase volumes (debit and credit) during the Class Period prior to October 1996 and any

iv

other period(s) when an individual Class Member's transaction data is not available; all

MasterCard debit and credit purchase volumes during the entire Class Period; and all on-line PIN

debit volumes (for Class Members that accepted on-line debit) during the entire Class Period.

### (ii)    *Class Members Not Identified in the Visa Transactional Database*

Despite extensive efforts by Lead Counsel, more than 80 major Visa/MasterCard

owner/member financial institutions, and Visa and MasterCard themselves, to identify all Class

Members, there undoubtedly will be certain Class Members who have not been identified.

Further, there are Class Members who have been identified and sent a Class Notice but whose

transactions are not contained in the Visa Transactional Database.

These Class Members will be asked to indicate on their Claim Form the total annual U.S.

sales for their business(es) that accepted Visa and/or MasterCard transactions for payment for

each year during the Class Period.  These Class Members must also designate the type(s) of

business(es) they operate (*e.g.*, "shoe store," "health club," "supermarket," "travel agency" or

"restaurant"), and the percentage of sales attributed to each.

Using the total U.S. sales data submitted, the Claims Administrator will estimate each

Class Member's off-line debit and credit purchase volumes and, where applicable, on-line debit

purchase volumes from the Visa Payments System Panel Study, a cardholder survey that Visa

has conducted throughout most of the Class Period, which was produced by Visa during this

action, and which Professor Fisher has utilized, with other Visa data, to estimate the percentage

of total sales in 95 merchant categories that were made with Visa and/or MasterCard debit or

credit transactions.

With this information, the Claims Administrator will calculate the monetary recovery for these Class Members.  However, these Class Members, as with all Class Members, can challenge the Claims Administrator's calculation of the monetary recovery and submit more detailed information in an effort to secure a more accurate recovery.

## CHALLENGES TO THE CLAIMS ADMINISTRATOR'S CALCULATION OF A CLASS MEMBER'S MONETARY RECOVERY

Any Class Member who believes that the Claims Administrator's calculation of the monetary recovery for that Class Member does not accurately reflect what it should receive, or is based upon inaccurate or incomplete information, may challenge the calculation and submit additional information in an effort to secure a more accurate monetary recovery.  The type of information which a Class Member must submit to make a challenge and the manner and the timetable for such challenges are detailed in the Plan below, and will be explained to any Class Member that chooses to submit a challenge to the Claims Administrator.  Any such challenge may result in the Class Member receiving a larger or smaller recovery or the same recovery initially calculated by the Claims Administrator.  An appeal from the Claims Administrator's determination will be considered by Lead Counsel.  Appeals from Lead Counsel's determinations can be sought from the Court.

## CALENDAR OF IMPORTANT DATES FOR CLASS MEMBERS

The following are important dates when events relating to this case occurred and/or when a Class Member should have received various notices or must take certain actions related to the settlement of the case.

vi

September 9 - October 14, 2002: 7.657 million "Notices of Pendency" were sent to known members of the Class, telling them about the case and that they could remain members of the Class by doing nothing or could "opt-out" of the Class by following the procedures stated in the notice.  During the same period, notice was also given to Class Members by publication of a Notice of Pendency in numerous national and retailing industry publications.

November 14, 2002:  On or before this date, approximately 6,165 merchants opted out of the Class of approximately five million merchants.

April 28, 2003:  On this date when trial was scheduled to begin, MasterCard orally agreed to settle with the merchant Class.  Visa and the merchants proceeded to trial.  A jury was selected and impaneled.

April 30, 2003:  The merchants entered into separate memoranda of understanding with Visa and MasterCard, preliminarily settling the case.

June 4, 2003:  The merchants entered into separate "Final Settlement Agreements" with Visa and MasterCard.  To protect the interests of all Class Members, these Settlement Agreements were subject to the Court's preliminary and final approvals, as to their fairness and adequacy for all Class Members.

June 13, 2003:  The Court preliminarily approved the Settlement Agreements.

June 21 - July 3, 2003:  8.148 million "Notices of Class Action Settlement" were sent by first class mail to all known members of the Class.  This included the Class Members who received the Notice of Pendency in 2002 and new Class Members who were identified, including merchants who began to accept Visa and/or MasterCard off-line debit and credit card transactions for the first time after June 21, 2002 and who may not have received notice in 2002.

From June 20 - August 4, 2003, notice by publication was given by publishing a Notice of Class Action Settlement in numerous national and retailing publications.

August 18, 2003:  Lead Counsel filed the Original Plan of Allocation with the Court, seeking the Court's approval.  On this date, Lead Counsel also sought approval of an expense and attorneys' fee application made by the merchants and attorneys who litigated the case and who secured the Settlements, including the monetary recovery.

September 5, 2003:  The final opt-out date for "new Class Members" only - these were members of the Class who were not provided notice in September - October 2002 and did not previously have an opportunity to opt-out of the Class.

September 5, 2003:  The final date for a Class Member to object to the Court about the terms of the Settlements, the Original Plan of Allocation and/or the expense and attorneys' fee applications.

September 18, 2003:  Lead Counsel filed a petition seeking final approval of the Settlement Agreements from the Court.

September 25, 2003:  The Court conducted a "fairness hearing" to hear oral argument and receive testimony on any previously-filed written objections of any Class Member concerning the fairness and/or adequacy of the Settlement Agreements, the Original Plan of Allocation and/or the expense and attorneys' fee applications.

December 19, 2003:  The Court issued an Order approving the Settlement Agreements and the Original Plan of Allocation, and awarding expenses and attorneys' fees to Class Counsel. Final Judgment was issued on January 23, 2004 and entered on January 30, 2004.  Thereafter, several appeals from the Order and Final Judgment were taken.

January 4, 2005:  The United States Court of Appeals for the Second Circuit affirmed the District Court's decision granting final approval of the Settlement Agreements and the Original Plan of Allocation, and awarding expenses and attorneys' fees.

June 1, 2005:  The date that all appeals from the Court's Order approving the Settlement Agreements and the Original Plan of Allocation, and awarding expenses and attorneys' fees were exhausted, and therefore Final Court Approval of the Settlements ("Final Settlement Approval") was achieved.

June 23, 2005:  Lead Counsel requested leave from the Court to amend the Original Plan of Allocation.

June 30, 2005 and August 2, 2005:  The Court granted leave to amend the Original Plan of Allocation.

**The following dates and events are scheduled to occur in relation to Final Settlement Approval.**

Final Settlement Approval occurred on June 1, 2005, after all appeals from the District Court's Order were exhausted and/or the time to make such appeals had expired.

120 days after Final Settlement Approval:  The Claims Administrator will send to each Class Member whose transactional data is contained in the Visa Transactional Database notification of the Claims Administrator's estimation of such Class Member's off-line debit and credit card monetary recovery for the Class Period.  The notices will be accompanied by a Claim Form, which will tell such Class Members how they can claim a monetary recovery for on-line debit overcharges for any part of the Class Period.  The notice will also advise such Class Members of their right to challenge the calculated recovery and how and when such challenges

must be made.

