U.S. ...                    ... .C.
                            ... ...  ...D N.Y.

★ AUG 25 2005 ★

BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------x

IN RE VISA CHECK/MASTERMONEY          MASTER FILE NO. CV-96-5238
ANTITRUST LITIGATION                   (Gleeson, J.) (Mann, M.J.)

-----------------------------------------------------x

## REPORT AND RECOMMENDATION

In this antitrust action, a class of approximately five million merchants alleged,
among other things, that defendants Visa U.S.A. Inc. and MasterCard International
Incorporated illegally tied their debit products to their credit cards, in violation of the
Sherman Act. On June 4, 2003, the plaintiffs entered into separate preliminary settlement
agreement with each of the defendants. Class Members Armenta's Mexican Food, Inc.,
and Lupita Llamas Martinez, dba Del Yaqui Restaurant (collectively, "Applicants")
objected to the proposed settlement agreements, arguing that they "should not be
approved because the notices to the Class (transmitted by mail, publication, a website,
and a toll-free telephone number) were provided only in English, and not in Spanish as
well." In re: Visa Check/MasterMoney Antitrust Litigation, 297 F. Supp. 2d 503, 516
(E.D.N.Y. 2003).

By Opinion and Order dated December 19, 2003, the Honorable John Gleeson,
overruling Applicants' objections, approved both settlements (collectively, the
"Settlement Agreements"), awarded Class Counsel $220,290,160.44 in attorneys' fees,
and authorized reimbursement of costs in the amount of $18,716,511.44. See id. at 526.
On January 4, 2005, the Second Circuit affirmed the Court's December 19, 3003 Opinion
and Order. See Wal-Mart Stores, Inc. v. Visa U.S.A., Inc., 396 F.3d 96 (2d Cir. 2005).

- 1 -

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------x

IN RE VISA CHECK/MASTERMONEY          MASTER FILE NO. CV-96-5238
ANTITRUST LITIGATION                  (Gleeson, J.) (Mann, M.J.)

-------------------------------------------------x

## REPORT AND RECOMMENDATION

In this antitrust action, a class of approximately five million merchants alleged, among other things, that defendants Visa U.S.A. Inc. and MasterCard International Incorporated illegally tied their debit products to their credit cards, in violation of the Sherman Act. On June 4, 2003, the plaintiffs entered into separate preliminary settlement agreement with each of the defendants. Class Members Armenta's Mexican Food, Inc., and Lupita Llamas Martinez, dba Del Yaqui Restaurant (collectively, "Applicants") objected to the proposed settlement agreements, arguing that they "should not be approved because the notices to the Class (transmitted by mail, publication, a website, and a toll-free telephone number) were provided only in English, and not in Spanish as well." In re: Visa Check/MasterMoney Antitrust Litigation, 297 F. Supp. 2d 503, 516 (E.D.N.Y. 2003).

By Opinion and Order dated December 19, 2003, the Honorable John Gleeson, overruling Applicants' objections, approved both settlements (collectively, the "Settlement Agreements"), awarded Class Counsel $220,290,160.44 in attorneys' fees, and authorized reimbursement of costs in the amount of $18,716,511.44. See id. at 526. On January 4, 2005, the Second Circuit affirmed the Court's December 19, 3003 Opinion and Order. See Wal-Mart Stores, Inc. v. Visa U.S.A., Inc., 396 F.3d 96 (2d Cir. 2005).

- 1 -

By Order dated February 17, 2004, Judge Gleeson appointed me Special Master to issue reports and recommendations regarding referred disputes arising out of or relating to the Settlement Agreements. By Application filed October 21, 2004, Applicants "petition[ed] this Court for an order instructing the parties to include a Spanish Language banner on the claims forms to be mailed to class members and a Spanish language version of the notice that will accompany the claims form after Final Settlement Approval, together with . . . additional relief." Application for Spanish Language Notice and Banner to Be Included in Claims Form to Be Sent Class Members After Final Settlement Approval ("Claims Process Application") at 2. By order dated October 28, 2004, Judge Gleeson referred the Claims Process Application to me for a report and recommendation.

By Report and Recommendation dated December 12, 2004, I respectfully recommended that this Court enter an order granting some of Applicants' requests and denying others. By order dated February 11, 2005, this Court adopted my Report and Recommendation with some modifications. Applicants have now filed a fee petition seeking an award of fees and expenses in connection with their objections to the Settlement Agreements and in connection with the Claims Process Application. See Fee Petition of Objectors' Counsel for Armenta's Mexican Food, Inc. and Lupita Llamas Martinez, d/b/a Del Yaqui Restaurant ("Fee Petition").

For the reasons set forth below, I respectfully recommend that, to the extent that Applicants' Fee Petition seeks reimbursement for fees and expenses in connection with Applicants' opposition to the Settlement Agreements, it be denied on the ground of untimeliness. I further respectfully recommend that this Court enter an order finding that

- 2 -

Applicants are entitled to an award of fees and expenses for their efforts in connection with ensuring that a Spanish-language component is added to the claims process. However, without clarification of Applicants' time and expense records, I am unable to make a recommendation to this Court regarding the amount of such award. Accordingly, I hereby order Applicants to, within ten business days following receipt of this Report and Recommendation, submit to me and serve upon Lead Counsel a supplemental declaration or declarations setting forth only those time records and expenses that relate to their efforts in furtherance of ensuring that a Spanish-language component be added to the claims process. Lastly, I decline to consider Applicants' request for reimbursement for my fees in connection with the Report and Recommendation I issued in response to the Claims Process Application on the ground that Paragraph (h) of this Court's February 17, 2004 order appointing me Special Master provides that "[a]ny questions or disputes concerning the source of the funds used to pay the Special Master will be resolved by this Court."

## BACKGROUND

In a complaint filed on October 5, 1996, the named plaintiffs "alleged that the defendants' practice of requiring merchants who accepted defendants' credit cards to also accept their debit products . . . was an illegal tying arrangement, in violation of section 1 [of the Sherman Act]." In re: Visa Check/MasterMoney Antitrust Litigation, 297 F. Supp. 2d 503, 507 (E.D.N.Y. 2003). They "further alleged that, through these tying arrangements and other anticompetitive conduct, the defendants attempted to monopolize the debit card market, in violation of section 2 [of the Sherman Act]." Id. This Court

- 3 -

certified the class by Order dated February 22, 2000. Id. The Second Circuit affirmed on

October 17, 2001. Id. at 507-08.

After motion practice, and on the brink of trial, the plaintiffs entered into

preliminary settlement agreements with each of the defendants. Id. at 508. These

proposed Settlement Agreements provided, among other things, for "the creation of a

$3.05 billion settlement fund." Id. at 508.

