UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------x

IN RE VISA CHECK/MASTERMONEY
ANTITRUST LITIGATION

MASTER FILE NO. CV-96-5238
(Gleeson, J.) (Mann, M.J.)

--------------------------------------------------------x

## REPORT AND RECOMMENDATION

In this antitrust action, a class of approximately five million merchants alleged,

among other things, that defendants Visa U.S.A. Inc. and MasterCard International

Incorporated illegally tied their debit products to their credit cards, in violation of the

Sherman Act. After motion practice, and on the brink of trial, the plaintiffs entered into

preliminary settlement agreements with each of the defendants providing, among other

things, for "the creation of a $3.05 billion settlement fund." Id. at 508. On August 18,

2003, Class Counsel sought this Court's approval of, among other things, the Settlement

Agreements and Plan of Allocation. Id. at 506-07.

The Plan of Allocation described several important events scheduled to occur

after Final Settlement Approval[1]:

> 120 days after Final Settlement Approval: The Claims
> Administrator will send to each Class Member whose transactional data is

---

[1]Paragraph 25 of the Visa Settlement Agreement states that "[t]his Settlement Agreement shall become
final upon the occurrence of all of the following three events:"

    a.      Approval of the Settlement Agreement . . . .

    b.      Entry by the Court . . . of an Order and Final Judgment . . . and the Order and Final
Judgment is not vacated or modified in any material way affecting any party's rights or
obligations under the Settlement Agreement, upon appeal or otherwise; and

    c.      Expiration of the time for appeal, or the time to seek permission to appeal, from the
Court's approval of this Settlement Agreement and entry of an Order and Final Judgment
. . . or, if appealed, approval of this Settlement Agreement and the Order and Final
Judgment have been affirmed in their entirety by the court of last resort to which such
appeal has been taken and such affirmance has become no longer subject to further
appeal or review.

See also MasterCard Settlement Agreement ¶ 26 (same)

contained in the Visa Transactional Database notification of the Claims
Administrator's calculation of such Class Member's off-line debit and
credit card damages for the period of October 25, 1992 through September
1995 and how they can claim on-line debit damages for any part of the
Class Period. The notice will also advise such Class Members of their
right to challenge the calculated recovery and how and when such
challenges must be made.

30 days after Final Settlement Approval: The Claims
Administrator will send a Claims Form for completion and submission to
all known Class Members whose transactional data is not in the Visa
Transactional Database, who therefore must provide specified information
in order for the Claims Administrator to calculate their monetary
recoveries.

180 days after Final Settlement Approval: A Class Member who
did not receive first class mail of the Notice of Pendency in 2002 or
receive first Class Notice of Class Action Settlement in 2003, must contact
the Claims Administrator to request a Claims Form. Such Class Members
must submit their Claims Form within 180 days of Final Settlement
Approval. Claims Forms can be obtained by contacting the Claims
Administrator at The Garden City Group, Inc., P.O. Box 9000-6014,
Merrick, New York, 11566-9000, Attn: In re Visa Check/MasterMoney
Antitrust Litigation, or by calling 1(888) 641-4437 or by contacting the
case website, located in the worldwide web at: www.InReVisaCheck-
MasterMoneyAntitrust Litigation.com.

Plan of Allocation (submitted by Constantine & Partners, August 18, 2003) ("Plan of

Allocation") at ix-x. Finally, the Plan of Allocation stated (id. at x):

Because many of the above dates and events occur a specified
number of days after Final Settlement Approval, Lead Counsel will issue
no fewer than four nationwide press releases in four successive weeks
announcing the Final Settlement Approval if and when it occurs.

By Opinion and Order dated December 19, 2003, this Court approved both

settlements (collectively, the "Settlement Agreements") and the Plan of Allocation. See

In re: Visa Check/MasterMoney Antitrust Litigation, 297 F. Supp. 2d 503 (E.D.N.Y.

2003), aff'd, 396 F.3d 96 (2d Cir. 2005).

By Order dated February 17, 2004, this Court appointed me Special Master to issue reports and recommendations regarding referred disputes arising out of or relating to the Visa and MasterCard Settlement Agreements. By Application filed October 21, 2004, Class Members Armenta's Mexican Food, Inc., and Lupita Llamas Martinez, dba Del Yaqui Restaurant ("Applicants"), "petition[ed] this Court for an order instructing the parties to include a Spanish Language banner on the claims forms to be mailed to class members and a Spanish language version of the notice that will accompany the claims form after Final Settlement Approval, together with . . . additional relief." Application for Spanish Language Notice and Banner to Be Included in Claims Form to Be Sent Class Members After Final Settlement Approval ("Application") at 2. By order dated October 28, 2004, Judge Gleeson referred the Application to me for a report and recommendation.

