UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

FOR ONLINE PUBLICATION ONLY

-------------------------------------------------------X

IN RE VISA CHECK/MASTERMONEY
ANTITRUST LITIGATION

MEMORANDUM
AND
ORDER
96 CV 5238 (JG)

-------------------------------------------------------X

A P P E A R A N C E S:

    ANKUR KAPOOR, ESQ.
    ROBERT L. BEGLEITER, ESQ.
    GORDON SCHNELL, ESQ.
        Constantine Cannon
        450 Lexington Avenue
        New York, New York 10017
        Attorneys for Petitioners

    GORDON BALL, ESQ.
        Ball & Scott
        Bank of America Building
        550 W Main Avenue
        Knoxville, Tennessee 37902
        Attorneys for Respondent

    ROBERT VIZAS, ESQ.
    ROBERT C. MASON, ESQ.
        Arnold & Porter LLP
        50 New Montgomery Street
        San Francisco, California 94105
        Attorneys for Visa U.S.A., Inc.

JOHN GLEESON, United States District Judge:

    The plaintiff class in this action moves to enjoin *Ratner v. Wal-Mart Stores, Inc.*, Case No. CV 05 555060 (Oh Ct. Common Pl. filed Feb. 17, 2005) ("*Ratner*"), a proceeding in an Ohio state court. They move pursuant to the All Writs Act, 28 U.S.C. § 1651, and their application implicates the Anti-Injunction Act, 28 U.S.C. § 2283. *Ratner* is an indirect purchaser

antitrust action brought by a putative class of consumers (the "Consumers") against not only Visa U.S.A., Inc. ("Visa") and MasterCard International Incorporated ("MasterCard") (the defendants in this case), but also against a putative class of Ohio merchants that is a subset of the nationwide plaintiff class in this case (the "Merchants"). The Merchants contend that the injunction is necessary in aid of my jurisdiction in this case. Alternatively, they argue that the injunction is necessary to protect and effectuate my judgment in this case. The Consumers argue that I cannot properly issue such an injunction under the Anti-Injunction Act. Oral argument was held on June 3, 2005. For the reasons set forth below, the Merchants' motion is denied.

BACKGROUND

The case before me is an antitrust action in which the Merchants, a class of approximately five million businesses of all sizes, throughout the United States, alleged, *inter alia*, that defendants Visa and MasterCard violated the Sherman Act. Specifically, the Merchants alleged that Visa and MasterCard used their considerable market power in the credit card market to force them, through "Honor All Cards" policies, to accept Visa and MasterCard debit cards as well. This alleged illegal tying arrangement required the Merchants to pay excessive interchange rates (*i.e.*, transaction costs) for the debit card purchases they were compelled to accept.

A jury was already empaneled and opening statements were about to commence when the parties settled. The settlements provided for, *inter alia*, a combined settlement fund exceeding $3 billion and injunctive relief valued conservatively at $25 billion. I assume familiarity with my decisions (a) approving the parties' settlement agreements, *In re Visa Check/Mastermoney Antitrust Litigation*, 297 F. Supp.2d 503 (E.D.N.Y. 2003), *aff'd, Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96 (2d Cir. 2005), *cert. denied*, *Leonardo's Pizza by the*

*Slice, Inc. v. Wal-Mart Stores, Inc.*, -- U.S. --, 125 S.Ct. 2277 (2005); (b) on the parties' motions for summary judgment, *In re Visa Check/Mastermoney Antitrust Litigation*, No. 96 CV 5238, 2003 WL 1712568 (E.D.N.Y. Apr. 1, 2003); and (c) certifying the class of Merchants, *In re Visa Check/Mastermoney Antitrust Litigation*, 192 F.R.D. 68 (E.D.N.Y. 2000), *aff'd*, 280 F.3d 124 (2d Cir. 2001). The following is a brief summary of the facts relevant to the indirect purchaser suits that followed the antitrust litigation before me.

In late 2003, after the settlements in this case, approximately 34 indirect purchaser suits were filed in 19 states and the District of Columbia (Constantine Decl. dated March 28, 2005 ("Constantine Decl.") at ¶ 16.) Seven of those actions were filed by counsel for the Consumers here. (*Id.*) The cases were filed on behalf of state residents who made purchases from merchants who had tying arrangements with Visa and MasterCard. The defendants were Visa and MasterCard, and the allegations were substantially similar to those made by the Merchants in this case. (*Id.* at ¶¶ 17-18.)

