CONSTANTINE | CANNON

**Robert L. Begleiter**
Attorney at Law
212-350-2707
rbegleiter@constantinecannon.com

June 14, 2006

**BY ECF**

The Honorable John Gleeson
United States District Court Judge
For the Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

               Re:    *Visa Check/MasterMoney Antitrust Litigation,* (CV-96-5238)(JG)(JO)

Dear Judge Gleeson:

       Lead Counsel respectfully submits for the Court's approval the attached engagement letters entered into between Lead Counsel and Deutsche Bank Securities Inc. and between Lead Counsel and Bear Stearns & Co. Inc.[1] The Agreements are subject to the Court's approval to be effective.

       These agreements were entered into for the purpose of securitizing the Visa U.S.A. Inc. ("Visa") and MasterCard International Inc. ("MasterCard") Net Settlement Funds (the "Settlement Funds"). In accordance with Section 11 of the August 16, 2005 Amended Plan of Allocation for the Settlement Funds in this case (the "Amended Plan") and as a result of the process described below, Lead Counsel believes that it may be in the best interests of the Class to securitize the Settlement Funds. If Lead Counsel makes a final determination that securitization is in the best interest of the Class, we will advise the Court of the terms and conditions and will seek prior approval of the Court before completing the transaction.

       The Settlement Agreements in this case require Visa and MasterCard to make installment payments to their respective Settlement Funds Accounts (as defined in the Settlement Agreements) through December 22, 2012. As discussed in the Amended Plan at Section 11.2, in a securitization, the unpaid installments due to each Settlement Fund Account would be assigned to a trust or other entity (each, an "Issuer"). Separate Issuers would be created for the Visa securitization and the MasterCard securitization. The investment banks, hired by Lead Counsel

---

[1] The letter agreement for the engagement of Deutsche Bank Securities Inc. ("Deutsche Bank Agreement") is attached as Exhibit A, and the letter agreement for the engagement of Bear Stearns & Co. Inc. ("Bear Stearns Agreement") is attached as Exhibit B. Collectively, the Deutsche Bank Agreement and the Bear Stearns Agreement are referred to as the "Agreements." To the extent possible, the terms of the Agreements are identical.

CONSTANTINE | CANNON

Hon. John Gleeson
June 14, 2006
Page 2

and acting as underwriters on behalf of each Issuer, will structure the securities to be issued by each Issuer and to be sold to investors.[2]  The securities will be secured by the right to Settlement Funds resulting from future payments by Visa or MasterCard, as applicable, to each Settlement Fund Account.  The goal of this structuring will be to convert the Visa and MasterCard obligations into securities that will be treated as market instruments, thereby maximizing the proceeds to the Class.

The structuring process requires that the underwriters, the rating agencies, and the investors be provided with information about Visa and MasterCard's industry, operations, business, financial and legal outlook as well as general market conditions.  Using this information, the underwriters will determine the appropriate number, amount and classes of securities to be issued, maturity dates, interest rates and amortization schedules.  The rating agencies will use this information to issue ratings on the securities.  The ratings reflect the likelihood of repayment by the scheduled maturity date.  The investors will use these ratings in making their investment decisions.

If successful, each securitization will result in the Class being paid upfront, by the purchasers of these securities, for the stream of payments that Visa or MasterCard is required to make through 2012.  Since these securities represent a claim on the future payments to be made by Visa or MasterCard, they will be sold at a discount to the face value of the Issuer's holdings (*i.e.*, the sum of future installments).  The discount will be determined based on then-current interest rates, market conditions and other factors related to Visa and MasterCard's creditworthiness.

*Selection of Deutsche Bank and Bear Stearns as the Underwriters*

As required under the Amended Plan, Sections 11.4 and 11.5, Lead Counsel has requested information from potential underwriters, including details of the potential underwriters' relevant experience, pricing, fees and willingness to commit resources to achieve a successful, cost-effective securitization, and has met with its advisors and potential underwriters to discuss securitization.  At a number of sessions beginning in November 2005, Lead Counsel interviewed eight such firms, and reduced the number of potential underwriters to four.  After further review of their qualifications, extensive negotiations were conducted with these four institutions to insure optimal execution and pricing with an emphasis on avoidance of any actual or perceived conflicts.

