# CONSTANTINE | CANNON

**Amy N. Roth**
Attorney at Law
202-204-3505
aroth@constantinecannon.com

NEW YORK | WASHINGTON

February 12, 2007

**BY ECF**

The Honorable John Gleeson
United States District Court Judge
U.S. District Court for the Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

    Re: *Visa Check/MasterMoney Antitrust Litigation (CV-96-5238)(JG)(RLM)*

Dear Judge Gleeson:

    Lead Counsel writes regarding the proposed settlement of the U.S. government's claim. Attached is an objection that was served on Lead Counsel, but apparently was not properly filed with the Court.

                          Respectfully submitted,

                          Amy N. Roth

87168.1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE VISA CHECK/MASTERMONEY ANTITRUST LITIGATION<br><br>This Document Relates To:<br><br>ALL ACTIONS | Master File No. CV-96-5238<br><br>(Gleeson, J.) (Mann, M.J.) |

### OBJECTION TO PROPOSED SETTLEMENT OF THE DISPUTE OVER THE UNITED STATES' APPLICATION TO PARTICIPATE IN SETTLEMENT FUND DISTRIBUTION

NOW COMES class members Round House, Inc., Ron Fred Inc. and Ron Jen Inc., PO Box 342, Route 611, Tannersville, PA 18372-0342, (570) 629-2277, and object to the proposed settlement of the dispute over the United States' Application to Participate in the Settlement Fund Distribution, for the following reasons. Each of these class members is eligible to receive its share of settlement funds.

I. **The Government Merchants Are Non-Class Members Who Have No Colorable Claims Against the Settlement Fund.**

It is apparent from the memoranda on file as well as from the Transcript of the June 30, 2006 Hearing before Special Master Wilcox ("HT") that what occurred in this case is a stunning case of mutual legal malpractice.[1] Not only Lloyd Constantine, but three prestigious defense firms, Clifford Chance, Simpson Thacher and Heller Ehrman, each failed to advise their clients, and even educate themselves, about controlling case

---

[1] At the June 2006 hearing, Lloyd Constantine candidly conceded his negligence, while defense counsel was, understandably, more circumspect. Constantine: "[T]his whole proceeding that has been brought by the U.S. government should be an embarrassment to Steve Bomse and me, because we are supposed to be two really smart, famous and trustworthy lawyers and yet … we both forgot some very basic law that we certainly knew or should have known…" HT at p. 54.

and statutory law that precludes the U.S. government merchants from being class members in this case. While this was a stunning "brain melt," to use attorney Bomse's term (HT at p. 83), on the part of each of the law firms that participated in this case, for Lloyd Constantine this blind spot was not a breach of fiduciary duty to his clients or anyone else. For defense counsel, unfortunately, it most certainly was.

Attorney Constantine's failure to discover and communicate that U.S. government merchants were legally precluded from being class members in this action did not harm his clients in any way. Defense counsel's malpractice, on the other hand, may have harmed Visa and Mastercard. The Defendants claim that they would not have settled this action for as much as they did had they known the United States Government was not included in the class. If this is true, then defense counsel's malpractice may have caused the Defendants to suffer damages, depending upon whether the U.S. eventually brings an independent action against the Defendants. The proposed settlement, however, improperly attempts to shift to the class members a portion of defense counsel's clear liability to its clients. The class bears no conceivable liability for defense counsel's malpractice.

While $3.7 million is only a small portion of the $3 billion Settlement Fund, it is only a reasonable use of the class' money if the United States or the Defendants have some colorable claim against the Settlement Fund in an amount greater than that sum. For it is the class' money, and not the U.S. Government's. As attorney Constantine stated at the June 2006 hearing, "if the United States improperly gets any of this money, then that is money that I cannot send to my clients." HT at p. 69. The United States has no colorable claim to the Settlement Fund, and, indeed, is precluded from participating as a class member in this action by federal law.

2

The only colorable claim the Defendants point to is a *potential* future motion for reformation that they *may* file *if the U.S. ever files its own action* against them *and prevails*. Even were all these things to occur, however, the Defendants still would have no colorable claim against the class members for a refund of any settlement funds, because the class members had no duty toward the Defendants that was conceivably breached. It was not the duty of the class to research relevant caselaw and advise the Defendants that they were not getting the bargain they imagined they were getting. It was the duty of Defendants' counsel to do that, which their counsel clearly breached.

Defendants' reformation argument is substantially undermined by the amount of the U.S. Government's claim. At the June hearing, the Defendants suggested that the Government could claim as much as $1 billion in an independent action (HT at p. 41). Now, the Government's claim has been quantified at $10 million. The U.S. has already expressed its willingness to compromise that claim for a little over $7 million, and Visa and MasterCard have shown a willingness to pay at least $3.5 million to settle that claim. It is fairly certain that either Visa and MasterCard, or defense counsel's malpractice insurers, would come up with the additional $3.7 million that they are asking the class members to foot here, should the United States pursue their claim outside of this litigation. It is very unlikely that the Defendants would bring a long-shot and probably frivolous motion for reformation of the Settlement Agreement to recoup $3.7 million, and certainly not before they had exhausted all of their avenues against defense counsel's insurers.

The class should not have to give up even $100,000 to spare defense counsel the embarrassment of a malpractice claim. It is unfortunate that defense counsel may have to bear that burden, but there is simply no excuse for not being aware of or advising one's

client about controlling Supreme Court precedent and federal statutory law, just as there would be no excuse for failing to be familiar with *Amchem*, *Eisen*, *Shutts* or any of the other fundamental Supreme Court precedents on class action procedure. Defendants make much of class counsel's mutual ignorance, but the fact remains that class counsel was under no duty to disabuse the Defendants of their incorrect assumption about the class definition, while their own counsel most certainly were. Liability for the breach of that duty should lie with the culpable parties – defense counsel – and not with the innocent class members.

