UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------x

IN RE VISA CHECK/MASTERMONEY   MASTER FILE NO. CV-96-5238
ANTITRUST LITIGATION      (Gleeson, J.) (Mann, M.J.)

-----------------------------------------------------x

## REPORT AND RECOMMENDATION

In this antitrust action, a class of approximately five million merchants alleged, among other things, that defendants Visa U.S.A. Inc. ("Visa") and MasterCard International Incorporated ("MasterCard") were illegally tying their debit products to their credit cards, in violation of the Sherman Act.  On June 4, 2003, the plaintiffs entered into preliminary settlement agreements with the defendants, agreements that provided, among other things, for the creation of a $3.05 billion settlement fund.  By Opinion and Order dated December 19, 2003, the Honorable John Gleeson approved both settlements (collectively, the "Settlement Agreements"), awarded Class Counsel $220,290,160.44 in attorneys' fees, and authorized reimbursement of costs in the amount of $18,716,511.44.  See In re: Visa Check/MasterMoney Antitrust Litigation, 297 F. Supp. 2d 503 (E.D.N.Y. 2003), aff'd, 396 F.3d 96 (2d Cir. 2005).

By Order dated February 17, 2004, Judge Gleeson appointed me Special Master to issue reports and recommendations regarding referred disputes arising out of or relating to the Visa and MasterCard Settlement Agreements.  By Order dated September 8, 2004, Judge Gleeson referred to me for report and recommendation "any applications for reimbursement of fees, costs and expenses incurred by plaintiffs' co-lead counsel, Constantine & Partners and Hagens Berman, in administering the Visa Settlement and the MasterCard Settlement."

Jeffrey I. Shinder, Esq., managing partner of Constantine Cannon LLP (hereinafter "Lead Counsel") submitted a Declaration, dated October 4, 2007, in support of Lead Counsel's "application for an award of attorneys' fees billed in connection with services rendered to the Class . . . from July 2006 through June 2007, and for the reimbursement of costs and expenses incurred by the Class during that same time period."  Declaration of Jeffrey I. Shinder in Support of Supplemental Application for Fees and Reimbursement of Costs and Expenses ("Shinder Declaration") ¶ 1.  Lead Counsel's Fee Petition requests an award of legal fees in the amount of $319,991.25 and reimbursement of costs and expenses in the amount of $1,048,482.05.

For the reasons set forth below, I respectfully recommend that this Court award Lead Counsel $287,992.13 in legal fees, an amount equal to 90% of the fee award Lead Counsel has requested.  I further respectfully recommend that this Court authorize an additional payment of $1,034,453.62, consisting of payment of (1) $82,080.39 for the fees and expenses of Brown Rudnick Berlack Israels LLP ("Brown Rudnick"), an amount that equals 95% of the requested fee amount of $85,605.75 plus $754.93 in expenses; (2) $203,857.83 for the fees and expenses of N & A Consulting LLC ("Noblett"); (3) $16,469.49 for the fees and expenses of Apco Worldwide ("Apco"); (4) $186,496.71 for the fees and expenses of CRA International, Inc. ("CRA"), an amount that equals 95% of the requested fee amount plus $1,282.00 in expenses; (5) $497,160.00 for the fees of Cannonade Capital LLC ("Cannonade"); (6) $6,301.22 for Lead Counsel's miscellaneous costs and expenses (FedEx, Lexis, litigation support, meals, messenger, offsite storage, online research, photocopies, postage, telephone, transcription service, travel and transportation, and Westlaw); and (7) $42,087.98 for Special Master fees and expenses.

- 2 -

## BACKGROUND

In a complaint filed on October 5, 1996, the named plaintiffs "alleged that the defendants' practice of requiring merchants who accepted defendants' credit cards to also accept their debit products . . . was an illegal tying arrangement, in violation of section 1 [of the Sherman Act]."  In re: Visa Check/MasterMoney Antitrust Litigation, 297 F. Supp. 2d 503, 507 (E.D.N.Y. 2003).  They "further alleged that, through these tying arrangements and other anticompetitive conduct, the defendants attempted to monopolize the debit card market, in violation of section 2 [of the Sherman Act]."  Id.  This Court certified the Class by Order dated February 22, 2000.  Id.  The Second Circuit affirmed on October 17, 2001.  Id. at 507-08.

After motion practice, and on the brink of trial, the plaintiffs entered into preliminary settlement agreements with each of the defendants.  Id. at 508.  These Settlement Agreements provided, among other things, for "the creation of a $3.05 billion settlement fund."  Id. at 508.  With respect to the question of attorneys' fees, the Settlement Agreements stated, among other things, as follows:

> On or before August 18, 2003, Plaintiffs' Co-Lead Counsel shall file a Fee and Expense Application for distribution from the Gross Settlement Fund of a Fee Award consisting of an award of Plaintiffs' attorneys' fees and reimbursement of costs and expenses.  Plaintiffs' Co-Lead Counsel reserves the right to make additional applications for fees, costs, and expenses incurred in obtaining Final Settlement Approval and administering the Settlement.

Visa Settlement Agreement ¶ 14; see also MasterCard Settlement Agreement ¶ 14 (same).

Notice of the Settlement Agreements was mailed to Class Members. That notice, which was dated June 13, 2003, stated (among other things):

- 3 -

> [O]n August 18, 2003, Class Counsel will file a petition for
> payment of attorneys' fees, costs and expenses, and may, from time to
> time thereafter, petition the Court for reimbursement of fees, costs and
> expenses from the Settlement Funds, including fees incurred by Class
> Counsel and the Administrator while providing Notice to the Class and
> while administering the Settlement Funds (including the plan of allocation
> and distribution).

June 13, 2003 Notice ¶ 17.

