```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
─────────────────────────────────────────── x
                                            :  MASTER FILE NO.
IN RE                                       :  CV-96-5238
                                            :  (E.D.N.Y)
VISA CHECK/MASTERMONEY ANTITRUST            :  (Gleeson, J.)
LITIGATION                                  :
─────────────────────────────────────────── x
This Document Relates To                    :
All Actions                                 :
                                            :
─────────────────────────────────────────── x
```

## DECLARATION OF DAVID A. CACE
## IN SUPPORT OF FEE APPLICATION

I, David A. Cace, under penalty of perjury under the laws of the United States of America, declare as follows:

1. I am a Partner in the accounting firm of Eisner LLP, and the Partner In-Charge of the In re Visa Check Master Money Antitrust Litigation engagement. The work performed by Eisner LLP in this engagement has been performed under my supervision. It has been conducted effectively, efficiently, and economically, and to avoid unnecessary expenditures of time and expense. I submit this Declaration in support of Eisner LLP's Fee Application in connection with Eisner LLP's services rendered in the In re Visa Check Master Money Antitrust Litigation for the period February 13, 2007 to October 10, 2007.

    The factual matters set forth below and the assertions made herein are true and correct to the best of my knowledge, information and belief.

INTRODUCTION

2. In connection with the In re Visa Check Master Money Antitrust Litigation (or the "Litigation") Eisner LLP ("Eisner") was appointed by the Honorable John Gleeson of the United States District Court, Eastern District of New York (the "Court") to perform an audit, as that word is generally understood, of the professional fees and project expenses billed by

    The Garden City Group, Inc. ("GCG") during the period May 1, 2003 through September 30, 2006, in fulfilling its duties and responsibilities as Claims Administrator in the Litigation. In this regard, GCG is responsible for supporting the amounts billed in the Litigation in the performance of its claims administration services.

3. Eisner's report on applying agreed-upon procedures to the professional fees and project expenses billed by GCG in connection with the In re Visa Check Master Money Antitrust Litigation during the period May 1, 2003 through September 30, 2006 was delivered to the offices of Constantine Cannon LLP, Lead Counsel, on October 10, 2007. The agreed-upon procedures engagement was conducted, and the agreed-upon procedures report was prepared, in accordance with attestation standards established by the American Institute of Certified Public Accountants.

BACKGROUND

4. Eisner's first meeting at Constantine Cannon LLP was with Lloyd Constantine and Jeffrey Shinder and took place on December 7, 2006. Based on that initial meeting, Eisner submitted a proposal to Constantine Cannon on December 14, 2006. On January 22, 2007, Eisner had a follow-up meeting with Stacey Anne Mahoney of Constantine Cannon and Special Master Robin Wilcox (collectively "Counsel"). On February 12, 2007, Eisner was informed by Ms. Mahoney that Eisner had been appointed by the Court. The time incurred by Eisner during this period is not included in Eisner's application for fees.

5. After a review of documents received from GCG on February 13 and 14, 2007, Eisner's first on-site meeting with GCG took place on February 15, 2007. The objective of obtaining specific information regarding GCG's processes and procedures for capturing billing data for the invoicing of its services as Claims Administrator in the Litigation was to prepare a

Statement of Work to be reviewed by Counsel which in turn would be submitted to the Court for approval.

6. During this phase of the engagement a question arose as to whether to include "Pre-Administrative" or "Phase I" costs of $8,589,408.57 in the scope of costs. On March 2, Eisner was informed by Counsel that Phase I costs were to be included in the scope of Eisner's procedures. The inclusion of Phase I costs brought the total amount of costs to be included in the scope of Eisner's procedures to $40,831,298.96. Eisner revisited with GCG to obtain additional information regarding GCG's processes and procedures related to billing for Phase I and expanded its proposed procedures accordingly to include Phase I fees and expenses in its Statement of Work.

7. Based on the above and other meetings and interviews with personnel from GCG, Eisner obtained a sufficient understanding of how GCG specifically accumulated its costs and prepared its invoices in the Litigation and Eisner submitted a Statement of Work on March 19, 2007 to Counsel, which in turn was submitted by Counsel to the Court, proposing the performance of certain procedures that would achieve the Court's objective of assessing the reasonableness of GCG's billings in the Litigation. These proposed procedures were accepted by the Court on March 28, 2007.

8. These procedures were then further elaborated in subsequent discussions with Counsel as the engagement progressed and such procedures represent the procedures agreed to by Counsel solely to assist the Court in its assessment of the reasonableness of GCG's billings. These agreed-upon procedures were conducted, and the resulting agreed-upon procedures report was prepared, in accordance with attestation standards established by the American Institute of Certified Public Accountants.

9. Eisner began performing the agreed-upon procedures at GCG's offices on April 4, 2007 and the results of the performance of these agreed-upon procedures culminated in an initial draft report that was presented to Counsel on May 7, 2007. Based on the May 7th meeting, Counsel had some follow-up questions regarding GCG's billing processes and procedures and asked Eisner to perform some additional procedures to address their questions. In response to these questions and procedures, GCG significantly expanded the representations it wanted to include in the final report regarding its billing processes and procedures and the "discounts" that they provided in billing for its services in the Litigation. A draft report, significantly expanded from that presented on May 7, 2007, was presented to counsel on July 31, 2007.

10. Counsel had some final questions based on the July 31, 2007 draft report and GCG made some additional final representations requiring further verification by Eisner. Eisner's report was then finalized and subjected to Eisner's quality control review procedures. Eisner's seventy-six (76) page final report (with Exhibits and Appendices) on applying agreed-upon procedures to the professional fees and project expenses billed by GCG in connection with the In re Visa Check Master Money Antitrust Litigation during the period May 1, 2003 through September 30, 2006 was delivered to the offices of Constantine Cannon LLP on October 10, 2007.

