UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------x

IN RE VISA CHECK/MASTERMONEY                    MASTER FILE NO. CV-96-5238
ANTITRUST LITIGATION                            (Gleeson, J.) (Mann, M.J.)

-----------------------------------------------------x

### REPORT AND RECOMMENDATION

In this antitrust action, a class of approximately five million merchants alleged,
among other things, that defendants Visa U.S.A. Inc. ("Visa") and MasterCard
International Incorporated ("MasterCard") were illegally tying their debit products to
their credit cards, in violation of the Sherman Act. On June 4, 2003, the plaintiffs entered
into preliminary settlement agreements with the defendants, agreements that provided,
among other things, for the creation of a $3.05 billion settlement fund. By Opinion and
Order dated December 19, 2003, the Honorable John Gleeson approved both settlements
(collectively, the "Settlement Agreements"), awarded Class Counsel $220,290,160.44 in
attorneys' fees, and authorized reimbursement of costs in the amount of $18,716,511.44.
See In re: Visa Check/MasterMoney Antitrust Litigation, 297 F. Supp. 2d 503 (E.D.N.Y.
2003), aff'd, 396 F.3d 96 (2d Cir. 2005).

By Order dated February 17, 2004, Judge Gleeson appointed me Special Master
to issue reports and recommendations regarding referred disputes arising out of or
relating to the Visa and MasterCard Settlement Agreements. By Order dated September
8, 2004, Judge Gleeson referred to me for report and recommendation "any applications
for reimbursement of fees, costs and expenses incurred by plaintiffs' co-lead counsel,
Constantine & Partners and Hagens Berman, in administering the Visa Settlement and the
MasterCard Settlement."

On December 12, 2007, Jeffrey I. Shinder, Esq., managing partner of Constantine Cannon LLP (hereinafter "Lead Counsel") submitted a Declaration in support of Lead Counsel's "application for an award of attorneys' fees billed in connection with services rendered to the Class . . . from July 2007 through September 2007, and for the reimbursement of costs and expenses incurred by the Class during that same time period." Declaration of Jeffrey I. Shinder in Support of Supplemental Application for Fees and Reimbursement of Costs and Expenses ("Shinder Declaration") ¶ 1. Lead Counsel's Fee Petition requests an award of legal fees in the amount of $56,595.00 and reimbursement of costs and expenses in the amount of $220,315.64. Id. ¶¶ 5, 8.

For the reasons set forth below, I respectfully recommend that this Court award Lead Counsel $50,935.50 in legal fees, an amount equal to 90% of the fee award Lead Counsel has requested. I further respectfully recommend that this Court authorize an additional payment of $220,315.64, consisting of payment of (1) $4,741.98 for the fees and expenses of the law firm of Brown Rudnick Berlack Israels LLP ("Brown Rudnick"); (2) $69,750.00 for the fees of the Orrick law firm; (3) $54,721.31 for the fees and expenses of CRA International, Inc. ("CRA"); (4) $30,297.45 for the fees and expenses of N & A Consulting LLC ("Noblett"); (5) $59,840.00 for the fees of Cannonade Capital LLC ("Cannonade"); and (6) $964.90 for Lead Counsel's miscellaneous costs and expenses (FedEx, photocopies, messenger service, offsite storage, online database research, postage and telephone).

## BACKGROUND

In a complaint filed on October 5, 1996, the named plaintiffs "alleged that the defendants' practice of requiring merchants who accepted defendants' credit cards to also

accept their debit products . . . was an illegal tying arrangement, in violation of section 1 [of the Sherman Act]." In re: Visa Check/MasterMoney Antitrust Litigation, 297 F. Supp. 2d 503, 507 (E.D.N.Y. 2003). They "further alleged that, through these tying arrangements and other anticompetitive conduct, the defendants attempted to monopolize the debit card market, in violation of section 2 [of the Sherman Act]." Id. This Court certified the Class by Order dated February 22, 2000. Id. The Second Circuit affirmed on October 17, 2001. Id. at 507-08.

After motion practice, and on the brink of trial, the plaintiffs entered into preliminary settlement agreements with each of the defendants. Id. at 508. These Settlement Agreements provided, among other things, for "the creation of a $3.05 billion settlement fund." Id. at 508. With respect to the question of attorneys' fees, the Settlement Agreements stated, among other things, as follows:

> On or before August 18, 2003, Plaintiffs' Co-Lead Counsel shall file a Fee and Expense Application for distribution from the Gross Settlement Fund of a Fee Award consisting of an award of Plaintiffs' attorneys' fees and reimbursement of costs and expenses. Plaintiffs' Co-Lead Counsel reserves the right to make additional applications for fees, costs, and expenses incurred in obtaining Final Settlement Approval and administering the Settlement.

Visa Settlement Agreement ¶ 14; see also MasterCard Settlement Agreement ¶ 14 (same).

Notice of the Settlement Agreements was mailed to Class Members. That notice, which was dated June 13, 2003, stated (among other things):

> [O]n August 18, 2003, Class Counsel will file a petition for payment of attorneys' fees, costs and expenses, and may, from time to time thereafter, petition the Court for reimbursement of fees, costs and expenses from the Settlement Funds, including fees incurred by Class Counsel and the Administrator while providing Notice to the Class and

while administering the Settlement Funds (including the plan of allocation and distribution).

