CONSTANTINE | CANNON

NEW YORK | WASHINGTON

**Robert L. Begleiter**
Attorney at Law
212-350-2707
rbegleiter@constantinecannon.com

May 13, 2008

**BY ECF AND FAX**

Robin M. Wilcox
Special Master
459 Columbus Avenue, #603
New York, NY 10024

Re:   *Visa Check/MasterMoney Antitrust Litigation,* (CV-96-5238)(JG)(RLM)

Dear Special Master Wilcox:

Class Counsel submits this letter to inform the Special Master of the progress being made towards securitization of the remaining installments due to the Class from MasterCard International Incorporated ("MasterCard") under the Settlement Agreement. We have updated the Independent Expert on our progress and will continue to discuss with him all the major decisions relating to the securitization.

Class Counsel, and our advisors, are currently working to obtain a rating from Standard & Poor's ("S&P") that is close to MasterCard's current BBB+ rating (*i.e.,* investment grade). An investment grade rating will allow the securitization to be marketed to traditional investors and maximize the proceeds to the Class. The process for receiving this rating entails getting an indication from S&P that it believes the securitization is ratable, entering into an engagement letter with S&P, receiving S&P's preliminary rating, preparing and providing the deal documents to S&P and receiving S&P's final rating.

The most significant hurdle we face with S&P relates to that fact that because it has little experience with this type of transactions it is raising largely unfounded concerns about the enforceability of the settlement agreement. On that issue, S&P's initial position was that it could not rate the Securitization without receiving specific representations and warranties from MasterCard that:

- the Settlement Agreement was assignable;

- MasterCard would affirm their obligation to make the payments;

- a credit rating would be maintained by MasterCard through the life of the notes;

103738.1

CONSTANTINE | CANNON

NEW YORK | WASHINGTON

Robin M. Wilcox
May 13, 2008
Page 2

- certain of MasterCard's standard financial and operating information would be provided to investors;

- standard reporting practices would be maintained if MasterCard went private; and

- all financial information filed by MasterCard with the SEC is true and accurate (this was the most contentious issue).

After a number of high level meetings and conference calls, we were able to reach resolution of some of these issues by securing the support of S&P's corporate ratings group and by arguing that the securitization more closely resembled a corporate issuance than an asset backed security. Additionally, we were able to obtain from MasterCard the willingness to:

- provide a written acknowledgement of the assignment of the remaining settlement payments;

- provide a written affirmation of MasterCard's obligation to make certain payments under the Settlement Agreement in accordance with the terms set forth in the Agreement;

- provide reasonable cooperation to S&P to allow it to use MasterCard's corporate rating as a basis for issuing a rating on the Securitization Notes;

- either (1) maintain a credit rating with S&P or any other rating agency that is mutually acceptable to MasterCard and Class Counsel and allow such rating agency to utilize MasterCard's corporate rating for purposes of rating the securities issued in the securitization or in the event it chooses not to maintain a credit rating with S&P or a mutually agreeable rating agency, or (2) provide S&P or another rating agency that is mutually acceptable to MasterCard and Class Counsel with such financial information as is reasonable necessary to allow the agency to understand MasterCard's financial information for purposes of rating the securities issued in the securitization. The latter option is subject to the explicit representation that the information will solely be used for purposes of rating the securities issued in the securitization and will not be used for the purpose of rating MasterCard or any securities issued by MasterCard.[1]

At present, we have entered into an engagement letter with S&P and have received a

---

[1] In the January 11, 2008 letter jointly submitted to the Special Master by Class Counsel, MasterCard and Visa U.S.A., Inc. in accordance with the Court's January 2, 2008 Order requiring a report on the status of Class Counsel's efforts to securitize the MasterCard and Visa Settlement Funds, MasterCard acknowledges that it will provide such assistance.

