

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ AUG 29 2008 ★
BROOKLYN OFFICE

August 5, 2008

Honorable John Gleeson
United States District Court Eastern District of New York
225 Cadman Plaza East Brooklyn, NY 11201

*Re: In re Visa Check/MasterMoney Antitrust Litigation (CV-96-5238)*

Dear Judge Gleeson,

Pursuant to the Settlement Agreement and Plan of Allocation in the above referenced action, Toot 'n Totum Food Stores, LLC (the "Company") hereby files this appeal of Lead Counsel's denial of the Company's claim for an additional recovery based on the consolidated claim (VMC.)

The Company filed multiple VM1s which where approved and paid for a combined total of $7,218. Additionally, we filed a VMC for other corporate locations. The Claims Administrator and Lead Counsel initially approved the VMC portion of our claim for $3,213 and subsequently increased that amount by $1,707 for a total of $4,920. The Company believes that the proper recovery for all claims is $25,461, and that our resulting recovery is $13,323 short of our proper allocation.

The Company's claim #58828 combines 72 store locations, each of which was open for at least part of the claim period. However, for reasons we can not discern, the VMC erroneously omitted most of these locations. The Company therefore challenged the VMC and submitted a list of all missing locations to The Claims Administrator (Attachment A, filed November 28, 2007).

Based on this submission the Claims Administrator re-searched for our locations, and to their credit, this second, more diligent search did identify some, but by no means all, additional locations (Attachment B, dated May 15, 2008). It is the ongoing omission of valid locations that produced an estimate which grossly understates the Company's entitlement under the Settlement.

Specifically, of the 72 locations at issue 16 locations were found, but contain unexplainable gaps (missing years) in the data which do not comport with our business records which establish that the locations operated and accepted Visa and MasterCard throughout the period. Twenty-three of the locations could not be located at all, even though they were open and operating between 1997 and 2003. Additionally, 3 locations were open during the claims period, but closed prior to 1997 - the first year where records exist in the database – and thus remain unaccounted for in our estimate. The second page of Attachment A contains the complete list of locations and their status.

Our understanding was that where the database was unable to locate substantially all of a class member's operating locations; the approved fall-back approach was to calculate a recovery based on sales volume data. We are informed that this approach, or ones similar to it, has been necessary for over ten percent of class members.

Accordingly, as the Company's CFO, I provided the exact revenue figures filed with the IRS using tax form #1120 for each year in question. These figures were provided to the Claims Administrator and to Lead Counsel. I am again providing these figures for the Court's review.

| Year | Revenue |
|------|---------|
| 1992 | 57,062,124 |
| 1993 | 55,423,442 |
| 1994 | 55,221,507 |
| 1995 | 56,876,455 |
| 1996 | 73,699,067 |
| 1997 | 74,051,996 |
| 1998 | 74,204,564 |
| 1999 | 72,150,678 |
| 2000 | 81,318,206 |
| 2001 | 78,216,022 |
| 2002 | 77,137,534 |
| 2003 | 89,854,696 |

Rather than calculate the Company's recovery based on this data, Lead Counsel denied our appeal and continues to insist that the Company is only entitled to $12,138. In its letter denying our appeal Lead Counsel said that it would not use the revenue method of calculating recoveries in because the Company's appeal was "not accompanied by any supporting documentation, such as copies of tax returns." As far as we know, no consistent standard for validating revenues has been established by Lead Counsel or the Claims Administrator, and we believe and that some class some members have had their claims calculated based on stated revenue with no supporting backup whatever.

Throughout the long and draw-out process of attempting to receive a fair recovery in this case, this is the first time Lead Counsel or the Claims Administrator has raised this issue of revenue documentation. Frankly, I don't know why it was raised at such a late date. The Company has provided our actual, federally reported revenue data for all the years at issue. If the Court wishes we will be happy to search for and provide, under seal preferably, actual copies of our Federal Tax returns which will show these numbers. Or, if the Court prefers, as CFO I would be happy to attest to the accuracy of this data in the form of an affidavit, although through this letter I am already, as CFO and an Officer of the Company, attesting these figures are a true and accurate reflection of our sales as reflected in our federal tax filings.

