# CONSTANTINE | CANNON

**Jeffrey I. Shinder**
Attorney at Law
212-350-2709
jshinder@constantinecannon.com

NEW YORK | WASHINGTON

October 3, 2008

**BY ECF**

The Honorable John Gleeson
United States District Court Judge
U.S. District Court for the Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

       Re:    *Visa Check/MasterMoney Antitrust Litigation,* (CV-96-5238)(JG)(RLM)

Dear Judge Gleeson:

      Award Letters reflecting the PIN debit portion of the settlement distribution are being prepared for release in accordance with the Amended Plan of Allocation. In connection with that process, it has come to my attention that an adjustment to the calculation methodology is necessary. Lead Counsel hereby respectfully requests the Court's approval of that adjustment.

      As described in the enclosed memorandum from Lead Counsel's consultant, CRA International Incorporated ("CRA"), the approved calculation methodology for this distribution requires the calculation of ratios of PIN debit and off-line debit transactions for approximately 260 merchant categories. While calculating those ratios, however, CRA determined that eight merchant category ratios are unrealistically too large. Lead Counsel therefore proposes to adjust the methodology with respect to only those eight categories to obtain more realistic ratios, as described more fully in the memorandum. This adjustment is necessary to correct anomalies affecting less than .5% of the Class.

      For the reasons outlined in the enclosed memorandum, Lead Counsel respectfully requests the Court's approval of the proposed methodology adjustment.

Respectfully submitted,

*Jeffrey Shinder* /J.J.E.
Jeffrey I. Shinder

Enclosure

450 LEXINGTON AVENUE, NEW YORK, NY 10017   TELEPHONE: (212) 350-2700   FACSIMILE: (212) 350-2701   WWW.CONSTANTINECANNON.COM
A LIMITED LIABILITY PARTNERSHIP



# Memorandum

To:      Jeffrey Shinder, Esq.                                    CRA No.   1078-00

From:    CRA International

Date:    October 3, 2008

cc:

Subject: **PROPOSED MINOR ADJUSTMENT TO THE METHODOLOGY USED TO ESTIMATE PIN DEBIT TRANSACTIONS**

---

On June 23, 2005, CRA International Incorporated ("CRA") submitted to the court the *Supplemental Declaration Of Franklin M. Fisher In Support Of Plan Of Allocation*. As described in Section II.C.2 of that declaration, there are no merchant-by-merchant transaction data available from a readily available centralized source for on-line PIN debit. For this reason Prof. Fisher outlined a method for estimating the data for each Class Member documented by the Claims Administrator as accepting PIN debit at some point during the damages period. After implementing Prof. Fisher's method and analyzing the results, CRA proposes a minor adjustment to the methodology to increase the accuracy of the results for certain Class Members. The proposed adjustment would affect less than one half of one percent of the Class Members. Below we describe the estimation method outlined by Dr. Fisher and the proposed adjustment.

## APPROACH TO ESTIMATING THE NUMBER OF PIN DEBIT TRANSCTIONS ACCEPTED BY AN INDIVIDUAL CLASS MEMBER DURING THE DAMAGES PERIOD

In his declaration Prof. Fisher described a method to reasonably estimate, for merchants with PIN pads, the number of PIN debit transactions an individual merchant accepted during the Class Period. This estimation method is based on the number of Visa/MasterCard off-line debit transactions accepted by the Class Member and it depends in part on the line of business or businesses in which the Class Member operated during the Class Period.

To implement this method, the Claims Administrator calculated separately for each year and for each merchant category the ratio of PIN debit transactions to off-line debit transactions accepted by merchants documented to have accepted PIN debit. This ratio represents the average number of PIN debit transactions accepted for each off-line debit transaction accepted by merchants in that category who accepted PIN debit. These ratios account for the fact that certain types of merchants (e.g., grocery stores) systematically received more PIN debit transactions than other types (e.g., department stores). Because these ratios are also calculated separately for each year, the method accounts for changes over time in PIN debit usage.

The Claims Administrator then uses these ratios to estimate each individual Class Member's PIN debit transactions. A high ratio would result in a large number of estimated PIN debit transactions, and vice versa. More specifically, for an individual Class Member the Claims Administrator multiplies the number of off-line debit transactions the Class Member accepted by the ratio of PIN debit to off-line debit

Proposed Minor Adjustment To The Methodology Used To Estimate PIN Debit Transactions
October 3, 2008
Page 2

---

transactions for the applicable merchant category. This results in an estimate of the number of PIN debit transactions accepted by the Class Member in that year or partial year.

Prof. Fisher's method can be illustrated with a straightforward example. The Claims Administrator calculates that in 2001 "Grocery Stores" had a ratio of 4.1 PIN debit transactions for every off-line debit transaction accepted. Suppose that according to the Visa Transactional Database a certain "Grocery Store" Class Member accepted 100 off-line debit transactions in 2001. To estimate the number of PIN debit transactions accepted by this Class Member in 2001, the Claims Administrator would multiply these 100 off-line debit transactions by the 4.1 ratio. As a result, the Claims Administrator would estimate that this Class Member received 410 PIN debit transactions in that year.

