# EXHIBIT B

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
IN RE:

VISA CHECK/MASTERMONEY ANTITRUST
LITIGATION
-----------------------------------------------------------x
This Document Relates to
All Actions:
-----------------------------------------------------------x

MASTER FILE NO.
CV-96-5238
(Gleeson, J.) (Mann, M.J.)

# PLAN OF ALLOCATION

**SUBMITTED BY**
**CONSTANTINE & PARTNERS**
**August 18, 2003**

## SUMMARY

Constantine & Partners ("Lead Counsel") submits this summary of the "Plan of Allocation" to provide a concise explanation to members of the Class about the manner in which their claims will be treated. This summary is not a substitute for the more detailed descriptions and explanations contained below.[1]

## FUNDS TO BE DISTRIBUTED TO CLASS MEMBERS

The Settlements obligate Visa and MasterCard to deposit $3.05 billion into Settlement Accounts by December 22, 2012, beginning with $350 million this year and $300 million yearly installment payments until 2012.

The amount to be distributed to Class Members is this $3.05 billion less the sums paid for administration of the Settlements, such as the costs of processing claims and mailing checks to Class Members, and the expenses and attorneys fees which may be awarded by the Court to the merchants and lawyers who litigated the case on behalf of the Class and who obtained the Settlements for the Class.

The net amount of money which will be distributed to Class Members also may be reduced if the Court approves a plan to "securitize" the Visa and MasterCard payments. Securitization is a process which would assign these multiple Visa and MasterCard payments to financial institutions in return for a single early lump sum payment for distribution to Class Members. While this process of securitization, if approved, will likely save tens of millions of dollars in administration costs, greatly speed up the process and potentially provide Class Members with an early single payment instead of ten payments over ten years, it will reduce the

---

[1]    All capitalized terms shall have the definitions set forth below.

i

sum to be distributed to Class Members by an undetermined amount.  That reduced sum, may however, represent a greater present value to Class Members than the amount they would receive in ten payments over ten years, both because of the savings on administration costs and because of the effects of inflation.

## DESCRIPTION OF DAMAGES TO CLASS

The Class is made up of millions of United States merchants who accepted Visa and/or MasterCard credit card transactions for payment and therefore were required to accept Visa and/or MasterCard signature off-line debit card transactions under Visa and MasterCard's so-called "Honor All Cards" rules, at any time between October 25, 1992 and June 21, 2003 (the "Class Period").

The merchants claimed that these Visa and MasterCard rules tying debit acceptance to credit acceptance damaged merchants in three ways.

• First, merchants paid more for off-line debit than they would have paid had they been free to reject the debit transactions without losing the ability to accept Visa and MasterCard credit card transactions.  These damages are called the "off-line debit damages."

• Second, the merchants claimed that the defendants' conduct, including the tying arrangements raised the price of Visa and MasterCard credit card transactions above the price merchants should have paid.  These damages are called the "credit card damages."

• Third, the merchants claimed that the defendants' conduct forced merchants to pay higher prices for on-line PIN secured debit transactions offered by NYCE, Star, Pulse, Shazam, Accel, Interlink, Maestro and other networks.  These damages are called the "on-line debit damages."

Consistent with opinions offered by the merchants' expert witnesses and the proof developed during the case, approximately 70% of the damages suffered by Class members were off-line debit damages; 21% were credit card damages and 9% were on-line debit damages.

Each Class Member is entitled to receive a portion of the Net Settlement Funds, which is directly proportional to its Visa and MasterCard off-line debit and credit card purchase volume and on-line debit transactions during the Class Period.

### THE VISA AND MASTERCARD TRANSACTIONAL DATABASES

However, in order to pay each of the millions of Class Members their precise portion of the Net Settlement Funds, it would be necessary to ask each merchant to submit documents showing the dollar amount of all Visa and MasterCard off-line debit and credit purchase transactions that the merchant received during the roughly ten year Class Period. Providing this level of transaction information is extremely difficult, if not impossible, for the largest merchants in the Class, let alone for very small Class Members. To avoid the need to search for these potentially unobtainable records and to spare small Class Members extensive search costs to obtain relatively modest monetary recoveries, Lead Counsel has designed a plan which extensively utilizes Visa and MasterCard databases to compute a Class Member's recovery from the Net Settlement Funds.

These defendant databases, and Visa's in particular (the "Visa Transactional Database"), provide extensive records of merchant acceptance of credit and debit card transactions from October 1996 to the present, a period accounting for 90% of the damages due to Visa and/or MasterCard off-line debit and credit transactions received by Class Members during the interval of the Class Period after October 1996.

iii

Working with these Visa and MasterCard databases, Lead Counsel, Garden City Group, Inc. (the "Claims Administrator") and the merchants' economic experts also have devised a method for estimating the dollar amount of Visa and MasterCard off-line debit and credit transactions received by most Class Members in the earlier part of the Class Period, that is from October 25, 1992 through September1996.

Using these databases and statistical techniques, Class Members can receive a monetary recovery without having to submit detailed purchase volume information about their acceptance of Visa and MasterCard off-line debit and credit transactions. The calculation of these off-line debit and credit card damages will be done by the Claims Administrator, as explained below, and is subject to a procedure where any Class Member can submit more detailed information in an effort to receive what that Class Member believes is a larger and more accurate monetary recovery than calculated by the Claims Administrator.

## CALCULATION OF MONETARY RECOVERIES

### (i)   *Class Members Identified in Visa Transactional Database*

Class Members whose record of off-line debit and credit acceptance from October 1996 through July 2003 is contained in the Visa Transactional Database will have the off-line debit and credit card damages portion of their potential recovery (for the period October 1996 - July 2003) automatically computed for them by the Claims Administrator. Further, to recover off-line debit and credit damages for the period October 25, 1992 through September 1996 such Class Members must simply submit information demonstrating if and when they accepted Visa and/or MasterCard off-line debit and credit transactions during the period October 25, 1992 through September 1996.

iv

Using this information, the Claims Administrator will do the calculations.

To recover a portion of the 9% of the Net Settlement Funds allocated to on-line debit damages, all Class Members must submit information showing when they accepted on-line debit, as well as the number and/or dollar volume of on-line debit transactions they accepted during the Class Period.

### (ii)    *Class Members Not Identified in Visa Transactional Database*

Despite extensive efforts by Lead Counsel, more than 80 major Visa/MasterCard owner/member financial institutions and Visa and MasterCard themselves to identify all Class Members, there undoubtedly will be certain Class Members who have not been identified. Further, there are Class Members who have been identified and sent Class Notice but whose transactions are not contained in the Visa Transactional Database.

Those Class Members whose transactions are not contained in the Visa Transactional Database will be required to provide certain additional information to the Claims Administrator to calculate their monetary recovery. Such Class Members will be asked to submit the following information:

• First, such Class Members must submit information which shows the time period when it accepted Visa and/or MasterCard transactions.

• Second, such Class Members must submit its total annual sales in dollars for each year during the Class Period.

• Third, such Class Members must submit information about the type of business they operate, as examples, "shoe store," "health club," "supermarket," "travel agency" or "restaurant."