120 days after Final Settlement Approval:  The Claims Administrator will send a Claim Form for completion and submission to all known Class Members whose transactional data is <u>not</u> in the Visa Transactional Database, who therefore must provide specified information in order for the Claims Administrator to calculate their monetary recoveries.

180 days after Final Settlement Approval:  A Class Member who did not receive first class mail of the Notice of Pendency in 2002 or receive first Class Notice of Class Action Settlement in 2003, must contact the Claims Administrator to request a Claim Form. Such Class Members must submit their Claim Form within 180 days of Final Settlement Approval.  Claim Forms can be obtained by contacting the Claims Administrator at The Garden City Group, Inc., P.O. Box 9000-6014, Merrick, New York, 11566-9000, Attn: In re Visa Check/MasterMoney Antitrust Litigation, or by calling 1(888) 641- 4437 or by contacting the case website, located on the worldwide web at: www.InReVisaCheck-MasterMoneyAntitrust Litigation.com.

Because many of the above dates and events occur a specified number of days after Final Settlement Approval, Lead Counsel have issued four nationwide press releases in four successive weeks (June 29, July 6, July 13, and July 20, 2005) announcing Final Settlement Approval.

x

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

----------------------------------------------------------x

IN RE:

VISA CHECK/MASTERMONEY ANTITRUST
LITIGATION

----------------------------------------------------------x

This Document Relates to
All Actions:

----------------------------------------------------------x

MASTER FILE NO.
CV-96-5238
(Gleeson, J.) (Mann, M.J.)

## <u>AMENDED PLAN OF ALLOCATION</u>

Pursuant to Orders of this Court dated June 13, 2003, June 30, 2005, and August 2, 2005, and in accordance with the Notice of Settlement of Class Action (the "Settlement Notice") and with Section 13 of the Plan of Allocation dated August 18, 2003 (the "Original Plan of Allocation"), Constantine Cannon (formerly Constantine & Partners, and hereinafter "Lead Counsel") respectfully submits the following amended plan and procedure for allocating the Visa and MasterCard Net Settlement Funds among Class Members (the "Amended Plan of Allocation").

## <u>Definitions</u>

Unless otherwise specified, capitalized terms used herein shall have the same meaning as in the June 4, 2003 agreements between plaintiffs and Visa and MasterCard respectively (hereinafter the "Settlement Agreements") or, where applicable, the Court's June 13, 2003 Orders approving the form and manner of notice to the Class.  For ease of reference, these definitions are set forth below.

A.      "Approved Claims" shall be the claims against the Net Settlement Funds of Class Members who properly submit, document and execute their Claim Form.  The claims of Class

1

Members who challenge the Claims Administrator's calculations shall be deemed Approved

Claims upon the Class Member's failure, after receipt of a determination letter, to appeal timely

the Claims Administrator's determination, or if the Class Member files an appeal to Lead

Counsel or the Court, upon the final determination of the appeal.

      **B.**      "Claims Administrator" shall mean the Garden City Group, Inc., which shall

administer the distribution of the Net Settlement Funds, under Lead Counsel's supervision.

      **C.**      "Claims Distribution Website" shall mean http://www.InReVisaCheck-

MasterMoneyAntitrustLitigation.com, which is the website dedicated to facilitating the

distribution of the Net Settlement Funds.  This website will include the Plan of Allocation, the

Fisher Allocation Methodology, detailed instructions regarding the Claim Form, the Claim Form,

and confidential access to Class Members' actual or estimated purchase volumes which shall be

used to calculate Class Members' Estimated Cash Payments.

      **D.**      "Class," as defined in the Court's class certification Order dated February 22,

2000, shall mean all persons and business entities who have accepted Visa and/or MasterCard

credit cards and therefore have been required to accept Visa and/or MasterCard branded debit

cards under the challenged tying arrangements at any point during the Class Period within the

continental United States (and Alaska and Hawaii).  Excluded from the Class are any putative

class members who previously excluded themselves from this action by filing a request for

exclusion in accordance with the requirements set forth in the Consent Order Concerning Notice

of Pendency of Class Action dated June 21, 2002, and the Notice of Pendency previously

provided to Class Members.  Also excluded from the Class are any New Merchants (as defined

below) who have excluded themselves from this Action.

2

  **E.**  "Class Member" shall mean any member of the Class.

  **F.**  "Class Period" shall mean the period of time from October 25, 1992 to June 21, 2003.

  **G.**  "Estimated Cash Payment" shall mean the portion of the Net Settlement Funds, which is directly proportional to the Class Member's pro rata share of Visa and MasterCard debit and credit card overcharges during the Class Period.  This is only an initial estimate of the settlement recovery; the Class Member's actual ultimate recovery may be higher or lower depending on whether the Class Member accepted Visa and/or MasterCard off-line debit and credit transactions for the entire Class Period, and the number of Class Members that submit Claim Forms, among other things.

  **H.**  "Fee Award" shall mean plaintiffs' attorneys' fees, expenses and costs as have been or may be awarded by the Court.

  **I.**  "Fee and Expense Application" shall mean the application submitted by Lead Counsel seeking plaintiffs' attorneys' fees, expenses and costs.

  **J.**  "Final Settlement Approval" shall mean the date that all appeals from the Court's decision to approve the Settlement Agreements in all material respects were exhausted, and the Court's decision was therefore affirmed, or June 1, 2005.

  **K.**  "Fisher Allocation Methodology" shall mean the methodology developed by Lead Counsel's economist, Professor Franklin M. Fisher, to allocate the Net Settlement Funds to Class Members.  (This Methodology is described more fully in the Declaration of Professor Frank Fisher, dated August 14, 2003 (the "Fisher Allocation Declaration") and the Supplemental Declaration of Franklin M. Fisher, dated June 23, 2005 ("Supplemental Fisher Allocation

Declaration").)  The Fisher Allocation Methodology estimates the amount Class Members were damaged for each dollar of Visa and/or MasterCard debit or credit transactions, and for each on-line debit transaction, they accepted during the Class Period.  This Methodology uses different estimates of the per-dollar overcharge for supermarket and non-supermarket transactions because supermarkets certified under Visa and MasterCard rules receive distinct supermarket interchange rates for qualifying transactions.  These estimates are broken out for each year of the Class Period because the amount of damage merchants suffered for each dollar of Visa and/or MasterCard debit transactions, and for each on-line debit transaction, varied over time during the Class Period.