On August 18, 2003, Lead Counsel sought this Court's approval of, among other

things, the Settlement Agreements and Plan of Allocation. Id. at 506-07. "Only 18

merchants, out of approximately five million, filed objections to the Settlements and plan

of allocation." Visa Check/MasterMoney, 297 F. Supp. 2d at 509 n.6; see also id. at 522

n.27. Among the objectors were these Applicants, who argued that "the Settlement

Agreements should not be approved because the notices to the Class (transmitted by mail,

publication, a website, and a toll-free telephone number) were provided only in English,

and not in Spanish as well." Id. at 516. According to Applicants, "this English-only

notice did not comport with due process or Rule 23(e) because '[t]he cost to include

notice in Spanish in these print notices, and a link on websites and Spanish option at the

telephone sites would have been negligible.'" Id. at 516 (quoting Applicants).

On September 25, 2003, this Court "held a fairness hearing in [the] ceremonial

courtroom to hear arguments of th[e Objectors] and any others that might be raised." Id.

at 509. Counsel for many of the Objectors, including Applicants, appeared at the hearing.

On December 19, 2003, this Court issued an Opinion and Order approving the Settlement

Agreements. With respect to Applicants' objection, this Court stated (id. at 516-17

(footnotes omitted)):

- 4 -

[Applicants'] website argument is well-taken. It would have been a useful addition to the notice to have included a bulletin (in Spanish) that a Spanish translation of the notice was available on a specified website. However, the absence of notice in Spanish does not warrant the denial of approval of the Settlement Agreements.

To support their contention, Armenta's and Llamas rely on several statistics. For example, they report that in 2000 more than 2.4 million New Yorkers over five years old spoke Spanish at home (id. at 4), and that as of 1997, Latino- and Hispanic-owned businesses comprised some 1.2 million of the nation's 20.8 million businesses (id. at 4-5). But these objectors have failed to demonstrate that there is a sizeable group of merchants in the Class who could not comprehend the notice. When questioned about this deficiency at the fairness hearing, counsel acknowledged the lack of fit between the statistics cited and the proposition advanced. Counsel nevertheless argued that Spanish-speaking merchants in general are "less comfortable with English than they are with Spanish." (Fairness Hr'g at 46.) I assume that is true, but a lack of comfort does not mean there was a significant defect in the notice. In any event, it does not rise to the level of a due process violation. The basic standard is one of reasonableness. See Soberal-Perez v. Heckler, 717 F.2d 36, 43 (2d Cir.1983) ("'The notice must be of such nature as reasonably to convey the required information . . . and it must afford a reasonable time for those interested to make their appearance.'" (quoting Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950))). There has been no showing here that the notice to the Class did not meet that standard.

Applicants appealed this Court's finding. The Second Circuit heard oral argument in late

August, 2004.

On October 21, 2004, Applicants filed their Claims Process Application, asking

that a Spanish-language component be added to the claims process. Specifically, the

Claims Process Application asked this Court to order that:

- a "Spanish language banner . . . be added to all claims forms to be mailed to Class Members following Final Settlement Approval" stating:

  Para un formulario de reclamo en español por favor llame al (1-888-641-4437) o visite nuestro website (www.InReVisaCheck-MasterMoneyAntitrust Litigation.com).;

- "the Claims Administrator . . . hav[e] Spanish speaking 888 operators and a recorded Spanish language option at 888-641-4437 with complete instructions in Spanish for the procedure to obtain a Spanish language claim form";

- "the notice to accompany the claims forms be sent by the Claims Administrator which informs Class Members of the calculation of their off-line debit and credit card recovery damages and how they can claim same be printed in both English and Spanish";

- "class counsel . . . cause to be translated into Spanish and disseminated to Spanish language print, voice and television media each of the four nationwide press releases to be issued, as well as all other information that the Settlement Agreements require to be publicly disseminated"; and

- "[f]or such other and further orders that this Court deems appropriate to ensure that Latino and Hispanic Class Members, who otherwise may not receive their share of the $3.2 billion to be distributed pursuant to the Settlement Agreements because they cannot read or meaningfully understand an English only notice and claim form, are provided with an opportunity to participate in this aspect of the benefits of the Settlement Agreement."

Claims Process Application at 6-7.[1]

In a supplemental letter dated November 12, 2004, Applicants asked that the Court's order further require that:

- I review all claim forms and notices to the Class containing information about individual Class Member recovery amounts before they are mailed to Class Members in order to (a) verify their content and (b) pre-approve the Spanish language portions "as to point type, font, etc.";

- Lead Counsel and/or the Claims Administrator employ Spanish speaking 888 operators to handle all inquiries in Spanish;

- I pre-approve all Spanish language prerecorded voice instructions with the assistance of a certified court translator;

- I review "each and every additional other form of communication planned for the class" in order to "determine the appropriateness of translating and dissemination in Spanish"; and

---

[1] Pursuant to its February 17, 2004 order appointing me Special Master, this Court referred the Application to me.

- "class counsel and the claims administrator copy counsel for Armenta's and Martinez with all submissions to [me], and that an appropriate period of time be given them to direct their comments to [me]."

John W. Rasmussen's Nov. 12, 2004 Letter to Special Master Robin Wilcox at 1-2.

In response to the Claims Process Application, Lead Counsel asserted that they had "independently" decided to incorporate many, but not all, of Applicants' proposals and, accordingly, that it had no objection to Applicants' request for the entry of an order requiring that (1) "the referenced [Spanish language] banner" be added to the claim form; (2) "a Spanish language translation of the information concerning individual class member recovery amounts," be printed on all individual notices; and (3) the Claims Administrator employ "Spanish language operators . . . to receive inquiries concerning claims from Class Members that prefer to speak in Spanish," Lead Counsel's Nov. 23, 2004 Letter to Special Master Robin Wilcox ("Lead Counsel's Nov. 23, 2004 Ltr.") at 1. Lead Counsel also did not appear to object to Applicants' request that this Court enter an order requiring that they make available to Class Members who contact the Claims Administrator's toll free number the option of accessing complete instructions in Spanish for the procedure to obtain a Spanish language claim form. Lead Counsel's Nov. 2, 2004 Ltr. at 1 n.2; see also Lead Counsel's Nov. 23, 2004 Ltr. at 1 (arguing that pre-approval of a Spanish language voice instruction is unnecessary because Lead Counsel "will abide by any final Court order rendered in this matter"). Lead Counsel did, however, object to Applicants' remaining requests.

By Report and Recommendation dated December 12, 2004, I respectfully recommended that the Court enter an order requiring Lead Counsel to implement all of

the relief to which Lead Counsel had not objected. Specifically, I respectfully

recommended that the Court enter an order:

1) requiring that all claim forms sent to individual Class Members include a Spanish language banner informing Class Members that they can obtain a Spanish language version either by calling the Claims Administrator's toll free number (1-888-641-4437) or by visiting the webpage that is dedicated to this litigation (www.InRe Visa Check-MasterMoney AntitrustLitigation.com);

2) requiring that all notices regarding individual Class Member recovery amounts be printed in both English and Spanish;

3) requiring the Claims Administrator to employ Spanish language operators for the purpose of receiving inquiries concerning claims from Spanish-speaking Class Members who call the Claims Administrator's toll-free number (1-888-641-4437);

4) requiring the Claims Administrator to ensure that such Spanish language operators are available to communicate with Spanish-speaking Class Members during the same hours that English-speaking operators are available to communicate with English-speaking Class Members; and

5) requiring the Claims Administrator to ensure that Class Members who call the Claims Administrator's toll free number (1-888-641-4437) have the option of accessing (a) Spanish language translations of all pre-recorded English voice messages; and (b) complete instructions in Spanish for the procedure to obtain a Spanish language claim form.