By Report and Recommendation issued December 12, 2004, I respectfully recommended, inter alia, that this Court order (1) Lead Counsel to file with the Court and serve upon Applicants a plan for Spanish language publication of information regarding Final Settlement Approval that is reasonably calculated to reach those Spanish-speaking Class Members who would not be reached through publication in English language media sources alone; and (2) Applicants to file with the Court and to serve upon Lead Counsel, within fifteen business days following such service, their objections, if any, to Lead Counsel's plan for Spanish language publication.

By order dated February 11, 2004, this Court adopted my recommendation, but ordered Lead Counsel and Applicants "to make their submissions to the Special Master, in the first instance." This Court "refer[red] to the Special Master, for a report and

recommendation, the issue of whether Lead Counsel's proposed plan is reasonable and

sufficient to reach the targeted class members."

By letter to me dated June 23, 2005, Lead Counsel stated in relevant part:

> As set forth in the Plan of Allocation, Lead Counsel will issue at least four consecutive nationwide press releases announcing that all appeals have been exhausted, and that the settlements have therefore achieved finality.
>
> Lead Counsel will submit these releases in both English and Spanish translation for publication over PR Newswire and U.S. Newswire, which are national newswires. In addition, the U.S. Newswire's "Full National Hispanic Media Package" will provide coverage to 1,700 Hispanic media outlets (http://www.usnewswire.com/services_hispfull. html). These releases will also be posted in both English and Spanish on Lead Counsel's firm website (http://www.constantinecannon.com), the designated case website (http://www.inrevisacheck-mastermoneyantitrust litigation.com), and on the websites of three of the nation's largest retail trade associations, Food Marketing Institute (FMI) (http://www.fmi.org), National Retail Federation (NRF) (http://www.nrf.com), and Retail Industry Leaders Association (RILA), formerly International Mass Retail Association (IMRA) (http://www.retail-leaders.org).
>
> Lead Counsel hereby requests approval of this plan as "reasonably calculated to reach those Spanish-speaking Class Members who would not be reached by English-only publication." *See* December 12, 2004 Report and Recommendation of Special Master Wilcox; and February 11, 2005 Order Adopting the Special Master's Report, as Amended.

Applicants responded to Lead Counsel's plan by letter to me dated July 11, 2005.

That letter stated:

> In response to Lead Counsel's June 23, 2005 proposed plan for dissemination in Spanish of information regarding final settlement, we have received from Lead Counsel and received documents evidencing the proper translation from English to Spanish of the notices that are the subject of Lead Counsel's proposed releases. In addition, we have looked at PR Newswire and U.S. Newswire subscriber information and found Lead Counsel's plan to be adequate.
>
> We were unable to confirm, however, if the U.S. Hispanic Chamber of Commerce was a subscriber to either newswire, although it is possible that they may be. We are confident, however, that U.S. Hispanic

Chamber of Commerce would be a subscriber to the Business Wire service and in future releases would urge Lead Counsel to submit in English and Spanish all releases to the Business Wire, a third national newswire with an emphasis on business publications. We believe Lead Counsel's plan to be "reasonably calculated to reach those Spanish-speaking Class Members who would not be reached by English-only publication."

As stated in their respective letters, both Lead Counsel and Applicants agree that Lead Counsel's plan for Spanish-speaking publication is reasonable and sufficient to reach the targeted class members. I therefore respectfully recommend that this Court approve Lead Counsel's proposed plan for Spanish-language publication.

As noted, Applicants have asked Lead Counsel to submit an English and Spanish version of all future releases to Business Wire. In the hope that Applicants and Lead Counsel can reach agreement with respect to this suggestion, I respectfully recommend that they discuss it among themselves before Lead Counsel submits any future proposed Spanish-language publication plans to me.

Pursuant to Paragraph (g) of Judge Gleeson's February 17, 2004 Order, the parties have "ten business days, following service, to file objections to the Special Master's report and recommendation with the Court."

Robin M. Wilcox

Dated: July 25, 2005
New York, New York