*Ratner*, which was filed on February 17, 2005 in Ohio, differs from most of the other indirect purchaser actions in that it seeks to pursue Ohio merchants as a defendant class as well as Visa and MasterCard. (*See* Constantine Decl., Ex. O. ("*Ratner* Compl.")) Rather than casting those merchants as simply victims of an illegal tying arrangement, the complaint alleges that they knowingly agreed to the tying arrangements for "business reasons" and passed on the costs to consumers. (*Id.* at ¶¶ 90, 94, 98.)

The Merchants moved on March 29, 2005, to enjoin *Ratner* pursuant to the All Writs Act, 28 U.S.C. § 1651(a).[1] The Consumers oppose the motion, arguing that *Ratner* does not fall under any of the applicable exceptions to the statutory bar to enjoining state actions found in the Anti-Injunction Act.

DISCUSSION

The All Writs Act authorizes federal courts to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). The Anti-Injunction Act limits this power when it comes to proceedings in state courts. Specifically, it provides as follows: "A court of the United States may not grant an injunction to stay proceedings in a State Court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283. In short, the statute creates a "clear-cut prohibition qualified only by specifically defined exceptions." *Amalgamated Clothing Workers of Am. v. Richman Bros.*, 348 U.S. 511, 516 (1955). It is intended to "forestall[] the inevitable friction between the state and federal courts that ensues from the injunction of state judicial proceedings by a federal court," yet the exceptions "are designed to ensure the effectiveness and supremacy of federal law." *Chick Kam Choo v. Exxon Corp.*, 486 U.S. 140, 146 (1988) (quotation marks omitted). As the Supreme Court explained in *Atlantic Coast Line Railroad Company v. Brotherhood of Locomotive Engineers*, 398 U.S. 281 (1970),

---

[1] Originally, the Merchants moved on March 24, 2005, to enjoin an action in Tennessee, *Bennett v. Wal-Mart Stores, Inc.*, Case No. 24139 (Tenn. Ch. Ct. filed Feb. 17, 2005) ("*Bennett II*"). On March 29, 2005, they sought to enjoin *Ratner* as well. As the motions were virtually identical, I scheduled them for a joint oral argument. Oral argument was held on June 3, 2005. By letter dated June 20, 2005, the Merchants sought to withdraw their motion with respect to *Bennett II*. I granted that request on June 29, 2005. Accordingly, this decision addresses only the motion to enjoin *Ratner*.

4

> Both exceptions to the general prohibition of § 2283 imply that some federal injunctive relief may be necessary to prevent a state court from so interfering with a federal court's consideration or disposition of a case as to seriously impair the federal court's flexibility and authority to decide that case.

*Id.* at 295.

The Supreme Court has repeatedly recognized the importance of federal courts exercising restraint when deciding whether to enjoin a state action. "[S]ince the statutory prohibition . . . rests on the fundamental constitutional independence of the States and their courts, the exceptions should not be enlarged by loose statutory construction." *Atl. Coast Line R.R. Co.*, 398 U.S. at 287; *see also Amalgamated Clothing Workers*, 348 U.S. at 516; *Chick Kam Choo*, 486 U.S. at 146; *Ret. Sys. of Alabama v. J.P. Morgan Chase & Co.*, 386 F.3d 419, 425-26 (2d Cir. 2004). Moreover, "doubts as to the propriety of a federal injunction against state court proceedings should be resolved in favor of permitting the state courts to proceed in an orderly fashion to finally determine the controversy." *Vendo Co. v. Lektro-Vend Corp.*, 433 U.S. 623, 630 (1977) (plurality opinion) (quoting *Atl. Coast Line R.R. Co.*, 398 U.S. at 297).

The Merchants do not contend that an act of Congress authorizes the injunction they seek. However, they argue that both of the remaining exceptions to the Anti-Injunction Act apply. Those arguments are addressed below.