---

[2] The offer of the securities will be made pursuant to an exemption from the Securities Act of 1933, either Rule 144A under that Act or Section 4(2).  Thus the investment banks will not be underwriters for '33 Act purposes nor will the placement of the securities be an underwriting.  The investment banks are referred to here as underwriters and the private placement as an underwriting.

CONSTANTINE | CANNON

Hon. John Gleeson
June 14, 2006
Page 3

As a result of these negotiations, Lead Counsel selected Deutsche Bank and Bear Stearns to act as joint placement agents, structuring agents, bookrunning managers and arrangers in connection with the securitizations. These four separate roles are defined as follows: A "placement agent" is a broker-dealer who places newly-issued securities directly with investors on behalf of the issuer. A "structuring agent" assists the issuer in developing the best way to securitize future cash flows and obtain the highest ratings for the securities being issued. A "bookrunning manager" serves as head of all the underwriters participating in the transaction and controls the offering by directing the underwriting process. The bookrunning manager is also charged with allocating securities among the underwriters. An "arranger" coordinates the overall transaction, ensuring smooth and consistent communication among all transaction parties. Deutsche Bank and Bear Stearns will act in these roles and will be referred to in this letter as the "Underwriters."

Responsibilities of the Underwriters include (a) consultation with Lead Counsel and Brown Rudnick Berlack Israels, LLP ("Brown Rudnick")[3] regarding the structure of the proposed securitizations of the Visa unpaid installments due to the Visa Settlement Fund and the MasterCard unpaid installments due to the MasterCard Settlement Fund (the "Securitizations"); (b) preparation of any communications necessary to arrange for the Securitizations, including presentations to one or more national recognized rating agencies, such as Standard & Poor's (the "Rating Agencies"); (c) assistance in obtaining credit ratings on one or more classes of the Securities from the Rating Agencies in connection with the Securitizations; (d) assistance in preparation and in coordinating efforts to achieve timely and efficient documentation required for issuance of the securities; and (e) selling the securitization securities to appropriate parties. *See* the Agreements at paragraph 3.

*Summary of the Agreements*

Both of the attached Agreements describe the process by which securities, backed by the obligation of Visa and MasterCard to make payments into the Settlement Funds, are to be placed by private placement (whether under Rule 144A promulgated under the Securities Act of 1933 or Section 4(2) of the Securities Act of 1933). If Lead Counsel determines that one of these arrangements is in the best interest of the Class, we will advise the Court of the terms and conditions and will seek prior approval of the Court before completing the transaction, pursuant to Section 11.17 of the Amended Plan.

Following is a summary of the major terms of the Agreements:

---

[3] As is customary in these securitizations, Lead Counsel has retained specialized counsel Brown Rudnick to assist in the securitizations, as required by Section 11.6 of the Amended Plan. The Underwriters have also retained securitization counsel.

77511.1

CONSTANTINE | CANNON

Hon. John Gleeson
June 14, 2006
Page 4

### 1. Compensation

The Agreements provide that the Underwriters are entitled, with respect to each Securitization, to a Structuring Fee, a Placement Fee and a Break-up Fee. *See* the Agreements at paragraph 8.

Structuring Fee: The Structuring Fee compensates the Underwriters for their efforts in "structuring" the conversion of the unpaid stream of payments into marketable securities by constructing the most efficient offering. The Underwriters seek to obtain a credit rating from the Rating Agencies, to set the terms of the securities and to prepare the offering memorandum.

As is customary in the securities industry, the Structuring Fee is to be paid to the Underwriters based on the principal amount of the securities issued and, therefore, the proceeds to the Class. If the Securitizations are completed under Rule 144A of the 1933 Securities Act each Underwriter will be paid 0.125% of the principal amount of the securities, for a total of 0.25%.

If Lead Counsel determines that it is unable to complete a Rule 144A Securitization, and instead completes the Securitizations pursuant to Section 4(2), the total fees paid to the Underwriters will increase from 0.50% of the principal amount of the securities issued to 0.75% (to reflect the greater difficulty entailed in the 4(2) process). Every effort will be made to complete the Securitizations under Rule 144A, which will result in greater proceeds to the Class.