## II. A Settlement of Defendants' Threatened Motion For Reformation is Grossly Premature.

The only motion currently before the court is the United States' Application To Participate in the Settlement, which is without merit and has only nuisance value. That Application has been fully briefed and argued, and thus all of the nuisance costs have already been incurred. Therefore, paying $3.7 million to be rid of that Application is not reasonable, and would represent an improper use of the class' money.[2]

With regard to the Defendants' suggested motion for reformation of the Settlement Agreement, any such motion is several years away from being ripe for filing or settlement. A whole series of improbable things must occur first. As the Special Master summarized the series of conditions that would have to be met for the class even to be in a position of having to worry about a reformation motion: "[I]f Judge Gleeson said, sorry, [the U.S.] can't participate, and if [the U.S.] then brings suit, and if they get a big judgment [and] if the application [for reformation] is granted and if they succeed –

---

[2] While the class would be liable to reimburse Constantine Cannon for any attorney's fees incurred defending an appeal from a denial of the U.S.' Application, that amount is not likely to exceed $50,000.

4

which is a lot of 'ifs'..." HT at p. 63. It is indeed, but Special Master Wilcox omitted yet another "if": if the Defendants are unable to obtain full satisfaction of any eventual liability from defense counsel's insurance.

It is difficult to fathom what possible benefit the class would derive from a settlement of this matter at this premature stage, based upon nothing more than a threatened reformation that is remote, hypothetical and conditional. What does the class possibly have to lose from a legal determination regarding the U.S. Government's inability to participate in this lawsuit as an absent class member in light of 28 USC §§ 516 and 519 and *United States v. Cooper*, 312 U.S. 600 (1941), as well as their letter disavowing class membership? Should the class prevail, as appears highly likely, then they would have no liability at all towards the U.S. or the Defendants and would save $3.7 million. A decision from the Second Circuit could clarify this issue at far less expense to the class than $3.7 million.

If the Second Circuit rules that the U.S. Government was not properly made a class member in this litigation, and, consequently, may not participate in the settlement, the Government retains the right to file its own claim and litigate. Only if the Government were to prevail at trial or by settlement would the equitable reformation issue even be triggered. If and when the Defendants file a motion for reformation, the class could at that time consider whether to enter into a settlement in order to avoid the expense of defending the Settlement Fund from Defendants' claims for contribution or setoff. That would be the appropriate time for settlement, after the amount of the class' potential exposure has been precisely quantified, after other sources of coverage have been exhausted, and after all of the speculative contingencies necessary to arrive at that

5

point have been fulfilled. After all, the U.S. Government may ultimately decide that pursuing a $10 million claim is not worth the candle.[3]

Furthermore, the parties have not even filed the requisite papers in support of the proposed settlement that compare the amount of the settlement to the value of the claims being given up (here, the U.S.' Application) discounted by the likelihood of success on the merits. It is clear that, when measured by that standard, there is no consideration being given for the $3.7 million the class would pay to the United States as part of the settlement. If the United States' Application is worth only $10 million, then the U.S. would have to have a better than 37% chance of prevailing on its Application for the settlement to be reasonable. But, as demonstrated above and in Lead Counsel's Memorandum, the United States has virtually no chance of having *Cooper* reversed in this case, and, therefore, $3.7 million is a grossly excessive settlement of the U.S.' Application.

While the parties may argue that what they are settling is really the Defendants' inchoate future motion for reformation, it is far too premature to properly evaluate that

---

[3] While most of the focus of the June 2006 hearing was the comparative equities between class counsel and Defendants, the equities as between the class and the United States Government clearly favor the class, as the U.S. Government sat back and failed to file its own lawsuit even while it had full knowledge of this litigation and had advised class counsel that it had no intention of participating in this litigation. If the U.S. merchants ultimately recover nothing, that would not be an unfair result.
Rule 11 sanctions would not be an unfair result for the government either, given that it has taken a position in this application proceeding that is directly at odds with its previous position stated in the November 14, 2002 letter from Polly Dammann to Lead Counsel – "a class represented by private counsel could not, as a matter of law include the United States or its agencies as class members, since private counsel is not authorized to represent the interests of the United States and could not bind the United States." In light of its November 14, 2002 letter, the position taken by the United States in its Application is patently frivolous. The United States has caused Lead Counsel to incur attorney's fees and expenses opposing its Application that the class will ultimately be asked to reimburse. The United States should bear those costs.

6

settlement. Because there are so many remote contingencies that must be fulfilled for such a motion to even reach this Court, let alone be evaluated and discounted for likelihood of success, it is not possible to declare that $3.7 million is a reasonable "settlement" of that remote possibility.

Objectors hereby adopt and incorporate Lead Counsel's April 20, 2006 Memorandum of Law in Opposition to the United States' Application to Participate in the Distribution of the *In re Visa Check* Settlement Funds, as if fully set forth herein.

## CONCLUSION

For the foregoing reasons, this Court should DENY approval to the proposed settlement of the dispute over the United States' application to participate in the settlement fund distribution.

Respectfully submitted,
Round House Inc., Ron Fred Inc.,
And Ron Jen Inc.,
By their attorney,

John J. Pentz, Esq.
2 Clock Tower Place, Suite 260G
Maynard, MA  01754
Phone: (978) 461-1548
Fax: (707) 276-2925
Clasaxn@earthlink.net

7

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on January 29, 2007 he served a true copy of the foregoing document by first class mail on each the counsel listed below.

Constantine Cannon
450 Lexington Avenue
New York, NY 10017

_____
John Pentz