On August 18, 2003, Lead Counsel sought this Court's approval of the Settlement

Agreements and plan of allocation. Visa Check/MasterMoney, 297 F. Supp. 2d at 506-

07. Lead Counsel also sought an award of attorneys' fees in the amount of $609 million

and reimbursement of expenses. Id. On September 25, 2003, this Court "held a fairness

hearing in [the] ceremonial courtroom to hear arguments of th[e Objectors] and any

others that might be raised." Id. at 509. On December 19, 2003, this Court issued an

Opinion and Order approving the Settlement Agreements, awarding Class Counsel

$220,290,160.33 in attorneys' fees, and authorizing the reimbursement of costs in the

amount of $18,716,511.44. See id. at 526, aff'd, 396 F.3d 96 (2d Cir. 2005).

On February 17, 2004, this Court appointed me Special Master to issue reports

and recommendations regarding referred disputes arising out of or relating to the Visa

and MasterCard Settlement Agreements. By Order dated September 8, 2004, this Court

referred to me for report and recommendation "any applications for reimbursement of

fees, costs and expenses incurred by plaintiffs' co-lead counsel, Constantine & Partners

and Hagens Berman, in administering the Visa Settlement and the MasterCard

Settlement." By order dated February 9, 2005, this Court ordered Lead Counsel to

publish the details of all supplemental requests for reimbursement of fees and expenses

on the webpage that is dedicated to this litigation.

By order dated November 14, 2006, this Court required Lead Counsel, in advance of future fee applications, to submit a budget to me "setting forth [Lead Counsel's] expected fees and disbursements."  By letter to this Court dated December 29, 2006, I directed Lead Counsel to submit all fee applications on an annual basis, with the first such application due July 2007 and covering the July 2006 through June 2007 time period.[1]  I further directed Lead Counsel to submit, on or before January 31, 2007, a budget covering the July 2006 through June 2007 time period.

By submission dated January 31, 2007, Stacey Anne Mahoney, a partner at Constantine Cannon LLP, provided Lead Counsel's Projected Budget for the period July 2006 through June 2007.  See Ex. A to Jan. 31, 2007 Ltr. from Stacey Anne Mahoney to Special Master Robin Wilcox ("Projected Budget").  The Projected Budget anticipated the following fees and expenses for the period July 2006 through June 2007:

| SOURCE | PROJECTED AMOUNT |
|---|---|
| **Constantine Cannon Fees** | **$500,000** |
| **Counsel**<br>   Brown Rudnick | **$400,000-$600,000** |
| **Consulting**<br>   N & A Consulting LLC<br>   Apco Worldwide<br>   CRA International, Inc.<br>**Consulting Total** | $177,000.00<br>$6,000.00<br>$292,646.00<br>**$475,646** |
| **Miscellaneous Expenses**<br>   FedEx<br>   Hotel<br>   Lexis<br>   Messenger<br>   Offsite Storage | |

---

[1] By letter dated October 10, 2007, Lead Counsel asked for a "modification of [the] December 29, 2006 Order requiring that all fee submissions . . . be made on a yearly basis," requesting "the right to make quarterly petitions to the Special Master" instead.  This Court issued an order granting the request.

| | |
|---|---|
| Online Research<br>Copying<br>Service of court papers<br>Telephone<br>Transcripts<br>Travel & Transportation<br>Westlaw/LEXIS/NEXIS | **$24,000** |
| **Total** | **$1,399,646 - $1,599,646** |

On October 4, 2007, after Lead Counsel has requested and received several extensions of time, Jeffrey I. Shinder, Esq., managing partner of Constantine Cannon, P.C. (hereinafter "Lead Counsel") submitted a Declaration in support of Lead Counsel's "application for an award of attorneys' fees billed in connection with services rendered to the Class . . . from July 2006 through June 2007, and for the reimbursement of costs and expenses incurred by the Class during that same time period." Shinder Declaration ¶ 1.[2] The fees and expenses for which Lead Counsel seeks payment fall into the following categories (id. ¶¶ 5, 7):

| SOURCE | AMOUNT |
|---|---|
| **Constantine Cannon Fees** | **$319,991.25** |
| **Counsel**<br>    Brown Rudnick | **$86,360.68** |
| **Consulting**<br>    N & A Consulting LLC<br>    Apco Worldwide<br>    CRA International, Inc.<br>    Cannonade Capital LLC[3]<br>**Consulting Total** | $203,857.83<br>$16,469.49<br>$196,244.85<br>$497,160.00<br>**$913,732.17** |

---

[2] Mr. Shinder's declaration stated that, "on or about October 4, 2007," "Lead Counsel [would] post [his] Declaration . . . on the case website, www.inrevisacheckmastermoneyantitrust litigation.com." Shinder Declaration ¶ 45.
[3] Lead Counsel did not submit an anticipated budget for Cannonade Capital LLC.

| Miscellaneous Expenses | |
|---|---:|
| FedEx | $98.27 |
| Lexis | $328.46 |
| Litigation Support | $81.28 |
| Meals | $193.53 |
| Messenger | $104.94 |
| Offsite Storage | $1,850.74 |
| Online Research | $174.80 |
| Photocopies | $598.40 |
| Postage | $9.77 |
| Telephone | $1,656.57 |
| Transcription Service | $523.42 |
| Travel & Transportation | $187.40 |
| Westlaw | $497.64 |
| | **$6,301.22** |
| **Special Master Fees & Expenses** | **$42,087.98** |
| **Total** | **$1,048,482.05** |

*   *   *

I have received no objections to Lead Counsel's October 4, 2007 Fee and Expense Application.  By email dated November 21, 2007, Michelle Peters, Senior Staff Counsel at Constantine Cannon, informed me that Lead Counsel has not received any objections.