EISNER'S PROCEDURES

11. The agreed-upon procedures performed by Eisner were extensive and involved a significant undertaking. Such procedures are detailed in Eisner's seventy-six (76) page final report with accompanying Exhibits and Appendices. Eisner's agreed-upon procedures involved examining every professional fee and project expense category in excess of 1% of the total amount invoiced by GCG in the In re Visa Check Master Money Antitrust Litigation during the period May 1, 2003 through September 30, 2006. Such professional fees and project expenses

subjected to the agreed-upon procedures totaled $39,628,325.69 of the $40,831,298.96 amount billed in the Litigation by GCG during the period May 1, 2003 to September 30, 2006, or 97%.

12. The basis for GCG's invoices submitted to the Court are the books, records (including supporting vendor invoices, as applicable), systems, schedules, etc. maintained by GCG ("supporting documentation"). As more fully described in Eisner's agreed-upon procedures report, the principal agreed-upon procedure performed by Eisner was the comparison of GCG supporting documentation to GCG's invoices submitted in the Litigation covering the period May 1, 2003 through September 30, 2006. From the perspective of an agreed-upon procedures engagement conducted in accordance with attestation standards established by the American Institute of Certified Public Accountants, such comparison showed either an agreement of GCG's invoices with GCG's supporting documentation or non-agreement, i.e., a "billing difference." Moreover, the management of GCG made various assertions regarding their billings for which Eisner examined additional GCG's supporting documentation.

FINDINGS

13. In summary, the results of the agreed-upon procedures performed revealed that the net effect of the actual billing errors found in GCG's invoices in the Litigation were $16,308.70, representing approximately 0.04% of the total amount invoiced of $40,831,298.96. There were eight (8) instances of overbilling by GCG ($40,333.26) and four (4) instances of underbilling by GCG ($24,024.56). The largest billing error noted was an $18,406.75 overbilling in processing claims and deficiency responses (total amount billed for this category: $3,010.093.50). The smallest error was for $0.95 for check printing (total amount billed for this category: $492,104.75).

14. Moreover, GCG's management represented to Eisner that GCG voluntarily made a unilateral decision to not bill for certain costs that it could have under its agreement with Counsel;

5

referred to by GCG as "discounts." More specifically, GCG's management represented that it was entitled to bill an additional $3,366,286.19 but did not, even though its supporting documentation reflected this additional amount. Of this amount, GCG's management represented that it voluntarily reduced agreed-upon billing rates by $2,706,202.84 in total. In this regard, Eisner was able to verify that the rates actually charged for these items were less than the rates quoted in GCG's Pricing Proposal.

15. With respect to the remaining $660,083.35, GCG's management represented that it voluntarily did not bill for certain professional hours and production volumes that it could have under its agreements with Counsel in the *Litigation*.

16. No procedures can be objectively performed regarding GCG's representations that these were voluntary reductions to the charges, however, Eisner can state that the agreed-upon comparison procedures performed revealed that in the expense categories noted, GCG billed less than the underlying amounts reflected in its supporting documentation.

17. The agreed-upon procedures performed by Eisner and the related documents and materials examined and prepared in support thereof were documented by Eisner staff for its own supporting work papers. The work papers prepared by Eisner staff supporting the procedures it performed regarding each professional fee and project expense examined within each category, and every assertion made by the management of GCG, were reviewed by Eisner managers, including a Quality Control Manager, and such work papers were further selectively reviewed by the Eisner Partner In-Charge of the engagement. Eisner's in-house quality control standards also require an independent Partner review of Eisner's report by a Partner not associated with the engagement.

6

FEES AND EXPENSES

18. The following is a summary of Eisner's time charges invoiced at the hourly billing rates specified in Eisner's proposal dated December 14, 2006 for the work described above. Eisner's time and expenses are accumulated in a commercially available time and expense reporting system. The time included in this Fee Application is from February 13, 2007, the first day of receipt of GCG documents after notification by Counsel that Eisner had been appointed by the Court on February 12, 2007, through the delivery of Eisner's agreed-upon procedures report to Counsel on October 10, 2007.

Rates Per Eisner's Proposal Dated December 14, 2006:

| | |
|---|---|
| David Cace | $475 |
| Victor Albanese | $400 |
| Nicholas Sheridan | $280 |
| Staff | $150-$250 |
| Other Partners, Principals, and Directors | $400-$500 |
| Other Managers | $260-$390 |

| Professional Personnel | # of Hours | Amount |
|---|---|---|
| David Cace, Engagement Partner | 100.50 | $ 47,737.50 |
| Aaron Kaisner, Quality Control Partner | 11.50 | 5,462.50 |
| Victor Albanese, Engagement Director | 275.50 | 110,200.00 |
| Robin Cramer, Quality Control Manager | 17.00 | 5,695.00 |
| Nicholas Sheridan, Engagement Manager | 349.25 | 97,790.00 |
| Staff – Yiping Wu | 457.25 | 91,450.00 |
| Staff – Elcida Salguero | 22.00 | 3,960.00 |
| Other | 1.50 | 120.00 |
| Sub Total | 1,234.50 | $362,415.00 |
| Expenses (principally travel) | | 2,977.30 |
| Total Fees and Expenses | | $365,392.30 |

Copies of Eisner's invoices, which detail the services rendered, by person and by date, are attached as Exhibit A.

7

The time expended by Eisner relating to the preparation of this Fee Application is not included in Eisner's application for fees.

19. Eisner respectfully asks the Court for an order authorizing the payment of our fees and expenses, totaling $365,392.30.

I declare, under penalty of perjury, that the foregoing is true and correct.

Dated: New York, New York

November 29, 2007

_____
David A. Cace