June 13, 2003 Notice ¶ 17.

On August 18, 2003, Lead Counsel sought this Court's approval of the Settlement Agreements and plan of allocation. Visa Check/MasterMoney, 297 F. Supp. 2d at 506-07. Lead Counsel also sought an award of attorneys' fees in the amount of $609 million and reimbursement of expenses. Id. On September 25, 2003, this Court "held a fairness hearing in [the] ceremonial courtroom to hear arguments of th[e Objectors] and any others that might be raised." Id. at 509. On December 19, 2003, this Court issued an Opinion and Order approving the Settlement Agreements, awarding Class Counsel $220,290,160.33 in attorneys' fees, and authorizing the reimbursement of costs in the amount of $18,716,511.44. See id. at 526, aff'd, 396 F.3d 96 (2d Cir. 2005).

On February 17, 2004, this Court appointed me Special Master to issue reports and recommendations regarding referred disputes arising out of or relating to the Visa and MasterCard Settlement Agreements. By Order dated September 8, 2004, this Court referred to me for report and recommendation "any applications for reimbursement of fees, costs and expenses incurred by plaintiffs' co-lead counsel, Constantine & Partners and Hagens Berman, in administering the Visa Settlement and the MasterCard Settlement." By order dated February 9, 2005, this Court ordered Lead Counsel to publish the details of all supplemental requests for reimbursement of fees and expenses on the webpage that is dedicated to this litigation.

By order dated November 14, 2006, this Court required Lead Counsel, in advance of future fee applications, to submit a budget to me "setting forth [Lead Counsel's] expected fees and disbursements." By letter to this Court dated December 29, 2006, I

directed Lead Counsel to submit fee applications on an annual basis, as well as an annual budget. By letter dated October 10, 2007, Lead Counsel requested a "modification of [the] December 29, 2006 Order requiring that all fee submissions . . . be made on a yearly basis." Lead Counsel requested "the right to make quarterly petitions to the Special Master" instead. This Court granted the request.

By letter dated October 10, 2007, Mr. Shinder provided Lead Counsel's Projected Budget for the period July 2007 through June 2008. See Ex. A to Oct. 10, 2007 Ltr. from Jeffrey Shinder, Esq. to Special Master Robin Wilcox ("Projected Budget"). The Projected Budget anticipated the following fees and expenses for the period July 2007 through June 2008:

| SOURCE | PROJECTED AMOUNT |
|---|---|
| **Constantine Cannon Fees** | **$200,000** |
| **Counsel**<br>    Brown Rudnick | **$500,000-$700,000** |
| **Consulting**<br>    CRA International, Inc.<br>    N & A Consulting LLC<br>    Apco Worldwide<br>    Cannonade Capital LLC<br>**Consulting Total** | $219,000<br>$117,773<br>$15,000<br>$175,000 - $225,000<br>**$526,773 - $576,773** |
| **Miscellaneous Expenses** | **$50,000** |
| **Total** | **$1,276,773 - $1,526,773** |

On December 12, 2007, Jeffrey I. Shinder, Esq., managing partner of Constantine Cannon, P.C. (hereinafter "Lead Counsel") submitted a Declaration in support of Lead Counsel's "application for an award of attorneys' fees billed in connection with services

rendered to the Class . . . from July 2007 through September 2007, and for the

reimbursement of costs and expenses incurred by the Class during the same time period."

Shinder Declaration ¶ 1.[1]  The fees and expenses for which Lead Counsel seeks payment

fall into the following categories (id. ¶¶ 5, 7):

| SOURCE | AMOUNT | |
|---|---|---|
| **Constantine Cannon Fees** | | **$56,595.00** |
| **Counsel** | | |
| Brown Rudnick | $4,741.98 | |
| Orrick | $69,750.00 | |
| | | **$74,491.98** |
| **Consulting** | | |
| CRA International, Inc. | $54,721.31 | |
| N & A Consulting LLC | $30,279.45 | |
| Cannonade Capital LLC | $59,840.00 | |
| **Consulting Total** | | **$144,858.76** |
| **Miscellaneous Expenses** | | |
| FedEx | $122.93 | |
| Photocopies | $148.10 | |
| Messenger Service | $23.32 | |
| Offsite Storage | $451.60 | |
| Online Database Research | $11.04 | |
| Postage | $1.72 | |
| Telephone | $206.19 | |
| | | **$964.90** |

---

[1] Mr. Shinder's declaration stated that, "on or about December 12, 2007," "Lead Counsel [would] post [his] Declaration . . . on the case website, www.inrevisacheckmastermoneyantitrust litigation.com."  Shinder Declaration ¶ 53.