103738.1

CONSTANTINE | CANNON

NEW YORK | WASHINGTON

Robin M. Wilcox
May 13, 2008
Page 3

follow-up list of questions that are required by S&P to develop their preliminary rating. These questions focus on four areas:

1.  **Enforcement of the Settlement Agreement under a variety of scenarios** – It is our understanding that this is the first class to attempt to securitize a Settlement Agreement. S&P is concerned about the implications and recourse in the event that MasterCard refuses to continue to make the payments (a scenario we consider unlikely). We have had a number of conference calls and provided three memoranda to S&P that cover potential appeals of the Settlement Agreement (by the Class, MasterCard or any other entity), the recourse to the Class (and investors) in the event of a payment default by MasterCard, the case law regarding default of settlement agreement and the risk of opt-outs, new government entities or new class members coming forward. These memoranda were prepared by Constantine Cannon, Orrick and Brown Rudnick.

2.  **Expenses and disbursements** – S&P's concerns relate mainly to our controls over expenses and disbursements and the impact of unforeseen expenditures. We have reviewed the controls with S&P, pointing out the requirement that expenses must be reviewed by the Special Master and be approved by the Court. Our system for disbursing funds out of the escrow accounts was also reviewed with S&P. We have assembled information regarding historical expenses and are finalizing our estimates of run rates and projected expenses associated with the Securitization. Most significantly, the structure that has been proposed (see below) will eliminate S&P's main concern; namely, that for whatever reason, certain expenses will be outstanding after the proceeds are distributed to the Class and that investors will be required to pay for those expenses.

3.  **Structure of the Transaction** – The following charts illustrate the structure of the transaction:

103738.1



Confidential

DRAFT 5/5/08

## 3. Proposed Structure At Closing

Remaining Gross Settlement Payments Due Under the Settlement Agreement [$500 MM over 5 years]

Sale

SPV, Delaware Statutory Trust (QSF)

$ Gross Proceeds

$ Gross Proceeds

Securities

Bear Stearns as Placement Agent

$ Gross Proceeds

Securities

Investors

OC Certificate

Less:
- Upfront Bond Issuance Expenses
- Administrative Expense Reserve Fund

$ Gross Proceeds

$ Gross Proceeds

Qualified Settlement Fund Escrow Account for Benefit of Class [1]

$ Proceeds Net of expenses and reserve[1]

U.S. Merchants

Un-cashed checks [1]

Payments[2]

Special Master, Ind. Expert, Other and Misc

Reserve and Continuing Expenses

Claims Administrator

Legal

Financial, Tax and Accounting

[1] After the conclusion of the receipt of payments from MasterCard, Lead Counsel will recommend to the Court to either make an additional distribution to the Class or to disburse the remaining fund in another way (i.e., a cy pres contribution). Funds from un-cashed checks can be used for unexpected expenses.
[2] Timing and amount of payments TBD by the Representatives for the Class as approved by the Court per terms of the Settlement Agreement

1



## 3. Proposed Structure After Closing

DRAFT 5/5/08

Confidential

**Remaining Gross Settlement Payments Due Under the Settlement Agreement [$500 MM over 5 years]**

$

**Qualified Settlement Fund Account**

$

**Capitalized Interest Reserve Fund Deposit**

$

**Replenishment of Administrative Expense Reserve Fund**

$

**Deposit to Payment Accounts**

Current Interest and Principal

**Investors**

Ongoing payments from Administrative Expense Reserve Fund for:
- Owner Trustee
- Indenture Trustee
- Standard & Poor's
- Annual Perfection Opinion
- Etc.