By using the Fisher Revenue Allocation method and the tables provided by Professor Fisher, we calculated that our revenue justified a recovery of $25,461 based on the

company properly being categorized as "Convenience Store at Gas Station." Lead Counsel has neither disputed this calculation, nor provided their own calculation based on these undisputed revenue numbers.

Therefore, and with all respect, the Company asks the Court to instruct Lead Counsel to either accept the calculation provided herein, or to do its own calculation using this revenue data in order to calculate the proper recovery under the settlement. Alternatively, if the Court seeks additional evidence of the proper revenue numbers we would ask for guidance as to what documentation would suffice. We will make all efforts to comply with any such request the Court should deem appropriate.

Ultimately the Company is not asking for anything it is not entitled to. The revenue calculations establish that the recovery offered by Lead Counsel understates our proper recovery under the settlement by roughly $13,000. I ask the Court to intervene to ensure that this equitable result is reached. I appreciate the Courts attention to this matter, and stand ready to provide whatever additional information or assistance the Court may deem necessary to properly compensate Toot 'n Totum Food Stores, LLC under the Settlement.

Sincerely,

Rodger Hudson
CFO
Toot 'n Totum Food Stores LLC

Encl.
Cc: Amy Roth, David Morgenstein

| | | |
|---|---|---|
| **Must be Postmarked No Later Than December 27, 2007** | **In Re Visa Check/MasterMoney Antitrust Litigation**<br>**Claims Administrator**<br>P.O. Box 9000 #6014<br>Merrick, NY 11566-9000<br>Toll-free number: 1-888-641-4437<br>Website: www.inrevisacheckmastermoneyantitrustlitigation.com<br>Email: admin@inrevisacheckmastermoneyantitrustlitigation.com | **VMC** |

### LEAD COUNSEL FOR THE CLASS -- CONSTANTINE CANNON

Para notificación y formulos en español, llamar al 1-888-641-4437o visitar nuestra pagina
Web: www.inrevisacheckmastermoneyantitrustlitigation.com

Claim Number: **58828**

Control Number: 2803926802



SPECTRUM SETTLEMENT RECOVERY
FBO: **TOOT'N TOTUM FOOD STORES**
P.O. Box 480
SAN FRANCISCO, CA, 94104-0480

### CONSOLIDATED NOTICE OF ESTIMATED CASH PAYMENT AND CLAIM FORM

You or your company were mailed one or more Claim Forms for the Visa Check/MasterMoney Antitrust Litigation in September of 2005. Since then we have received your request to consolidate multiple claims and/or business locations and as a result you are receiving this Consolidated Claim Form.

As a Class Member you are entitled to receive a Consolidated Cash Payment which is estimated to be:

$3,213

To claim this Consolidated Cash Payment you must complete this Claim Form. If after reading this Form, and the more detailed set of Instructions enclosed, you still do not understand how to complete this Form, you can get help by calling, writing, or e-mailing the Claims Administrator, The Garden City Group, Inc., at the above toll-free number, P.O. Box or e-mail address.

All you need to do is fill out this Claim Form and file it by regular mail postmarked no later than the date indicated in the top left hand corner of this page or electronically file on the website.

If you just want to learn more about this litigation, please log on to the Claims Distribution website at: www.inrevisacheckmastermoneyantitrustlitigation.com or you can leave a message for Constantine Cannon, Lead Counsel for the Class, by calling toll-free: 1-888-641-4437.

---

[1] If, after reading this Form and the accompanying Instructions in their entirety, you DISAGREE with the Consolidated Estimated Cash Payment listed above and wish to challenge it, please check the appropriate box in section B of this Form.

## WHY YOU ARE ENTITLED TO A CASH PAYMENT

This Section briefly explains why we believe that you are entitled to a Cash Payment and why, in order to receive this payment, you must supply the information requested on this Claim Form. More detailed explanations can be found in the enclosed Instructions, as well as on the Claims Distribution website.