## FOR CERTAIN MERCHANT CATEGORIES, THE CALCULATED DEBIT RATIO IS UNREALISTICALLY HIGH

The Claims Administrator has separately calculated these debit ratios for 266 unique merchant categories. Based on our review of the calculated ratios, there are eight merchant categories (which represent less than one half of one percent of all Class Members) for which the ratios appear to be unrealistically high. These eight merchant categories include:

1. "MCC 4112 Passenger Rail"
2. "MCC 4789 Travel Service – Default"
3. "MCC 4829 Wire Transfer – Money Order"
4. "MCC 5300 Wholesale Clubs"
5. "MCC 7321 Consumer Credit Reporting Agency"
6. "MCC 7995 Betting/Track/Casino/Lotto"
7. "MCC 8999 Professional Services – Default"
8. "MCC 9402 Postage Stamps"

The ratios for these merchant categories are too high because either the numerator is too large (i.e., the number of PIN debit transactions) and/or the denominator is too small (i.e., the number of off-line debit transactions). The PIN debit transaction counts in the numerator are based on Interlink data provided by Visa during the litigation. These PIN debit counts are unaffected by the number of Class Members who filed a PIN debit claim. The off-line debit counts in the denominator are based on the Visa Transactional Database, the same database we use to calculate Class Members' off-line debit and credit cash payments. These off-line debit counts depend in part on the number of Class Members who filed a PIN debit claim.

For six of the eight merchant categories, the ratio appears to be a statistical outlier due to a small sample size. These merchant categories are comprised of only a relatively small number of Class Members. For example, in the "MCC 4829 Wire Transfer – Money Order" merchant category there are only five to 14

Proposed Minor Adjustment To The Methodology Used To Estimate PIN Debit Transactions
October 3, 2008
Page 3

Class Members who reported accepting PIN debit in any given year during the relevant period. As such, the ratios in these merchant categories are relatively sensitive to the number of Class Members that filed a PIN debit claim. An unrealistically high ratio can be caused simply by a small number of Class Members not filing a PIN debit claim. This would cause the number of off-line debit transactions accounted for in the denominator to be too low, thereby causing the ratio to be unrealistically high. We believe these ratios to be outliers because they are generally over 25 times the size of the average ratio.

The ratios for the other two merchant categories – "Postage Stamps" and "Wholesale Club" – are unrealistically high due to idiosyncratic reasons particular to those merchant categories. For the "Postage Stamps" merchant category we believe that the PIN debit count is artificially high in the ratio's numerator. In the Interlink data, this merchant category was primarily used to track PIN debit transactions for the U.S. Postal Service, along with a small number of other merchants. But the U.S. Postal Service is not a Class Member because it did not accept Visa/MasterCard during the Class Period. So the vast majority of the PIN debit transactions in the numerator are associated with the U.S. Postal Service, a non-Class Member. As a consequence, when the Claims Administrator calculated the ratio of PIN debit transactions to off-line debit transactions accepted by the small number of Class Members classified in the "Postage Stamp" merchant category the ratio was artificially high (because the numerator is too big). The calculated ratio was over 3,000 times the size of the average ratio. This causes the Claims Administrator to estimate too many PIN debit transactions for these Class Members.

We also believe that the off-line debit count in the denominator of the "Wholesale Club" merchant category ratio is too low. Costco, the largest warehouse club, does not accept Visa and MasterCard in its wholesale club stores.[1] As a result, the number of Visa/MasterCard off-line debit transactions accounted for in the denominator of the ratio is artificially low which causes the ratio to be artificially high. The calculated ratio was over six times the size of the average ratio. This then causes the Claims Administrator to estimate too many PIN debit transactions for the other "Wholesale Club" Class Members.

PROPOSED ADJUSTMENTS TO THE DEBIT RATIOS

CRA proposes that an adjustment be made to improve the accuracy of the debit ratios for these eight merchant categories. The adjustment would consist of replacing the calculated debit ratios for these eight merchant categories with debit ratios calculated for closely related merchant categories that are not affected by the same issues. In effect we would benchmark the ratios using the ratios of similar merchant categories. For example, we propose replacing the unreasonably high "Wholesale Club" ratios with the ratios calculated for "Grocery Stores." We strongly believe that this approach will improve the reasonableness and accuracy of the PIN debit transaction estimations for the small number of Class Members classified in these eight merchant categories.

---

[1] Costco is a member of the Class because it accepted Visa and MasterCard at the service stations that it operated during the Class Period. Since Costco did not accept Visa and MasterCard at its "Wholesale Club" stores, Prof. Fisher's methodology – which estimates the number of PIN debit transactions based in part on the number of Visa/MasterCard off-line debit transactions – will underestimate the number of PIN debit transactions accepted by Costco. For this reason, Costco will likely challenge its PIN debit estimated cash payment. To our knowledge, Costco is the only Class Member that accepted PIN debit but not Visa and MasterCard in one of its business operations.