• Fourth and last, like all Class Members, to recover on-line debit damages, such Class Members must submit information showing when they accepted on-line debit and the volume of on-line debit acceptance (either number of transactions or dollar volume) for each year within the Class Period.

With this information the Claims Administrator will calculate the monetary recovery for such Class Members. However, such Class Members, as with all Class Members, can challenge the Claims Administrator's calculation of the monetary recovery and submit more detailed information in an effort to secure a larger recovery.

## CHALLENGES TO THE CLAIMS ADMINISTRATOR'S CALCULATION OF A CLASS MEMBER'S MONETARY RECOVERY

Any Class Member who believes that the Claims Administrator's calculation of the monetary recovery for that Class Member does not accurately reflect what it should receive, or is based upon inaccurate or incomplete information, may challenge the calculation and submit additional information in an effort to increase the monetary recovery. The type of information which a Class Member must submit to make a challenge, and the manner and the timetable for such challenges are detailed in the Plan below and will be explained to any Class Member that chooses to submit a challenge to the Claims Administrator. Any such challenge may result in the Class Member receiving a larger or smaller recovery or the same recovery initially calculated by the Claims Administrator. An appeal from the Claims Administrator's determination will be considered by Lead Counsel. Appeals from Lead Counsel's determinations can be sought from the Court.

## CALENDAR OF IMPORTANT DATES FOR CLASS MEMBERS

The following are important dates when events relating to this case occurred and/or when a Class Member should have received various notices or must take certain actions related to the settlement of the case.

September 9 - October 14, 2002: 7.657 million "Notices of Pendency" were sent to known members of the Class, telling them about the case and that they could remain members of the Class by doing nothing or could "opt-out" of the Class by following the procedures stated in the notice. During the same period, notice was also given to Class Members by publication of a Notice of Pendency in numerous national and retailing industry publications.

November 14, 2002: On or before this date approximately 6,165 merchants opted out of the Class of approximately five million merchants.

April 28, 2003: On this date when trial was scheduled to begin, MasterCard orally agreed to settle with the merchant Class. Visa and the merchants proceeded to trial. A jury was selected and impaneled.

April 30, 2003: The merchants entered into separate memoranda of understanding with Visa and MasterCard preliminarily settling the case.

June 4, 2003: The merchants entered into separate "Final Settlement Agreements" with Visa and MasterCard. To protect the interests of all Class Members, these Settlement Agreements are subject to the Court's preliminary and final approvals, as to their fairness and adequacy for all Class Memberss.

June 13, 2003: The Court preliminarily approved the Settlement Agreements.

June 21 - July 3, 2003: 8.148 million "Notices of Class Action Settlement" were sent by

vii

first class mail to all known members of the Class. This included the Class Members who received the Notice of Pendency in 2002 and new Class Members who were identified, including merchants who began to accept Visa and/or MasterCard off-line debit and credit card transactions for the first time after June 21, 2002 and who may not have received notice in 2002. From June 20 - August 4, 2003, notice by publication was given by publishing a Notice of Class Action Settlement in numerous national and retailing publications.

August 18, 2003: Lead Counsel filed this Plan of Allocation with the Court, seeking the Court's approval of the Plan and approval of an expense and attorneys' fee application made by the merchants and attorneys who litigated the case and who secured the Settlements, including the monetary recovery.

September 5, 2003: Final opt-out day for "new Class Memberss" only - these are members of the Class who were not provided notice in September - October 2002 and did not previously have an opportunity to opt-out of the Class.

September 5, 2003: The final day for a Class Member to object to the Court about the terms of the settlement and/or object to this Plan of Allocation and/or object to the expense and attorneys' fee applications.

September 18, 2003: The deadline for Lead Counsel to ask the Court for final approval of the Settlement Agreements.

September 25, 2003: The Court will conduct a "fairness hearing" to hear oral argument and receive testimony on any previously filed written objections of any Class Member concerning the fairness and/or adequacy of the Settlement Agreements, and/or this Plan of Allocation and/or the expense and attorneys' fee applications.

<u>The following dates and events are scheduled to occur in relation to Final Court Approval of the Settlements.</u>

If Final Court Approval occurs, it will occur after the United States District Court finally approves the Settlements and all appeals from that decision to appellate courts have failed and/or the time to make such appeals has expired.

120 days after Final Settlement Approval:  The Claims Administrator will send to each Class Member whose transactional data is contained in the Visa Transactional Database notification of the Claims Administrator's calculation of such Class Member's off-line debit and credit card damage recovery for the period October 1996 through July 2003.  The notices will be accompanied by a Claims Form, which will tell such Class Members how they can claim off-line debit and credit card damages for the period October 25, 1992  through September 1996 and how they can claim on-line debit damages for any part of the Class Period.  The notice will also advise such Class Members of their right to challenge the calculated recovery and how and when such challenges must be made.

30 days after Final Settlement Approval:  The Claims Administrator will send a Claims Form for completion and submission to all known Class Members whose transactional data is <u>not</u> in the Visa Transactional Database, who therefore must provide specified information in order for the Claims Administrator to calculate their monetary recoveries.

180 days after Final Settlement Approval:  A Class Member who did not receive first class mail of the Notice of Pendency in 2002 or receive first Class Notice of Class Action Settlement in 2003, must contact the Claims Administrator to request a Claims Form. Such Class Members must submit their Claims Form within 180 days of Final Settlement

ix

Approval. Claims Forms can be obtained by contacting the Claims Administrator at The Garden City Group, Inc., P.O. Box 9000-6014, Merrick, New York, 11566-9000, Attn: In re Visa Check/MasterMoney Antitrust Litigation, or by calling 1(888) 641- 4437 or by contacting the case website, located on the worldwide web at:

www.InReVisaCheck-MasterMoneyAntitrustLitigation.com.

Because many of the above dates and events occur a specified number of days after Final Settlement Approval, Lead Counsel will issue no fewer than four nationwide press releases in four successive weeks announcing the Final Settlement Approval if and when it occurs.

x

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------x
IN RE:

VISA CHECK/MASTERMONEY ANTITRUST
LITIGATION
--------------------------------------------------------x
This Document Relates to
All Actions:
--------------------------------------------------------x

MASTER FILE NO.
CV-96-5238
(Gleeson, J.) (Mann, M.J.)

## PLAN OF ALLOCATION

Pursuant to Orders of this Court dated June 13, 2003, and in accordance with the Notice of Settlement of Class Action (the "Settlement Notice"), Constantine & Partners (hereinafter "Lead Counsel") respectfully submits the following plan and procedure for allocating the Visa and MasterCard Net Settlement Funds among Class Members (the "Plan of Allocation").

### Definitions

Unless otherwise specified, capitalized terms used herein shall have the same meaning as in the June 4, 2003 agreements between plaintiffs and Visa and MasterCard, respectively (hereinafter the "'Settlement Agreements'") or where applicable, the Court's June 13, 2003 Orders approving the form and manner of notice to the Class. For ease of reference, these definitions are set forth below.