To estimate the Class Member's claim against the Visa and/or MasterCard Net Settlement Funds, the Class Member's estimated damages shall be adjusted based on the ratio of the Net Settlement Funds to the total aggregate Class damages.  The Claims Administrator also will adjust the Class Member's estimated damages to reflect the fact that the total off-line debit and credit card dollar volumes used by the Claims Administrator in its initial calculations will exceed the actual dollar volumes in each year.[3]

The Fisher Allocation Methodology shall be applied as follows.  If a hypothetical non-supermarket Class Member received $161,600 of Visa off-line debit transactions in 2000, the Fisher Allocation Methodology estimates that the Class Member suffered 174.38 basis points in damage for every dollar of off-line debit transactions it received in that year.  As such, the

---

[3]      To simplify and expedite the administration and distribution of the Net Settlement Funds, the Claims Administrator shall assume that all Class Members identified in the Visa Transactional Database accepted Visa/MasterCard transactions for the entire Class Period.  This assumption necessitates the above-described adjustment.  When Class Members report when they actually accepted Visa/MasterCard transactions, the excess funds created by this adjustment will go into the reserve and will be distributed to Class Members with Approved Claims as set forth in Section 12 below.

4

Fisher Allocation Methodology estimates that the Class Member suffered $2,818 in damages from supra-competitive off-line debit interchange fees in 2000.  To calculate the Class Member's claim against the Net Settlement Funds for its Visa off-line debit volume in 2000, the ratio of the Visa Net Settlement Fund to aggregate Visa damages (and the adjustment for total Visa off-line debit volumes exceeding actual figures in the initial calculations) must be applied to the damage estimate.  Those calculations will be made available to Class Members on the Claims Distribution website.

The Fisher Allocation Methodology will be applied to all Class Members.  The only distinction between Class Members in this Amended Plan of Allocation is the manner in which the Claims Administrator will calculate or estimate their Visa and/or MasterCard debit and credit volumes.  For Class Members whose Visa debit and credit transactions and dollar volumes were provided to the Claims Administrator in the Visa Transactional Database, their dollar volumes shall be calculated principally from the Visa Transactional Database.  For Class Members whose dollar volumes were not provided to the Claims Administrator as part of the Visa Transactional Database, their dollar volumes shall be estimated using the Visa Payment Systems Panel Study Database, which is defined and described below.

      **L.**      "Gross Settlement Funds" shall mean the Visa and MasterCard Settlement Funds, and any interest earned thereon.

      **M.**      "Lead Counsel" shall mean Constantine Cannon, 450 Lexington Avenue, New York, New York, 10017.

      **N.**      "Merchant Category Descriptors" shall mean the classification(s) assigned by Visa and MasterCard to each Merchant that accepts their payment cards which describes the

Merchant's type of business(es).

O.     "Modified Class Member List" shall mean the Class Members that were identified by Visa and/or MasterCard and/or their dual member/owner acquiring banks, whose names were provided to the Settlement Administrator for purposes of mailing the Notice of Pendency to the Class.  This list also includes New Merchants (which are defined below).

P.     "Net Settlement Funds" shall mean the Visa and MasterCard Gross Settlement Funds, less the amount of the Fee Award and Court-approved expenses, taxes, and costs of notice and administration.

Q.     "New Merchants" shall mean merchants who were identified in Visa and MasterCard's databases as of June 4, 2003 and provided to the Claims Administrator, or merchants who registered with the Claims Administrator following the Notice of Pendency.

R.     "On-us Transactions" shall mean transactions in which the cardholder's issuing bank and the merchant's acquiring bank, or their processors, were the same institution.

S.     "Visa Payment Systems Panel Study Database" shall mean the consumer survey database that Visa supplied to Lead Counsel during discovery in the case.  The Visa Payment Systems Panel Study data are collected through a survey of almost 20,000 consumers each year. Consumers participating in the survey record information about their purchases, including the date of a purchase, the dollar amount spent, the type of payment used, and the type or category of merchant at which the purchase is made.  The range of merchant categories included in the survey data covers virtually all merchants in the Class.  There are a total of 95 merchant categories, including 39 retail categories (such as gasoline stations, drug stores, and mail order catalogs), 31 travel and entertainment categories (such as fast food restaurants, hotels, and movie

6

theaters), and 24 service categories (such as charities, utilities, and dental offices).  The data also contain information on more than 40 payment types, including Visa and MasterCard off-line debit and credit.  Visa provided the Visa Payment Systems Panel Study data for 1994 through 2001.

Professor Fisher has utilized this data, along with other Visa data, to estimate the percentage of total gross sales in these merchant categories that were accounted for by Visa and/or MasterCard debit or credit transactions.  This information can be used in conjunction with a Class Member's gross sales receipts to estimate the dollar volume of Visa and MasterCard off-line debit and credit transactions in each year or fractional year for that Class Member.  A detailed description of the Visa Payment Systems Panel Study data, and the tables Professor Fisher derived from that Study data, are set forth in the Fisher Allocation Declaration and the Supplemental Fisher Allocation Declaration.

**T.**      "Visa Transactional Database" shall mean the database that Visa provided to the Claims Administrator for use in this Amended Plan of Allocation.  This Database includes Visa debit and credit transaction counts and dollar volumes broken out by year for each Class Member that accepted Visa transactions at any time between October 1, 1996 and July 31, 2003, whose transactions and dollar volumes were extracted from Visa's databases.  The Visa Transactional Database was divided into transactions that were eligible to qualify for Visa's supermarket interchange rate and transactions that were eligible to qualify for Visa's non-supermarket rates.  This Database does not include On-us Transactions, which amounts to a *de minimus* percentage of Visa debit and credit card transactions.

1.      **Dissemination of the Settlement Notice to Class Members**

1.1      Beginning on June 27, 2003 the Claims Administrator caused Notices of

Settlement to be mailed by first class mail, postage prepaid, to all Class Members listed in the

Modified Class Member List.  The Notice of Settlement described the history of the action, the

class certification proceedings, and the Notice of Pendency to the Class.  The Notice of

Settlement also described the Settlement Agreements, including the Gross Settlement Funds, the

provisions untying acceptance of Visa and/or MasterCard POS Debit Devices from acceptance of

Other Visa and/or MasterCard Products, the provisions mandating that clear and conspicuous

identifiers be placed on Visa and/or MasterCard POS Debit Devices, the provisions mandating

that Visa and/or MasterCard adopt rules requiring that their dual member/owner banks give Visa

and/or MasterCard POS Debit Devices unique Bank Identification Numbers, and the provisions

releasing Class Members' claims with prejudice.  The Notice of Settlement also described Class

Members' rights to participate in or object to the Settlements and New Merchants' rights to

exclude themselves from the Class.  It also notified Class Members of their right to object to the

Original Plan of Allocation and/or the Fee and Expense Application.  The Notice of Settlement

also advised Class Members of the "Fairness Hearing" that was scheduled for September 25,

2003, at which time the Court considered whether to approve (i) the Settlement Agreements as

fair, reasonable and adequate for the Class, to dismiss the claims of the Class with prejudice and

enter a final judgment releasing Class Members' claims; (ii) the payment of attorneys fees and

expenses on behalf of the Class; and (iii) the Plan of Allocation dated August 18, 2003.