Over Lead Counsel's objection, I also respectfully recommended that the Court enter an

order:

6) giving (a) Lead Counsel twenty business day to file with the Court and serve upon Applicants a plan for Spanish language publication of information regarding Final Settlement Approval that is reasonably calculated to reach those Spanish-speaking Class Members who would not be reached through publication in English language media sources alone; and (b) Applicants fifteen business days following such service to file with the Court and serve upon Lead Counsel their objections, if any, to Lead Counsel's plan for Spanish language publication; and

7) requiring (a) Lead Counsel to serve Applicants with advance notice of any and all future class-wide communications that it intends to transmit to Class Members by mail; and (b) Applicants, within ten business days

- 8 -

following such service, to file with the Court their request, if any, that such communication carry a Spanish language banner and/or be printed in both English and Spanish.

My Report and Recommendation respectfully recommended that this Court deny Applicants' remaining requests for relief.

Lead Counsel thereafter filed an objection to my Report and Recommendation. On January 4, 2005, the Second Circuit affirmed the Court's December 19, 3003 Opinion and Order approving the Settlement Agreements. See Wal-Mart Stores, Inc. v. Visa U.S.A., Inc., 396 F.3d 96 (2d Cir. 2005). On February 11, 2005, this Court issued an order adopting my Report and Recommendation with some modifications.

By papers filed February 25, 2005, Applicants asked this Court for an award of attorneys' fees and expenses in connection with both their objections to the proposed Settlement Agreements and their efforts in furtherance of ensuring that a Spanish-language component is added to the claims process.[2] Applicants' Fee Petition requests $132,670 in attorneys' fees plus a multiplier of 3.5, for a total of $464,345. See Fee Petition at 11. Applicants also seek reimbursement for $17,985.14 in expenses, an amount that includes reimbursement for a $2405.98 invoice from Lead Counsel for one half of my fees in connection with the Report and Recommendation I issued in response to the Claims Process Application. See Fee Petition at 11 n.14; id. Ex. A.

In its response to the Fee Petition, Lead Counsel disputed Applicants' entitlement to fees on numerous grounds. First, Lead Counsel argues that, to the extent the Fee Petition seeks reimbursement for Applicants' efforts objecting to the proposed Settlement

---

[2] Applicants also seek permission to submit a supplemental Fee Petition upon the conclusion of their efforts in reviewing the Spanish notice plan to be proposed by Lead Counsel and reviewed by Objectors' Counsel." Fee Petition at 2. I am not aware of any requirement that Applicants obtain advance permission for such a supplemental filing.

- 9 -

Agreements, it is untimely pursuant to Federal Rule of Civil Procedure 54(d)(2)(B).  See

Lead Counsel's Mar. 22, 2004 Response to Fee Petition ("Lead Counsel's Response") at

3-7.  Lead Counsel concedes that the Fee Petition is timely to the extent that it seeks

reimbursement for fees in connection with Applicants' efforts in furtherance of the

Claims Process Application.  See id. at 3 n.2.  Lead Counsel nevertheless contends that

Applicants are not entitled to reimbursement for these efforts because it had

"independently" decided to incorporate Spanish-language notification into the claims

process *before* Applicants filed their Claims Process Application.  See id. at 12.

According to Lead Counsel, the fact that it had "independently" decided to incorporate

Spanish-language notification into the claims process supports a finding "that the relief

sought by the Application would have occurred regardless of the filing of the

Application" and therefore that Applicants' efforts in this connection conferred no benefit

upon the Class.  In the alternative, Lead Counsel argues that Applicants' requested fees

are excessive and should be reduced.  See id. at 12-16.

        In reply papers filed March 31, 2005, Applicants disputed each of Lead Counsel's

arguments.  See Reply of Objectors' Armenta's Mexican Food, Inc. and Lupita Llamas

Martinez, d/b/a Del Yaqui Restaurant in Support of Fee Petition ("Applicants' Reply").

With respect to Lead Counsel's claim that it had "independently" decided to incorporate

Spanish-language notification into the claims process before Applicants filed their Claims

Process Application, Applicants stated:

> In their Response, Lead Counsel claim no fewer than three times
> that it had "independently determined" or "independently committed" to
> incorporating a Spanish language component into the claims process.
> Baloney!

Id. at 3.  Applicants' Reply further stated (id. at 4):

> [I]n the nine months that went by after this Court on January 23, 2004
> entered its Final Judgment approving the settlements, Lead Counsel
> provided neither this Court nor Objectors counsel with <u>any</u> information or
> documentation suggesting that they were considering adding a Spanish
> language component to the claims process.

After Applicants filed their Reply, Lead Counsel, in a letter dated April 8, 2005,

informed me that on July 30, 2004 – <u>i.e.</u>, before Applicants filed the Claims Process

Application and before oral argument before the Second Circuit – Applicants and Lead

Counsel had conducted settlement negotiations during a mandatory Second Circuit Civil

Appeals Management Program conference ("CAMP conference") and that, on April 7,

2005, Lead Counsel had "submitted a letter to Frank Scardilli, Staff Attorney for the

United States Court of Appeals, requesting that Mr. Scardilli release [Lead Counsel] from

the confidentiality rules attached to the CAMP conference proceedings that were engaged

in by [Lead Counsel and Applicants' attorney]" so that Lead Counsel could "correct

repeated materially false statements" purportedly set forth in Applicants' Reply. Lead

Counsel's Apr. 8, 2005 Letter to Special Master Robin Wilcox at 1. Lead Counsel asked

that I temporarily stay my consideration of the Fee Petition "to give the Second Circuit an

opportunity to address" Lead Counsel's request. <u>See id.</u> This Court granted the

requested stay. Following further briefing, the Second Circuit granted Lead Counsel's

request to lift the CAMP conference confidentiality provisions.