A. <u>Necessary in Aid of Jurisdiction</u>

A court may enjoin state court proceedings "where necessary in aid of its jurisdiction." 28 U.S.C. § 2283. It is well-settled that "if an action is in rem or quasi-in-rem [,] the court first obtaining jurisdiction over the res could enjoin suits in other courts involving the same res." Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and

Procedure § 4221 (2d Ed. 2005); *Vendo Co.*, 433 U.S. at 641; *Mitchum v. Foster*, 407 U.S. 225, 235-37 (1972); *Standard Microsystems Corp. v. Texas Instruments Inc.*, 916 F.2d 58, 60 (2d Cir. 1990). In its application, this authority is broader than its terms suggest. Courts have analogized both multidistrict ("MDL") proceedings and large class actions to in rem actions. *See In re Baldwin-United Corp.*, 770 F.2d 328, 337 (2d Cir. 1985) (securities class action was "so far advanced that it was the virtual equivalent of a res over which the district judge required full control"); *In re Diet Drugs Prod. Liab. Litig.*, 369 F.3d 293, 306 (3d Cir. 2004); *In re Diet Drugs*, 282 F.3d 220, 235 n.12 (3d Cir. 2002); *Battle v. Liberty Nat'l Life Ins. Co.*, 877 F.2d 877, 882 (11th Cir. 1989); *In re Corrugated Container Antitrust Litig.*, 659 F.2d 1332, 1334-35 (5th Cir. 1981); *but see Alton Box Bd. Co. v. Esprit de Corp.*, 682 F.2d 1267, 1272 (9th Cir. 1982) (upholding lower court's denial of injunction where indirect purchasers sued the same defendant that the direct purchaser sued in the federal action because "the analogy to the in rem cases is strained"). The analogy is based in part on the limited resources of a defendant in a mass tort or securities case and the court's interest in both equitable treatment of plaintiffs and in the possible viability of corporate defendants. *See In re Diet Drugs*, 369 F.3d at 296-97; *In re Joint Eastern and Southern Dist. Asbestos Litig.*, 134 F.R.D. 32, 37-38 (E.D.N.Y. & S.D.N.Y. 1990).

Courts have found this basis for enjoining state court proceedings particularly attractive "where a federal court is on the verge of settling a complex matter, and state court proceedings may undermine its ability to achieve that objective." *Standard Microsystems Corp.*, 916 F.2d at 60 (citing *In re Baldwin*, 770 F.2d at 337); *see United States v. Int'l Bhd. of Teamsters*, 907 F.2d 277, 281 (2d Cir. 1990). Without the power to enjoin in that setting, defendants may be deterred from settling claims. *In re Prudential Ins. Co. of Am. Sales*

6

*Practices Litig.*, 314 F.3d 99, 104-05 (3d Cir. 2002). For that reason, the imminence of settlement is an important factor in deciding whether to enjoin state court proceedings; the far-off possibility of settlement, standing alone, is insufficient. *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.,* 134 F.3d 133, 145 (3d Cir. 1998). Similarly, even in the most complex of cases, a district court may not enjoin state proceedings simply because they interfere with the court's schedule. *Ret. Sys. of Alabama*, 386 F.3d at 431.

The power to enjoin does not, however, disappear once the settlement of such a case has been reached. Courts must sometimes undertake "the herculean task of enforcing the terms of the class settlement agreement against the constant pressure of some settlement class members who, having obtained part of a loaf through the agreement, now pursue alternative avenues to obtain additional slices." *In re Diet Drugs*, 369 F.3d at 297. In that setting as well, state proceedings may be enjoined, in whole or in part, to effectuate the terms of the settlement. *See id.* at 306, 318 (district court has power to enjoin settling plaintiffs from seeking punitive damages in state court where release of such claims was a "central pillar" of federal settlement); *In re Prudential Ins. Co.*, 314 F.3d at 104-05; *Battle*, 877 F.2d at 881.

The Merchants argue that *Ratner* threatens to interfere with this Court's jurisdiction over the distribution of the settlement fund by demanding a portion of the fund. That fund, they contend, is a *res*, the protection of which authorizes the injunction they seek. For their part, the Consumers contend that this is an in personam action, and that I cannot enjoin the state action simply because it adjudicates similar claims arising out of the same tying arrangements alleged in this case. I find that enjoining *Ratner* is not necessary in aid of my jurisdiction over this case.