Placement Fee: The Placement Fee compensates the Underwriters for their efforts in selling the securities to investors. The fees paid to the Underwriters will be determined by the principle amount of securities issued multiplied by 0.25% of the principal amount of the securities. It is anticipated that in order to insure a wide distribution and a secondary market, two additional underwriters will be hired as Co-Managers increasing the number of investment banks to four. The 0.25% Placement Fee will be divided 80% to Deutsche Bank and Bear Sterns and 20% to the two additional underwriters that will be hired.

Break-up Fee: The Break-up Fee compensates the Underwriters in the event that either Visa or MasterCard elects to prepay their obligations (with the Court's approval), thus eliminating the need for the Securitizations. If both Visa and MasterCard prepaid their obligations prior to the Underwriters actually marketing the Securities, the Underwriters would each be entitled to $1 million for their efforts. If marketing of the securities had commenced, and therefore a substantial portion of Underwriters' efforts have been completed,  Deutsche Bank and Bear Stearns would each be paid $4.25

Hon. John Gleeson
June 14, 2006
Page 5

million. If only one of Visa or MasterCard prepaid, then the amounts to each
Underwriter would be two-thirds of these amounts (in the case of Visa) or one-third of
these amounts (in the case of MasterCard).

### 2. Cooperation

The Agreements obligate Lead Counsel to use reasonable efforts to pursue due diligence
information from Visa and MasterCard reasonably requested by the Underwriters, and if
necessary to seek an order from the Court to compel Visa and/or MasterCard to provide
customary financial information and covenants, representations and warranties, certificates, legal
opinions, accountants, cold comfort letters and other supporting materials. *See* the Agreements
at paragraph 4.

### 3. Court Approval

As noted, the Agreements are subject to the Court's approval, as is the payment of fees,
expenses and compensation. *See* the Agreements at paragraph 5.

### 4. Litigation Reserve Accounts

The Agreements specify upon successful execution of the Securitizations that the greater
of $12 million or one percent of the proceeds be held in a litigation reserve accounts to reimburse
the Underwriters for any losses, claims, damages or liabilities, subject to certain conditions
described therein. The litigation reserve accounts are, in effect, substituting for a more
customary indemnification provision which issuers typically give to underwriters in other
securitizations and may not be available from Visa and MasterCard.

### 5. Expenses

The Agreements obligate the Lead Counsel to reimburse the Underwriters and their
counsel for reasonable out-of-pocket fees and expenses from the Settlement Funds, subject to
limitation and review. *See* the Agreements at paragraph 7.

### 6. Exclusivity

The Agreements prohibit, subject to certain conditions, Lead Counsel from engaging in a
similar securitization transaction with any other underwriting firm. *See* the Agreements at
paragraph 9.

CONSTANTINE | CANNON

Hon. John Gleeson
June 14, 2006
Page 6

NEW YORK | WASHINGTON

### 7. Survival and Termination

The Agreements provide that either party may terminate the Agreements upon ten (10) days' prior written notice. If, however, within one year of such termination by Lead Counsel, Visa or MasterCard prepay their obligations or Lead Counsel completes a securitization (with different underwriters), each Underwriter is entitled to a payment of $1 million, subject to certain conditions. *See* the Agreements at paragraph 12.

### 8. Potential Conflicts

The Agreements obligate the Underwriters to disclose and to seek approval from Lead Counsel for any transactions with Visa or MasterCard that may involve interests differing from those of the Class, and provides a mechanism for Lead Counsel to evaluate such transaction and give or withhold its consent. *See* the Agreements at paragraph 15.

The Agreements, which were negotiated at arms-length, are fair and in the best interest of the Class. We respectfully request that the Court approve the Agreements.

This letter application and the Agreements are being posted in the *In re VisaCheck* website.

Respectfully submitted,

Robert L. Begleiter

Attachments

cc:     CB Mulhern, Deutsche Bank
        Erich Bluhm, Bear Sterns

77511.1