### ANALYSIS

*Lead Counsel's Legal Fees*

Lead Counsel seeks a fee award of $319,991.25 for a total of 1,214 attorney, paralegal and technology support hours that it devoted to this litigation from July 2006 through June 2007.  Shinder Declaration ¶ 5.  According to Mr. Shinder, the work for which Lead Counsel seeks a fee award "included work devoted principally to administering the claims process and the distribution of the Settlement Funds to Class Members, ensuring compliance with the Settlement Agreements, investing and preparing

- 7 -

the groundwork for securitizing the Settlement Funds (including extensive discussions with the underwriters and MasterCard concerning the extent of cooperation it can and should provide to the securitization), and work concerning the United States' application to participate in the settlement distribution." Id. ¶ 4.[4]

In my opinion, the above-described efforts provided a significant benefit to the Class. I therefore respectfully recommend that this Court find that Lead Counsel is entitled to an award of reasonable attorneys' fees for this time period. See Goldberger v. Integrated Resources, Inc., 209 F.3d 43, 47 (2d Cir. 2000) (noting that, in common fund cases, "the attorneys whose efforts created the fund are entitled to a reasonable fee – set by the court – to be taken from the fund" in order to "prevent[] unjust enrichment of those benefiting from a lawsuit without contributing to its cost"); Olick v. Parker & Parsley Petroleum Co., 145 F.3d 513, 516 (2d Cir. 1998) (district court did not abuse its discretion by granting class counsel's supplemental fee request for time spent defending settlement).

Assuming this Court agrees with my recommendation, the next inquiry regards the reasonableness of the requested amount.

Lead Counsel's fee request employs the lodestar method, pursuant to which the district court "'scrutinizes the fee petition to ascertain the number of hours reasonably billed and then multiplies the figure by an appropriate hourly rate.'" In re Independent Energy Holdings PLC Securities Litigation, No. 00 Civ. 6689 SAS, 2003 WL 22801724, at *1 (S.D.N.Y. Nov. 24, 2003) (quoting Goldberger, 209 F.3d at 47). "[T]he key

---

[4] Lead Counsel asserts that, "[u]sing the same criteria as Lead Counsel and its outside auditor used in conjunction with the August 18, 2003 Petition for Fees and Reimbursement for Costs and Expenses, [Lead Counsel] audited Constantine Cannon's time records for the period that is the subject of this supplemental application," and, as a result of the audit, "cut fees in the amount of $2,629.25, which reflects a total deduction of 10.75 hours." Shinder Declaration ¶ 6.

consideration in awarding fees is what is reasonable under the circumstances." Visa Check/MasterMoney, 297 F. Supp. 2d at 521. When calculating a reasonable fee, the district court is obliged "to act as a 'fiduciary . . . a guardian of the rights of absent class members." Id. (quoting City of Detroit v. Grinnell Corp., 560 F.2d 1093, 1099 (2d Cir.1977)).

The first inquiry is whether Lead Counsel billed a reasonable number of hours in furtherance of its efforts on behalf of the Class during this time period. As stated, Lead Counsel seeks reimbursement for 1,214 attorney and paralegal hours billed from July 2006 to June 2007 – the approximate equivalent of one professional spending slightly more than one-half of his or her time on the case for that one-year period. Mr. Schinder asserts: "The work performed by our attorneys and staff  has been, for the most part, conducted under my supervision. It has been conducted effectively, efficiently, and economically, and to avoid unnecessary expenditures of time and expense." Shinder Declaration ¶ 4.

In my opinion, a total of 1,214 hours is not an unreasonable amount of time to devote to the at times complex tasks that Lead Counsel undertook on behalf of the class during this time period. See id. (Lead Counsels' efforts "included work devoted principally to administering the claims process and the distribution of the Settlement Funds to Class Members, ensuring compliance with the Settlement Agreements, investing and preparing the groundwork for securitizing the Settlement Funds (including extensive discussions with the underwriters and MasterCard concerning the extent of cooperation it can and should provide to the securitization), and work concerning the United States' application to participate in the settlement distribution.").

The second inquiry concerns the hourly rates requested by Lead Counsel.  Case law requires that this Court apply hourly rates that are "in line with those [rates] prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation."  Luciano v. Olsten Corp., 109 F.3d 111, 116 (2d Cir. 1997) (internal quotation marks omitted).  "It is well-established that the 'prevailing community' the district court should consider . . . is the 'district in which the court sits.'" Id.; see also New Leadership Committee v. Davidson, 23 F. Supp. 2d 301, 304 (E.D.N.Y. 1998).  "The burden is on the applicant to produce satisfactory evidence in addition to the attorney's own affidavits showing that the requested rates are at the prevailing market level."  Paulino v. Upper West Side Parking Garage, Inc., No. 96 Civ. 4910, 1999 WL 325363, at *3 (S.D.N.Y. May 20, 1999) (citing Blum v. Stenson, 465 U.S. 886, 896 n. 11 (1984)); see also New Leadership Committee, 23 F. Supp. 2d at 304 (declining to consider affidavits supporting requested hourly rate where parties submitted such evidence for the first time in objecting to Magistrate Judge's report and recommendation).  "The court may also look to attorneys' fees granted in other cases and rely on its own knowledge of similar cases to determine a reasonable rate."  Paulino, 1999 WL 325363, at *3.

Lead Counsel requests hourly attorney rates ranging from $275 (Ankur Kapoor, Esq.'s hourly rate for 2006) to $725 (the hourly rate of Lloyd Constantine, Esq., for 2006), hourly paralegal rates ranging from $110 to $125, and an hourly technological support rate of $185.  Shinder Declaration ¶ 5.  Case law makes clear that these hourly rates fall at the high end of the billing rate spectrum.  See In re Independent Energy Holdings, 2003 WL 22244676, at *9 (partner rates ranging from $650 to $695 and

associate rates ranging from $300 to $425 are "high" but "not extraordinary"); Moon v. Gab Kwon, No. 99 Civ. 11810 (GEL), 2002 WL 31512816, at *2 (S.D.N.Y. Nov. 8, 2002) (hourly paralegal rate of $100); Marathon Ashland Petroleum, No. 00 Civ. 2935 JSMKNF, 2003 WL 21355216, at *2 (S.D.N.Y. June 10, 2003) ($99 per hour for paralegal work).