## ANALYSIS

*Lead Counsel's Legal Fees*

Lead Counsel seeks a fee award of $56,595.00 for a total of 136.75 attorney and paralegal hours that it devoted to this litigation from July 2007 through September 2007. Shinder Declaration ¶ 5. According to Mr. Shinder, the work for which Lead Counsel seeks a fee award "included efforts dedicated primarily to administering the claims process and the distribution of the Settlement Funds to Class Members (including handling Class Member appeals and disputes, and working with and overseeing the efforts of the Claims Administrator, The Garden City Group, regarding Class Member challenges and the upcoming payment distribution); preparing for the impending PIN debit claims process; investing and preparing the groundwork for securitizing the Settlement Funds (including continued extensive discussions with the underwriters, Bear Stearns & Co. Inc. and Deutsche Bank Securities Inc., the underwriters' counsel, and MasterCard executives, concerning the extent of the cooperation that MasterCard can and should provide to the securitization); ensuring compliance with the Settlement Agreements; and liasing with the Special Master and the Court-appointed auditor, Eisner LLP, regarding the recent Court-ordered audit of The Garden City Group." Id. ¶ 4.[2]

In my opinion, the above-described efforts provided a significant benefit to the Class. I therefore respectfully recommend that this Court find that Lead Counsel is entitled to an award of reasonable attorneys' fees for this time period. See Goldberger v. Integrated Resources, Inc., 209 F.3d 43, 47 (2d Cir. 2000) (noting that, in common fund

---

[2] Lead Counsel asserts that, "[u]sing the criteria that Lead Counsel and its outside auditor used in conjunction with the August 18, 2003 Petition for Fees and Reimbursement for Costs and Expenses, [Lead Counsel] audited Constantine Cannon's time records for the July 2007-September 2007 period," and, as a result of the audit, "cut fees in the amount of $408.75, which reflects a total deduction of 1.00 hour." Shinder Declaration ¶ 7.

cases, "the attorneys whose efforts created the fund are entitled to a reasonable fee – set by the court – to be taken from the fund" in order to "prevent[] unjust enrichment of those benefiting from a lawsuit without contributing to its cost"); Olick v. Parker & Parsley Petroleum Co., 145 F.3d 513, 516 (2d Cir. 1998) (district court did not abuse its discretion by granting class counsel's supplemental fee request for time spent defending settlement).

Assuming this Court agrees with my recommendation, the next inquiry regards the reasonableness of the requested amount.

Lead Counsel's fee request employs the lodestar method, pursuant to which the district court "'scrutinizes the fee petition to ascertain the number of hours reasonably billed and then multiplies the figure by an appropriate hourly rate.'" In re Independent Energy Holdings PLC Securities Litigation, No. 00 Civ. 6689 SAS, 2003 WL 22801724, at *1 (S.D.N.Y. Nov. 24, 2003) (quoting Goldberger, 209 F.3d at 47). "[T]he key consideration in awarding fees is what is reasonable under the circumstances." Visa Check/MasterMoney, 297 F. Supp. 2d at 521. When calculating a reasonable fee, the district court is obliged "to act as a 'fiduciary . . . a guardian of the rights of absent class members." Id. (quoting City of Detroit v. Grinnell Corp., 560 F.2d 1093, 1099 (2d Cir.1977)).

The first inquiry is whether Lead Counsel billed a reasonable number of hours in furtherance of its efforts on behalf of the Class during this time period. As stated, Lead Counsel seeks reimbursement for 136.75 attorney and paralegal hours billed from July 2007 to September 2007 – the approximate equivalent of one professional spending approximately one-quarter of his or her time on the case for that three-month period. Mr.

- 8 -

Shinder asserts: "The work performed by our attorneys and staff has been largely under my supervision. It has been conducted effectively, efficiently, and economically, and to avoid unnecessary expenditures of time and expense." Shinder Declaration ¶ 4.

In my opinion, a total of 136.75 hours is not an unreasonable amount of time to devote to the at times complex tasks that Lead Counsel undertook on behalf of the class during this time period.

The second inquiry concerns the hourly rates requested by Lead Counsel. Case law requires that this Court apply hourly rates that are "in line with those [rates] prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." Luciano v. Olsten Corp., 109 F.3d 111, 116 (2d Cir. 1997) (internal quotation marks omitted). "It is well-established that the 'prevailing community' the district court should consider . . . is the 'district in which the court sits.'" Id.; see also New Leadership Committee v. Davidson, 23 F. Supp. 2d 301, 304 (E.D.N.Y. 1998). "The burden is on the applicant to produce satisfactory evidence in addition to the attorney's own affidavits showing that the requested rates are at the prevailing market level." Paulino v. Upper West Side Parking Garage, Inc., No. 96 Civ. 4910, 1999 WL 325363, at *3 (S.D.N.Y. May 20, 1999) (citing Blum v. Stenson, 465 U.S. 886, 896 n. 11 (1984)); see also New Leadership Committee, 23 F. Supp. 2d at 304 (declining to consider affidavits supporting requested hourly rate where parties submitted such evidence for the first time in objecting to Magistrate Judge's report and recommendation). "The court may also look to attorneys' fees granted in other cases and rely on its own knowledge of similar cases to determine a reasonable rate." Paulino, 1999 WL 325363, at *3.