Payments[1] → **Trustee Fees**

Payments[1] → **S&P Fees**

Payments[1] → **Misc Fees**

**Qualified Settlement Fund Escrow Account for Benefit of Class**

Distributions on OC Certificate totaling $[8.4] MM and Excess Cash after Legal Final Maturity Date for Notes[2]

[1]Available for payment of annual expenses, once the Capitalized Interest Reserve Fund deposit has been made
[2]Release of any remaining amounts in the Capitalized Interest Reserve Fund and the Administrative Expense Reserve Funds to the Class, after Notes are paid in full at legal final maturity date and expenses, if any, are paid

2

CONSTANTINE | CANNON

NEW YORK | WASHINGTON

Robin M. Wilcox
May 13, 2008
Page 4

We believe this structure will achieve two main objectives.  First, the Class will be responsible for its expenses with no ability for any entity to seek compensation from investors.  Second, the structure will allow the securitization to be classified as "debt for taxes" which allows standard tax treatment to apply to the interest received by the investors.   To obtain this treatment a certain amount of "equity" must exist in the securitizing entity (the SPV).  We are seeking to minimize this amount to around 2%-3% of the total structure and to insure that the Class receives all the value of this equity.

In addition, we are structuring the securitization to pay interest on a semi-annual basis (as is standard for corporate bonds) even though the Class receives annual payments.  The concern is to ensure that any excess funds and/or reserves flow back to the Class and are not trapped for the benefit of the investors.  We are still finalizing the draft structure, term sheet and cash flow model and are planning on reviewing these with our attorneys and delivering the documents to S&P by the middle of next week.

4.    **MasterCard's willingness to provide information allowing S&P to continue to rate the Company in case MasterCard no longer maintains a credit rating** – We have drafted a letter for MasterCard and have received its approval to forward that draft to S&P.  The letter includes assurances from MasterCard that it will:  either (1) maintain a credit rating with S&P or any other rating agency that is mutually acceptable to MasterCard and Class Counsel and allow such rating agency to utilize MasterCard's corporate rating for purposes of rating the securities issued in the securitization or in the event it chooses not to maintain a credit rating with S&P or a mutually agreeable rating agency, or (2) provide S&P or another rating agency that is mutually acceptable to MasterCard and Class Counsel with such financial information as is reasonable necessary to allow the agency to understand MasterCard's financial information for purposes of rating the securities issued in the securitization. The latter option is subject to the explicit representation that the information will solely be used for purposes of rating the securities issued in the securitization and will not be used for the purpose of rating MasterCard or any securities issued by MasterCard.

S&P informed us today that it expects the underlying transaction documents to reflect the following in the event of a withdrawn rating or if MasterCard should become private during the life of this transaction:

103738.1

CONSTANTINE | CANNON

NEW YORK | WASHINGTON

Robin M. Wilcox
May 13, 2008
Page 5

1. Annual audited financial statements;

2. Quarterly financial statements;

3. Quarterly report detailing the global number and dollar amount of all credit and debit card transactions; and

4. Access to MasterCard management.

We have communicated these requirements to MasterCard today and expect to hear back from MasterCard shortly.

In addition to the above, we are:

• Detailing and allocating the responsibility for drafting the required legal documents and opinions (*i.e.,* true sale, non-consolidation etc.) we believe will be necessary between issuers counsel (Brown Rudnick) and underwriters counsel (Orrick);

• Conducting a bidding process for indenture and owners trustees; and

• Analyzing the representations and warranties that may be demanded by S&P and attempting to develop alternatives to receiving these from MasterCard (*i.e.,* receiving certain ones from Constantine Cannon and utilizing legal opinions from Brown Rudnick and Orrick.

Our advisors are having almost daily contact with S&P and are in the process of answering S&P's follow-up questions. We believe we will be able to respond to all of their questions by the end of next week. Assuming that MasterCard's language regarding maintaining

103738.1



NEW YORK | WASHINGTON

Robin M. Wilcox
May 13, 2008
Page 6


its credit rating is sufficient, we anticipate receiving S&P's preliminary rating in approximately three weeks.

      We are, of course, available should you have any questions.

Very truly yours,

Robert L. Begleiter

cc:    The Honorable John Gleeson (by fax)
        Joseph F. Tringali, Esq. (by fax)
        Robert Mason, Esq. (by fax)
        Professor Bernard Black (by e-mail)

103738.1