The **Visa Check/MasterMoney Antitrust Litigation** is a lawsuit that was filed and litigated in the United States District Court for the Eastern District of New York in Brooklyn. You or your Business or Organization is a member of the Class of plaintiffs who filed, litigated and obtained a settlement in this case. This Class includes all businesses and organizations in the United States that accepted Visa and MasterCard credit cards at any time during the period October 25, 1992 to June 21, 2003. The Class Members claimed that, through their "Honor All Cards" policies, Visa and MasterCard forced them to accept Visa and MasterCard signature debit card transactions. Visa and MasterCard's signature debit products are sometimes called **Visa Check, MasterMoney or Debit MasterCard.** The merchants also claimed that Visa and MasterCard were attempting to monopolize the debit card business in the United States.

In April 2003, just as the trial was about to begin, Visa and MasterCard settled with the plaintiffs' Class. Visa and MasterCard agreed to eliminate their "Honor All Cards" policies which required merchants that accepted their credit cards to also accept their signature debit card transactions, and prior to this untying of credit and debit they agreed to lower debit card fees for an interim period by one-third. They also agreed to re-label the **Visa Check** and **MasterMoney** debit cards with the word "Debit" on the front and agreed to do other things related to the separation and untying of debit cards from credit cards. In addition to that, Visa and MasterCard agreed to provide compensation to merchants which includes Cash Payments by Visa and MasterCard totaling $3.05 billion. This money will be distributed to you and the other Class Members after the attorney's fees, expenses and cost of notice and administration approved by the Court have been deducted.

The Court approved a plan for allocating and distributing this money to you and other Class Members. It is based on the dollar amount of Visa and MasterCard debit card and credit card transactions your Business, Organization or Corporation accepted from October 25, 1992 to July. 31,2003. Also, if you accepted debit card transactions with a PIN Pad during this same time period, an additional Cash Payment *above and beyond* the Estimated Cash Payment on Page 1 will also be paid to you. However, to receive this additional payment, you must provide the information requested in Section C below, including when you began and completed the installation of PIN Pads.

We know that it may be difficult or impossible for you to provide many details of your acceptance of debit card and credit card transactions for this long period of time beginning way back in October 1992. For that reason, we have calculated your Estimated Cash Payment, using databases which we were allowed to use for these purposes. And, for that reason, we are not requiring you to provide any documentation along with your Claim Form to prove your entitlement to a Cash Payment. Please be advised, however, that while you are not required to submit any documentation with your Claim Form, we may ask certain merchants to produce documentation to prove their entitlement to a Cash Payment. We therefore advise you to maintain documentation, such as your merchant contracts, which show when you accepted Visa and/or MasterCard payment cards, and if applicable, the transactions of any PIN debit network.

The questions which you must answer below will provide the additional information we need to send you the Cash Payment you are entitled to. In addition to basic questions about your Business or Organization, its address, telephone number, and e-mail address, among other things, the questions are designed to get you the most accurate Cash Payment from the billions of dollars to be distributed to Class Members.

## SECTION A

## CONTACT INFORMATION FOR PERSON FILLING OUT THIS FORM

1. Name and Title of Person filling out this Form:

   DONNA HART – CLIENT SERVICES MANAGER

2. Name of Business or Organization:

   SPECTRUM SETTLEMENT RECOVERY

3. Address of Business or Organization:

   P.O. BOX 480

   FBO: **TOOT'N TOTUM FOOD STORES**

4. City/State/Zip Code of Business or Organization:

   | SAN FRANCISCO, | CA, | 94104-0480 |
   |---|---|---|
   | City | State | Zip Code |

5. Work Telephone Number of Person filling out this Form:

   ( 415 ) 392-5900

6. Work E-Mail Address of Person filling out this Form:

   DHART@SPECTRUMSETTLEMENT.COM

7. Work Facsimile Number of Person filling out this Form;

   ( 415 ) 392-5901

3

## SECTION B
### INFORMATION ABOUT YOUR BUSINESS OR ORGANIZATION

8. Under what name(s) do you do business?

   **TOOT'N TOTUM FOOD STORES**

9. Does your Business or Organization have any different official name(s)? Yes [x] No [ ]

   If YES, what is/are the name(s)? **See original Consolidation Request**

10. Are you incorporated? Yes [x] No [ ]  If YES, in what State are you incorporated? [TX]

11. In what State is your principal place of business? [TX]

12. In what State is the headquarters for your Business or Organization? [TX]

13. What is your Business or Organization's Taxpayer Identification Number?

    75-0948150

14. What is your Business or Organization's Telephone Number?

    (806) 373-4351

15. What is your Business or Organization's E-mail address?

16. What is your Business or Organization's Facsimile Number?

17. What is your Business or Organization's Website address?

18. Did your Business or Organization accept Visa and/or MasterCard payment cards at any time during the period October 25, 1992 to June 21, 2003? Yes [x] No [ ]