A.      "Approved Claims" shall be the claims against the Net Settlement Funds of Class Members who properly submit, document and execute their Claims Form. The claims of Class Members who challenge the Claims Administrator's calculations shall be deemed Approved Claims upon the Class Member's failure, after receipt of a determination letter, to appeal timely the Claims Administrator's determination, or if the Class Member files an appeal to Lead

Counsel or the Court, upon the final determination of the appeal.

B.    "Claims Administrator" shall mean the Garden City Group, Inc.

C.    "Class," as defined in the Court's class certification Order dated February 22, 2000, shall mean all persons and business entities who have accepted Visa and/or MasterCard credit cards and therefore have been required to accept Visa and/or MasterCard branded debit cards under the challenged tying arrangements at any point during the Class Period within the continental United States (and Alaska and Hawaii). Excluded from the Class are any putative class members who previously excluded themselves from this action by filing a request for exclusion in accordance with the requirements set forth in the Consent Order Concerning Notice of Pendency of Class Action dated June 21, 2002, and the Notice of Pendency previously provided to Class Members. Also excluded from the Class are any New Merchants (as defined below) who have excluded themselves from this Action.

D.    "Class Member" shall mean any member of the Class.

E.    "Class Period" shall mean the period of time from October 25, 1992 to June 21, 2003.

F.    "Fee Award" shall mean plaintiffs' attorneys' fees, expenses and costs as may be awarded by the Court.

G.    "Fee and Expense Application" shall mean the application submitted by Lead Counsel seeking plaintiffs' attorneys' fees, expenses and costs.

H.    "Final Settlement Approval" shall mean the date that the Settlement Agreements have been approved in all material respects by the Court, and the time periods for appeal or to seek permission to appeal the Court's approval of the Settlement Agreements have expired. If

2

there is an appeal of the Court's decision to approve the Settlement Agreements, Final Settlement Approval shall mean the date when the court of last resort to which such appeal has been taken affirms the Court's decision to approve the Settlement Agreements.

  **l.**  "Fisher Allocation Methodology" shall mean the methodology developed by Lead Counsel's economist, Professor Franklin M. Fisher, to allocate the Net Settlement Funds to Class Members. (This Methodology is described more fully in the Declaration of Professor Frank Fisher, dated August 14, 2003 (the "Fisher Allocation Declaration")). The Fisher Allocation Methodology estimates the amount Class Members were damaged for each dollar of Visa and/or MasterCard debit or credit transactions, and for each on-line debit transaction, they accepted during the Class Period. This Methodology uses different estimates of the per-dollar overcharge for supermarket and non-supermarket transactions because supermarkets certified under Visa and MasterCard rules receive distinct supermarket interchange rates for qualifying transactions. These estimates are broken out for each year of the Class Period because the amount of damage merchants suffered for each dollar of Visa and/or MasterCard debit transactions, and for each on-line debit transaction, varied over time during the Class Period. To estimate the Class Member's claim against the Visa and/or MasterCard Net Settlement Funds, the Class Member's estimated damages shall be adjusted based on the ratio of the Net Settlement Funds to the total aggregate Class damages.

  The Fisher Allocation Methodology shall be applied as follows. If a hypothetical non-supermarket Class Member received $161,600 of Visa off-line debit transactions in 2000, the Fisher Allocation Methodology estimates that the Class Member suffered 174.38 basis points in damage for every dollar of off-line debit transactions it received in that year. As such, the

3

Fisher Allocation Methodology estimates that the Class Member suffered $2,818 in damages from supra-competitive off-line debit interchange fees in 2000. To calculate the Class Member's claim against the Net Settlement Funds for its Visa off-line debit volume in 2000, the ratio of the Visa Net Settlement Fund to aggregate Visa damages must be applied to the 174.38 damage estimate. This calculation equals 14.03 basis points. This figure is then applied to the $161,600, and the Class Member's claim for Visa off-line debit damages in 2000 is $227.

The Fisher Allocation Methodology will be applied to all Class Members. The only distinction between Class Members in this Plan of Allocation is the manner in which the Claims Administrator will calculate or estimate their Visa and/or MasterCard debit and credit volumes. For Class Members whose Visa debit and credit transactions and dollar volumes were provided to the Claims Administrator in the Visa Transactional Database, their dollar volumes shall be calculated principally from the Visa and/or MasterCard Transactional Databases. For Class Members whose dollar volumes were not provided to the Claims Administrator as part of the Visa Transactional Database, their dollar volumes shall be estimated using the Visa Payment Systems Panel Study, which is defined and described below.

J. "Gross Settlement Funds" shall mean the Visa and MasterCard Settlement Funds, and any interest earned thereon.

K. "Lead Counsel" shall mean Constantine & Partners.

L. "MasterCard Transactional Database" shall mean the database that MasterCard provided to the Claims Administrator for use in this Plan of Allocation. This Database includes MasterCard debit and credit transaction counts and dollar volumes for the approximately 5,500 Class Members who accepted MasterCard transactions between June, 1, 2001 and June 30, 2003,

4

whose transactions and dollar volumes could be reasonably extracted from MasterCard's databases. The MasterCard Transactional Database includes On-us Transactions.

    **M.**    "Modified Class Member List" shall mean the Class Members that were identified by Visa and/or MasterCard and/or their dual member/owner acquiring banks, whose names were provided to the Settlement Administrator for purposes of mailing the Notice of Pendency to the Class. This list also includes New Merchants (which are defined below).

    **N.**    "Net Settlement Funds" shall mean the Visa and MasterCard Gross Settlement Funds, less the amount of the Fee Award and Court-approved expenses, taxes, and costs of notice and administration.

    **O.**    "New Merchants" shall mean merchants who were identified in Visa and MasterCard's databases as of June 4, 2003 and provided to the Claims Administrator, or merchants who registered with the Claims Administrator following the Notice of Pendency.

    **P.**    "On-us Transactions" shall mean transactions in which the cardholder's issuing bank and the merchant's acquiring bank, or their processors, were the same institution.

    **Q.**    "Post-October 1996 Net Settlement Funds" shall mean the portion of the Visa and MasterCard Net Settlement Funds, which shall be allocated for damages incurred by Class Members during the interval of the Class Period after October 1996.

    **R.**    "Pre-October 1996 Net Settlement Funds" shall mean the portion of the Visa and MasterCard Net Settlement Funds, which shall be allocated for damages incurred by Class Members during the interval of the Class Period prior to October 1996.

    **S.**    "Visa Payment Systems Panel Study" shall mean the cardholder survey that Visa has conducted through most of the Class Period, which Professor Fisher has utilized, with other

5

Visa data, to estimate the percentage of total sales in 93 merchant categories that were made with Visa and/or MasterCard debit or credit transactions. (The data Professor Fisher used from these sources was produced by Visa during this action as support for its expert reports.) A detailed description of the Visa Payment Systems Panel Study, and the tables Professor Fisher derived from that Study, is set forth in the Fisher Allocation Declaration.