1.2      Beginning on June 20, 2003 and continuing until August 4, 2003, Lead

Counsel caused a Summary of Notice of Settlement (the "Summary Notice") to be published in

8

numerous national and merchant trade publications.  The national publications included *Parade Magazine* (2 insertions), *USA Weekend* (2 insertions), *The Wall Street Journal* (one insertion), *TV Guide* (2 insertions), *People* (2 insertions), *Time* (one insertion), *Sports Illustrated* (one insertion), and *Newsweek* (one insertion).  The merchant trade publications included *Chain Store Age* (one insertion), *DSN Retailing Today* (one insertion), *MMR/Mass Market Retailers* (one insertion), *RIS/Retail Info Systems News* (one insertion), *Retail Merchandiser* (one insertion), *Stores* (one insertion), and *Supermarket News* (one insertion).  (A list of the dates when the Summary Notice appeared in these publications, and their respective circulations, is set forth as Exhibit 3 to the Court's June 13 Orders.)  The Summary Notice described the Settlement Agreements, advised Class Members of their rights to participate in or object to the Settlements, and described New Merchants' rights to exclude themselves from the Class.  The Summary Notice also advised Class Members of the Fairness Hearing and that they can obtain a copy of the full Notice of Settlement from the case website, located on the worldwide web at www.InReVisaCheck-MasterMoneyAntitrustLitigation.com, or from the website of Lead Counsel, located on the worldwide web at www.cpny.com (now www.constantinecannon.com).  Class Members can obtain copies of the Notice of Settlement without charge.

       **2.**       **The Visa Transactional Database**

       2.1       The Settlement Agreements stipulate that Visa and MasterCard shall cooperate with Lead Counsel by using reasonable efforts to provide existing merchant-specific and aggregate transaction data from their databases for use in connection with the Original Plan of Allocation.  Lead Counsel negotiated the parameters of such cooperation with Visa and MasterCard, and as part of that process, interviewed Visa and/or MasterCard technical personnel

9

or their agents to determine the extent to which data from Visa and/or MasterCard's databases could be utilized for the Original Plan of Allocation.  After these negotiations, Visa and MasterCard compiled and provided the Visa and MasterCard Transactional Databases to the Claims Administrator.  These databases provide the most comprehensive data regarding the number and dollar volume of Visa and/or MasterCard debit and credit transactions received by individual Class Members during the Class Period that reasonably could be extracted.

2.2     Since the Court's approval of the Original Plan of Allocation, Lead Counsel has been working with the Claims Administrator and other outside consultants to lay the groundwork for the Plan by, among other things, cross-checking the data provided by Visa and MasterCard to resolve any issues with it before the distribution proceeds.  That process has revealed that the MasterCard Transactional Database, which was limited to 5,500 large merchants and to the period June 1, 2001 to June 1, 2003, cannot be used for the distribution. However, MasterCard off-line debit and credit volumes can be estimated from the volumes in the Visa Transactional Database.  (The methodology for estimating MasterCard purchase volumes is described in the Fisher Allocation Declaration and the Supplemental Fisher Allocation Declaration.)

2.3     The Visa Transactional Database includes the number and dollar volume of Visa debit and credit transactions for those Class Members who accepted Visa transactions at any time between October 1, 1996 and July 31, 2003, and whose Visa debit and credit volumes were extracted from Visa's database.

3.     **Methodology for Calculating Estimated
       Overcharge and Share of Net Settlement Funds**

3.1     Plaintiffs' economic expert, Professor Franklin M. Fisher, previously

10

concluded that Visa and MasterCard's Honor All Cards tying rules and associated anticompetitive conduct damaged Class Members during the Class Period in three ways: (i) supracompetitive off-line debit interchange fees; (ii) supracompetitive credit card interchange fees; and (iii) supracompetitive on-line debit interchange fees.  (The various components of Class damages are discussed more thoroughly in the Fisher Allocation Declaration.)  Based on the Fisher damage formula, off-line debit damages, including higher float costs, amounted to approximately 70% of total aggregate Class damages, credit damages amounted to approximately 21%, and on-line debit damages amounted to roughly 9%.  Under the Fisher Allocation Methodology, the Net Settlement Funds shall be allocated to approximate these aggregate proportions.

        3.2     As described more fully in the Fisher Allocation Declaration and Supplemental Fisher Allocation Declaration, the Fisher Allocation Methodology estimates the amount Class Members were damaged for each dollar of Visa and/or MasterCard debit or credit transactions, and for each on-line debit transaction, that Class Members accepted during the Class Period.  This Methodology uses separate estimates for supermarket and non-supermarket transactions because certified supermarkets, under Visa and MasterCard rules, receive distinct supermarket interchange rates.  These estimates are broken out for each year of the Class Period because the damage Class Members suffered for each dollar of Visa and/or MasterCard debit volume, and each on-line debit transaction, varied from year to year during the Class Period.  To calculate Class Members' claims against the Net Settlement Funds, these damage estimates shall be adjusted based on the ratio of the Net Settlement Funds to the total aggregate Class damages.  Off-line debit and credit damages will additionally be adjusted to account for the total dollar

11

volume of transactions calculated in each year by the Claims Administrator.

3.3    To give Class Members the ability to review how their Estimated Cash Payments were calculated, the Claims Distribution website gives Class Members access on a confidential basis to the purchase volumes that were utilized to make the calculations.  Class Members will only be entitled to access their own purchase volume data on the Claims Distribution website. The Claims Distribution website will inform Class Members whether their purchase volumes were actual figures from the Visa Transactional Database or estimates derived from the volumes in the Database.  It also will explain how Estimated Cash Payments were calculated from those volumes.

**4.    Calculating the Off-line Debit and Credit Claims of Class Members Identified in the Visa Transactional Database**

4.1    The Claims Administrator shall utilize the following procedures to calculate the claims against the Net Settlement Funds for overcharges for Visa and/or MasterCard off-line debit and credit card transactions of Class Members identified in the Visa Transactional Database.

4.2    The Claims Administrator will use actual Visa debit and credit purchase volumes for the period October 1996 - July 2003 that can be identified to calculate Estimated Cash Payments for each of these Class Members' overcharges associated with Visa debit and credit transactions.

4.3    The Claims Administrator will utilize the earliest available data from the Visa Transactional Database to estimate all Visa off-line debit and credit purchase volumes during the Class Period prior to October 1996.  The estimation procedure relies on the assumption that an individual Class Member's share of all Visa transactions in the pre-October

12

1996 period is highly correlated with the Class Member's share of Visa transactions in the earliest full year for which data are available (for many merchants this will be the year 1997). For Visa off-line debit purchase volumes, the Claims Administrator will calculate each Class Member's share of the total U.S. purchase volume of Visa off-line debit transactions during the earliest consecutive twelve-month period for which data are available (using the Visa Transactional Database).  For each year or fractional year prior to October 1996, an individual Class Member's calculated share will be multiplied by the total U.S. dollar volume of Visa off-line debit transactions (as reported in *The Nilson Report*),[4] to obtain an estimate of that Class Member's dollar volume of Visa off-line debit transactions in each of those periods.  Similar calculations will be made to estimate the number of Visa off-line debit transactions and the dollar volume of Visa credit transactions.