Upon receiving the Second Circuit's order, Applicants filed a June 3, 2004 brief

anticipating Lead Counsel's arguments regarding their purported material

misrepresentations. <u>See</u> Supplement to Reply of Objectors' Armenta's Mexican Food,

Inc. and Lupita Llamas Martinez, d/b/a Del Yaqui Restaurant in Support of Fee Petition

("Applicants' Supplement to Reply"). Rather than describing the events of the settlement

negotiations that occurred during the July 30, 2004 CAMP conference, Applicants' June

3, 2004 submission quotes a letter, dated August 2, 2004, from Applicants' attorney to

Matthew Cantor, Esq., of Constantine & Partners (now Constantine Cannon P.C.). See

id. at 3; see also Ex. A to Lead Counsel's June 14, 2005 Ltr. to Special Master Robin

Wilcox. The August 2, 2004 letter states in relevant part:

> This letter is in follow up to Mr. Constantine's request that we
> communicate with you our response to the compromise resolution discussed at
> last Friday's telephonic pre-argument conference . . . . We are pleased that Mr.
> Constantine believes it is a good idea to include a Spanish language component to
> the claim form and is contemplating doing so regardless of the outcome of our
> objection/appeal.
>
> It is our understanding that your firm's proposal is as follows:
>
>> . . . Spanish Language Component Added to Claim Form. You would
>> agree to place a banner on the approximate 8.1 million claim forms
>> which will be mailed out pursuant to the Settlement Agreement. We
>> did not discuss in detail the form of the banner, but it is contemplated
>> that at or near the top of the claim form something like the following
>> would appear in Spanish:
>>
>> "Para un formulario de reclamo en espanol, por favor llame al (1-800-
>> ____) o visite nuestro website (www._____)."
>>
>> Translated:
>>
>> "For a claim form in Spanish, call (1-800-____ or visit our website
>> (www._____)."
>>
>> It is our understanding that your firm will conference with the Garden
>> City Group as to the form of this notice and its execution. It would be
>> reasonable to expect that there would be Spanish language trained
>> operators and/or a Spanish language recorded statement [if a toll-free
>> number is used], or information in Spanish if a website is used, [or
>> both] that would provide information on how a Hispanic/Latino
>> merchant could receive the claim form in Spanish.
>
> . . . .
>
> If this outline of Friday's conference comports with your firm's proposal
> and remains acceptable, our appeal could at the appropriate time be withdrawn.

Applicants' Aug. 2, 2004 Ltr. to Lead Counsel at 1-2.

Applicants concede that, given the foregoing letter, the following excerpt from

their Reply was inaccurate:

> [I]n the nine months that went by after this Court on January 23,
> 2004 entered its Final Judgment approving the settlements, Lead Counsel
> provided neither this Court nor Objectors counsel with any information or
> documentation suggesting that they were considering adding a Spanish
> language component to the claims process.

Applicants' Reply at 1. According to Applicants, this phrase should "[p]erhaps . . . have

read 'suggesting that they were seriously considering adding a Spanish language

component to the claims process.'" Id. Applicants maintain, however, that "[e]ven with

this modifier, . . . all of [Applicants'] efforts for which they seek to be compensated were

necessary to secure the addition of a Spanish language component to the claims process."

Id.

To support the foregoing argument, Applicants point to the last paragraph of the

August 2, 2004, letter (quoted in its entirety above), in which Applicants stated their

willingness to withdraw their appeal if Lead Counsel confirmed that it was committed to

incorporating Spanish-language notification into the claims process. See id. at 3; see also

Applicants' Aug. 2, 2004 Letter to Lead Counsel at 2 ("If this outline of Friday's

conference comports with your firm's proposal and remains acceptable, our appeal could

at the appropriate time be withdrawn."). Applicants assert that, notwithstanding this

overture, Lead Counsel "[a]t no time . . . responded in any manner either to challenge the

content of Objectors' CAMP conference summary, to acknowledge in writing or orally

an acceptance of any of the terms of the letter, to make a counter proposal to any terms of

the letter, or in any manner affirm any agreement to add a Spanish language component

- 13 -

to the claims process." Applicants' Supplement to Reply at 4. Instead, Lead Counsel

proceeded with oral argument, which went forward in late August 2004. Applicants

further assert that during oral argument, Mr. Cantor made clear that, whatever its position

during the CAMP Conference, Lead Counsel was, as of the date of oral argument, not

committed to incorporating a Spanish-language component into the claims process,

stating in relevant part:

> Judge Gleeson did suggest that it may be a good idea to place a Spanish
> language banner, as Mr. Rasmussen discussed, on notices to large classes.
>
> However, Judge Gleeson was very, very clear in stating that, in fact, the
> fact that did not occur did not constitute a due process violation under
> constitutional precepts. Perhaps in the future that would be advisable . . . .

Id. at 4-5 (quoting August 25, 2005 Transcript at 41-42 (emphasis in Applicants'

papers)).

Thereafter, Lead Counsel sent a letter to me dated June 14, 2005. See Lead

Counsel's June 14, 2005 Letter to Special Master Robin Wilcox ("Lead Counsel's June

14, 2005 Ltr.") at 1. Like Applicants, Lead Counsel does not describe the events of the

settlement negotiations that occurred during the July 30, 2004 CAMP conference.

Instead, it, too, points to the contents of the August 2, 2004 letter from Applicants to

Lead Counsel. Relying on this letter, Lead Counsel asserts (id. at 1 (emphasis in Lead

Counsel's letter)):

> In [Applicants'] Reply in support of [the] Fee Petition,
> [Applicants' attorney] knowingly and incorrectly misstates that it was
> "[b]aloney" that Lead Counsel had "'independently determined'" and
> "'independently committed'" to incorporating a Spanish language
> component into the claims process. This statement is proven false by
> [Applicants' attorneys'] written statements eight (8) months earlier to Mr.
> Cantor of Constantine Cannon:

- 14 -

First, let me thank you for your firm's good faith participation in the settlement conference. . . . We are pleased that Mr. [Lloyd] Constantine believes it is a good idea to include a Spanish language component to the claim form and is contemplating doing so regardless of the outcome of our objection/appeal.

Lead Counsel continues (id. at 1-2 (emphasis in Lead Counsel's letter)):

[Applicants' attorney's] letter then proceeds to replicate Lead Counsel's "proposal" for the claim form banner verbatim:

"Para un formulario de reclamo en espanol, por favor llame al (1-800-____ ) o visite nuestro website (www._____).""

[Applicants' attorney] then writes:

It is our understanding that your firm will conference with the Garden City Group as to the form of this notice and its execution. It would be reasonable to expect that there would be Spanish language trained operators and/or a Spanish language recorded statement [if a toll-free number is used], or information in Spanish if a website is used, [or both] that would provide information on how a Hispanic/Latino merchant could receive the claim form in Spanish.

Despite these written statements by [Applicants' attorney] in August of 2004, in March of 2005, [Applicants' attorney] purposefully, knowingly and wrongfully asserts that Lead Counsel did not independently determine to include a Spanish language component to the claims process.

Thus, according to Lead Counsel, the August 2, 2004 letter makes clear (1) that Lead Counsel had "independently" decided to incorporate Spanish-language notification into the claims process; (2) that Applicants knew as much when they filed their March 31, 2005 Reply; and therefore (3) that Applicants' statement to the contrary in their reply papers constituted a knowing material misrepresentation. See Lead Counsel's June 14, 2005 Ltr. at 1-2.[3] Lead Counsel asserts that the "[t]he motivation for this knowing

---

[3] Lead Counsel further maintains that, in their June 3, 2004 Supplement to Applicants' Reply, Applicants conceded that Lead Counsel had "independently" decided to incorporate a Spanish-language component into the claims process. See Lead Counsel's June 14, 2005 Ltr. to Special Master Robin Wilcox at 2 ("In his Supplement to Reply filed June 3, 2005, [Applicants' attorney] concedes that that it was a misrepresentation to say that Lead Counsel never 'independently determined . . . or committed to

- 15 -

misrepresentation appears to be greed" – specifically, Applicants' desire to obtain

"excessive and unreasonable payments from the Class's fund." Id. at 3. Lead Counsel

asks this Court to penalize Applicants for this misstatement by denying the Fee Petition.