7

First, *Ratner* is not an in rem action, either strictly speaking or in the broader sense contemplated by the cases described above. The Merchants' argument that it is an effort to levy upon the settlement fund itself is factually incorrect. The sole remedy sought is an in personam judgment against a subset of the merchant class in this case. (*See* Tr. at 11 (Counsel for *Ratner* stating that the Consumers "are seeking an in personam judgment against Wal-Mart, Wal-mart individually licensed and, hopefully, at some point in time, a class.") Indeed, depending on outcome of the *Ratner* plaintiffs' dubious intention to certify a defendant class of conspirators in the alleged tying arrangement, it may be an extremely small subset.

Second, the justifications described above for enjoining state court proceedings do not apply here. This Court may properly enjoin state court proceedings that "seriously impair the [] court's flexibility and authority to decide" a case. *Atl. Coast Line R.R. Co.*, 398 U.S. at 295. And this is no doubt a large, complex federal class action. But *Ratner* does not raise the specter that the limited resources of a single defendant will be fought over in both state and federal courts, jeopardizing the equitable treatment of plaintiffs in state and federal court. Neither Visa nor MasterCard, the defendants in the case before me, has joined in the instant motion. The moving parties have not paid money to settle this case; they have *received* it.

Nor is this case "on the verge of settling," *Standard Microsystems Corp.*, 916 F.2d at 60, and thus *Ratner* cannot deter the parties in the case before me from settling. *In re Prudential Ins. Co.*, 314 F.3d at 104-05. To the contrary, the settlements are now final.

Though I may enjoin *Ratner* if that is necessary to enforce the terms of the settlements, *Ratner* does not impact the enforcement of the settlements. This is not a situation where some class members, after committing to an agreement in a federal class action, go to state

court in an effort to subvert or improve upon the federal settlement. In the case before me, the Consumers who brought *Ratner* were not even parties.

In an analogous setting, the Ninth Circuit affirmed the district court's refusal to enjoin a state court action. In *Alton Box Board Co.*, indirect purchasers brought suit against the manufacturers of corrugated containers -- the same manufacturers who were being sued in an ongoing MDL action -- approximately six months after certification of a federal class. The Ninth Circuit held that the "necessary in aid of its jurisdiction" exception did not apply, in part because the plaintiff in the state court action was "not a direct purchaser, ha[d] never been and [could not] be a member of the federal class, and ha[d] never been subject to the jurisdiction of the [MDL]." *Alton Box*, 682 F.2d at 1271.[2] As in *Alton Box*, the indirect purchasers here are too far removed from the federal antitrust case to warrant an injunction in aid of the federal court's jurisdiction.

The Merchants argue that I should enjoin *Ratner* because the Second Circuit has approved of enjoining a state court proceeding even where the plaintiffs in state court were not part of the litigation in federal court. They rely on *In re Baldwin-United Corporation*, which involved a consolidated, multi-district class action brought by approximately 100,000 holders of Baldwin securities against 26 broker-dealers. *In re Baldwin*, 770 F.2d at 331. The district court coordinated settlement talks resulting in 18 of the 26 defendants signing stipulations of settlement. However, numerous state attorneys general objected that the proposed settlement did not adequately compensate the plaintiffs. *Id.* at 333. After the district court preliminarily

---

[2] Another factor mentioned in the court's decision denying the injunction in *Alton Box* was that the district judge who denied the injunction was in the Northern District of California, but the district judge overseeing the MDL proceeding was in the Southern District of Texas. Thus, the Northern District of California had no "jurisdiction" to preserve. *Alton Box*, 682 F.2d at 1271.

9

approved the settlement, the State of New York sent several of the defendants notices of intent to bring suit "seeking restitution for New York citizens" who held Baldwin securities. *In re Baldwin*, 770 F.2d at 333. The district court enjoined any such proceedings in aid of its jurisdiction, finding that they could jeopardize the 18 proposed settlements and the settlement of remaining claims. *Id.*

In affirming, the Second Circuit found that the states "desire[d] to use the state proceedings to obtain additional money, over and above the settlement amounts, for distribution to members of the class in the consolidated federal actions." *Id.* at 333 n.1; *see also id.* at 337. The court noted that some states may have wished to pursue other remedies, such as injunctive relief and enforcement of state criminal and regulatory laws. *Id.* at 333. Those remedies, however, were not precluded by the injunction. *Id.* at 339.