The question is whether, when the number of hours for which Lead Counsel seeks compensation is combined with the hourly rates requested by Lead Counsel – which, as stated above, fall at the high end of the billing rate spectrum – the resulting fee request is higher than is reasonable under the circumstances. In my opinion, it is. I therefore respectfully recommend that this Court reduce Lead Counsel's fee by 10%. See Wal-Mart Stores, Inc. v. Visa U.S.A., Inc., 396 F.3d 96, 124 (2d Cir. 2005) ("In approving the district court's fee award, we recognize the sacrifice and commitment plaintiffs' counsel made to its clients *while preserving as much as possible for those who were harmed*." (emphasis added)); New York State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1146 (2d Cir. 1983) (noting that various courts "have endorsed percentage cuts as a practical means of trimming fat from a fee application").

In my opinion, the six Goldberger factors support such a result. See Wal-Mart Stores, 396 F.3d at 121 ("[T]he 'Goldberger factors' ultimately determine the reasonableness of a common fund fee."). These factors include:

> (1) the time and labor expended by counsel;
>
> (2) the magnitude and complexities of the litigation;
>
> (3) the risk of the litigation . . . .;
>
> (4) the quality of representation;

- 11 -

(5) the requested fee in relation to the settlement; and

(6) public policy considerations.

Id. (citing Goldberger, 209 F.3d at 50).

I believe that the first, second, fourth and sixth Goldberger factors – the time and labor expended by counsel, the magnitude and complexity of the litigation, the quality of the representation, and public policy considerations – weigh in favor of a significant award. Lead Counsel, a skilled and reputable law firm, devoted a significant number of hours to representing the class' interests during this time period. In addition, the tasks that Lead Counsel undertook were clearly complex. Finally, there is, in my opinion, "commendable sentiment in favor of providing lawyers with sufficient incentive" to zealously advocate for the interests of class members even after the class action has settled. See Goldberger, 209 F.3d at 51.

I also, however, believe that the remaining two Goldberger factors – the risk of litigation and the relationship of the fee to the settlement – weigh in favor of ordering a 10% reduction to Lead Counsel's fee request. I do not believe that there is or was a significant risk that Lead Counsel might not be compensated for its efforts on behalf of the Class. In addition, although the results that Lead Counsel has obtained on behalf of the Class have been significant, so, too, was Lead Counsel's initial fee award.

In recommending a 10% reduction, I acknowledge that Lead Counsel is requesting an amount that is significantly lower than the $500,000 it anticipated its fees would be in its January 31, 2007 Projected Budget. Lead Counsel's January 31, 2007 letter describing the basis for the projected amount of $500,000 in fees makes clear that Lead Counsel's projection was predicated, in part, on the possibility that significant

progress would be made on the securitization front during this time period – more

progress than has turned out to have actually occurred.  For this reason, the fact that Lead

Counsel's actual fee request is less than Lead Counsel anticipated it might be does not, in

my opinion, weigh against a 10% reduction in fees.

For the reasons described above, I respectfully recommend that this Court award

Lead Counsel $287,992.13 in legal fees, an amount that is the equivalent of 90% of the

fee award Lead Counsel has requested.

*Brown Rudnick*[5]

Lead Counsel also seeks payment of $86,360.68 for legal fees and expenses of the

law firm of Brown Rudnick for work that firm performed and expenses that firm incurred

in connection with this litigation from June 1, 2006 through June 29, 2007.  Id. ¶ 40.  Mr.

Shinder explains (id. ¶¶ 41-42 (footnote omitted)):

> Brown Rudnick "was [initially] retained by Lead Counsel
> on behalf of the Class on January 27, 2006, to represent the
> class as 'Issuer's Counsel' in the intended securitization (or
> monetization) of the payments to be made by defendants.
> As Issuer's Counsel, Brown Rudnick has continued to
> represent the Class with respect to the financial instruments
> necessary to securitize the payments due from Visa and
> MasterCard. . . .
>
> Brown Rudnick has submitted invoices containing
> dated entries (by individual) for time expended, which
> descriptions of the tasks undertaken, and itemized
> expenses.  Brown Rudnick expended a total of 158.70
> hours during the June 2006-July 2007 time frame.  The
> billing rates in the invoices submitted range from
> $261.00/hour to $688.50/hour.  The total fees of
> $85,605.75 reflect the ten percent discount that Lead
> Counsel previously negotiated with Brown Rudnick, and
> that Brown Rudnick has continued to apply to its legal fees

---

[5] Lead Counsel has provided for my *in camera* review, and I have reviewed, copies of all of the
consultants' original invoices and all of Brown Rudnick's original invoices.

in this representation.  In addition, Brown Rudnick has
incurred $754.93 in expenses.

As stated above, Lead Counsel's fee application for this time period seeks
reimbursement for, among other things, its own efforts in furtherance of "investing and
preparing the groundwork for securitizing the Settlement Funds (including extensive
discussions with the underwriters and MasterCard concerning the extent of cooperation it
can and should provide to the securitization)."  I do not doubt that Brown Rudnick
provided invaluable assistance in connection with these efforts.  I therefore respectfully
recommend that this Court find that Lead Counsel is entitled to reimbursement of the fees
it paid to Brown Rudnick for work that firm did on behalf of the Class from July 2006
through June 2007.  See Olick v. Parker & Parsley Petroleum Co., 145 F.3d 513, 516 (2d
Cir. 1998) (district court did not abuse its discretion by granting class counsel's
supplemental fee request for time spent defending settlement); In re Sterling Foster &
Co., Inc., Sec. Litig., 238 F. Supp. 2d 480, 490 (E.D.N.Y. 2002) ("Class Counsel are
entitled to reimbursement for reasonable litigation expenses.").