Lead Counsel requests hourly attorney rates ranging from $345 (Michelle Peters, Esq.'s hourly rate for 2007) to $600 (the hourly rate of Robert Begleiter, Esq., for 2007) and hourly paralegal rates of $125.  Shinder Declaration ¶ 5.  Case law makes clear that these hourly rates fall at the high end of the billing rate spectrum.  See In re Independent Energy Holdings, 2003 WL 22244676, at *9 (partner rates ranging from $650 to $695 and associate rates ranging from $300 to $425 are "high" but "not extraordinary"); Moon v. Gab Kwon, No. 99 Civ. 11810 (GEL), 2002 WL 31512816, at *2 (S.D.N.Y. Nov. 8, 2002) (hourly paralegal rate of $100); Marathon Ashland Petroleum, No. 00 Civ. 2935 JSMKNF, 2003 WL 21355216, at *2 (S.D.N.Y. June 10, 2003) ($99 per hour for paralegal work).

The question is whether, when the number of hours for which Lead Counsel seeks compensation is combined with the hourly rates requested by Lead Counsel – which, as stated above, fall at the high end of the billing rate spectrum – the resulting fee request is higher than is reasonable under the circumstances.  In my opinion, it is.  As I have done in prior Reports and Recommendations, I therefore respectfully recommend that this Court reduce Lead Counsel's fee by 10%.  See Wal-Mart Stores, Inc. v. Visa U.S.A., Inc., 396 F.3d 96, 124 (2d Cir. 2005) ("In approving the district court's fee award, we recognize the sacrifice and commitment plaintiffs' counsel made to its clients *while preserving as much as possible for those who were harmed.*" (emphasis added)); New York State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1146 (2d Cir. 1983) (noting that various courts "have endorsed percentage cuts as a practical means of trimming fat from a fee application").

In my opinion, the six Goldberger factors support such a result. See Wal-Mart
Stores, 396 F.3d at 121 ("[T]he 'Goldberger factors' ultimately determine the
reasonableness of a common fund fee."). These factors include:

> (1) the time and labor expended by counsel;
>
> (2) the magnitude and complexities of the litigation;
>
> (3) the risk of the litigation . . . .;
>
> (4) the quality of representation;
>
> (5) the requested fee in relation to the settlement; and
>
> (6) public policy considerations.

Id. (citing Goldberger, 209 F.3d at 50).

In my opinion, the first, second, fourth and sixth Goldberger factors – the time
and labor expended by counsel, the magnitude and complexity of the litigation, the
quality of the representation, and public policy considerations – weigh in favor of a
significant award. Lead Counsel, a skilled and reputable law firm, devoted a significant
number of hours to representing the class' interests during this time period. In addition,
the tasks that Lead Counsel undertook were clearly complex. Finally, there is, in my
opinion, "commendable sentiment in favor of providing lawyers with sufficient
incentive" to zealously advocate for the interests of class members even after the class
action has settled. See Goldberger, 209 F.3d at 51.

However, the remaining two Goldberger factors – the risk of litigation and the
relationship of the fee to the settlement – weigh in favor of ordering a 10% reduction to
Lead Counsel's fee request. I do not believe that there is or was a significant risk that
Lead Counsel might not be compensated for its efforts on behalf of the Class. In

addition, although the results that Lead Counsel has obtained on behalf of the Class have

been significant, so, too, was Lead Counsel's initial fee award.

For the reasons described above, I respectfully recommend that this Court award

Lead Counsel $50,935.50 in legal fees, an amount that is the equivalent of 90% of the fee

award Lead Counsel has requested.

*Brown Rudnick*

Lead Counsel also seeks payment of $4,741.98 for legal fees and expenses of the

law firm of Brown Rudnick for work that firm performed and expenses that firm incurred

in connection with this litigation from July 1, 2007 through September 30, 2007. Id. ¶

40. Mr. Shinder explains (id. ¶¶ 39-41 (footnote omitted)):

> Brown Rudnick was [initially] retained by Lead Counsel on
> behalf of the Class on January 27, 2006, to represent the
> class as 'Issuer's Counsel' in the intended securitization of
> the payments to be made by Visa and MasterCard.
>
> During the July 2007-September 2007 period,
> Brown Rudnick met with Lead Counsel, Cannonade, the
> underwriters and their counsel, and MasterCard executives
> to discuss the extent of MasterCard's obligations in
> cooperating with regard to securitization; reviewed and
> edited the underwriters' affidavit regarding the specific
> information needed from MasterCard to complete the
> securitization and liased with Lead Counsel, Cannonade
> and the underwriters' counsel regarding the same; and
> reviewed and edited Lead Counsel's letter to the Special
> Master regarding the appointment of a securitization expert.
>
> Brown Rudnick has submitted invoices containing
> dated entries (by individual) for time expended, which
> descriptions of the tasks undertaken, and itemized
> expenses. Brown Rudnick expended a total of 8.80 hours
> during the July 2007-September 2007 time frame. The
> billing rates in the invoices submitted range from
> $477.00/hour to $738.00/hour, and the majority of the work
> billed was performed at a rate of $477.00/hour (6.20 hours).
> The total fees of $4,516.20 reflect the ten percent discount

- 12 -

that Lead Counsel previously negotiated with Brown
Rudnick, and that Brown Rudnick has continued to apply to
its legal fees in this representation.[3]

In my opinion, the above-described efforts provided a significant benefit to the

Class. I therefore respectfully recommend that this Court find that Lead Counsel is

entitled to reimbursement of the fees it paid to Brown Rudnick for work that firm did on

behalf of the Class from July 2007 to September 2007. See Olick v. Parker & Parsley

Petroleum Co., 145 F.3d 513, 516 (2d Cir. 1998) (district court did not abuse its

discretion by granting class counsel's supplemental fee request for time spent defending

settlement); In re Sterling Foster & Co., Inc., Sec. Litig., 238 F. Supp. 2d 480, 490

(E.D.N.Y. 2002) ("Class Counsel are entitled to reimbursement for reasonable litigation

expenses.").