    If you answered "YES," during what period did you accept those payment cards for payment? (For example, did you accept Visa and MasterCard payment cards "for this entire time period" or "only from January 15, 1995 through June 21, 2003"?)

    ENTIRE SETTLEMENT PERIOD

19. If you disagree with the Estimated Cash Payment on Page 1 of this Form and wish to challenge that amount, please check the box below.
    I DISAGREE [X] (Only check this box if you wish to challenge.) Please consult the accompanying instructions to learn how to submit your written challenge.

    **Please note: By checking this box, you will not receive your Cash Payment until your challenge has been determined.**

## SECTION C

**QUESTIONS FOR BUSINESSES OR ORGANIZATIONS CLAIMING AN ADDITIONAL CASH PAYMENT BASED UPON THEIR ACCEPTANCE OF DEBIT CARD TRANSACTIONS WITH A PERSONAL IDENTIFICATION NUMBER ("PIN")***

20. Did your Business or Organization have PIN Pads and accept PIN debit transactions for payment at any time during the period October 25, 1992 to July 31, 2003?

    Yes [X]   No [ ]

    If you answered "YES," please tell us when during this time period you accepted PIN debit transactions, (For example, did you accept PIN debit "for this entire time period" or "only from January 15, 1995 through July 31, 2003"?)

    | ENTIRE PERIOD |
    |---|

21. When did your Business or Organization begin installing PIN Pads?

    | PRE 1992 |
    |---|

22. When was installation of PIN Pads completed in all store locations?

    | PRE 1992 |
    |---|

*Debit transactions with a PIN can only be accepted by installing terminals, called PIN Pads, which enable merchants to accept these transactions. With a PIN debit transaction, unlike Visa/MasterCard signature debit transactions, consumers are not required to sign a sales slip at the point-of-sale. Instead they enter a Personal Identification Number (or PIN) to authenticate the transaction at the point of sale. If you have any questions regarding whether you or your business accepted PIN debit transactions, please contact the Claims Administrator toll-free at: 1-888-641-4437.

5

## SECTION D
## CERTIFICATION AND SUBSTITUTE W-9

UNDER PENALTIES OF PERJURY, I (WE) CERTIFY THAT ALL OF THE INFORMATION PROVIDED ON THIS FORM IS TRUE, CORRECT AND COMPLETE.

I (We) certify that I am (we are) NOT subject to backup withholding under the provisions of Section 3406 (a)(1)(c) of the Internal Revenue Code because: (a) I am (we are) exempt from backup withholding, or (b) I (we) have not been notified by the I.R.S. that I am (we are) subject to backup withholding as a result of a failure to report all interest or dividends, or (c) the I.R.S. has notified me (us) that I am (we are) no longer subject to backup withholding.

Please furnish your Taxpayer Identification Number (TIN). Failure to furnish your correct Taxpayer Identification Number may result in withholding of a portion of any distribution otherwise payable with respect to your claim.

NOTE: If you have been notified by the I.R.S. that you are subject to backup withholding, check this box. ☐

75-0948150                         *Donna M Hart* (signature)                    11/28/2007

Taxpayer Identification Number     Signature of Claimant/Authorized Representative     Date

If you answered the above questions, signed the Certification and Substitute W-9 Form and filed this Claim Form as directed on Page 1, you have done everything you are required to do at this time to receive your Cash Payment.

Please make a copy of your completed and signed Claim Form and retain it for your records. Please also retain any documents that show (a) the period of time that your Business or Organization accepted Visa and/or MasterCard credit card and debit card transactions, (b) you accepted debit card transactions with a PIN Pad, and (c) how many of these transactions you accepted, and/or their dollar value.