     **T.**   "Visa Transactional Database" shall mean the database that Visa provided to the Claims Administrator for use in this Plan of Allocation. This Database includes Visa debit and credit transaction counts and dollar volumes broken out by month for each Class Member that accepted Visa transactions at any time between October 1, 1996 and July 31, 2003, whose transactions and dollar volumes were extracted from Visa's databases. The Visa Transactional Database was divided into transactions that were eligible to qualify for Visa's supermarket interchange rate and transactions that were eligible to qualify for Visa's non-supermarket rates. Visa also provided effective interchange rates paid by supermarkets and non-supermarkets for use in the Fisher Allocation Methodology. This Database does not include On-us Transactions, which amounts to a *de minimus* percentage of Visa debit and credit card transactions.

## 1.   Dissemination of the Settlement Notice to Class Members

     1.1   Beginning on June 27, 2003 the Claims Administrator caused Notices of Settlement to be mailed by first class mail, postage prepaid, to all Class Members listed in the Modified Class Member List. The Notice of Settlement described the history of the action, the class certification proceedings, and the Notice of Pendency to the Class. The Notice of Settlement also described the Settlement Agreements, including the Gross Settlement Funds, the provisions untying acceptance of Visa and/or MasterCard POS Debit Devices from acceptance of

Other Visa and/or MasterCard Products, the provisions mandating that clear and conspicuous identifiers be placed on Visa and/or MasterCard POS Debit Devices, the provisions mandating that Visa and/or MasterCard adopt rules requiring that their dual member/owner banks give Visa and/or MasterCard POS Debit Devices unique Bank Identification Numbers, and the provisions releasing Class Members' claims with prejudice. The Notice of Settlement also described Class Members' rights to participate in or object to the Settlements and New Merchants' rights to exclude themselves from the Class. It also notified Class Members of their right to object to the Plan of Allocation and/or the Fee and Expense Application. The Notice of Settlement also advised Class Members of the "Fairness Hearing" scheduled for September 25, 2003, at which time the Court will consider whether to approve (i) the Settlement Agreements as fair, reasonable and adequate for the Class, to dismiss the claims of the Class with prejudice and enter a final judgment releasing Class Members' claims; (ii) the payment of attorneys fees and expenses on behalf of the Class; and (iii) this Plan of Allocation.

      1.2     Beginning on June 20, 2003 and continuing until August 4, 2003, Lead Counsel caused a Summary of Notice of Settlement (the "Summary Notice") to be published in numerous national and merchant trade publications. The national publications included *Parade Magazine* (2 insertions), *USA Weekend* (2 insertions), *The Wall Street Journal* (one insertion), *TV Guide* (2 insertions), *People* (2 insertions), *Time* (one insertion), *Sports Illustrated* (one insertion), and *Newsweek* (one insertion). The merchant trade publications included *Chain Store Age* (one insertion), *DSN Retailing Today* (one insertion), *MMR/Mass Market Retailers* (one insertion), *RIS/Retail Info Systems News* (one insertion), *Retail Merchandiser* (one insertion), *Stores* (one insertion), and *Supermarket News* (one insertion). (A list of the dates when the

7

Summary Notice appeared in these publications, and their respective circulations, is set forth as Exhibit 3 to the Court's June 13 Orders.) The Summary Notice described the Settlement Agreements, advised Class Members of their rights to participate in or object to the Settlements, and New Merchants' rights to exclude themselves from the Class. The Summary Notice also advised Class Members of the Fairness Hearing and that they can obtain a copy of the full Notice of Settlement from the case website, located on the worldwide web at www.InReVisaCheck-MasterMoneyAntitrustLitigation.com, or from the website of Lead Counsel, located on the worldwide web at www.cpny.com. Class Members can obtain copies of the Notice of Settlement without charge.

### 2. The Visa and MasterCard Transactional Databases

2.1    The Settlement Agreements stipulate that Visa and MasterCard shall cooperate with Lead Counsel by using reasonable efforts to provide existing merchant specific and aggregate transaction data from their databases for use in connection with this Plan of Allocation. Lead Counsel negotiated the parameters of such cooperation with Visa and MasterCard, and as part of that process, interviewed Visa and/or MasterCard technical personnel or their agents to determine the extent to which data from Visa and/or MasterCard's databases could be utilized for this Plan of Allocation. After these negotiations, Visa and MasterCard compiled and provided the Visa and MasterCard Transactional Databases to the Claims Administrator. The most comprehensive data regarding the number and dollar volume of Visa and/or MasterCard debit and credit transactions received by individual Class Members during the Class Period that reasonably could be extracted from Visa and/or MasterCard's databases was obtained.

8

2.2     The Visa Transactional Database includes the number and dollar volume of Visa debit and credit transactions for all Class Members who accepted Visa transactions at any time between October 1, 1996 and July 31, 2003, whose Visa debit and credit volumes were extracted from Visa's databases.

2.3     The MasterCard Transactional Database includes MasterCard debit and credit transaction counts and dollar volumes for the approximately 5,500 Class Members who accepted MasterCard transactions between June, 1, 2001 and June 30, 2003 and whose transactions and dollar volumes could be reasonably extracted from MasterCard's databases.

3.     **Methodology for Calculating Estimated Overcharge and Share of Net Settlement Funds**

3.1     Plaintiffs' economic expert, Professor Franklin M. Fisher, previously concluded that Visa and MasterCard's Honor All Cards tying rules and associated anticompetitive conduct damaged Class Members during the Class Period in three ways: (i) supracompetitive off-line debit interchange fees; (ii) supracompetitive credit card interchange fees; and (iii) supracompetitive on-line debit interchange fees. (The various components of Class damages are discussed more thoroughly in the Fisher Allocation Declaration.) Based on the Fisher damage formula, off-line debit damages, including higher float costs, amounted to approximately 70% of total aggregate Class damages, credit damages amounted to approximately 21%, and on-line debit damages amounted to roughly 9%. Under the Fisher Allocation Methodology, the Net Settlement Funds shall be allocated in these aggregate proportions.

3.2     As described more fully in the Fisher Allocation Declaration, the Fisher Allocation Methodology estimates the amount Class Members were damaged for each dollar of

9

Visa and/or MasterCard debit or credit transactions, and for each on-line debit transaction, Class Members accepted during the Class Period. This Methodology uses separate estimates for supermarket and non-supermarket transactions because certified supermarkets, under Visa and MasterCard rules, receive the distinct supermarket interchange rates. These estimates are broken out for each year of the Class Period because the damage Class Members suffered for each dollar of Visa and/or MasterCard debit volume, and each on-line debit transaction, varied from year to year during the Class Period. To calculate Class Members' claims against the Net Settlement Funds, these damage estimates shall be adjusted based on the ratio of the Net Settlement Funds to the total aggregate Class damages.

4.    **Calculating the Claims of Class Members Identified in the Visa Transactional Database**

4.1    The Claims Administrator shall utilize the following procedures to calculate the claims against the Net Settlement Funds of Class Members identified in the Visa Transactional Database.