    4.4  In the case of estimating Visa off-line debit and credit purchase volumes for any other year or fractional year for which data is not available, the Claims Administrator will utilize a procedure similar to the one identified above, by using data from a year that is close by the year or fractional year at issue.  More specifically, the Claims Administrator will calculate the Class Member's share of the total U.S. dollar volume of Visa off-line debit transactions from the Visa Transactional Database during the closest year for which data are available for that Class Member.  For each Class Member and for each year or fractional year for which off-line debit transaction data are unavailable, the appropriate share will be multiplied by the total U.S. dollar volume of Visa off-line debit transactions as reported in *The Nilson Report* for each of the relevant periods, to obtain an estimate of that Class Member's dollar volume of Visa off-line

---

[4]  *The Nilson Report* is an industry publication that has reported industry data for more than 25 years.  The figures reported by *The Nilson Report* are obtained directly from Visa and MasterCard.

debit transactions in each of those periods. A similar procedure will be used to estimate the number of Visa off-line debit transactions and Visa credit dollar volume in each year or fractional year in which it was not available.

4.5     The Claims Administrator also will utilize the Visa Transactional Database to estimate each of these Class Member's MasterCard off-line debit and credit purchase volumes for the entire Class Period, based on the number and dollar volume of Visa transactions accepted by that Class Member. The estimation procedure relies on the assumption that the number of Visa and MasterCard off-line debit and credit transactions accepted by a Class Member is highly correlated. The Claims Administrator shall calculate the ratio of aggregate MasterCard debit and credit dollar volumes to the respective aggregate Visa debit and credit dollar volumes for each year of the Class Period. (These ratios are detailed in the Fisher Allocation Declaration and the Supplemental Fisher Allocation Declaration.) The Claims Administrator shall then apply these ratios to the Class Member's Visa debit and credit dollar volumes (as identified in or calculated from the Visa Transactional Database) for each year of the Class Period that the Class Member accepted Visa and MasterCard transactions, to estimate the Class Member's MasterCard debit and credit dollar volumes for those years.

4.6     Once the Claims Administrator has identified or estimated an individual Class Member's Visa and MasterCard off-line debit and credit purchase volumes in each year or partial year of the damages period (as described in Sections 4.2 through 4.5), the Claims Administrator shall calculate each Class Member's Estimated Cash Payment by applying the Fisher Allocation Methodology.

4.7     Within 120 days of Final Settlement Approval, the Claims Administrator shall mail each Class Member identified in the Visa Transactional Database a Notice of Estimated Cash Payment and Claim Form (the "Claim Form").  The Claim Form shall inform the Class Member of its Estimated Cash Payment for Visa and MasterCard off-line debit and credit overcharges for the entire Class Period (October 1992 - June 2003), and shall indicate that the calculation is based on dollar volumes extracted or estimated from the Visa Transactional Database.  It also shall inform Class Members that the initial estimate is based on the assumption that Class Members identified in the Visa Transactional Database accepted Visa and MasterCard off-line debit and credit transactions for the entire Class Period, and that the estimate may be adjusted based on the Class Member's actual period(s) of acceptance.  It shall inform Class Members that they may later be required to document their entitlement to a Cash Payment by producing documentation showing the period(s) during which they accepted Visa and MasterCard off-line debit and credit transactions during the Class Period.  The Claim Form also will inform Class Members that they may challenge the estimated calculation by following the procedures detailed in Section 7 of this Amended Plan of Allocation, and that the calculation may be revised to account for such challenges.

4.8     To claim against any portion of the Net Settlement Funds, Class Members identified in the Visa Transactional Database must execute and submit the Claim Form to the Claims Administrator.  These Class Members do not need to provide supporting documentation with their Claim Form to claim against the Net Settlement Funds for Visa and/or MasterCard debit and credit damages.  However, Class Members are required to indicate the date on which they started accepting Visa and/or MasterCard transactions for payment.  Class Members will

15

also be advised that they should maintain the contracts which they entered into with Visa/MasterCard acquiring financial institutions and/or third party processors, which show when the merchant accepted Visa and MasterCard off-line debit and credit transactions and/or on-line debit transactions, to confirm their entitlement to a Cash Payment.  The Claim Form shall explain that the Class Member also may claim against the portion of the Net Settlement Funds that shall be allocated for on-line debit damages by following the procedures detailed in Section 6 below.

**5.**      **Calculating the Off-line Debit and Credit Claims of Class Members Not Identified in the Visa Transactional Database**

5.1      The Modified Class Member List may include Class Members whose transactions and dollar volumes were not included in the Visa Transactional Database.  To identify such Class Members, the Claims Administrator shall cross-reference the Modified Class Member List against the Class Members identified in the Visa Transactional Database.  Within 120 days of Final Settlement Approval, the Claims Administrator shall send a Claim Form to any Class Member who has been identified by cross-referencing the Modified Class Member List against the Visa Transactional Database.  To claim against any portion of the Net Settlement Funds, such Class Members must execute and submit the Claim Form to the Claims Administrator, and must indicate the periods during which they accepted Visa and/or MasterCard off-line debit and credit transactions and/or on-line debit transactions for payment during the Class Period.

5.2      Class Members who are not identified on the Modified Class Member List or the Visa Transactional Database may contact the Claims Administrator to request a Claim Form.  (These Class Members may include merchants who stopped accepting Visa transactions

16

in the Class Period prior to October 1996.)  To claim against the Net Settlement Funds, these

Class Members must execute and submit the Claim Form to the Claims Administrator within 180

days of Final Settlement Approval.

       5.3     The Claim Form that will be sent to Class Members who are not identified

in the Visa Transactional Database will require these Class Members to indicate the periods

during which they accepted Visa and/or MasterCard off-line debit and credit transactions and/or

on-line debit transactions for payment during the Class Period.  The Claim Form also will

request that each Class Member submit its annual total gross U.S. sales for its business(es) that

accepted Visa and/or MasterCard transactions for each year or fractional year of the Class Period

during which the business(es) accepted Visa and/or MasterCard transactions.  It shall inform

Class Members that they may later be required to confirm their entitlement to a Cash Payment by

producing documentation, such as a merchant contract, showing when they accepted Visa and/or

MasterCard transactions or on-line debit during the Class Period.

       5.4     Attached to the Claim Form will be a list of Merchant Category

Descriptors that will be drawn from the Merchant Category Descriptors utilized in the Visa

Payment Systems Panel Study.  The Claim Form will request that the Class Member identify the

merchant category(ies) which best correspond(s) with its line of business.  It shall explain that

Class Members who identify more than one merchant category should identify the percentage of

their annual total gross U.S. sales accounted for by each merchant category the Class Member

selects from the list.  This information will enable the Claims Administrator to estimate Visa and

MasterCard off-line debit and credit dollar volumes in each relevant year or fractional year of the

Class Period for such Class Member.  The Claim Form shall inform Class Members that if they

17

have any questions about the merchant categories detailed in the attached list, they should contact the Claims Administrator.  Where necessary, the Claims Administrator shall contact Visa to determine the merchant category that is most applicable to the Class Member's line of business.