Applicants responded to these arguments in a letter to me dated June 20, 2005.[4]

In their letter, Applicants "hasten to point out [Lead] Counsel's misleading attempts to

claim authorship of the Spanish banner." Applicants' June 20, 2005 Ltr. to Special

Master Robin Wilcox at 1. Applicants assert:

> Everyone in attendance at the CAMP conference would acknowledge that
> there was no discussion whatsoever of the wording to appear in the
> Spanish language banner. This language was authored by Objectors'
> Counsel with the assistance of Richard G. Johnson, Jr., an international
> attorney with Kirton, McConkie & Poelman, Salt Lake City, Utah, who
> has an extensive practice throughout Latin America.

Id. at 1-2. Applicants further argue (id. at 2):

> The underlying objection of [Lead] Counsel to the attorneys' fee
> request of Objectors is grounded on the concept that they had
> independently determined to embrace a Spanish language component to
> the . . . settlements. However, a simple review of *Merriam-Webster's*
> definition of "independent" in the context appearing herein, provides:
>
>> ". . . not looking to others for one's opinions or for guidance
>> in conduct . . .; not requiring or relying on others . . ."

---

incorporate a Spanish language component in the claims process."). I do not agree with this interpretation
of Applicants' submission. Rather, Applicants' "concession" was directed at that portion of their Reply
that stated:

> [I]n the nine months that went by after this Court on January 23, 2004 entered its Final
> Judgment approving the settlements, Lead Counsel provided neither this Court nor
> Objectors counsel with any information or documentation suggesting that they were
> considering adding a Spanish language component to the claims process.

See Applicants' Supplement to Reply at 2 ("Perhaps the last phrase of this sentence should have read
'suggesting that they were seriously considering adding a Spanish language component to the claims
process.'").

[4] In their June 20, 2005 letter, Applicants ask that I decline to consider Lead Counsel's June 14, 2005 letter
on the ground that it was not timely filed. See Applicants' June 20, 2005 Ltr. to Special Master Robin
Wilcox at 1. This request is denied.

It is obvious that [Lead] Counsel had not "independently" determined to
provide Spanish language notification until <u>after</u> the objection of
Objectors Armenta's and Martinez was file, Judge John Gleeson's
encouraging comments, the Second Circuit's statements, and Objectors'
Armenta's and Martinez's October 21, 2004 Application for Spanish
Language Notice and Banner To Be Included in Claims Form To Be Sent
Class Members After Final Settlement Approval.

## DISCUSSION

### I

As stated, Applicants' Fee Petition seeks compensation for their work in

connection with their objections to the Settlement Agreements. Lead Counsel objects to

this aspect of the Fee Petition on the ground that it is untimely. I agree.

Federal Rule of Civil Procedure 54(d)(2)(B) requires that, unless otherwise

provided by statute or order of the court, a motion for attorneys' fees "must be filed no

later than 14 days after entry of judgment." Absent court order or statutory authority, a

fee petition filed after the fourteen-day deadline must be rejected as untimely unless the

applicant can make a showing of "excusable neglect." <u>Tancredi v. Metropolitan Life Ins.</u>

<u>Co.</u>, 378 F.3d 220, 223 (2d Cir. 2004). As Lead Counsel notes, the advisory committee

notes to Rule 54 state that it was adopted, in part,

> to assure that the opposing party is informed of the claim before the time for
> appeal has elapsed . . . . Prompt filing affords an opportunity for the court to
> resolve fee disputes . . . while the services performed are freshly in mind. It also
> enables the court in appropriate circumstances to make its ruling on a fee request
> in time for any appellate review of a dispute over fees to proceed at the same time
> as review on the merits of the case. . . . A notice of appeal does not extend the
> time for filing a fee claim based on the initial judgment. . . .

Fed. R. Civ. P. 54(d)(2)(B) advisory committee's note (1993).

Applicants filed their Fee Petition on February 24, 2005 – more than one year

after this Court entered final judgment case and nearly two months after the Second

- 17 -

Circuit affirmed that judgment. Given this timing, Lead Counsel maintains that, to the extent that it seeks a fee award for Applicants' efforts opposing the Settlement Agreements, the Fee Petition is untimely and, as such, must be denied. See Lead Counsel's Response at 3-7. Lead Counsel further maintains that, to the extent that it seeks reimbursement for expenses incurred in connection with Applicants' objections to the Settlement Agreements, the Fee Petition is similarly untimely. See id. at 7 n.8; see also Local Rule 54.1 of the Southern and Eastern Districts of New York (establishing 30-day deadline following final judgment for filing of requests for taxation of costs). Lead Counsel concedes, however, that, because the Fee Petition was filed within fourteen days after this Court issued its February 11, 2005 order, the Fee Petition is timely to the extent it seeks reimbursement for Applicants' efforts and expenses in connection with the Claims Process Application. See Lead Counsel's Response at 3 n.2 ("Lead Counsel does not contend that Objectors' Counsel's fee request as it relates to work on the Application is untimely because the Fee Petition was filed on February 28, 2005, which was within 14 days of this Court's February 11, 2005 resolution of that Application."); see also Weyant v. Okst, 198 F.3d 311, 314 (2d Cir. 1999) ("A 'judgment,' for purpose of the Federal Rules of Civil Procedure, is defined to 'include[ ] a decree and any order from which an appeal lies.' Fed. R. Civ. P. 54(a). . . . [I]t is only a 'final judgment' that triggers the 14-day filing period set by Rule 54(d)(2)(B). Fed. R. Civ. P. 54 Advisory Committee Note (1993). A judgment is said to be final if it conclusively determines the rights of the parties to the litigation and leaves nothing for the court to do but execute the order or resolve collateral issues." (citations omitted)).

- 18 -

For their part, Applicants argue that, if the portion of the Fee Petition relating to the Claims Process Application is timely filed, then so, too, is the portion of the Fee Petition relating to Applicants' objections to the Settlement Agreements. To support this argument, Applicants reason that the hours they spent objecting to the Settlement Agreements were "necessary to bring about this Court's February 11, 2005 Order" requiring Lead Counsel to provide Spanish-language notification in connection with the claims process. Applicants' Reply at 5. Applicants assert that they did not request reimbursement of fees within the fourteen-day post-judgment deadline imposed by Federal Rule of Civil Procedure 54(d)(2)(B) because, at that time, their efforts had not yet met with "success." Applicants blame their lack of success – and therefore their purported inability to request fees – on Lead Counsel's refusal, either during this Court's Fairness Hearing or during oral argument before the Second Circuit, to "embrace[] the idea that a Spanish language component should be added to the claims process." Id. at 5-6. Applicants contend that, had Lead Counsel agreed to add a Spanish language component to the claims process at either of those two junctures, "Objectors' counsel would have been successful and would have filed a Fee Petition within 14 days of obtaining an order [to that effect]." Id. at 7.