As mentioned, the Merchants argue that *In re Baldwin* supports their motion because the court of appeals upheld a district court's decision to enjoin non-parties to a dispute -- the attorneys general -- in aid of its jurisdiction. I disagree. The principal rationale for upholding the injunction in *In re Baldwin* was that the enjoined claims would have sought damages for the benefit of the same plaintiffs who had brought the federal cases. That rationale does not apply in this case. The plaintiffs in *Ratner* are not parties to this case, and they could not have been parties even if they had tried. *See Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977) (holding that only direct purchasers can recover under federal antitrust laws). Nor are the *Ratner* plaintiffs seeking damages from the same configuration of defendants as in the case before me. In short, the posture of the cases and the parties here is not analogous to those features of *In re Baldwin*.

Moreover, the mere fact that the Merchants obtained favorable settlements in this federal case does not insulate them (or some small subset of them) from antitrust claims arising out of the same events. In holding that antitrust defendants may not shirk liability under the federal antitrust laws by arguing that plaintiffs passed on (to parties below them in the distribution chain) the costs they seek to recover, the Supreme Court stated that

> [t]he plaintiff who reaps the reward of treble damages may be no less morally reprehensible than the defendant, but the law encourages his suit to further the overriding public policy in favor of competition. A more fastidious regard for the relative moral worth of the parties would only result in seriously undermining the usefulness of the private action as a bulwark of anti-trust enforcement. And permitting the plaintiff to recover a windfall gain does not encourage continued violations by those in his position since they remain fully subject to civil and criminal penalties for their own illegal conduct.

*Perma Life*, 392 U.S. at 139 (citation omitted). Thus, even prior to the Court's holding *Illinois Brick* that only direct purchasers can recover under federal antitrust laws, the Court recognized the possibility that antitrust laws did not limit recovery to innocent victims, and may even serve to reward wrongdoers. "[T]he purposes of the antitrust laws are best served by insuring that the private action will be an ever-present threat to deter anyone contemplating business behavior in violation of the antitrust laws." *Perma Life Mufflers, Inc. v. Int'l Parts Corp.*, 392 U.S. 134, 139 (1968), *modified*, *Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752 (1984) (overruling *Perma Life* to the extent that it acquiesced in intra-enterprise conspiracy doctrine under Section 1 of the Sherman Act).

After *Illinois Brick* foreclosed the ability of indirect purchasers to recover under the federal antitrust laws, the validity of indirect purchaser suits under state law was squarely addressed by the Court in *California v. ARC America Corp.*, 490 U.S. 93, 102 (1989). In that

11

case, four states brought price-fixing claims against cement producers under both federal and state antitrust laws as direct purchasers and under state laws as indirect purchasers. In rejecting the defendants' claim that the state indirect purchaser laws were preempted, the Court held that these laws "are consistent with the broad purposes of the federal antitrust laws: deterring anticompetitive conduct and ensuring the compensation of victims of that conduct." *ARC Am. Corp.*, 490 U.S. at 102 (citing *Illinois Brick Co.*, 431 U.S. at 746). As of 2002, 19 states and the District of Columbia had passed laws known as "Illinois Brick repealers," expressly allowing indirect purchasers to recover under the states' antitrust statutes. *See* Jonathon T. Tomlin & Dale J. Giali, *Federalism and the Indirect Purchaser Mess*, 11 Geo. Mason L. Rev. 157, 161-62 (2002). There is no question that the existence of such statutes complicates antitrust litigation, but that cost is incurred in furtherance of the broader goals of deterring anticompetitive conduct and compensating victims of that conduct.

Thus, there is no federal policy against states imposing liability in addition to the liability imposed by federal antitrust law. *Id.* at 105. In other words, indirect purchasers may properly sue the same defendants that have been found liable in federal court. If the *Ratner* plaintiffs may properly sue Visa and MasterCard in state court -- a proposition the Merchants do not dispute -- it follows that they may sue others who acted in concert with them. The *Ratner* plaintiffs allege that some of the Merchants did precisely that, that is, they knowingly agreed to contractual relationships with Visa and MasterCard that violated the antitrust laws and passed the resulting costs on to consumers. Whether that allegation has any merit is not for me to decide. If it does, there is no federal impediment to the *Ratner* plaintiffs seeking damages under Ohio law.