If this Court agrees, the next inquiry regards amount.  As stated, "the key
consideration in awarding fees is what is reasonable under the circumstances."  Visa
Check/MasterMoney, 297 F. Supp. 2d at 521.  When calculating a reasonable fee, the
district court is obliged "to act as a 'fiduciary . . . a guardian of the rights of absent class
members."  Id. (quoting City of Detroit v. Grinnell Corp., 560 F.2d 1093, 1099 (2d
Cir.1977)).

Brown Rudnick seeks reimbursement for 157.8 attorney hours that it expended on
behalf of the Class during this time period.  However, other than to state that "Brown
Rudnick has continued to represent the Class with respect to the financial instruments

- 14 -

necessary to securitize the payments due from Visa and MasterCard," Lead Counsel has not described with any particularity Brown Rudnick's undertakings on behalf the Class during this time period.  Similarly, Brown Rudnick's invoices, which I have reviewed, do not provide an overview of the particular projects Brown Rudnick undertook during this time period.  This lack of detail contrasts starkly with the description Lead Counsel provided of the work performed by others during this time period.  See, e.g., Shinder Declaration ¶¶ 30-38 (describing Cannonade's efforts on behalf of Class).  As a result, it is not clear to me whether 158.7 billable hours is a reasonable amount of time to devote to the tasks that Brown Rudnick was asked to perform during this time.  It is clear that the hourly rates that Brown Rudnick has charged – rates that range between $261/hour and $648/hour, with the great majority billed at rates ranging between $436.50/hour and $648/hour – are on the high end of the billing spectrum.  See In re Independent Energy Holdings PLC, No. 00 Civ. 6689 (SAS), 2003 WL 22244676, at *9 (S.D.N.Y. Sep. 29, 2003) (partner rates ranging from $650 to $695 and associate rates ranging from $300 to $425 are "high" but "not extraordinary").

As stated above, Lead Counsel negotiated with Brown Rudnick for a 10% reduction to legal fees paid for work done on behalf of the Class during this time period.  Given the above-identified concerns, I believe that an additional 5% reduction would render the fee request made on behalf of Brown Rudnick reasonable.

In my opinion, the six Goldberger factors support such a result.  I believe that the second, fourth and sixth Goldberger factors – the magnitude and complexity of the litigation, the quality of the representation, and public policy considerations – weigh in favor of a significant award.  There is, in my opinion, "commendable sentiment in favor

of providing lawyers with sufficient incentive" to undertake the complex task of competently representing the financial interests of class members once settlement has resulted in the creation of a significant common fund.  See Goldberger, 209 F.3d at 51.

I also, however, believe that the remaining three Goldberger factors – the time and labor expended by counsel, the risk of litigation and the relationship of the fee to the settlement – weigh in favor of ordering an additional 5% reduction to all of Brown Rudnick's legal fees.  In this respect, I give particular weight to the fact that Brown Rudnick billed only 157.8 hours to this representation during this time period – the approximate equivalent of one professional working on behalf of the Class for only a month.  That does not, in my opinion, evidence a significant investment of time and labor during this time period.  In addition, in my opinion, the risk that Brown Rudnick would not be compensated for its efforts on behalf of the Class has been and remains quite low. Finally, Brown Rudnick's efforts on behalf of the Class – though certainly valuable – do not appear to have extended beyond the defined issue of providing advice and support regarding the securitization of the common fund created by the Settlement Agreement; for that reason, the size of that fund does not, in my opinion, weigh in favor of a greater award.

The fact that Brown Rudnick's actual fee request is less than Brown Rudnick anticipated it might be in its January 31, 2007 Projected Budget does not, in my opinion, weigh against a 5% reduction.  As described in a January 31, 2007 letter to Robert Begleiter, a partner at Constantine Cannon, Brown Rudnick's Projected Budget accounted for the possibility that significant progress would be made on the securitization front during this time period – more progress than has actually occurred.

In recommending an additional 5% reduction, I do not mean to minimize the fact that Brown Rudnick is providing advice in a highly specialized area of the law. Nor do I mean to minimize the importance of the role that Brown Rudnick, as Issuer's Counsel, is playing in the securitization process. Nevertheless, for the reasons I have identified above, I believe that an additional 5% reduction to Brown Rudnick's fee request is warranted – at least with respect to the work time period that is the subject of this particular fee and expense application. I therefore respectfully recommend that this Court authorize payment to Brown Rudnick in the amount of $82,080.39, an amount that equals 95% of the requested fee amount of $85,605.75 plus $754.93 in expenses.

*N & A Consulting LLC*

The first expense entry under the Consulting category is for the amount of $203,857.83 to Noblett for work done and expenses incurred by Michael McCormack on behalf of the Class from July 2006 through June 2007. Shinder Declaration ¶¶ 19, 24.

Lead Counsel retained Mr. McCormack "to provide consultative services in support of the plan." Id. ¶ 20. Before joining Noblett, "Mr. McCormack worked in merchant acquiring for the Wells Fargo bank." At Wells Fargo, Mr. McCormack "developed an expertise concerning the various ways acquirers and Visa capture and maintain merchant data" – an expertise that, according to Lead Counsel, "has proven critical to the execution of the plan of allocation and has provided a tremendous benefit to the Class." Id. ¶ 20. Mr. Shinder explains (id. ¶ 21):

> During this time frame, Mr. McCormack has continued to work directly with Lead Counsel and the Claims Administrator to ensure that Class Members receive the optimal amount through the distribution process. Mr. McCormack has continued to interface directly with Class Members that have submitted consolidated claim forms to ensure that their consolidation captures all of their store locations and divisions. Mr.

McCormack continues to undertake necessary research when presented by a merchant with a complicated claim, particularly when resolution of the issues related to the claim would benefit from his expertise and knowledge regarding how acquirers capture merchant information.  Mr. McCormack continues to work with the Visa Transactional Database in order to facilitate the ongoing distribution process.  Each of these tasks has been for the benefit of the Class.  Constantine Cannon anticipates that Noblett, through the efforts of Mr. McCormack, will continue to be an important part of the distribution process for the foreseeable future.