The next inquiry regards amount. In my opinion, 8.80 is not an unreasonable

amount of time to devote to the tasks that Brown Rudnick undertook during this time.

The hourly rates (described above) that Brown Rudnick has charged also appear

reasonable to me. See In re Independent Energy Holdings PLC, No. 00 Civ. 6689 (SAS),

2003 WL 22244676, at *9 (S.D.N.Y. Sep. 29, 2003) (partner rates ranging from $650 to

$695 and associate rates ranging from $300 to $425 are "high" but "not extraordinary").

I therefore respectfully recommend that this Court order reimbursement of the entire

requested amount.

In my opinion, the six Goldberger factors support such a result. I believe that the

second, fourth and sixth Goldberger factors – the magnitude and complexity of the

litigation, the quality of the representation, and public policy considerations – weigh in

---

[3] Brown Rudnick also incurred $234.78 in expenses; from that, Lead Counsel deduced a $9 meal expense.
Shinder Declaration ¶¶ 41-42.

favor of a significant award. There is, in my opinion, "commendable sentiment in favor

of providing lawyers with sufficient incentive" to undertake the complex task of

competently representing the financial interests of class members once settlement has

resulted in the creation of a significant common fund. See Goldberger, 209 F.3d at 51.

The remaining three Goldberger factors do not, in my opinion, weigh in favor of a

significant award.[4] Nevertheless, as stated, Lead Counsel has negotiated a 10%

deduction in Brown Rudnick's fees. In my opinion, that reduction adequately accounts

for these factors. I therefore respectfully recommend that this Court authorize payment in

the amount of $4,741.98 for Brown Rudnick's fees and expenses.

*Orrick*

In May 2006, Lead Counsel entered into engagement agreements with

underwriters Bear Stearns and Deutsche Bank to "assess whether it is in the best interests

of the Class to securitize the Settlement Fund payments to be made by Visa and

MasterCard." This Court approved the engagement of these firms on August 29, 2006.

Id. ¶ 44.

According to Mr. Shinder, "it is customary to retain specialized counsel in

connection with securitizations." The underwriters therefore "retained Orrick as

'Underwriters' Counsel.'" Id. ¶ 45.[5] Mr. Shinder asserts that, "[p]ursuant to the Court-

---

[4] Brown Rudnick billed only 8.80 hours to this representation during this time period, which does not
evidence a significant investment of time and labor during this time period. In addition, the risk that Brown
Rudnick would not be compensated for its efforts on behalf of the Class has been and remains quite low.
Finally, Brown Rudnick's efforts on behalf of the Class – though certainly valuable – do not appear to have
extended beyond the defined issue of providing advice and support regarding the securitization of the
common fund created by the Settlement Agreement.

[5] Lead Counsel explains that, as Underwriter's Counsel:

Orrick typically advises and assists the underwriters in developing a structure for the securitization
transaction, working in conjunction with issuer's counsel (including, but not limited to, providing

approved engagement agreements with the underwriters, Lead Counsel on behalf of the

Class is responsible for all reasonable legal fees and expenses incurred by counsel in

connection with the preparation, execution and delivery of the engagement agreements;

the evaluation of the possible consummation of the securitization; and the negotiation and

preparation of documentation with respect to the securitization." Id. ¶ 46.

In this application, Lead Counsel seeks payment of $69,750.00 for Orrick's legal

fees for the period April 11, 2006 through September 20, 2007. Id. ¶ 43. "This amount

reflects the total amount billed by Orrick for work performed on behalf of the Class

during that period less a discount of ten percent that Orrick has agreed to apply to its

legal fees in this representation (as indicated on Orrick's invoice)." Id. ¶ 43.

Mr. Shinder describes Orrick's efforts during the April 2006 through September

2007 time period as follows (id. ¶¶ 48-49):

> Orrick (on behalf of the underwriters) has reviewed the
> Settlement Agreements, Plan of Allocation, Order on Final
> Approval of the Settlements, and related materials, and
> assisted in analyzing alternative structures based on its past
> experience with other settlement securitizations; assisted in
> developing a set of representations to be made by Lead
> Counsel (as the issuer) and potentially, MasterCard and
> Visa; advised the underwriters with respect to the
> requirements of "cooperation" by Visa and MasterCard in
> the context of the settlement and what would be needed in
> the securitization; advised the underwriters with respect to
> matters being undertaken by them which differ from those
> typically undertaken in securitizations (particularly relating

---

corporate, securities, tax and commercial law advice); reviewing on behalf of the underwriters the
work of issuer's counsel and others (including analyzing legal positions taken by such counsel,
reviewing documentation prepared by such counsel and similar matters); addressing any issues
particular to the underwriters (including, for example, where one or more underwriters may be
asked or required to make representations or take other actions in furtherance of the transaction);
bringing market experience to bear in assessing novel structures or asset types; negotiating
acceptable underwriting arrangements and documentation; and generally participating as members
of the working group in bringing the transaction to fruition.