---

**IMPORTANT:** Enclosed with this Consolidated Notice of Estimated Cash Payment and Claim Form, is a more detailed set of Instructions which you can use if any of the following circumstances apply to you.

1.  You want more detailed Instructions on how to complete this Claim Form; and/or

2   You disagree with the amount of the Cash Payment we have estimated for you on Page 1 and want to dispute that estimate; and/or

   Please Note:

   You should refer to the document entitled "Methodology For Calculating Estimated Cash Payment" on the website if your Business or Organization purchased or sold store locations or purchased or sold a business or organization that is a member of the Class during the period October 1, 1996 through June 21, 2003. That document explains the information we need from you to ensure that purchased or sold locations are properly taken into account when we distribute Cash Payments to the Class.

**CLAIMANT: Toot'n Totum**
**Claim # 58828**
**Appeal/Challenge Documentation**

## BACKGROUND

Spectrum Settlement Recovery ("Spectrum") was engaged by Toot'n Totum ("Claimant") to submit its claim in the instant matter, and to follow through with any required analysis and challenges.

On Claimant's behalf, Spectrum submitted 72 locations to the Claims Administrator as part of a "Consolidation request". Each of these locations was open for at least some part of the claim period. After the VMC was received by Spectrum, most of these locations were still missing from the claim form, so Spectrum challenged the estimate and resubmitted a list of missing locations.

After the second search, more locations were represented in either the VMC or in VM1s that had not been consolidated into the VMC. However there were still locations missing in their entirety, and there were other locations which were present in the VMC or VM1s but were not fully represented for all years they were open.

Given that the data provided by the client is comprehensive and fairly detailed we believe the information should be taken on its face value regarding the missing locations.

Since so many valid MIDS were deemed "unfindable" by the Claims Administrator after extensive searching, we must conclude that there are problems in the data structures, search techniques, or other factors that are causing some of Claimant's valid MIDs to be excluded – thus resulting in an erroneously low recovery.

## SUPPORTING DATA

After the second search by the claims administrator, the disposition of the claimant's 72 locations was as follows:

- 30 Locations contain transaction volumes for the entire settlement period in the VMC or VM1s.
- 16 Locations are present in the VMC or VM1s; but had gaps in transaction volumes during years when the locations were open.
- 23 Locations were not in the VMC or VM1s even though they were open between 1997-2003.
- 3 Locations which were open during the settlement period but closed prior to 1997(the first year of data in the claims administrator's Visa Transactional Database).
  ------
- 72 Total Locations


The next 2 pages show the claimant's locations and the status of each.