(a)    Calculating Claims Against Post-October 1996 Net Settlement Funds For Visa and/or MasterCard Debit and Credit Damages

4.2    The claims against the Post-October 1996 Net Settlement Funds of Class Members identified in the Visa Transactional Database shall be calculated as follows. The Claims Administrator shall calculate from the Visa and/or MasterCard Transactional Databases the dollar volume of Visa and/or MasterCard debit and credit transactions the Class Member accepted during each year of the Class Period following October 1996.

4.3    For Class Members identified in the Visa Transactional Database, to the extent their MasterCard debit and credit dollar volumes are not included in the MasterCard

10

Transactional Database, the Claims Administrator shall estimate their MasterCard debit and credit dollar volumes for the portion of the Class Period after October 1996 as follows. The Claims Administrator shall calculate the ratio of aggregate MasterCard debit and credit dollar volumes to aggregate Visa debit and credit dollar volumes for each year of the Class Period after October 1996 that the Class Member accepted Visa and MasterCard transactions. (These ratios are detailed in the Fisher Allocation Declaration.) The Claims Administrator shall then apply that ratio to the Class Member's Visa debit and credit dollar volumes (as calculated from the Visa Transactional Database) for each year of the Class Period after October 1996 that the Class Member accepted Visa and MasterCard transactions, to estimate the Class Member's MasterCard debit and credit dollar volumes for those years.

4.4     After completing the calculations described in Sections 4.2 and 4.3, the Claims Administrator shall calculate the Class Member's damages for Visa and/or MasterCard debit and credit overcharges, and claim on the Post-October 1996 Net Settlement Funds, by applying the Fisher Allocation Methodology to the Class Member's Visa and/or MasterCard debit and credit dollar volumes.

4.5     Within 120 days of Final Settlement Approval, the Claims Administrator shall mail each Class Member identified in the Visa Transactional Database a Notice of Estimated Share of Settlement Funds. The Notice shall inform the Class Member of the initial calculation of its claim on, or pro rata share of the Post-October 1996 Net Settlement Funds. It also shall inform the Class Member that the calculation is based on dollar volumes extracted or estimated from Visa and/or MasterCard's databases, that the Class Member may challenge the calculation by following the procedures detailed in Section 7 of this Plan of Allocation, and that

11

the calculation may be revised to account for such challenges.

4.6     The Claims Administrator shall attach a Claims Form to the Notice of Estimated Share of Settlement Funds. To claim against any portion of the Net Settlement Funds, Class Members identified in the Visa Transactional Database must execute and submit the Claims Form. Class Members identified in the Visa Transactional Database do not need to provide supporting documentation with their Claims Form to claim against the Post-October 1996 Net Settlement Funds for Visa and/or MasterCard debit and credit damages. The Claims Form shall explain that the Class Member also may claim against the Pre-October 1996 Net Settlement Funds, and/or the portion of the Net Settlement Funds that shall be allocated for on-line debit damages by following the procedures detailed below.

(b)     Calculating Claims Against Pre-October 1996 Net Settlement
            Funds For Visa and/MasterCard Debit and Credit Damages

4.7     To Claim against the Pre-October 1996 Net Settlement Funds for Visa and/or MasterCard debit and credit damages, Class Members identified in the Visa Transactional Database must submit together with their Claims Form documentation, such as a merchant contract, processor statements, or other information, demonstrating that they accepted Visa and/or MasterCard transactions in the period October 25, 1992 through September 1996, and when this occurred.

4.8     For Class Members who comply with Section 4.7, the Claims Administrator shall calculate their claims on the Pre-October 1996 Net Settlement Funds for Visa and/or MasterCard debit and credit damages as follows. The Claims Administrator shall calculate the Class Member's share of aggregate Visa and/or MasterCard debit and credit volume

12

for the earliest 12 month period in which the Class Member's data is reported in the Visa Transactional Database. It shall then apply that share to the aggregate Visa and/or MasterCard debit and credit dollar volumes (as reported in *The Nilson Report*) in each year of the Class Period prior to October 1996 that the Class Member accepted those transactions to estimate the Class Member's Visa and/or MasterCard debit and credit dollar volumes for those years. This calculation will be done separately for Visa debit, Visa credit, MasterCard debit and MasterCard credit dollar volumes. The Claims Administrator shall then use the Fisher Allocation Methodology to calculate the Class Member's debit and credit damages, and claims against the Pre-October 1996 Net Settlement Funds, from the Class Member's estimated Visa and/or MasterCard debit and credit dollar volumes for the Class Period prior to October 1996.

4.9     The Claims Administrator shall send Class Members for whom it has estimated claims against the Pre-October 1996 Net Settlement Funds a Revised Notice of Estimated Share of Settlement Funds. This Revised Notice shall inform the Class Member of the revised calculation (including any revisions for on-line debit damages made pursuant to Section 6), that the Class Member may challenge the revised calculation by following the procedures set forth in Section 7, and that the calculation may be altered to account for such challenges.

(c)     Calculating Claims for On-Line Debit Damages

4.10    Class Members identified in the Visa Transactional Database must submit, together with their Claims Form, the documentation described in Section 6 of this Plan of Allocation to claim against the portion of the Net Settlement Funds that shall be allocated for on-line debit damages. Such claims shall be calculated in the manner described in Section 6.

13

5.      **Calculating the Claims of Class Members Not**
        **Identified in the Visa Transactional Database**

        5.1     The Modified Class Member List may include Class Members whose

transactions and dollar volumes were not included in the Visa Transactional Database. To

identify such Class Members, the Claims Administrator shall cross-reference the Modified Class

Member List against the Class Members identified in the Visa Transactional Database. Within 30

days of Final Settlement Approval, the Claims Administrator shall send Claims Forms to any

Class Member who has been identified by cross-referencing the Modified Class Member List

against the Visa Transactional Database.  To claim against any portion of the Net Settlement

Funds, such Class Members must submit the Claims Form, along with supporting

documentation, such as their merchant contract, processor statements, or other information,

demonstrating that they accepted Visa and/or MasterCard or on-line debit transactions during the

Class Period, and when this occurred.

        5.2     Class Members who are not identified on the Modified Class Member List

or the Visa Transactional Database may contact the Claims Administrator to request a Claims

Form.  (These Class Members may include merchants who stopped accepting Visa transactions

in the Class Period prior to October 1996.)  To claim against the Net Settlement Funds, these

Class Members must submit the Claims Form, along with supporting documentation, such as

their merchant contract, processor statements, or other information, demonstrating that they

accepted Visa and/or MasterCard or on-line debit transactions during the Class Period, and when

this occurred.

14

(a)     Calculating Claims For Visa and/or
        MasterCard Debit and Credit Damages

5.3     The Claims Form that will be sent to Class Members who are not
identified in the Visa Transactional Database also will request that the Class Member submit its
total U.S. sales for each year of the Class Period during which they accepted Visa and/or
MasterCard transactions. Attached to the Claims Form will be a list of merchant category
descriptors that will be drawn from the merchant category descriptors utilized in the Visa
Payment Systems Panel Study. The Claims Form will request that the Class Member check the
merchant categories which correspond with its line of business. It shall explain that Class
Members who check more than one merchant category should submit separate annual total sales
for each merchant category the Class Member selects from the attached list. The Claims Form
shall inform Class Members that if they have any questions about the merchant categories
detailed in the attached list they should contact the Claims Administrator. Where necessary, the
Claims Administrator shall contact Visa to determine the merchant category that is most apposite
to the Class Member's line of business.