       5.5      After receiving Claim Forms from Class Members, the Claims Administrator shall use the Visa Payment Systems Panel Study Database to estimate the Class Member's Visa and/or MasterCard debit and credit dollar volumes for each year or fractional year of the Class Period that the Class Member accepted those transactions.  The estimation procedure relies on the assumption that Visa and MasterCard off-line debit and credit dollar volumes as a share of total gross sales (including cash, checks, and other payment forms) are approximately the same for all Class Members in the same merchant category.  (The manner in which these estimates shall be calculated is more fully explained in the Fisher Allocation Declaration and the Supplemental Fisher Allocation Declaration.)  The Claims Administrator shall then utilize the Fisher Allocation Methodology to calculate the Class Member's damages for Visa and/or MasterCard debit and credit transactions, as well as its claim against the Visa and/or MasterCard Net Settlement Funds.

       5.6      After completing the calculations described in Section 5.5, the Claims Administrator shall send the Class Member a Notice of Estimated Cash Payment.  The Notice shall inform the Class Member of the initial calculation of its claim against the Net Settlement Funds.  It also shall inform the Class Member that it may challenge the calculation by following the procedures detailed in Section 7 of this Amended Plan of Allocation, and that the calculation may be revised to account for such challenges.

**6.      Calculating All Class Members' Claims Against
         Net Settlement Funds for On-Line Debit Damages**

6.1      To claim against the portion of the Net Settlement Funds that may be allocated for on-line debit damages, all Class Members who accepted on-line debit during the Class Period must indicate on their Claim Forms the period(s) in which they accepted on-line debit.  Class Members must also indicate when they began installing PIN pads, and when their installation of PIN pads was completed.

6.2      Using the method set forth in the Supplemental Fisher Allocation Declaration, the Claims Administrator shall estimate the number of on-line debit transactions received by each of these Class Members during the Class Period, based primarily on the actual or estimated number of off-line debit transactions they received in each year or partial year and their Merchant Category Descriptor(s).  Once the on-line debit transaction estimations have been completed, they will be made available on a confidential basis on the Claims Distribution website.

6.3      The Claims Administrator shall then use the Fisher Allocation Methodology to calculate the Class Member's damages from on-line debit overcharges, and claim against the Net Settlement Funds.  (This method is more fully described in the Supplemental Fisher Allocation Declaration.)

6.4      Class Members claiming against the portion of the Net Settlement Funds that shall be allocated for on-line debit damages shall receive a Revised Notice of Estimated Cash Payment With PIN Debit Damages and Claim Form ("Revised Claim Form").  The Revised Claim Form shall inform the Class Member of the calculation of its claim against, or pro rata share of, the portion of the Net Settlement Funds that shall be allocated for on-line debit

19

damages.  It also shall inform the Class Member that it may challenge the calculation by following the procedures detailed in Section 7 of this Amended Plan of Allocation, and that the calculation may be revised to account for such challenges.

7.      **Challenges & Resolution of Disputes**

7.1      Class Members who disagree with the Claims Administrator's calculations of their claim against the Visa and/or MasterCard Net Settlement Funds may submit, in writing, a challenge.  To challenge the calculations, these Class Members must check a box on their Claim Form stating that they disagree with the accuracy of the calculations.  The Class Member also must state on its Claim Form what it believes its claim against the Net Settlement Funds should be and/or how it can be more accurately calculated.  The written challenge must be accompanied by supporting documentation and must be mailed to the Claims Administrator by first class mail, postmarked no later than 30 days after the Notice (or Revised Notice) was mailed to the Class Member.

7.2      The Claims Administrator shall review all written challenges by Class Members, including the documentation supplied by the Class Member.  It may consult with Visa, MasterCard, or the Class Member's acquiring bank or processor, as appropriate.  If upon review of the challenge and supporting documentation the Claims Administrator decides to modify its calculation of the Class Member's claim against the Visa and/or MasterCard Net Settlement Funds, either by increasing or decreasing the amount, it will send a determination letter to the Class Member to advise it of the revised calculation.  The determination letter will advise the Class Member of its right to appeal the determination in accordance with Section 7.4 of this Amended Plan of Allocation.  If the Class Member does not exercise the appeal rights described

20

in Section 7.4 within 15 days of the mailing of the determination letter, the revised calculation shall be deemed final.

7.3     Where the Claims Administrator concludes that a challenge requires additional information or documentation, it will so advise the Class Member and provide that Class Member an opportunity to provide the documentation within 30 days.  If the requested documentation or information is not provided by the Class Member within that time frame, the challenge will be rejected and the Class Member will receive a determination letter by mail stating that the initial calculation of their claim against the Net Settlement Funds shall stand.

7.4     Determination letters shall inform the Class Member of its right to petition Lead Counsel, and subsequently the Court, for review of the Claims Administrator's calculations. Any petition by a Class Member must be initially submitted in writing to Lead Counsel, with copies to the Claims Administrator, no later than 15 days after the determination letter was mailed to the Class Member.  Class Members may subsequently appeal Lead Counsel's determinations to the Court.  All appeals to the Court must be submitted in writing, with copies to Lead Counsel and the Claims Administrator, no later than 15 days after Lead Counsel's determination letter was mailed to the Class Member.

**8.     Processing of Claims**

8.1     The Claims Administrator shall process all distributions to Class Members of the Net Settlement Funds.  It shall be responsible for determining all allocations to Class Members of the Net Settlement Funds in accordance with this Amended Plan of Allocation.  All Claim Forms submitted by Class Members shall be assigned a number (the "Claim Number").

21

8.2     Claim Forms shall include a Substitute Form W-9 certifying that the Class Member is not subject to back-up withholding.  Claim Forms also shall include the Release, as set forth in the Settlement Agreements, which shall be executed and submitted by Class Members.  The Claim Form also shall confirm, where applicable, the Class Members' Social Security Number or Taxpayer Identification Number.  All Claim Forms shall be executed, where appropriate, by an officer or director of the Class Member.  Claim Forms may be submitted either by mail or electronically through the Claims Distribution website.

8.3     The Claims Administrator shall determine that all Claim Forms are timely, properly supported, and executed.  If a Claim Form is incomplete, the Claims Administrator shall send a notification to the claimant bearing the Claim Number and describing the deficiency. Class Members will have 30 days from the date of notification to cure any deficiency.  If they fail to correct the deficiency within this time, the claim may be rejected and the Class Member shall be notified of such rejection by a letter bearing the Claim Number.  The letter shall state the reason for the rejection.

8.4     All Claim Forms that meet the criteria described in this Amended Plan of Allocation shall be deemed approved for payment by the Claims Administrator ("Approved Claims").  The claims of Class Members that challenge the Claims Administrator's calculations shall be deemed Approved Claims upon the Class Member's failure, after receipt of a determination letter, to timely appeal the Claims Administrator's determination, or if the Class Member files an appeal, upon the final determination of the appeal.