I do not believe that the hours Applicants devoted to objecting to the proposed Settlement Agreements were "necessary to bring about this Court's February 11, 2005 Order" regarding the claims process. To the contrary, I believe that this Court would have issued its February 11, 2005 order requiring the addition of a Spanish-language component to the claims process whether or not Applicants had previously requested similar relief in connection with settlement notification.

- 19 -

If Applicants believed they were entitled to reimbursement for their efforts

objecting to the Settlement Agreements, they should have complied with the Rule

54(d)(2)(B) and Local Rule 54.1 deadlines by filing a petition for an award of fees and

expenses within the applicable time periods after this Court entered final judgment

approving the Settlement Agreements.[5]  They did not.  Because Applicants have, in my

opinion, failed to demonstrate excusable neglect for their untimely filing, I respectfully

recommend that this Court deny Applicants' Fee Petition to the extent that it seeks an

award of fees and expenses for Applicants' efforts opposing the Settlement Agreements.

## II

Applicants also request compensation for their efforts on behalf of the class in

connection with the Claims Process Application.  Although conceding that this portion of

the Fee Petition is timely, Lead Counsel disputes Applicants' entitlement to

compensation on other grounds.

I first address the question of whether Applicants are entitled to reimbursement

for their efforts in connection with the Claims Process Application.  Respectfully

recommending that this Court answer that question in the affirmative, I then turn to the

question of amount.

A.    Whether Applicants Are Entitled to Reimbursement

Applicants take the position that they are entitled to compensation for their efforts

on behalf of the class in connection with the Claims Process Application because their

efforts benefited the Class.  Lead Counsel maintains that Applicants are not entitled to

---

[5] More than one court has granted a fee request made by objecting class members notwithstanding the fact that it had overruled the objections that formed the basis of the fee request.  See, e.g., Frankenstein v. McCrory Corp., 425 F. Supp. 762, 767 (S.D.N.Y. 1977) (awarding fees to objecting class member where "[t]he objections raised, although ultimately overruled, were not frivolous, and the presence of an objector represented by competent counsel transformed the settlement hearing into a truly adversarial proceeding").

- 20 -

compensation, because (1) their efforts did not benefit the class; and (2) their reply brief

in support of the Fee Petition contains material misrepresentations.

The timeline relevant to these separate but related disputes – described more fully

above – can briefly be summarized as follows:

- On August 18, 2003, Lead Counsel sought this Court's approval of, among other things, the Settlement Agreements and Plan of Allocation. Applicants objected, arguing that "the Settlement Agreements should not be approved because the notices to the Class (transmitted by mail, publication, a website, and a toll-free telephone number) were provided only in English, and not in Spanish as well."

- In a Memorandum and Order dated December 19, 2003, this Court overruled Applicants' objections, reasoning that "the absence of notice in Spanish does not warrant the denial of approval of the Settlement Agreements."

- Thereafter, Applicants appealed this Court's December 19, 2003 Memorandum and Order.

- On July 30, 2004, Applicants and Lead Counsel discussed settlement during a mandatory Second Circuit CAMP Conference.

- On August 2, 2004, Applicants wrote a letter (quoted in its entirety above) to Lead Counsel:

    (1) stating that they were "pleased" that Lead Counsel believed it was a "good idea" to add a Spanish-language banner to the claim form and was "*contemplating* doing so regardless of the outcome of [Applicants'] objection/appeal";

    (2) describing Applicants' "understanding" that, as part of settlement negotiations, Lead Counsel had *proposed* (a) adding a Spanish-language banner to the claim form; and (b) ensuring that instructions for obtaining a Spanish-language claim form would be available, in Spanish, at either the toll-free number and/or the webpage that Lead Counsel employed to inform the Class of information regarding the claim process; and

    (3) offering to withdraw Applicants' appeal if Lead Counsel confirmed its commitment to the "proposal" described in (2).

- In late August, 2004, the Second Circuit heard oral argument with respect to Applicants' appeal.

- By October 21, 2004, Lead Counsel had not responded to Applicants' August 2, 2004 letter. On that date, Applicants filed their Claims Process Application. In its Response, Lead Counsel consented to some of Applicants' requested relief, contending that it had "independently" decided to implement such relief before Applicants filed the Claims Process Application. Lead Counsel objected to Applicants' remaining requests.

- On February 11, 2005, this Court, overruling some of Lead Counsel's objections, issued an order granting the Claims Process Application in part and denying it in part.

1. Whether Applicants' Efforts Materially Benefited the Class

Under Second Circuit law, objectors are "entitled to an allowance as compensation for attorneys' fees and expenses where a proper showing has been made that the settlement was improved as a result of their efforts." White, 500 F.2d at 828; see also City of Detroit v. Grinnell Corp., 560 F.2d 1093 (2d Cir. 1977) ("an attorney whose actions have conferred a benefit upon a given group or class of litigants may file a claim for reasonable compensation for his efforts"), abrogated on other ground, Goldberger v. Integrated Resources, Inc., 209 F.3d 43 (2d Cir. 2000); In re Independent Energy Holdings PLC Securities Litigation, No. 00 Civ. 6689 (SAS), 2003 WL 22801724, at *1 (S.D.N.Y. Nov. 24, 2003) (Second Circuit has recognized that Objectors can play a "valuable and important role . . . in policing class action settlements" (citing White v. Auerbach, 500 F.2d 822, 828 (2d Cir. 1974)). "[T]he trial judge has broad discretion in deciding whether, and in what amount, attorneys' fees should be awarded, since he is in the best position to determine whether the participation of objectors assisted the court and enhanced the recovery." White, 500 F.2d at 828.

- 22 -

Lead Counsel maintains that Applicants' efforts in support of the Claims Process

Application provided no benefit to the Class because Spanish-language notification

would have been a part of the claims process whether or not Applicants ever filed that

Application. To support this assertion, Lead Counsel maintains that the August 2, 2004

letter proves that it had "independently" decided to incorporate a Spanish-language

component into the claims process before Applicants filed the Claims Process

Application. According to Lead Counsel, the fact that it had "independently" decided to

incorporate Spanish-language notification into the claims process means that there was

no need for Applicants to request a court order requiring such relief and, therefore, that

Applicants' efforts in this connection conferred no benefit upon the Class.