Finally, the Merchants argue that the principles discussed above allow indirect purchasers to sue only the principal antitrust violators (here, Visa and MasterCard) in state court, and do not permit claims against direct purchasers as well. But the Merchants fail to cite any authority for such a limitation or to articulate any reason why one would be warranted. The Consumers allege that some of the Merchants, as direct purchasers, are responsible for and have benefitted from illegal restraints of trade. If those allegations are true, and I express no opinion on the matter, then the Merchants are precisely the sort of culpable parties whose standing to be plaintiffs under the federal antitrust laws does not insulate them from other civil or criminal penalties if they participated in the illegal restraints of trade. *See Perma Life*, 392 U.S. at 139.

B.     Necessary to Effectuate or Protect A Judgment

The relitigation exception to the All Writs Act allows a district court to grant an injunction to stay proceedings in state court "to protect or effectuate its judgments." 28 U.S.C. § 2283. The exception precludes relitigation in state courts of issues previously presented to and determined by a federal court. *See Chick Kam Choo*, 486 U.S. at 147; *Smith v. Woosley*, 399 F.3d 428, 433 (2d Cir. 2005). "It is founded in the well-recognized concepts of res judicata and collateral estoppel." *Chick Kam Choo*, 486 U.S. at 147. "[A]n essential prerequisite for applying the relitigation exception is that the claims or issues which the federal injunction insulates from litigation in state proceedings actually have been decided by the federal court. . . [T]his prerequisite is strict and narrow." *Id.* at 148.

The Merchants argue that the conspiracy claims in *Ratner* contradict my approval of the settlements. Specifically, they contend that the claims contradict my findings that the Merchants' claims were settled in good faith, at arm's length, and that there was no collusion.

13

According to the Merchants, the *Ratner* plaintiffs are precluded from now alleging that the Ohio merchants had full knowledge of the tying arrangement and conspired to comply with it. I disagree.

First, the Merchants' argument oversimplifies the Consumers' allegations. The complaint in *Ratner* alleges that the tying arrangements were required by Visa and MasterCard. (*Ratner* Compl. at ¶ 2.) Some of the Ohio merchants[3] then passed along the cost "even after filing suit against Visa and MasterCard" (*id*. at ¶ 10) "in a successful effort to recoup" the "tax" on debit cards (*id.* at ¶ 12.). This, according to the Consumers, led to unjust enrichment and double recovery. (*Id.* at ¶¶ 12-13.) The Consumers contend that the Merchants chose to accept the fees and tying arrangements in hopes of getting business that they otherwise would not get. (*Id.* at ¶ 98.) In other words, the Merchants acted "for business reasons" and then passed on the costs to consumers. (*Id.* at ¶¶ 97-99.) My finding that there was no collusion when the case was settled is not inconsistent with those allegations.

Second, even if my findings in connection with settling the class action were inconsistent with the allegations in *Ratner*, I would not exercise my equitable power to enjoin parties who -- like the *Ratner* plaintiffs -- had no opportunity to challenge those findings. Neither the indirect purchasers nor anyone in privity or even allied in interest with them was

---

[3] The Consumers conceded at oral argument that they are not alleging knowing complicity by every merchant who accepted debit cards. "I think we would be hard-pressed to say that every, every merchant . . . was part of the conspiracy. But certainly, Wal-Mart was and they knew about it and they participated in it." (Tr. at 20.)

14

heard in this case. Accordingly, they may not be properly bound by the factual findings it produced.

## CONCLUSION

For the reasons stated above, the Merchants' motion to enjoin *Ratner v. Wal-Mart Stores, Inc.*, Case No. CV 05 555060 (Oh Ct. Common Pl. filed Feb. 17, 2005) is denied. The Merchants shall inform the state court of this decision.

So Ordered.

JOHN GLEESON, U.S.D.J.

Dated: August 31, 2005
      Brooklyn, New York