According to Lead Counsel, "Noblett has submitted invoices to Lead Counsel for the period of June 1, 2006 through June 29, 2007, detailing on a daily basis the work performed by Mr. McCormack and the time expended in completing that work, as well as the expenses incurred by Mr. McCormack in connection with his work on this matter." Id. ¶ 22.  These invoices requested payment for 779.50 hours expended by Mr. McCormack at an hourly billing rate of $265, plus expenses, for a total of $204,394.06. Id. ¶¶ 19, 24.  "This amount . . . reflects a reduction in Noblett's total expenses for this time frame of a Court-ordered credit in the amount of $2,562.28, which is based on deductions set forth in Special Master Wilcox's Report and Recommendation dated September 26, 2006 (at 11), and so ordered by the Court on November 14, 2006." Id. ¶ 19.

Upon receiving Noblett's invoices, Lead Counsel reviewed them for the purpose of ensuring "that the efforts being undertaken were for the benefit of the Class." Id. ¶ 22. "As a result of its review, Lead Counsel has reduced its request for unreimbursed expenses paid to Noblett by $536.23." Id. ¶ 24.  "These reductions constitute $397.50 in fee deductions (constituting 1.50 hours) to correct mathematical rounding errors in time entries, and to eliminate time entries that were duplicative or apparently did not pertain to

this case." Lead Counsel's reductions "further eliminate $138.73 in expenses for which there was insufficient back up." Id.

Based upon Lead Counsel's description, there is, in my opinion, no question but that Mr. McCormack's efforts benefited the Class. As before, given the complicated tasks for which Lead Counsel sought Mr. McCormack's assistance, and given his prior experience, the number of hours he billed and his hourly rate seem reasonable to me. Accordingly, I respectfully recommend that this Court authorize payment of $203,857.83, the entire amount requested by Lead Counsel on behalf of Noblett. See Sterling Foster & Co., 238 F. Supp. 2d at 490 ("Class Counsel are entitled to reimbursement for reasonable litigation expenses." (citing Miltland Raleigh-Durham, 840 F. Supp. at 239)).[6]

*Apco Worldwide*

Lead Counsel seeks payment of $16,469.49 for its media consultant, Apco, for work done and expenses incurred from July 2006 through June 2007. Shinder Declaration ¶ 29. Lead Counsel describes Apco as a "a public relations firm" that "periodically distributed merchant advisories and/or press releases to keep the Class informed of pertinent developments, like those relevant to the distributions to Class Members, in both Spanish and English," thereby "facilitat[ing] Lead Counsel's efforts to keep the Class apprised of material events in the case." Id. ¶ 26.

Lead Counsel asserts that, "[d]uring this time frame, Apco expended a total of 12.50 in this representation (including 7.00 hours completed at a project assistant billing rate ranging from $105/hour to $110/hour, 5.00 hours completed at the associate billing rate of $200/hour, and .50 hours completed by Kent Jarell, Senior Vice President and

---

[6] In making this recommendation, I am fully cognizant of the fact that, in a January 31, 2007 letter submitted to me, Noblett forecasted that its fees and expenses during this time period would amount to only $177,000. I do not believe that this fact counsels in favor of a lower award than that requested.

Director of Litigation Communications, at $415/hour)." Id. ¶ 28. "The bulk of the amounts contained in Apco's invoices derives from expenses that Apco incurred in connection with advertising and wire service disbursements on behalf of the Class." Id. Lead Counsel further asserts that, "[a]s a result of its review of Apco's invoices, Lead Counsel has reduced its request for reimbursement of payments made to Apco by $1,045.00 to eliminate expenses for which there was insufficient back-up and/or apparently did not pertain to this case." Id. ¶ 29.

In my opinion, the foregoing services unquestionably benefited the Class. I therefore respectfully recommend that this Court order payment of the entire $16,469.49 requested. See Sterling Foster & Co., 238 F. Supp. 2d at 490 ("Class Counsel are entitled to reimbursement for reasonable litigation expenses." (citing Miltland Raleigh-Durham, 840 F. Supp. at 239)). [7]

*CRA International, Inc.*

Lead Counsel also requests payment of $196,244.85 for work that CRA performed on behalf of the Class from June 10, 2006 through July 6, 2007, as well as expenses billed in connection with that work. Shinder Declaration ¶¶ 13, 18.

---

[7] In its January 31, 2007 letter to me, Lead Counsel forecasted that Apco's fees would amount to only $6,000. I do not believe that this fact counsels in favor of a lower award than that requested.

According to Lead Counsel, CRA "has provided the expert economic analysis for this Class during this case, and Lead Counsel has continued to utilize that expertise since the Settlement Agreements were reached." Id. ¶ 14.  Lead Counsel further asserts that "CRA has continued to work closely with Lead Counsel regarding implementation of the plan of allocation and the distribution of the Settlement Funds to the Class Members" (id. ¶¶ 14-15):

> CRA continues to perform multiple functions connected to the plan of allocation and the distribution.  For example, CRA has continued to work closely with the Claims Administrator to assist with the distribution process, for example, by data checking the amounts of the distributions by the Claims Administrator for accuracy; implementing the transaction methodology for the PIN debit portion of the distribution and estimating PIN debit purchase volumes; and estimating credit and off-line debit transaction volumes and payments for Class Members.  CRA has continued to work with the Claims Administrator and merchants regarding challenges to the amount of the merchants' distributions and in conjunction with the application of the United States to participate in the settlement distribution.  Each of these tasks has been engaged in for the benefit of the Class.  Lead Counsel anticipates that CRA will continue to play an important role in the distribution.

Lead Counsel has reviewed CRA's invoices "to determine whether the efforts undertaken were done for the benefit of the Class." Id. ¶ 16.  "As a result of its review . . ., Lead Counsel has reduced its request for fees and expenses paid to CRA by $2,215.00," constituting "$933.00 in fee deductions (. . . 6.10 hours at rates ranging from $105/hour to $385/hour) for work done in connection with preparing invoices and to eliminate duplicative time entries" and "$1,282.00 in expenses for which there was insufficient back-up or that apparently did not pertain to this case." Id. ¶ 18.