Shinder Declaration ¶ 47.

to the nature of the assets and the involvement of the
court); advised the underwriters on certain strategic
considerations in connection with negotiations with Visa
and MasterCard, as well as Lead Counsel; and provided
feedback to the underwriters, Lead Counsel, and Issuer's
Counsel, Brown Rudnick, in connection with the early
stage-structuring of the transaction and similar matters.

During the April 2006-September 2007 time frame,
Orrick participated in numerous telephone and conference
calls with the various securitization participants; engaged
its litigation, tax, commercial law and corporate lawyers to
assist the underwriters in their analyses; attended meetings
with Lead Counsel and Issuer's Counsel; reviewed the
relevant documents; drafted or commented on and provided
revisions for term sheets, several sets of representations and
warranties, and letters to MasterCard, Visa, and other
parties; and spent significant time assessing and analyzing
the structural, legal and marketing issues presented by the
proposed transaction.

In my opinion, the above-described efforts provided a significant benefit to the

Class. I therefore respectfully recommend that this Court authorize the payment of fees

for work that Orrick performed on behalf of the Class from April 2006 to September

2007. See Olick v. Parker & Parsley Petroleum Co., 145 F.3d 513, 516 (2d Cir. 1998)

(district court did not abuse its discretion by granting class counsel's supplemental fee

request for time spent defending settlement); In re Sterling Foster & Co., Inc., Sec. Litig.,

238 F. Supp. 2d 480, 490 (E.D.N.Y. 2002) ("Class Counsel are entitled to reimbursement

for reasonable litigation expenses.").

The next inquiry regards amount. Lead Counsel seeks reimbursement for 121.60

hours at hourly rates ranging from $250/hour to $763.39/hour, with the "majority of the

work billed by Orrick . . . performed at rates of $508.10/hour (39.50 hours), $763.39

(38.60 hours) and $714.61 (20.80 hours)." Mr. Shinder states that, "as Orrick has

represented," these hourly rates are "in line with the rates of a firm offering the type of experience and service described above." Id. ¶ 50.

In my opinion, 121.60 is a reasonable amount of time to devote to the complex tasks that Orrick undertook during this time period. Although Orrick's hourly rates are on the high side, given the complexity of the tasks that Orrick undertook during this time period, and given that Orrick has already applied a 10% reduction to its fees, I believe that the resulting fee request is a reasonable one. I therefore respectfully recommend that this Court order reimbursement of the entire requested amount.

I believe that the second, fourth and sixth Goldberger factors – the magnitude and complexity of the litigation, the quality of the representation, and public policy considerations – weigh in favor of an award in this amount. As I state above, there is "commendable sentiment" in favor of providing competent counsel with "sufficient incentive" to undertake the complex task of competently representing the financial interests of class members once settlement has resulted in the creation of a significant common fund. See Goldberger, 209 F.3d at 51. For substantially the reasons stated with respect to the Brown Rudnick fee and expense request, I do not believe that the remaining three Goldberger factors favor a significant award. Nevertheless, as with Brown Rudnick, I believe that the 10% reduction that already has been applied to Orrick's fees adequately accounts for these factors. I therefore respectfully recommend that this Court authorize payment to Orrick in the amount of $69,750.00 for fees.

*CRA International, Inc.*

Lead Counsel also requests payment of $54,721.31 for work that CRA performed

on behalf of the Class from July 2007 through September 2007, as well as expenses billed

in connection with that work.  Shinder Declaration ¶¶ 15, 22.

According to Lead Counsel, CRA "has provided the expert economic analysis for

this Class during this case, and Lead Counsel has continued to utilize that expertise since

the Settlement Agreements were reached."  Lead Counsel asserts that "CRA has

continued to work closely with Lead Counsel regarding implementation of the Plan of

Allocation and the distribution of the Settlement Funds to the Class Members and to

perform multiple functions in connection with the Plan of Allocation and the

distribution."  Id. ¶ 16.  During the July 2007 through September 2007 time period:

> CRA has continued to work closely with the Claims Administrator to
> assist with the distribution process, by further implementing the
> transaction methodology for the PIN debit portion of the distribution
> (which CRA developed and understands well); estimating Class Members'
> PIN debit purchase volumes and distributions; and estimating credit and
> off-line debit transaction distributions.  CRA has also assisted Lead
> Counsel by performing a high-level analysis regarding the economic basis
> and rationale for securitizing the Settlement Funds.  Each of these tasks
> has been engaged in for the benefit of the Class, and Lead Counsel
> anticipates that CRA will continue to play an important role in the
> distribution.

Id. ¶ 17.