## TOOT'N TOTUM LOCATIONS

| Store # | Address | City | State | ZIP | Opened | Closed | Yrs in VMC | VMC/VM1 Status |
|---|---|---|---|---|---|---|---|---|
| 1 | 1500 Washington | Amarillo | Texas | 79102 | 1992 | | 96-97 | Missing Years |
| 3 | 5409 Amar. Blvd. E. | Amarillo | Texas | 79107 | 1992 | | 96-03 | |
| 4 | 822 Georgia | Amarillo | Texas | 79106 | 1992 | | 96-01 | Missing Years |
| 5 | 1500 S. Grand | Amarillo | Texas | 79104 | 1992 | | | |
| 6 | 211 S. Western | Amarillo | Texas | 79106 | 1992 | | 96-03 | |
| 8 | 1627 N. Grand | Amarillo | Texas | 79107 | 1992 | | 96-01 | Missing Years |
| 9 | 2400 W. 46th | Amarillo | Texas | 79110 | 1992 | | 96-03 | |
| 10 | 4109 S. Western | Amarillo | Texas | 79109 | 1992 | | 96-03 | |
| 11 | 4600 S. Washington | Amarillo | Texas | 79110 | 1992 | 1995 | 96-03 | |
| 12 | 3365 S. Bell | Amarillo | Texas | 79106 | 1995 | | 96-03 | |
| 14 | 1735 S. Nelson | Amarillo | Texas | 79103 | 1992 | | 96-01 | Missing Years |
| 16 | 7230 W. 34th | Amarillo | Texas | 79109 | 1992 | | 96-03 | |
| 17 | 2601 Patterson | Amarillo | Texas | | 1992 | 1995 | | |
| 18 | 3101 Plains Blvd. | Amarillo | Texas | 79102 | 1992 | | 96-03 | |
| 19 | 3609 S. Washington | Amarillo | Texas | 79110 | 1992 | | | |
| 20 | 3310 Wimberly | Amarillo | Texas | 79109 | 1992 | | 96-03 | |
| 21 | 1300 E. 10th | Amarillo | Texas | 79102 | 1992 | | 96-03 | |
| 24 | 800 Amar. Blvd. E. | Amarillo | Texas | 79107 | 1992 | | 96-03 | |
| 25 | 3823 Amar. Blvd E. | Amarillo | Texas | | 1992 | 1997 | | |
| 26 | 2222 S. Polk | Amarillo | Texas | 79109 | 1992 | | 96-01 | Missing Years |
| 29 | 2600 Amar. Blvd. E. | Amarillo | Texas | 79107 | 1992 | | 96-01 | Missing Years |
| 31 | 2900 S. Western | Amarillo | Texas | | 1992 | 6/7/1996 | | |
| 32 | 1701 S. Eastern | Amarillo | Texas | 79104 | 1992 | | 96-01 | Missing Years |
| 33 | 2615 S. Grand | Amarillo | Texas | 79103 | 1992 | | 96-03 | |
| 34 | 2024 S. Washington | Amarillo | Texas | 79109 | 1992 | | | |
| 35 | 4224 W. 34th | Amarillo | Texas | 79109 | 1992 | | 96-01 | Missing Years |
| 38 | 2015 S. Western | Amarillo | Texas | 79106 | 1992 | | | |
| 39 | 2701 E 10th | Amarillo | Texas | | 1992 | 8/20/1997 | | |
| 40 | 1612 Georgia | Amarillo | Texas | 79102 | 1992 | | | |
| 42 | 941 S. Grand | Amarillo | Texas | | 1992 | 4/29/1999 | | |
| 43 | 3522 River Road | Amarillo | Texas | 79107 | 1992 | | 96-03 | |
| 44 | 5424 River Road | Amarillo | Texas | 79108 | 1992 | | | |
| 45 | 2604 W. 3rd | Amarillo | Texas | 79106 | 1992 | | | |
| 48 | 900 W. 10th | Amarillo | Texas | 79101 | 1992 | | 96-03 | |
| 49 | 1108 S. Bell | Amarillo | Texas | | 1992 | 2003 | | |
| 51 | 803 N. Polk | Amarillo | Texas | | 1992 | 1/28/1998 | | |
| 52 | 6698 River Road | Amarillo | Texas | 79108 | 1992 | | | |
| 54 | 3601 N.E. 24th | Amarillo | Texas | 79107 | 1992 | | 96-03 | |
| 55 | 5901 A S. Bell | Amarillo | Texas | 79109 | 1992 | | | |