5.4     After receiving Claims Forms from Class Members, the Claims
Administrator shall use the Visa Payment Systems Panel Study to estimate the Class Member's
Visa and/or MasterCard debit and credit dollar volumes for each year of the Class Period that the
Class Member accepted those transactions. (The manner in which these estimates shall be
calculated is more fully explained in the Fisher Allocation Declaration.) The Claims
Administrator shall then utilize the Fisher Allocation Methodology to calculate the Class
Member's damages for Visa and/or MasterCard debit and credit transactions, as well as its claim

15

against the Visa and/or MasterCard Net Settlement Funds.

5.5     After completing the calculations described in Section 5.4, the Claims Administrator shall send the Class Member a Notice of Estimated Share of Settlement Funds. The Notice shall inform the Class Member of the initial calculation of its claim against, or pro rata share of the Net Settlement Funds.  It also shall inform the Class Member that it may challenge the calculation by following the procedures detailed in Section 7 of this Plan of Allocation, and that the calculation may be revised to account for such challenges.

(b)     Calculating Claims For On-Line Debit Damages

5.6     Class Members who are not identified in the Visa Transactional Database must submit, together with their Claims Form, the documentation described in Section 6 of this Plan of Allocation to claim against the portion of the Net Settlement Funds that shall be allocated for on-line debit damages.  Such claims shall be calculated in the manner described in Section 6.

6.     **Calculating All Class Members' Claims Against Net Settlement Funds for On-Line Debit Damages**

6.1     To claim against the portion of the Net Settlement Funds that may be allocated for on-line debit damages, all Class Members must submit supporting documentation together with their Claims Form.  This documentation, such as a merchant contract, processor statements, or other information, must demonstrate when they accepted on-line debit during the Class Period.  This documentation also must show the number or dollar volume of on-line debit transactions that the Class Member received during each year of the Class Period.

6.2     The Claims Administrator shall calculate Class Members' claims against the portion of the Net Settlement Funds that may be allocated for on-line debit damages as

16

follows. The Claims Administrator shall calculate, using the documentation submitted by the Class Member, the number or dollar volume of on-line debit transactions received by the Class Member during the Class Period. The Claims Administrator shall then use the Fisher Allocation Methodology to calculate the Class Member's damages from on-line debit overcharges, and claim against the Net Settlement Funds, from the transaction count or dollar volumes calculated from the Class Member's processor statements.

6.3     Class Members claiming against the portion of the Net Settlement Funds that shall be allocated for on-line debit damages shall receive a Notice of Estimated Share of Settlement Funds (or, for Class Members identified in the Visa Transactional Database, a Revised Notice.) The Notice shall inform the Class Member of the calculation of its claim against, or pro rata share of the portion of the Net Settlement Funds that shall be allocated for on-line debit damages. It also shall inform the Class Member that it may challenge the calculation by following the procedures detailed in Section 7 of this Plan of Allocation, and that the calculation may be revised to account for such challenges.

### 7.     Challenges & Resolution of Disputes

7.1     Class Members who disagree with the Claims Administrator's calculations of their claim against the Visa and/or MasterCard Net Settlement Funds may submit, in writing, a challenge. To challenge the calculations, these Class Members must check a box on their Claims Form stating that they disagree with the accuracy of the calculations. The Class Member also must state on its Claims Form what it believes its claim against the Net Settlement Funds should be and/or how it can be more accurately calculated. The written challenge must be accompanied by supporting documentation and must be mailed to the Claims Administrator by first class mail,

17

postmarked no later than 30 days after the Notice (or Revised Notice) was mailed to the Class Member.

      7.2    The Claims Administrator shall review all written challenges by Class Members, including the documentation supplied by the Class Member. It may consult with Visa, MasterCard, or the Class Member's acquiring bank or processor, as appropriate. If upon review of the challenge and supporting documentation the Claims Administrator decides to modify its calculation of the Class Member's claim against the Visa and/or MasterCard Net Settlement Funds, either by increasing or decreasing the amount, it will send a determination letter to the Class Member to advise it of the revised calculation. The determination letter will advise the Class Member of its right to appeal the determination in accordance with Section 7.4 of this Plan of Allocation. If the Class Member does not exercise the appeal rights described in Section 7.4 within 15 days of the mailing of the determination letter, the revised calculation shall be deemed final.

      7.3    Where the Claims Administrator concludes that a challenge requires additional information or documentation, it will so advise the Class Member and provide that Class Member an opportunity to provide the documentation within 30 days. If the requested documentation or information is not provided by the Class Member within that time frame, the challenge will be rejected and the Class Member will receive a determination letter by mail stating that the initial calculation of their claim against the Net Settlement Funds shall stand.

      7.4    Determination letters shall inform the Class Member of its right to petition Lead Counsel, and subsequently the Court, for review of the Claims Administrator's calculations. Any petition by a Class Member must be initially submitted in writing to Lead Counsel, with

copies to the Claims Administrator, no later than 15 days after the determination letter was mailed to the Class Member. Class Members may subsequently appeal Lead Counsel's determinations to the Court. All appeals to the Court must be submitted in writing, with copies to Lead Counsel and the Claims Administrator, no later than 15 days after Lead Counsel's determination letter was mailed to the Class Member.

7.5     If the volume or complexity of any disputes warrants, Lead Counsel may request that the Court appoint a Special Master or Examiner, as appropriate, to resolve any such disputes.

8.     **Processing of Claims**

8.1     The Claims Administrator shall process all distributions to Class Members of the Net Settlement Funds. It shall be responsible for determining all allocations to Class Members of the Net Settlement Funds in accordance with this Plan of Allocation. All Claims Forms submitted by Class Members shall be assigned a number (the "Claim Number").

8.2     Claims Forms shall include a Substitute Form W-9 certifying that the Class Member is not subject to back-up withholding. Claim Forms also shall include the Release, as set forth in the Settlement Agreements, which shall be executed and submitted by Class Members. The Claims Form also shall confirm, where applicable, the Class Members' Social Security Number or Taxpayer Identification Number. All Claims Forms shall be executed, where appropriate, by an officer or director of the Class Member.

8.3     The Claims Administrator shall determine that all Claims Forms are timely, properly supported, and executed. If a Claims Form is incomplete, the Claims Administrator shall send a notification to the claimant bearing the Claim Number and describing

19

the deficiency. Class Members will have 30 days from the date of notification to cure any deficiency. If they fail to correct the deficiency within this time, the claim may be rejected and the Class Member shall be notified of such rejection by a letter bearing the Claim Number. The letter shall state the reason for the rejection.