8.5     Claim Forms from Class Members identified in the Visa Transactional Database shall be deemed timely if they are received or postmarked within 60 days of the

22

mailing of the Notice of Estimated Share of Settlement Funds to the Class Member.

8.6     Claim Forms from Class Members who are identified on the Modified Class Member List but not the Visa Transactional Database shall be deemed timely if they are received or postmarked within 60 days of the mailing of the Claim Form to the Class Member. Claim Forms from Class Members who are not identified in the Modified Class Member List or the Visa Transactional Database shall be deemed timely if they are received within 180 days of Final Settlement Approval.

8.7     All late Claim Forms that are otherwise complete may be processed by the Claims Administrator.  These claims shall be designated as "Late Claims."  Lead Counsel may decide to accept or reject Late Claims, in which case they will be treated as any other Approved Claim.  In accordance with Section 10 of this Amended Plan of Allocation, the Claims Administrator shall report all late claims accepted or rejected by Lead Counsel to the Court, who will determine ultimately whether to accept any Late Claims which have been rejected.

8.8     At Lead Counsel's discretion, the deadlines outlined in Section 8.5 and 8.6 may be extended another 30 days without approval of, but with notice to, the Court.  Lead Counsel may seek further extensions of these deadlines from the Court.

**9.     Processing of Approved Claims**

9.1     The Claims Administrator shall process Class Members' Approved Claims on a rolling basis.  Beginning one month after the deadline for submitting Claim Forms, the Claims Administrator shall submit a quarterly report of Approved Claims to the Court (or, as directed, to the Special Master).  The Claims Administrator will thereafter begin mailing checks on a quarterly basis to those Class Members whose claims have been approved.

**10.   Reports to the Court Regarding Distribution of Net Settlement Funds**

10.1    The Claims Administrator shall report to the Court (or, as directed, to the Special Master) as follows.  On a quarterly basis, after Approved Claims are received by the Claims Administrator, it will prepare a report and declaration for confidential submission under seal to Lead Counsel and to the Court (or, as directed, to the Special Master).  The declaration will explain the tasks and methodologies employed by the Claims Administrator in processing the claims and administering the settlements.  It will also contain a list of the Approved Claims of each Class Member and their pro rata shares of and/or the amount of their claims against the Visa and/or MasterCard Net Settlement Funds, as well as a list of the Class Members who submitted Claim Forms which were rejected and the reasons their claims were rejected.

**11.   Securitization of Settlement Funds**

11.1    The Settlement Agreements require Visa and MasterCard to make installment payments to the Settlement Funds through December 22, 2012.  As a result, if the Settlement Funds are not securitized, Class Members with Approved Claims will not receive the full amount of their claims until 2013.  As discussed in the accompanying Fisher Allocation Declaration, it may be in the interest of the Class Members to receive their payments as quickly and in as few distributions as possible.  To this end, Lead Counsel has evaluated the option of converting Visa and MasterCard's unpaid installments to a lump-sum payment in a process referred to as a "securitization."  The total lump-sum received as a result of securitization would be less than the full $3,050,000 (net of expenses) to be paid over time by Visa and MasterCard, but will reflect the greater value to the Class of receiving all the amounts due at once.

11.2      If there were a securitization process in this case, the unpaid installments due to the Settlement Funds by Visa and MasterCard would be assigned to a trust.  Securities representing the value of the trust's holdings (*i.e.*, the unpaid installments) would be issued in much the same way as corporate bonds are offered to investors.  Third-party investors would purchase these financial instruments at a discount that represents the interest they would earn on their investment.  The securitization is structured (*e.g.*, number of bonds, maturity dates, amortization etc.) and the obligations are sold by large banks acting as underwriters.

11.3      A securitization of the Visa and/or MasterCard unpaid installments would benefit the Class in a number of significant ways.

(a)      The Class will save significant costs of administration by allowing the Claims Administrator to distribute settlement checks to Class Members with Approved Claims in the near-term.  Absent a securitization, Class Members with Approved Claims would not receive their last payment until at least 2013, and the Settlement Funds would bear the cost of as many as 9 distributions.  The savings related to reducing the distributions from 9 to 2 could save the Settlement Fund as much as $100,000,000.  *See* Declaration of Neil Zola dated August 13, 2003.  This far exceeds the costs related to securitization.

(b)      A larger initial check, in place of a series of smaller checks over a number of years, may benefit Class Members. (*See* Fisher Allocation Declaration.)

(c)      Securitization would reduce the risk that the value of the settlement will be eroded by inflation.  Although inflation is now low, no one can predict what the rate will be between 2006 or 2007, when annual payments to Class Members are likely to

25

begin, and 2013, when the last payment is likely to be made.  (*See* Fisher Allocation Declaration.)

       (d)     The credit risk that Visa and MasterCard do not make the payments would be eliminated.  (*See* Fisher Allocation Declaration.)

       11.4    Lead Counsel have held meetings with their advisors and with potential underwriters and have determined that a securitization of Visa's and MasterCard's obligations would be an appropriate way to convert unpaid obligations set forth in Paragraph 3(a) of the Settlement Agreements into lump-sum payments.

       11.5    Following Settlement Approval by this Court, Lead Counsel will distribute a request for a proposal ("RFP") to securitize the Settlement Agreements to potential underwriters.  The RFP will request that each potential underwriter provide information including, but not limited to, the potential underwriters' relevant experience, pricing, fees and willingness to commit resources and capital to achieve a successful cost- effective securitization. Based on their responses to the RFP, Lead Counsel will invite approximately 12 potential underwriters to present their qualifications and discuss pricing and fees in person.  At least two additional rounds of interviews will be conducted as the field is narrowed and independent research will be collected over a period of approximately two weeks.  At the end of that period (approximately four to six weeks), Lead Counsel will determine whether securitization is in the best interests of the Class.

       11.6    Lead Counsel shall retain specialized counsel to assist in the proposed securitization.

11.7    Upon completion of the selection of the underwriters, Lead Counsel, along with the underwriters and Lead Counsel's advisors intend to seek the reasonable assistance of Visa and MasterCard to obtain information customarily available in securitizations of these sizes and relative complexity, as agreed to in the respective Settlement Agreements with Visa and MasterCard.

11.8    The underwriters will develop and present a number of securitization structures (*i.e.*, number of bonds, duration, amortization, etc.) based on maximizing the payout to the Class.  These structures will incorporate all the relevant business, financial, accounting, Securities Exchange Commission, tax and legal issues and will be based on the assignment of the payments due to be paid by Visa and MasterCard to a trust.  The trust will sell the securitized obligations in the form of bonds to bondholders and use the payments received from Visa and MasterCard to pay the interest and principal on these bonds.  The trust will remit the proceeds from the sale of the securitization bonds (net of underwriter and related fees) to the Class.  The review and selection of the appropriate structure by Lead Counsel will occur over approximately 14 days.