I am not persuaded. Whether or not Lead Counsel "independently" decided to

add a Spanish-language component to the claims process, the record does not, in my

opinion, support a finding that Lead Counsel adequately communicated this

"independent" decision to Applicants. As set forth above, in their August 2, 2004 letter

to Lead Counsel, Applicants stated their willingness to withdraw their appeal if Lead

Counsel confirmed that it was committed to incorporating Spanish-language notification

into the claims process. In response to this overture, Lead Counsel remained silent and

proceeded with oral argument. It was only *after* Applicants filed the Claims Process

Application that Lead Counsel, *in response* to that Application, publicly stated – to

Applicants and this Court – that it was in favor of at least some of the relief requested by

Applicants. Thus, by filing the Claims Process Application, Applicants caused Lead

Counsel to confirm, in a public document, its support for some form of Spanish-language

- 23 -

notification. In my opinion, this result was to the benefit of the Class and, in particular, that subset of the Class that relies on the Spanish-language media.

In any event, even by Lead Counsel's own account, it "independently" decided to implement only a portion of the relief set forth in this Court's February 11, 2005 order. See Lead Counsel's Response at 12. Lead Counsel was opposed to the remainder of the relief that was requested by Applicants and ordered by this Court – specifically, the Court's requirement that Lead Counsel formulate a plan for Spanish language publication of information regarding Final Settlement Approval and the Court's requirement that Lead Counsel give Applicants the opportunity to review all future class-wide communications to determine whether to request that they be issued in both English and Spanish. Accordingly, as a result of Applicants' efforts, the Class is now the beneficiary of a court order requiring relief that Lead Counsel was not willing to undertake on its own initiative. In my opinion, that fact alone supports a finding that Applicants' efforts benefited the Class.

For the reasons set forth above, I respectfully recommend that this Court find that Applicants' efforts materially benefited the Class.

2. Whether Applicants' Reply Contained Material Misrepresentations

Lead Counsel further maintains that Applicants' Fee Petition should be denied because Applicants' Reply in support of the Petition contains material misrepresentations. Lead Counsel asserts that "[t]he motivation for this knowing misrepresentation appears to be greed" – specifically, Applicants' desire to obtain "excessive and unreasonable payments from the Class's fund." Lead Counsel's June 14,

- 24 -

2005 Ltr. at 3. Lead Counsel maintains that, "[a]s fiduciar[y] of the common fund, [it is]

obligated to point out to the Court the falsity of [Applicants'] statements." Id. at 1.

Lead Counsel's first argument in this regard is addressed to the following excerpt

from Applicants' Reply:

> In their Response, Lead Counsel claim no fewer than three times
> that it had "independently determined" or "independently committed" to
> incorporating a Spanish language component into the claims process.
> Baloney!

Applicants' Reply at 3. According to Lead Counsel, the foregoing constituted a material

misrepresentation because, at the time they filed their Reply, Applicants knew that,

contrary to their claim, Lead Counsel had "independently" decided to incorporate a

Spanish-language component into the claims process. Lead Counsel's June 14, 2005 Ltr.

at 1. In support of its claim regarding Applicants' purported knowledge, Lead Counsel

again cites Applicants' August 2, 2004 letter, which stated, in relevant part (emphasis

added):

> *We are pleased that Mr. Constantine believes it is a good idea to*
> *include a Spanish language component to the claim form and is*
> *contemplating doing so regardless of the outcome of our objection/appeal.*

> It is our understanding that *your firm's* [*i.e.*, Lead Counsel's]
> proposal is as follows:

> . . . Spanish Language Component Added to Claim Form. You would agree
> to place a banner on the approximate 8.1 million claim forms which will be
> mailed out pursuant to the Settlement Agreement. We did not discuss in
> detail the form of the banner, but it is contemplated that at or near the top of
> the claim form something like the following would appear in Spanish:

> "Para un formulario de reclamo en espanol, por favor llame al (1-800-____)
> o visite nuestro website (www._____)."

> . . . .

- 25 -

> It is our understanding that your firm will conference with the Garden City Group as to the form of this notice and its execution. It would be reasonable to expect that there would be Spanish language trained operators and/or a Spanish language recorded statement [if a toll-free number is used], or information in Spanish if a website is used, [or both] that would provide information on how a Hispanic/Latino merchant could receive the claim form in Spanish.

Lead Counsel maintains that the foregoing excerpt makes clear both (1) that Lead Counsel had "independently" decided to incorporate Spanish-language notification into the claims process; and (2) that Applicants knew as much when they filed their March 31, 2005 reply papers. Lead Counsel maintains that Applicants were "subsequently reminded of Lead Counsel's position regarding these issues" in Lead Counsel's filings in response to the Claims Process Application. In those filings, Lead Counsel informed this Court that it had been planning to incorporate at least some of Applicants' requested relief into the claims process since before Applicants filed their Claims Process Application. See Lead Counsel's June 14, 2005 Ltr. at 3 (quoting submissions).

In my view, the facts do not support Lead Counsel's claim of material misrepresentation. When acting on its own initiative – namely, *before* Applicants filed their objections to the proposed Settlement Agreements – Lead Counsel did not make Spanish-language notification a part of the settlement notification process. By Lead Counsel's own admission, it was not until August 2004 – *after* Applicants objected to the proposed settlement agreements on this ground and *after* Applicants continued to press this objection on appeal – that Lead Counsel decided to incorporate Spanish-language notification into the claims process. See Lead Counsel's June 14, 2005 Ltr. at 3 ("from *as early as August 2004*, Lead Counsel intended to provide a Spanish language component in the claims process" (emphasis added)). Given this sequence of events, I

- 26 -

believe that Applicants were justified in disputing Lead Counsel's claim that its decision
to incorporate Spanish-language into the claims process was made "independently." I do
not consider Applicants' statements in this regard to be material misrepresentations.

Applicants themselves admit that the following excerpt from their Reply papers in
support of their Fee Petition is not accurate:

> [I]n the nine months that went by after this Court on January 23, 2004
> entered its Final Judgment approving the settlements, Lead Counsel
> provided neither this Court nor Objectors counsel with any information or
> documentation suggesting that they were considering adding a Spanish
> language component to the claims process.

Applicants' Reply at 4. Applicants concede, as they must, that the foregoing excerpt is
not entirely true. As described above, Applicants' own August 2, 2004 letter to Lead
Counsel suggests that during the settlement negotiations that preceded that letter Lead
Counsel indicated to Applicants (1) that it was – to quote the letter – "contemplat[ing]"
adding a Spanish-language component to the claim form regardless of the outcome of
Applicants' appeal; and (2) that, in exchange for Applicants' agreement to drop their
appeal, it had proposed both adding a Spanish-language banner to the claim form and
ensuring that instructions for obtaining a Spanish-language claim form would be
available, in Spanish, at the toll-free number and/or the webpage that Lead Counsel
employed to inform the Class of information regarding the claim process. Thus, to the
extent that Applicants' Reply suggested that Lead Counsel had never "consider[ed]"
incorporating Spanish-language notification into the claims process, it was wrong. The
question is whether this Court should penalize Applicants for this misstatement by

denying Applicants' Fee Petition.[6] I do not believe that it should because, for the reasons

that follow, I do not believe that the misstatement was material.