Taking into account these deductions, CRA seeks reimbursement for a total of 735.38 hours at billing rates "rang[ing] from $105/hour for support staff to $530/hour for the supervisory work of Vice President, Craig Romaine," with "the majority of the work .

- 21 -

. . done by Stephen Kletter, a Principal at CRA (at a rate of $385/hour)," and with Mr. Kletter's efforts "significantly assisted by work completed by associates/analysts (at rates ranging from $185/hour to $195/hour)." Id. ¶ 17.  Lead Counsel maintains that "CRA's billing rates are consistent with the rates charged by other economic firms of this caliber." Id.  CRA also seeks reimbursement for $1,282.00 in expenses, for a total requested reimbursement amount of $196,244.85 – significantly less than the $292,646 that CRA projected that its bills for this time period would be in its January 28, 2007 letter to me. Id. ¶ 18.

I do not doubt that CRA's efforts provided a significant benefit to the Class, and therefore that some reimbursement for the CRA expense is warranted.  Nevertheless, as I previously stated in prior Reports and Recommendations, I have some lingering reservations about CRA's billing rates, which seem high by lawyer standards.  See In re Independent Energy Holdings PLC, No. 00 Civ. 6689 (SAS), 2003 WL 22244676, at *9 (S.D.N.Y. Sep. 29, 2003) (partner rate of $650/hour and associate rates ranging from $300 to $425 are "high" but "not extraordinary").  Because of these reservations, I respectfully recommend that this Court authorize payment to CRA in the amount of $186,496.71, an amount that equals 95% of the requested fee amount plus $1,282.00 in expenses.  See Sterling Foster & Co., 238 F. Supp. 2d at 490 ("Class Counsel are entitled to reimbursement for *reasonable* litigation expenses." (emphasis added)); In re Bausch & Lomb Securities Litigation, 183 F.R.D. 78, 89 (W.D.N.Y. 1988) ("[a]ttorneys are clearly not entitled to reimbursement of expenses where the request is for an amount which is excessive or otherwise noncompensable"); cf. New York State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1146 (2d Cir. 1983) (noting that various courts

"have endorsed percentage cuts as a practical means of trimming fat from a fee application").

The fact that CRA's actual fee request is less than CRA anticipated it might be in its January 28, 2007 Projected Budget does not, in my opinion, weigh against this 5% reduction in fees. That Projected Budget assumed the application of the billing rates I discussed above. Moreover, as CRA itself stated in its January 28, 2007 letter to me, because the nature of its work makes it "difficult to forecast the level of effort needed to complete a particular task," CRA's Projected Budget was "necessarily an estimate."

### Cannonade Capital LLC

According to Lead Counsel, Cannonade – which previously submitted a fee request directly to the Court and received payment from the Settlement Funds for work completed for the period of May 2003 through August 2005[8] – has billed Lead Counsel $497,160.00 from July 2006 through June 2007 for work performed on behalf of the Class from September 2005 through June 2007. Shinder Declaration ¶ 30.

Lead Counsel describes the work Cannonade performed on behalf of the Class as follows (id. ¶¶ 32-35):

> Joshua Slovik has been the only individual from Cannonade who has performed work on behalf of the Class. Mr. Slovik was retained by Lead Counsel to provide financial advisory services on behalf of the Class. His services include work regarding escrow account management (set-up and participation in meetings with leading banks providing escrow and investment advisory services; negotiation of advantageous fees for the Class; and review and reconciliation of accounts); funds investment (review and development of investment

---

[8] Lead Counsel states that it "has been directed to incorporate Cannonade's current and future invoices with Lead Counsel's supplemental requests of fees and expenses" pursuant to "the oral request made by Special Master Wilcox on September 27, 2007." Shinder Declaration ¶ 31. Lead Counsel suggested that Cannonade's bills be submitted in this manner; I agreed.

alternatives; monitoring pricing and market conditions; analysis and development of recommendations for specific investments; and investment direction and pricing verification); quarterly and annual tax return preparation (review and advisement regarding tax strategies developed by the Claims Administrator; coordination of information flow and interest income calculations; and review of tax returns); attorney fees (interest accrual analysis on fees and coordination of payments to attorneys involved in the litigation); distribution funding (funds investment based on forecasted disbursement dates; advisement regarding costs and monetized investments; and maximization of earnings to the Class by ensuring that interest was earned until distributions occurred); and disbursement account review (review of the Claims Administrator's proposal to use Signature Bank to process Class disbursements; and development of a sweep process to fund the account on an as-needed basis).

　　　　As financial advisor for the Class, Mr. Slovik also has engaged in underwriter selection (development and implementation of an underwriter selection process; and negotiation of engagement letters, including compensation, roles, conflict avoidance, and timing); securitization counsel management for issuer and underwriters (negotiation of hourly rates, exclusivity and other clauses; coordination of issuer counsel input; and review of key issues (i.e., representations and warranties, covenants and indemnification)); securitization structure management (review and analysis of potential comparable transactions; discussions with underwriters regarding alternatives and impact on proceeds to the Class; and participation of independent analysis and view of optimal securitization); Visa and MasterCard negotiations (participation in preparation for and negotiations with Visa and MasterCard regarding securitization; and assisting in preparation and review of required correspondence); rating agency coordination (preparation of presentation to rating agencies; and participation in discussions regarding structure and process required to secure credit rating); and securitization economics (analysis of potential proceeds to the Class under various scenarios; and benchmark development to analyze which securitization scenarios are potentially in the best interest of the Class).

Among the many valuable services that Mr. Slovik has provided to the Class, he has (under Lead Counsel's direction) invested the Settlement Funds in conservative short-term investments to maximize the interest that the Class receives on the funds distributed.