"From July 2007 through September 2007, Lead Counsel was billed $54,765.31

in expenses" by CRA.  Id. ¶ 15.  "During this time frame, CRA expended a total of

181.85 hours (constituting a deduction of 0.40 hours from the 182.24 hours that CRA set

forth in its invoices . . .) in this representation."  Id. ¶ 19.[6]  Its billing rates ranged from an

---

[6] The reduction of .40 hours – resulting in a reduction of $44 from the CRA expense request – was "for
work done in preparing invoices."  Shinder Declaration ¶ 22.

hourly rate of $110 for support staff to $565/hour for the supervisory work of Vice President Craig Romaine, with the "vast majority of the work during this period . . . performed by CRA associates/analysis (103.05 hours at a rate of $215/hour) and by Stephen Kletter, a Principal at CRA (72.30 hours at a rate of $385/hour)." Id. ¶ 19. According to Lead Counsel, Mr. Kletter's rate "reflects a discount of $45/hour below his standard hourly rate (or more than ten percent)"; the associates/analysts rate "reflects a discount of more than two percent of their standard hourly rate"; and the support staff hourly rate "reflects a discount of more than four percent." Id. ¶ 20. "CRA also incurred $1,057.56 in expenses during this time frame." Id. ¶ 21. Lead Counsel therefore seeks payment for a total of $54,721.31 for CRA's expenses. Id. ¶ 22.

Clearly, CRA's efforts provided a significant benefit to the Class. In prior Reports and Recommendations, I have expressed reservations about CRA's billing rates, which seemed high by lawyer standards. See In re Independent Energy Holdings PLC, No. 00 Civ. 6689 (SAS), 2003 WL 22244676, at *9 (S.D.N.Y. Sep. 29, 2003) (partner rate of $650/hour and associate rates ranging from $300 to $425 are "high" but "not extraordinary"). However, in connection with this application, the majority of the CRA hours for which Lead Counsel seeks reimbursement were billed at rates ranging from $215/hour to $385/hour, which do not seem unreasonable to me. For this reason, I respectfully recommend that this Court authorize payment of $54,721.31, the entire amount requested.

*N & A Consulting LLC*

Lead Counsel seeks payment of the amount of $30,297.45 for work done and

expenses incurred by Michael McCormack of N & A Consulting LLC on behalf of the

Class from July 2007 through September 2007. Shinder Declaration ¶¶ 23-24, 28.

Lead Counsel retained Mr. McCormack "to provide consultative services in

support of the Plan of Allocation." Id. ¶ 24. Before joining Noblett, "Mr. McCormack

worked in merchant acquiring for the Wells Fargo bank." At Wells Fargo, Mr.

McCormack "developed an expertise concerning the various ways that acquirers and Visa

capture and maintain merchant data" – an expertise that, according to Lead Counsel, "has

proven critical to the execution of the Plan of Allocation and continues to provide a

tremendous benefit to the Class." Id. ¶ 24. Mr. Shinder explains (id. ¶ 25):

> During the July 2007-September 2007 time frame, Mr.
> McCormack has worked extensively with CRA and PIN-debit intensive
> Class Members in verifying the transaction methodology for use in
> implementing the PIN debit portion of the distribution. He has continued
> to work with Lead Counsel and the Claims Administrator to ensure that
> each Class Member receives its optimal amount through the distribution
> process, and he has continued to work with the Visa Transactional
> Database in order to facilitate the ongoing distribution process. Mr.
> McCormack has continued to interface directly with Class Members that
> have submitted consolidated claim forms to ensure that their consolidation
> captures all of their store locations and divisions; and to undertake
> necessary research when presented by Class Members with disputed or
> complicated claims (particularly when resolution of the issues related to
> those claim would benefit from his expertise and knowledge regarding
> how acquirers capture merchant information). Each of these tasks has
> been for the benefit of the Class. Constantine Cannon anticipates that
> Noblett, through the efforts of Mr. McCormack, will continue to be an
> important part of the distribution team for the foreseeable future.

"From July 2007 through September 2007, Lead Counsel was billed $32,315.15

in expenses by N& A Consulting LLC." Id. ¶ 23. Lead Counsel nevertheless requests

payment of only $30,297.45, constituting reimbursement for 114.17 hours expended by

Mr. McCormack at an hourly billing rate of $265, plus expenses. Id. ¶¶ 19, 24. This amount reflects a $2,008.70 reduction in the amount billed "(constituting 7.58 hours) to eliminate time entries that (a) did not pertain to this case, (b) corresponded to work performed in connection with preparing invoices, or (c) were duplicative." The reductions also "eliminate $9.00 in expenses for which there was insufficient back-up." Id. ¶ 28.

Based upon Lead Counsel's description, there is, in my opinion, no question but that Mr. McCormack's efforts benefited the Class. As before, given the complicated tasks for which Lead Counsel sought Mr. McCormack's assistance, and given his prior experience, the number of hours he billed and his hourly rate seem reasonable to me. Accordingly, I respectfully recommend that this Court authorize payment of $30,297.45, the entire amount requested by Lead Counsel on behalf of Noblett. See Sterling Foster & Co., 238 F. Supp. 2d at 490 ("Class Counsel are entitled to reimbursement for reasonable litigation expenses." (citing Miltland Raleigh-Durham, 840 F. Supp. at 239)).

### Cannonade Capital LLC

Lead Counsel seeks payment of the amount of $59,840.00 for work done and expenses incurred by Cannonade on behalf of the Class from July 2007 through September 2007. Shinder Declaration ¶ 29.