| # | Address | City | State | Zip | Year | Date | Code | Notes |
|---|---|---|---|---|---|---|---|---|
| 56 | 7149 S. Bell | Amarillo | Texas | 79109 | 1992 | | | |
| 57 | 301 S. Ross | Amarillo | Texas | 79102 | 1992 | | 96-03 | |
| 58 | 1400 S. Ross | Amarillo | Texas | 79102 | 1992 | | 96-03 | |
| 59 | 3601 W. 45th | Amarillo | Texas | 79109 | 1992 | | 96-03 | |
| 60 | 1400 Amar. Blvd. E. | Amarillo | Texas | 79107 | 1992 | | 96-03 | |
| 61 | 5300 Canyon Drive | Amarillo | Texas | 79109 | 1992 | | | |
| 62 | 3701 W. 6th | Amarillo | Texas | 79106 | 1992 | | 96-01 | Missing Years |
| 63 | 4420 S. Bell | Amarillo | Texas | 79109 | 1992 | | 96-01 | Missing Years |
| 64 | 2621 Osage | Amarillo | Texas | 79103 | 1992 | | 96-03 | |
| 65 | 2500 S. Georgia | Amarillo | Texas | 79109 | 1992 | | 96-03 | |
| 66 | 7200 S.W. 45th | Amarillo | Texas | 79109 | 1992 | | | |
| 67 | 4520 S. Georgia | Amarillo | Texas | 79110 | 1992 | | 96-03 | |
| 68 | 3314 S. Washington | Amarillo | Texas | | 1992 | 8/29/1994 | | |
| 69 | 3301 Amar Blvd. E | Amarillo | Texas | | 1992 | 2004 | 96-03 | |
| 70 | 1201 Martin Road | Amarillo | Texas | | 1992 | 4/6/1999 | 96-99 | |
| 71 | 1012 Amar. Blvd. W. | Amarillo | Texas | 79107 | 1992 | | 96-03 | |
| 76 | 5041 Plains Blvd. | Amarillo | Texas | 79106 | 1992 | | | |
| 77 | 421 Tascosa Road | Amarillo | Texas | 79124 | 1992 | | 96-03 | |
| 78 | 3401 Soncy Road | Amarillo | Texas | 79121 | 1998 | | 96-03 | |
| 79 | 6802 Wolflin Ave. | Amarillo | Texas | 79106 | 2/1/1998 | | 98-03 | |
| 80 | 4501 Soncy | Amarillo | Texas | 79119 | 2002 | | | |
| 81 | 2601 Paramount | Amarillo | Texas | 79109 | 1995 | | 96-01 | Missing Years |
| 82 | 5900 Coulter | Amarillo | Texas | 79119 | 2002 | | | |
| 84 | 4041 S. Washington | Amarillo | Texas | 79110 | 1995 | | 96-01 | Missing Years |
| 85 | 4631 S. Western | Amarillo | Texas | 79109 | 1995 | | 96-01 | Missing Years |
| 86 | 1009 S. Grand | Amarillo | Texas | | 1995 | 6/6/2001 | 96-98 | Missing Years |
| 88 | 2441 S. Western | Amarillo | Texas | 79109 | 1995 | | 98-03 | |
| 89 | 1501 S. Ross | Amarillo | Texas | | 1995 | 11/21/2000 | | |
| 90 | 1600 Amar Blvd E | Amarillo | Texas | | 1995 | 11/21/2000 | | |
| 91 | 5900 W. 45th | Amarillo | Texas | | 1995 | 5/29/2004 | 96-01 | Missing Years |
| 92 | 2300 N. Dumas Drive | Amarillo | Texas | 79107 | 1995 | | | |
| 95 | 2120 S. Washington | Amarillo | Texas | 79107 | 1995 | | 01-03 | Missing Years |
| 96 | 1901 Bell | Amarillo | Texas | 79106 | 1995 | | 96-03 | |

## SUMMARY

Spectrum has no way to determine whether records are missing from the Visa Transactional Database (VTD), or are present and simply cannot be found. Given the other anomalies found by Spectrum in the VTD, Spectrum believes there is sufficient evidence to conclude that the VMC and VM1s do not include all transaction volumes for the Claimant.

As stated above, Spectrum has discovered several examples where either the VTD is understating data or the search process is flawed in some respect. Below are two examples found by Spectrum:

1) Logan's Roadhouse: The VMC estimate was $142,953. The client's own Visa/MC data was used to calculate an estimate of $335,245 which was accepted by the Claims Administrator. In this case, the Claims Administrator acknowledged that the VMC understated the correct award amount by 57%.

2) Diamond Triumph: In the original consolidation request 290 MID/locations were sent in -- 146 were found but 144 were not found. The same 144 missing MID/locations (plus 2 newly found MID/locations) were sent in as part of a subsequent challenge. In that Challenge the Claims Administrator located 74 of the missing MID/locations, leaving 70 MID/locations still missing. These same 70 MID/locations were sent in as part of a third challenge and this time the Claims Administrator located 66 of the 70 missing MID/locations.