8.4     All Claims Forms that meet the criteria described in this Plan of Allocation shall be deemed approved for payment by the Claims Administrator ("Approved Claims"). The claims of Class Members that challenge the Claims Administrator's calculations shall be deemed Approved Claims upon the Class Member's failure, after receipt of a determination letter, to timely appeal the Claims Administrator's determination, or if the Class Member files an appeal, upon the final determination of the appeal.

8.5     Claims Forms from Class Members identified in the Visa Transactional Database shall be deemed timely if they are received or postmarked within 60 days of the mailing of the Notice of Estimated Share of Settlement Funds to the Class Member.

8.6     Claims Forms from Class Members who are identified on the Modified Class Member List but not the Visa Transactional Database shall be deemed timely if they are received or postmarked within 60 of the mailing of the Claims Form to the Class Member. Claims Forms from Class Members who are not identified in the Modified Class Member List or the Visa Transactional Database shall be deemed timely if they are received within 180 days of Final Settlement Approval.

8.7     All late Claims Forms that are otherwise complete may be processed by the Claims Administrator. These claims shall be designated as "Late Claims." Lead Counsel may decide to accept or reject Late Claims, in which case they will be treated as any other

20

Approved Claim. In accordance with Section 10 of this Plan of Allocation, the Claims Administrator shall report all late claims accepted or rejected by Lead Counsel to the Court, who will determine ultimately whether to accept any Late Claims which have been rejected.

      8.8     At Lead Counsel discretion the deadlines outlined in Section 8.5 and 8.6 may be extended another 30 days without approval of, but with notice to, the Court. Lead Counsel may seek further extensions of these deadlines from the Court.

## 9.    Final Processing of Approved Claims

      9.1     The Claims Administrator shall finalize its processing of Class Members' Approved Claims as follows. Once the Claims Administrator has determined the number of Approved Claims, and each claimant's damages, it will calculate each claimant's pro rata share of the damages incurred by Class Members with Approved Claims and/or the amount of each Approved Claim against the Net Settlement Funds. Once those calculations are complete, the Claims Administrator will finalize the calculations of the pro rata shares and/or portions of the Visa and/or MasterCard Net Settlement Funds due to each claimant.

## 10.    Report to Court Regarding Distribution of Net Settlement Funds

      10.1    The Claims Administrator shall report to the Court as follows. After the Claims Administrator determines Class Members' pro rata shares of and/or claims against the Visa and/or MasterCard Net Settlement Funds, it will prepare a report and declaration for confidential submission under seal to Lead Counsel and to the Court for the Court's final review and approval of the Claims Administrator's determinations. The declaration will explain the tasks and methodologies employed by the Claims Administrator in processing the claims and administering the settlements. It will also contain a list of the Approved Claims of each Class

21

Member and their pro rata shares of and/or the amount of their claims against the Visa and/or MasterCard Net Settlement Funds, as well as a list of the Class Members who submitted Claims Forms which were rejected and the reasons their claims were rejected.

**11.     Securitization of Settlement Funds**

11.1     The Settlement Agreements require Visa and MasterCard to make installment payments to the Settlement Funds through December 22, 2012.  As a result, if the Settlement Funds are not securitized, Class Members with Approved Claims will not receive the full amount of their claims until 2013.  As discussed in the accompanying Fisher Allocation Declaration, it may be in the interest of the class members to receive their payments as quickly and in as few distributions as possible.  To this end, Lead Counsel has evaluated the option of converting Visa and MasterCard's unpaid installments to a lump-sum payment in a process referred to as a "securitization."  The total lump-sum received as a result of securitization would be less than the full $3,050,000 (net of expenses) to be paid over the next nine years by Visa and MasterCard, but will reflect the greater value to the Class of receiving all the amounts due at once.

11.2     If there were a securitization process in this case, the unpaid installments due to the Settlement Funds by Visa and MasterCard would be assigned to a trust.  Securities representing the value of the trust's holdings (*i.e.*, the unpaid installments) would be issued in much the same way corporate bonds are offered to investors.  Third-party investors would purchase these financial instruments at a discount that represents the interest they would earn on their investment.  The securitization is structured (*e.g.*, number of bonds, maturity dates, amortization etc.) and the obligations are sold by large banks acting as underwriters.

22

11.3    A securitization of the Visa and/or MasterCard unpaid installments would benefit the Class in a number of significant ways.

(a)    The Class will save significant costs of administration by allowing the Claims Administrator to distribute settlement checks to Class Members with Approved Claims in the near-term. Absent a securitization, Class Members with Approved Claims would not receive their last payment until at least 2013, and the Settlement Funds would bear the cost of as many as 11 distributions. The savings related to reducing the distributions from 11 to 2 could save the Settlement Fund as much as $100,000,000. *See* Declaration of Neil Zola. This far exceeds the costs related to securitization.

(b)    A larger initial check, in place of a series of smaller checks over 10 years, may benefit Class Members. (*See* Fisher Allocation Declaration.)

(c)    Securitization would reduce the risk that the value of the settlement will be eroded by inflation. Although inflation is now low, no one can predict what the rate will be between 2004 or 2005, when annual payments to Class Members are likely to begin, and 2013, when the last payment is likely to be made. (*See* Fisher Allocation Declaration.)

(d)    The credit risk that Visa and MasterCard do not make the payments would be eliminated. (*See* Fisher Allocation Declaration.)

11.4    Lead Counsel have held meetings with their advisors and with potential underwriters and have determined that a securitization of Visa's and MasterCard's obligations would be an appropriate way to convert unpaid obligations set forth in Paragraph 3(a) of the

23

Settlement Agreements into lump-sum payments.

      11.5    Following Settlement Approval by this Court, Lead Counsel will distribute a request for a proposal ("RFP") to securitize the Settlement Agreements to potential underwriters. The RFP will request that each potential underwriter provide information including, but not limited to, the potential underwriters' relevant experience, pricing, fees and willingness to commit resources and capital to achieve a successful cost- effective securitization. Based on their responses to the RFP, Lead Counsel will invite approximately 12 potential underwriters to present their qualifications and discuss pricing and fees in person. At least two additional rounds of interviews will be conducted as the field is narrowed and independent research will be collected over a period of approximately two weeks. At the end of that period (approximately four to six weeks), Lead Counsel will determine whether securitization is in the best interests of the Class.

      11.6    Lead Counsel shall retain specialized counsel to assist in the proposed securitization.

      11.7    Upon completion of the selection of the underwriters, Lead Counsel, along with the underwriters and Lead Counsel's advisors intend to seek the reasonable assistance of Visa and MasterCard to obtain information customarily available in securitizations of these sizes and relative complexity, as agreed to in the respective Settlement Agreements with Visa and MasterCard.

      11.8    The underwriters will develop and present a number of securitization structures (*i.e.*, number of bonds, duration, amortization, etc.) based on maximizing the payout to the Class. These structures will incorporate all the relevant business, financial, accounting,

Securities Exchange Commission, tax and legal issues and will be based on the assignment of the payments due to be paid by Visa and MasterCard to a trust. The trust will sell the securitized obligations in the form of bonds to bondholders and use the payments received from Visa and MasterCard to pay the interest and principal on these bonds. The trust will remit the proceeds from the sale of the securitization bonds (net of underwriter and related fees) to the Class. The review and selection of the appropriate structure by Lead Counsel will occur over approximately 14 days.