11.9    After the selection of the structure for the securitization, the underwriters will prepare drafts of offering memorandums and supporting materials as is customary for these types of securitizations.  Along with these drafts, underwriters along with Lead Counsel and their advisors will prepare a presentation of the proposed securitization to the credit rating agencies, Standard & Poor's and Moody's.  Preparation of these initial drafts and presentations will be completed over the next approximately 30 days.

11.10   Upon the completion of all the necessary documentation, the proposed securitization will be presented to the credit-rating agencies Standard & Poor's and Moody's. After the initial meeting with these agencies, follow up questions from Standard and Poor's and Moody's will be presented to Visa and MasterCard and after a process that could last approximately 60-90 days Lead Counsel will obtain a credit rating for the chosen securitization structure.

11.11   Upon receipt of the credit rating, the underwriters along with Lead Counsel and their advisors will finalize the required documentation and begin marketing the securitization to potential acquirers of the securitization (*i.e.*, bondholders) through a series of meetings over a period of approximately one month.

11.12   Based on market conditions and bondholder interest, the underwriters will propose that the interest rate be set at a level that they believe is required to complete the sale of the entire securitization to bondholders.  To eliminate risk to the Class, the underwriters could offer to purchase the entire securitization by setting the interest rate at a specified level.  Lead Counsel and their advisors will analyze all alternatives including the option to forego a securitization.  Completion of the securitization will take approximately 30 days from the receipt of the credit ratings from Standard & Poor's and Moody's.  Lead Counsel will attempt to time the process such that marketing to potential bondholders will occur shortly after Final Settlement Approval.

11.13   Fees and expenses associated with the securitization are made up of underwriter's fees, structuring fees and related expenses.  Underwriter's fees are the transactional fees charged by the underwriters for the securities sold to their clients.  Based on Lead Counsel's

28

discussions with the banks and its independent review, for a securitization of this anticipated size and credit rating, underwriter fees should range between 45-60 basis points of the total proceeds from the securitization.

11.14   Structuring fees are paid to the lead underwriters for their role in configuring the financial instrument, preparing selling memoranda and other documentation, coordinating information flow and meetings, and other administrative-type assistance required to complete the securitization successfully.  Based on Lead Counsel's discussions with the banks and its independent review, securitization fees for a transaction of this size and complexity should total approximately 25 basis points of the total proceeds from the securitization.

11.15   All expenses such as legal, accounting, credit rating related and printing should total approximately $1.5 million - $2 million.  Lead Counsel may incur certain structuring fees and other expenses related to the securitization even if Lead Counsel determines not to pursue the securitization or if Visa or MasterCard pre-pay the settlement as described below in Section 11.16.

11.16   As an alternative to securitization, Visa and MasterCard may prepay the unpaid installments at an appropriate discount.  Both Visa and MasterCard have requested the opportunity to work with Lead Counsel  to establish a mutually agreeable discount rate to apply to pre-payment of the installments, provided that such discussion does not interfere with any effort to sell, assign, securitize or obtain financing using the Settlement Funds to third parties. Any offer made by Visa or MasterCard would be considered against offers from third parties to securitize the unpaid installments due from Visa and MasterCard.

29

11.17   If Lead Counsel determines that either securitization (as discussed in Sections 11.1-11.15) or a pre-payment by Visa or MasterCard (as discussed in Section 11.16) is in the best interest of the Class, it will advise the Court of the terms and conditions of either approach and will seek prior approval of the Court before completing either transaction.

## 12.   **Payments to Class Members**

12.1   If the Net Settlement Funds are reduced to a lump sum pursuant to Section 11, upon submission of the quarterly reports and accompanying declarations of the Claims Administrator to the Court (or, as directed, to the Special Master), the Claims Administrator shall issue a check payable to each claimant in the amount designated in the quarterly reports.

12.2   If the Net Settlement Funds are not reduced to a lump sum pursuant to Section 11, upon submission of the quarterly reports and accompanying declarations of the Claims Administrator to the Court (or, as directed, to the Special Master), up to 9 payments may be made to Class Members through 2013.  If this occurs, the Claims Administrator shall apply the Class Member's pro rata share of the damages incurred by Class Members with Approved Claims, as submitted to the Court (or, as directed, to the Special Master), to the portion of the Visa and/or MasterCard Net Settlement Funds, other than the reserve set aside in accordance with Section 12.6, that will be available for distribution at the end of each calendar year through December 31, 2012.  The Claims Administrator shall issue checks payable to each claimant based on this calculation, and after the initial payment, such checks may be issued each year through 2013.

30

12.3    All check stubs printed by the Claims Administrator shall state that the amount payable was calculated in accordance with this Amended Plan of Allocation.  Check stubs also shall include a Substitute Form 1099 as required by the federal tax laws.  Also, either on the check stub or in an accompanying letter, the Claims Administrator will explain the calculation and how the claimant's distribution was computed.

12.4    If a Class Member who has an Approved Claim cannot be located by the Claims Administrator, or a check issued to such claimant is not cashed within six (6) months, the Claims Administrator shall void those checks and return the funds to the Net Settlement Funds.

12.5    If, in the opinion of Lead Counsel, sufficient money remains in the Net Settlement Funds after all Approved Claims have been fully paid, such that it is cost effective to make another pro rata distribution to all Class Members who received and cashed their checks, the Claims Administrator will distribute the remaining amounts, other than the reserve set aside in accordance with Section 12.6.  If the Net Settlement Funds are not reduced to a lump sum, this additional pro rata distribution may be made after the last installment of the Net Settlement Funds, which shall be made on or before December 22, 2012, has been distributed.  The Claims Administrator will advise Lead Counsel of the approximate costs for this additional distribution, including postage, printing of checks, systems and programming costs to perform new pro rata calculations, and any other related tasks.

12.6    The Claims Administrator shall at all times maintain a reserve of at least $10 million to cover potential late claimants or other unforeseen issues.  Uncashed checks shall be added to the reserve.  If Lead Counsel elects to make an additional pro rata distribution, pursuant to Section 12.5, the shares of claimants whose pro rata awards would be less than

31

$10.00 will go into the reserve.

12.7     When distributions are otherwise complete, any monies remaining in the

Net Settlement Fund from uncashed or undeliverable checks, or from other sources, will be

applied in a manner recommended by Lead Counsel and approved by the Court.

**13.    <u>Modification</u>**

13.1     Lead Counsel may in the interests of justice apply to the Court to modify

this Amended Plan of Allocation.


Dated: New York, New York
       August 16, 2005

                         **CONSTANTINE CANNON**

                         By: _____
                            Robert L. Begleiter (RB-7052)
                            Matthew L. Cantor (MC-8183)
                              Lloyd Constantine (LC-8465)
                              Stacey Anne Mahoney (SM-5425)
                              Michelle A. Peters (MP-7804)
                              Amy N. Roth (AR-4534)
                              Gordon Schnell (GS-2567)
                              Jonathan Shaman (JS-8481)
                              Jeffrey I. Shinder (JS-5719)
                         450 Lexington Avenue, 17th Floor
                         New York, New York 10017
                         (212) 350-2700
                         ***Lead Counsel for The Class***

32