In the same August 2, 2004 letter upon which Lead Counsel relies, Applicants

asked Lead Counsel to confirm its commitment to the relief described therein, offering to

drop its appeal in exchange for such confirmation. As "fiduciary" to the common fund,

Lead Counsel could quite easily have responded to this simple request by informing

Applicants of its purported decision – independent or otherwise – to make Spanish-

language notification a part of the claims process. Had it done so, it might have obviated

the need for Applicants to file both their Claims Process Application and this Fee

Petition. Instead, Lead Counsel remained silent and proceeded with oral argument. See

Applicants' Supplement to Reply at 4 (Lead Counsel "[a]t no time . . . responded in any

manner either to challenge the content of Objectors' CAMP conference summary, to

acknowledge in writing or orally an acceptance of any of the terms of the letter, to make a

counter proposal to any terms of the letter, or in any manner affirm any agreement to add

a Spanish language component to the claims process."). I believe that Applicants

reasonably interpreted Lead Counsel's actions as an indication that, even though it had

indicated, during the July 30, 2004, CAMP conference settlement negotiations, that it was

considering incorporating Spanish-language notification into the claims process, it was

not contemplating such relief as of October 21, 2004, the date Applicants filed their

Claims Process Application.

---

[6] It is not clear from Lead Counsel's June 14, 2005 submission whether it is asking this Court to deny the
Fee Petition because of this misstatement, or whether its claim of knowing material misrepresentation is
directed solely at the portion of Applicants' Reply that disputed Lead Counsel's claim that it had
"independently" decided to add a Spanish-language component to the claims process. See supra note 2.

Given Lead Counsel's conduct, I believe that Applicants' decision to file the

Claims Process Application was a reasonable one. Moreover, as stated above, in my

opinion, Applicants' efforts in this regard benefited the Class. I therefore respectfully

recommend that this Court enter an order requiring that Applicants be compensated for

those efforts.

B.      The Amount of Reimbursement

Assuming that this Court agrees that Applicants are entitled to reimbursement, the

next question is the amount of reimbursement.

"Courts typically use one of two methods to determine a reasonable attorneys'

fee: (1) the percentage of the recovery method or (2) the lodestar method." Independent

Energy Holdings, 2003 WL 22801724, at *1. "Under the lodestar method, the district

court 'scrutinizes the fee petition to ascertain the number of hours reasonably billed and

then multiplies that figure by an appropriate hourly rate." Id. (quoting Goldberger v.

Integrated Resources, Inc., 209 F.3d 43, 47 (2d Cir. 2000)). Whichever method the court

employs, "the key consideration in awarding fees is what is reasonable under the

circumstances." Visa Check/MasterMoney Antitrust Litigation, 297 F. Supp. 2d at 521.

Pursuant to the Second Circuit's holding in Goldberger, reasonableness is generally

determined by an examination of the following criteria: "(1) the time and labor expended

by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the

litigation . . .; (4) the quality of the representation; (5) the requested fee in relation to the

settlement; and (6) public policy considerations." Id. (quoting Goldberger, 209 F.3d at

50). When calculating a reasonable fee, the district court is obliged "to act as a 'fiduciary

... a guardian of the rights of absent class members." Id. (quoting City of Detroit, 560
F.2d at 1099).

     Applicants and Lead Counsel both assume that this Court will employ the lodestar
method to calculate Applicants' fees.  Because Applicants are seeking compensation for
their efforts in connection with the limited task of advocating for the incorporation of a
Spanish-language component into the claims process, I agree that this is the appropriate
method of calculation.

     As stated, under the lodestar method, this Court must scrutinize the fee petition to
ascertain the number of hours reasonably billed.  Lead Counsel takes the position that, in
determining how many hours Applicants devoted to advocating for the addition of a
Spanish-language component into the claims process, this Court should scrutinize only
those time entries following oral argument before the Second Circuit, which occurred in
late August 2004.  See Lead Counsel's Response at 7.  However, the August 2, 2004
letter makes clear that Applicants devoted some time to the question of whether a
Spanish-language component should be added to the claims process *before* oral
argument.   There may be other such entries.

     Having reviewed Applicants' time records, I am unable to determine with any
accuracy which hours were billed in furtherance of ensuring that a Spanish-language
component be added to the claims process.  Without clarification of those records, I
cannot make a recommendation to this Court regarding how many hours Applicants
reasonably billed to this task.  Accordingly, I hereby order Applicants to, within ten
business days following receipt of this Report and Recommendation, submit to me and
serve upon Lead Counsel a supplemental declaration or declarations setting forth only

those time records and expenses that relate to their efforts in furtherance of ensuring that

a Spanish-language component is added to the claims process. <u>See</u> Fed. R. Civ. P.

54(d)(2)(C) ("The court may determine issues of liability for fees before receiving

submissions bearing on issues of evaluation of services for which liability is imposed by

the court.").

     Lastly, I note from Applicants' expense records that they are seeking

reimbursement for a $2,405.98 invoice from Lead Counsel for one half of my fees in

connection with the Report and Recommendation I issued in response to the Claims

Process Application. Lead Counsel asserts that, in the event that this Court finds in favor

of reimbursement for Applicants' efforts in furtherance of the Claims Process

Application, it has no objection to an order requiring that Applicants be reimbursed for

this amount. <u>See</u> Applicants' Response at 13 n.12. Nevertheless, I decline to consider

Applicants' request for reimbursement for my fees on the ground that Paragraph (h) of

this Court's February 17, 2004 order appointing me Special Master provides that "[a]ny

questions or disputes concerning the source of the funds used to pay the Special Master

will be resolved by this Court."

**CONCLUSION**

     For the reasons set forth above, I respectfully recommend that this Court deny, on

the ground of untimeliness, Applicants' Fee Petition to the extent that it seeks

reimbursement for fees and expenses in connection with Applicants' opposition to the

Settlement Agreements. I further respectfully recommend that this Court enter an order

finding that Applicants are entitled to an award of fees and expenses for their efforts in

connection with ensuring that a Spanish-language component is added to the claims

- 31 -

process. However, without clarification of Applicants' time and expense records, I am unable to make a recommendation to this Court regarding the amount of such award. Accordingly, I hereby order Applicants to, within ten business days, submit to me and serve upon Lead Counsel a supplemental declaration or declarations setting forth only those time records and expenses that relate to their efforts in furtherance of ensuring that a Spanish-language component be added to the claims process. I decline to consider Applicants' request for reimbursement for my fees in connection with the Report and Recommendation I issued in response to the Claims Process Application on the ground that Paragraph (h) of this Court's February 17, 2004 order appointing me Special Master provides that "[a]ny questions or disputes concerning the source of the funds used to pay the Special Master will be resolved by this Court."

Pursuant to Paragraph (g) of Judge Gleeson's February 17, 2004 Order, the parties have "ten business days, following service, to file objections to the Special Master's report and recommendation with the Court."

Robin M. Wilcox

Dated: July 20, 2005
       New York, New York

- 32 -