In retaining Mr. Slovik, Lead Counsel analyzed the most cost effective way to compensate him for his time, consistent with the complex and multi-faceted services he is providing on behalf of the Class and the way financial advisors are typically compensated for services related to a complex deal such as the securitizations of the settlement funds in this litigation.  It is our understanding that because of the uncertainties (such as changing market conditions) surrounding the completion of such deals, financial advisors working on a complex financing either are paid on a monthly retainer or via success fee, or in some cases, a combination of both.  When charged on a monthly rate for a deal involving sums in excess of $1 billion, these fees could typically range between $80,000-$100,000, or approximately $1 million a year.  Lead Counsel declined such an arrangement and instead retained Mr. Slovik on an hourly basis.  As we were concerned about a guaranteed monthly retainer even in months in which the amount of hours dedicated to these transactions are not significant, we agreed instead to compensate him at $400 per hour and provide him a success fee if and when the transactions are completed.  Given this context, the $400 hourly rate reflected in these bills is fair and reasonable, and could be construed as below market for the work Mr. Slovik has performed.

According to Lead Counsel, "[t]he total number of hours expended by Mr. Slovik in this representation during the September 2005-June 2007 time frame was 1,242.90 at a rate of $400/hour throughout."  Id. ¶ 37.  "As with other consultants' bills, Lead Counsel reviewed Cannonade's invoices to ensure that the efforts being undertaken were for the benefit of the Class," and, as a result of this review, "deducted no expense amounts."  Id. ¶¶ 36, 38.

- 25 -

Based upon Lead Counsel's description, there is, in my opinion, no question but that Mr. Slovik's efforts benefited the Class. Given the complicated tasks Lead Counsel has relied upon Mr. Slovik to perform, the number of hours he billed and his hourly rate seem reasonable to me. Accordingly, I respectfully recommend that this Court authorize payment of $497,160.00, the entire amount requested by Lead Counsel on behalf of Cannonade. See Sterling Foster & Co., 238 F. Supp. 2d at 490 ("Class Counsel are entitled to reimbursement for reasonable litigation expenses." (citing Miltland Raleigh-Durham, 840 F. Supp. at 239)).

*Miscellaneous Costs and Expenses*

Lead Counsel's miscellaneous costs and expenses – a combined total of $6,301.22 – fall into the following categories:

| ACTIVITY | AMOUNT |
|---|---|
| **FedEx** | $98.27 |
| **Lexis** | $328.46 |
| **Litigation Support** | $81.28 |
| **Meals** | $193.53 |
| **Messenger** | $104.94 |
| **Offsite Storage** | $1,850.74 |
| **Online Research** | $174.80 |
| **Photocopies** | $598.40 |
| **Postage** | $9.77 |
| **Telephone** | $1,656.57 |
| **Transcription Service** | $523.42 |

| Travel & Transportation | $187.40 |
|---|---|
| Westlaw | $497.64 |

I respectfully recommend that this Court reimburse Lead Counsel for all of the foregoing expenses.  See In re Sterling Foster, 238 F. Supp. 2d at 490 ("Class Counsel are entitled to reimbursement for reasonable litigation expenses." (citing Miltland Raleigh-Durham, 840 F. Supp. at 239)).

*Special Master Fees and Expenses*

Lastly, Lead Counsel seeks reimbursement of $42,087.98 in Special Master fees and expenses.

On November 14, 2006, this Court entered an order regarding, among other things, "The Special Master's Fee Requests."  Paragraph 3 of the November 14, 2006 order stated:

> The Special Master's fee requests shall be reviewed for reasonableness by the Court on an ongoing basis.  Simultaneously with submitting a request for payment to Lead Counsel, the Special Master shall submit the request, together with a supporting affirmation and time sheets, to the Court.  Lead Counsel is authorized to pay the Special Master the amounts requested without prior approval by the Court.  Reductions in the fees requested shall not be made by the Court without affording the Special Master notice and an opportunity to be heard.  An affirmation with regard to all fee requests to date shall be filed with the Court on or before December 1, 2006.  All such submissions shall be filed *ex parte* and under seal.  Their submission will be noted on the docket sheet but they will be maintained by the Court under seal.

Consistent with this procedure, on February 6, 2007, I (1) mailed to Lead Counsel an invoice seeking payment of $42,113.88 in fees and expenses; and (2) filed a supporting affirmation and time sheet with this Court.  Lead Counsel now seeks

reimbursement of $42,087.98[9] in connection with its payment of my February 6, 2007 invoice.  I respectfully request that this Court grant Lead Counsel's request.

## CONCLUSION

For the reasons set forth above, I respectfully recommend that this Court award Lead Counsel $287,992.13 in legal fees, an amount equal to 90% of the fee award Lead Counsel has requested.  I further respectfully recommend that this Court authorize an additional payment of $1,034,453.62, consisting of payment of (1) $82,080.39 for the fees and expenses of Brown Rudnick, an amount that equals 95% of the requested fee amount of $85,605.75 plus $754.93 in expenses; (2) $203,857.83 for the fees and expenses of N & A Consulting LLC; (3) $16,469.49 for the fees and expenses of Apco Worldwide; (4) $186,496.71 for the fees and expenses of CRA International, Inc., an amount that equals 95% of the requested fee amount plus $1,282.00 in expenses; (5) $497,160.00 for the fees of Cannonade Capital LLC; (6) $6,301.22 for Lead Counsel's miscellaneous costs and expenses (FedEx, Lexis, litigation support, meals, messenger, offsite storage, online research, photocopies, postage, telephone, transcription service, travel and transportation, and Westlaw); and (7) $42,087.98 for Special Master fees and expenses.

Pursuant to Paragraph (g) of Judge Gleeson's February 17, 2004 Order, objections to the Special Master's report and recommendation must be filed within "ten business days, following service."

_____
Robin M. Wilcox

Dated: November 27, 2007
       New York, New York

---

[9] No explanation is given for the discrepancy of $25.90 between the amount billed and the amount sought in reimbursement.