According to Lead Counsel, "Joshua Slovik is the sole individual from Cannonade who has performed work on behalf of the Class." Id. ¶ 30. "The total number of hours expended by Mr. Slovik in this representation during the July 2007-September 2007 time frame was 149.60 at a rate of $400/hour throughout." Id. ¶ 33.[7]

---

[7] As stated in an earlier Report and Recommendation, Lead Counsel has asserted that, in retaining Mr. Slovik, it "analyzed the most cost effective way to compensate him for his time, consistent with the

Lead Counsel describes Mr. Slovik's efforts during this time period as follows (id.

¶ 31):

> Mr. Slovik has focused his efforts in three areas, including
> continued management of the Class's funds (including
> investing the most recently yearly payment from Visa;
> assisting in the preparation and review of the quarterly tax
> returns; and account monitoring); analysis of the financial
> impact of securitizing the future payments to the Class
> (including preparing the frame work for the analysis;
> analyzing the retailers' potential weighted average cost of
> capital; reviewing the appropriate range of discount rates;
> analyzing current market conditions; and calculating a
> range of potential proceeds to the Class); and efforts related
> to advancement of the securitization of the payments to be
> distributed to the Class (including reviewing requirements
> with the bankers and counsel; preparing and analyzing
> information required to secure [] credit ratings;
> participating in discussions with MasterCard; preparing for
> and participating in a conference call with MasterCard and
> standard & Poor's regarding MasterCard obtaining and
> maintaining a credit rating; and assisting in the preparation
> of correspondence to MasterCard's attorney and analysis of
> the impact on the securitization of different levels of
> MasterCard's cooperation.).

Based upon Lead Counsel's description, there is, in my opinion, no question but

that Mr. Slovik's efforts benefited the Class. Given the complicated tasks Lead Counsel

has relied upon Mr. Slovik to perform, the number of hours he billed and his hourly rate

---

complex and multi-faceted services he is providing on behalf of the Class and the way financial advisors
are typically compensated for services related to a complex deal such as the securitizations of the
settlement funds in this litigation." Id. ¶ 33 n.2. Lead Counsel continues (id.):

> It is our understanding that because of the uncertainties (such as changing market conditions)
> surrounding the completion of such deals, financial advisors working on a complex financing
> either are paid on a monthly retainer or via success fee, or in some cases, a combination of both.
> When charged on a monthly rate for a deal involving sums in excess of $1 billion, these fees could
> typically range between $80,000-$100,000, or approximately $1 million a year. Lead Counsel
> declined such an arrangement and instead retained Mr. Slovik on an hourly basis. As we were
> concerned about a guaranteed monthly retainer even in months in which the amount of hours
> dedicated to these transactions are not significant, we agreed instead to compensate him at $400
> per hour and provide him a success fee if and when the transactions are completed. Given this
> context, the $400 hourly rate reflected in these bills is fair and reasonable, and could be construed
> as below market for the work Mr. Slovik has performed.

seem reasonable to me.  Accordingly, I respectfully recommend that this Court authorize payment of $59,840.00, the entire amount requested by Lead Counsel for Cannonade expenses.  See Sterling Foster & Co., 238 F. Supp. 2d at 490 ("Class Counsel are entitled to reimbursement for reasonable litigation expenses." (citing Miltland Raleigh-Durham, 840 F. Supp. at 239)).

*Miscellaneous Costs and Expenses*

Lead Counsel's miscellaneous costs and expenses – a combined total of $964.90 – fall into the following categories:

| ACTIVITY | AMOUNT |
|---|---|
| **Miscellaneous Expenses** | |
| FedEx | $122.93 |
| Photocopies | $148.10 |
| Messenger Service | $23.32 |
| Offsite Storage | $451.60 |
| Online Database Research | $11.04 |
| Postage | $1.72 |
| Telephone | $206.19 |

I respectfully recommend that this Court reimburse Lead Counsel for all of the foregoing expenses.  See In re Sterling Foster, 238 F. Supp. 2d at 490 ("Class Counsel are entitled to reimbursement for reasonable litigation expenses." (citing Miltland Raleigh-Durham, 840 F. Supp. at 239)).

**CONCLUSION**

For the reasons set forth above, I respectfully recommend that this Court award Lead Counsel $50,935.50 in legal fees, an amount equal to 90% of the fee award Lead Counsel has requested.  I further respectfully recommend that this Court authorize an

additional payment of $220,315.64, consisting of payment of (1) $4,741.98 for the fees

and expenses of Brown Rudnick; (2) $69,750.00 for the fees of the Orrick law firm; (3)

$30,297.45 for the fees and expenses of N & A Consulting LLC; (4) $54,721.31 for the

fees and expenses of CRA International, Inc.; (5) $59,840.00 for the fees of Cannonade

Capital LLC; and (6) $964.90 for Lead Counsel's miscellaneous costs and expenses

(FedEx, photocopies, messenger service, offsite storage, online database research,

postage and telephone).

Pursuant to Paragraph (g) of Judge Gleeson's February 17, 2004 Order, objections

to the Special Master's report and recommendation must be filed within "ten business

days, following service."

Robin M. Wilcox

Dated: March 4, 2008
         New York, New York

- 24 -