The documentation we provided and the outcome in these cases demonstrates that in rare cases the Claims Administrator has been unable to locate and/or match complete transaction volumes for a given class member. The only difference in this Appeal is that the class member does not have access to the same level of records to substantiate a higher award. This unfortunate reality has been confirmed by the Amended Plan of Allocation while discussing the proposed claim filing process:

> "However, in order to pay each of the millions of Class Members their precise portion of the Net Settlement Funds, it would be necessary to ask each merchant to submit documents showing the dollar amount of all Visa and MasterCard off-line debit and credit purchase transactions that the merchant received during the roughly ten-year Class Period. Providing this level of transaction information is extremely difficult, if not impossible, for the largest merchants in the Class, let alone for very small Class Members."

## ESTIMATED VALUE OF TOOT'N TOTUM'S CLAIM

The total award from Claimant's VMC and unconsolidated VM1s was $11,491. The question that is asked as part of all challenges is the estimate of the correct value of the claim. Based on the available data, Spectrum strives to identify a means of estimating additional claim value which is the most accurate and reasonable, given the available information.

As shown in the "Supporting Data", Claimant's VMC and VM1s are defective in two ways: 1) the data that is contained therein is not complete for the locations present, and 2) a significant proportion of Claimant's locations are missing in their entirety. In the VMC and VM1s, 16 of 72 locations (22%) are present but underrepresented in the VMC or VM1s; and 26 of 72 locations (36%) contain no transaction volumes whatsoever.

The Plan of Allocation allows for the estimation of awards based on revenues for claimants that are not represented in the VTD. This method uses the Fisher tables, incorporating average credit card usage for various business categories based on revenues. While Toot'n Totum is represented in the VTD, it is Spectrum's position that they are significantly underrepresented. Therefore, it is reasonable to use the revenue based estimation method for Toot'n Totum which will more accurately reflect the claimant's award amount.

Using Claimant's revenues for the period 1992 – 2003 and the Fisher tables for the category "Convenience Store at Gas Station", the calculated award is **$25,461**.

For reference, claimant's revenues are shown below:

| YEAR | Revenues |
|---|---|
| 1992 | 57,062,124 |
| 1993 | 55,423,442 |
| 1994 | 55,221,507 |
| 1995 | 56,876,455 |
| 1996 | 73,699,067 |
| 1997 | 74,051,996 |
| 1998 | 74,204,564 |
| 1999 | 72,150,678 |
| 2000 | 81,318,206 |
| 2001 | 78,216,022 |
| 2002 | 77,137,534 |
| 2003 | 89,854,696 |

Normally, when a claimant is missing transaction volumes from the VTD we would compare the claimant's revenues to the data contained within the VTD to highlight the missing or understated periods. In this situation, however, since there are so many locations not present in the VTD, no one year in the VTD contains an accurate picture of the claimant's purchase transactions, making such comparisons irrelevant.

# CONSTANTINE CANNON

**Amy N. Roth**
Attorney at Law
202-204-3505
aroth@constantinecannon.com

May 15, 2008

**BY FAX**

David Morgenstein
Spectrum Settlement Recovery
22 Battery Street, Suite 700
San Francisco, CA 94111

      Re:    *Visa Check/MasterMoney Antitrust Litigation*, (CV-96-5238)(JG)(RLM)

Dear David:

    I write regarding the appeal filed by Spectrum Settlement Recovery ("Spectrum") on behalf of Toot'n Totum Food Stores ("Toot'n Totum").

    Pursuant to the Amended Plan of Allocation, Class Members who are not represented in the Visa Transactional Database may have their claims calculated utilizing the Visa Payment Systems Panel Study Database. However, Toot'n Totum is identified in the Visa Transactional Database, and its claim was calculated consistent with the procedure described in section 4 of the Amended Plan. Further, the annual sales figures provided for Toot'n Totum were not accompanied by any supporting documentation, such as copies of tax returns.

    We were able to increase the value of Toot'n Totum's claim by $1,707 by locating additional records attributable to Toot'n Totum. These records have been used to calculate claim number 238851 (control number 1341022998), which can be reviewed on the case website. The total value of Toot'n Totum's claim is now $12,138, which includes these new records, the value of Toot'n Totum's current VMC form ($3,213) and the values of Toot'n Totum's previously filed VMI forms ($7,218).

                                                         Sincerely,

                                                        Amy N. Roth