11.9    After the selection of the structure for the securitization, the underwriters will prepare drafts of offering memorandums and supporting materials as is customary for these types of securitizations. Along with these drafts, underwriters along with Lead Counsel and their advisors will prepare a presentation of the proposed securitization to the credit rating agencies, Standard & Poor's and Moody's. Preparation of these initial drafts and presentations will be completed over the next approximately 30 days.

11.10   Upon the completion of all the necessary documentation, the proposed securitization will be presented to the credit-rating agencies Standard & Poor's and Moody's. After the initial meeting with these agencies, follow up questions from Standard and Poor's and Moody's will be presented to Visa and MasterCard and after a process that could last approximately 60-90 days Lead Counsel will obtain a credit rating for the chosen securitization structure.

11.11   Upon receipt of the credit rating, the underwriters along with Lead Counsel and their advisors will finalize the required documentation and begin marketing the securitization to potential acquirers of the securitization (*i.e.*, bondholders) through a series of

25

meetings over a period of approximately one month.

11.12  Based on market conditions and bondholder interest, the underwriters will propose that the interest rate be set at a level that they believe is required to complete the sale of the entire securitization to bondholders. To eliminate risk to the Class, the underwriters could offer to purchase the entire securitization by setting the interest rate at a specified level. Lead Counsel and their advisors will analyze all alternatives including the option to forego a securitization. Completion of the securitization will take approximately 30 days from the receipt of the credit ratings from Standard & Poor's and Moody's. Lead Counsel will attempt to time the process such that marketing to potential bondholders will occur shortly after Final Settlement Approval.

11.13  Fees and expenses associated with the securitization are made up of underwriter's fees, structuring fees and related expenses. Underwriter's fees are the transactional fees charged by the underwriters for the securities sold to their clients. Based on Lead Counsel's discussions with the banks and its independent review, for a securitization of this anticipated size and credit rating, underwriter fees should range between 45-60 basis points of the total proceeds from the securitization.

11.14  Structuring fees are paid to the lead underwriters for their role in configuring the financial instrument, preparing selling memoranda and other documentation, coordinating information flow and meetings, and other administrative-type assistance required to complete the securitization successfully. Based on Lead Counsel's discussions with the banks and its independent review, securitization fees for a transaction of this size and complexity should total approximately 25 basis points of the total proceeds from the securitization.

26

11.15  All expenses such as legal, accounting, credit rating related and printing should total approximately $1.5 million - $2 million.  Lead Counsel may incur certain structuring fees and other expenses related to the securitization even if Lead Counsel determines not to pursue the securitization or if Visa or MasterCard pre-pay the settlement as described below in Section 11.16.

11.16  As an alternative to securitization, Visa and MasterCard may prepay the unpaid installments at an appropriate discount.  Both Visa and MasterCard have requested the opportunity to work with Lead Counsel  to establish a mutually agreeable discount rate to apply to pre-payment of the installments, provided that such discussion does not interfere with any effort to sell, assign, securitize or obtain financing using the Settlement Funds to third parties.  Any offer made by Visa or MasterCard would be considered against offers from third parties to securitize the unpaid installments due from Visa and MasterCard.

11.17  If Lead Counsel determines that either securitization (as discussed in Sections 11.1-11.15) or a pre-payment by Visa or MasterCard (as discussed in Section 11.16) is in the best interest of the Class, it will advise the Court of the terms and conditions of either approach and will seek prior approval of the Court before completing either transaction.

## 12.  Payments to Class Members

12.1    If the Net Settlement Funds are reduced to a lump sum pursuant to Section 11, upon Court approval of the report and declaration of the Claims Administrator, the Claims Administrator shall issue a check payable to each claimant in the amount approved by the Court.

12.2    If the Net Settlement Funds are not reduced to a lump sum pursuant to

27

Section 11, upon Court approval of the report and declaration of the Claims Administrator, up to 11 payments may be made to Class Members through 2012. If this occurs, the Claims Administrator shall apply the Class Member's pro rata share of the damages incurred by Class Members with Approved Claims, as approved by the Court, to the portion of the Visa and/or MasterCard Net Settlement Funds, other than the reserve set aside in accordance with Section 12.6, that will be available for distribution at the end of each calendar year through December 31, 2012. The Claims Administrator shall issue checks payable to each claimant based on this calculation, and after the initial payment, such checks may be issued each year through 2012.

12.3    All check stubs printed by the Claims Administrator shall state that the amount payable was calculated in accordance with this Plan of Allocation. Check stubs also shall include a Substitute Form 1099 as required by the federal tax laws. Also, either on the check stub or in an accompanying letter, the Claims Administrator will explain the calculation and how the claimant's distribution was computed.

12.4    If a Class Member who has an Approved Claim cannot be located by the Claims Administrator, or a check issued to such claimant is not cashed within six (6) months, the Claims Administrator shall void those checks and return the funds to the Net Settlement Funds.

12.5    If, in the opinion of Lead Counsel, sufficient money remains in the Net Settlement Funds after all Approved Claims have been fully paid, such that it is cost effective to make another pro rata distribution to all Class Members who received and cashed their checks, the Claims Administrator will distribute the remaining amounts, other than the reserve set aside in accordance with Section 12.6. If the Net Settlement Funds are not reduced to a lump sum, this additional pro rata distribution may be made after the last installment of the Net Settlement

28

Funds, which shall be made on or before December 22, 2012, has been distributed. The Claims Administrator will advise Lead Counsel of the approximate costs for this additional distribution, including postage, printing of checks, systems and programming costs to perform new pro rata calculations, and any other related tasks.

      12.6    The Claims Administrator shall at all times maintain a reserve of at least $10 million to cover potential late claimants or other unforseen issues. Uncashed checks shall be added to the reserve. If Lead Counsel elects to make an additional pro rata distribution, pursuant to Section 12.5, the shares of claimants whose pro rata awards would be less than $10.00 will go into the reserve.

      12.7    When distributions are otherwise complete, any monies remaining in the Net Settlement Fund from uncashed or undeliverable checks, or from other sources, will be applied in a manner recommended by Lead Counsel and approved by the Court.

**13.**     **Modification**

13.1     Lead Counsel may in the interests of justice apply to the Court to modify

this Plan of Allocation.

Dated: New York, New York
       August 18, 2003

**CONSTANTINE & PARTNERS,**

By: _____

Robert L. Begleiter (RB-7052)
Matthew L. Cantor (MC-8183)
Lloyd Constantine (LC-8465)
Stacey Anne Mahoney (SM-5425)
Michelle A. Peters (MP-7804)
Amy N. Roth (AR-4534)
Gordon Schnell (GS-2567)
Mitchell C. Shapiro (MS-1019)
Jeffrey I. Shinder (JS-5719)
Michael Spyropoulos (MS-9873)
477 Madison Avenue, 11th Floor
New York, New York 10022
(212) 350-2700
*Lead Counsel for The Class*

30