**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - x

IN RE                                                   :
                                                        :
VISA CHECK/MASTERMONEY ANTITRUST                        :
LITIGATION                                              :
                                                              MASTER FILE NO.
- - - - - - - - - - - - - - - - - - - - - - - - - - - -       CV-96-5238
                                                        :     (Gleeson, J.) (Orenstein, M.J.)
This Document Relates To                                :
All Actions                                             :
                                                        :
                                                        :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - x


**OBJECTION OF WAL-MART STORES, INC. TO THE MOTION**
**TO APPROVE THE SECURITIZATION OF THE MASTERCARD SETTLEMENT**
<u>**ACCOUNT PAYMENTS AND MEMORANDUM IN SUPPORT THEREOF**</u>

## INTRODUCTION

Wal-Mart Stores, Inc. ("Wal-Mart") respectfully submits this objection to the motion of Lead Counsel to Approve the Securitization of the MasterCard Settlement Account Payments as premature.  Wal-Mart makes its objection as a member of the class:  it has filed approved claims and signed releases in this litigation.  It was also one of the class representatives in the underlying litigation.

The Motion is premature for the simple reason that the Class Claimants have not been provided adequate information regarding the proposed securitization to make an informed decision on whether to object to the Securitization Motion. Although it is uncontested that the securitization sought is a unique, "first of its kind" securitization in a highly volatile market, the Class Claimants (who stand to lose millions of dollars in future revenue streams should the securitization move forward) have not yet been given access to all of the basic information about the securitization.

One of the key factor in determining the viability of securitization for any class member is the discount rate (or haircut) each Class Claimant will necessarily take for the opportunity to receive a lump sum payment of the remaining settlement funds.  The discount rate has been redacted from the public papers and filed under seal.  Despite the fact that the Court appointed an Independent Expert for the express purpose of reviewing the fairness of the securitization, Professor Black's report was only posted on the case website this afternoon, the day that any objections to the securitization are due, and no Class Claimant has otherwise had the opportunity to meaningfully review Professor Black's analysis.  Moreover, there is other information that Class Claimants do not have that may be important for them to know in order to make an informed decision about the present Securitization Motion.  Lead Counsel has stated that it will

post on the case website certain information regarding the Securitization or disclose the nature of the securitization in certain trade publications. (Memo at 23). This has not yet been done.

While in the end the securitization proposal may indeed be beneficial to the class, which admittedly includes cash-strapped merchants, not every class members falls into this category. More importantly, even if they did, each cash-strapped merchant should be given the opportunity to decide for itself if it wishes to "take a nickel today instead of a dime tomorrow" based on full disclosure and adequate information. In these unsteady financial times, it is critical that there be transparency in this process and Class Claimants have the appropriate opportunity to weigh the pros and cons of the key aspects of such a transaction themselves.

## ARGUMENT

The Court must evaluate the securitization proposal to amend the allocation plan "with the same standards applied to the settlement as a whole: fairness, reasonableness, and adequacy." *Maley v Delaware Global Techs.*, 186 F. Supp. 2d 361, 367 (S.D.N.Y. 2002). "As a general rule, the adequacy of an allocation plan turns on . . . 'whether the proposed apportionment is fair and reasonable' under the particular circumstances of the case." *In re Painewebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 133 (S.D.N.Y. 1997), *aff'd* 117 F.3d 721 (2d Cir. 1997) (internal citation omitted). Fundamentally, the Court must exercise its discretion and determine whether the distribution plan is in the best interests of the class as a whole. *See In re Agent Orange*, 818 F.2d 179, 183 (2d. Cir. 1987).[1]

As more fully described below, all Class Claimants do not have adequate information about the proposed securitization and they are not in a position to provide critical input to the

---

[1] Wal-Mart does not oppose securitization *per se*, but only the proposed plan based on the lack of important information.

Court in making its decision – whether or not the Class Claimants object. As a result, on the present record, it is respectfully submitted that in order for the Court to fully evaluate whether the proposed securitization serves the best interests of the class, it must allow the Class Claimants to make *informed* decisions to accept or object to the present securitization plan.

**A.      It Has Not Demonstrated That Class Claimants Have No Objections To The Securitization Motion.**

The instant motion makes the assertion that "[i]t is undeniable that the vast bulk of the Class Claimants need and want the cash payments now that would result from the Securitization." (Memo at 2). However, this broad assertion appears to be based on general market descriptions of the tightening credit market in news reports and the interview of only twenty-four of the approximately 700,000 Class Claimants. The fact that the credit market has deteriorated does not demonstrate that class members do not object to the proposed securitization.

While it is correct that twenty-four unidentified Class Claimants were surveyed,[2] the Court and Class Claimants do not know if this group is even representative of Class Claimants as it is unknown which Class Claimants were spoken to, what they were told or exactly what responses were given. Tellingly, even within the tiny group interviewed, "all" of the interviewed Class Claimants stated that their support was contingent on the securitization being "completed at a market discount rate." Slovik Decl. at 17. This is a truism which simply fails to demonstrate that class members actually support the securitization presently proposed.

---

[2]  Wal-Mart was never contacted or interviewed regarding the specifics of the securitization proposal or its input into what it would consider a tenable discount rate was never sought. *See* Mark Horwedel Declaration ("Horwedel Decl.") at 6.

Class Claimants have expressed a desire to know more about the securitization before deciding to accept or reject the present proposal. *See* Horwedel Decl. at 3, 8. Speaking for itself, Wal-Mart requires additional information before it will be in a position to decide on the viability of the instant securitization motion. *Id.* at 4. Wal-Mart is not alone in its desire for other information. Other Class Claims have expressed a desire to know more about the proposed securitization. In fact, in response to this desire of Class Claimants to find out more about the securitization proposal, Lead Counsel held a teleconference on Thursday, March 26, 2009, the day before Objections were due. *Id.* at 9. However, only 8 to 9 of the largest Class Claimants participated in the teleconference.[3] *Id.* Besides the fact that this teleconference was held on the eve of the time to file objections, the fact of the matter is that the overwhelming number of other Class Claimants (particularly smaller Class Claimants) were not part of it.[4] *Id.* at 11. The expressed desire of Class Claimants for information should be given heavy weight by the Court given it is Class Claimants' money which is being put at risk.

**B.     Adequate Information Has Not Been Provided to Class Claimants**

One important piece of information necessary for any class member to make an informed decision on the present securitization plan is the discount rate and related ancillary information

---

[3]  While the estimated maximum discount rate has been disclosed to Wal Mart and 8-9 other merchants, they still have not seen the other information to be posted on the website or meaningfully review the just-posted Black Report. Horwedel Decl. at 7, 10.

[4]  In the Order to Show Cause dated March 6, 2009, this Court ordered that "posting a copy of this Order, the Memorandum, and the above-mentioned declarations and exhibits attached hereto on the case website at [address] *and mailing such papers to all parties who have appeared in this or any related case* on or before March 6, 2009 shall be deemed good and sufficient service thereof." (emphasis added). Wal-Mart, however, did not receive any mailed notice as required. Horwedel Decl. at 5.

for the securitization.[5] The Motion attempts to deflect the absence of the discount rate (and the absence of any procedure that would allow disclosure to concerned Class Claimants) in two ways: by claiming that disclosure of the minimally acceptable pricing "may be" adverse to the Bankers' marketing efforts and therefore adverse to the best interests of the Class Claimants; and stating that the discount rate will be provided to the court at some later date. While Wal-Mart appreciates that there must be sensitivity regarding the disclosure of the discount rate to the market, a blanket omission of this key data to those who have to decide if they should object to the proposed securitization is simply not a workable solution. Even assuming that some prejudice might result if the discount rate becomes public, given the vital importance of this information, a straight-forward and transparent process to provide that information to all Class Claimants should be set up. The fact that the Court will be provided with the information at some later date does not obviate Class Claimants' real need to have an understanding regarding the discount rate and related ancillary information in order to make an individual determination regarding the efficacy of securitization before the deadline for objections has passed.

Equally important to the Class Claimants' determination of whether to raise an objection with the Court is the report of Independent Expert Professor Bernard Black of the University of Texas at Austin. Professor Black was assigned the critical task of assessing "the fairness of the proposal from a financial point of view." (Memo at 12). Over a year and half ago, on September 17, 2007, the Court ordered the appointment of an expert to advise the Court regarding the securitization process and requested that Lead Counsel "provide a plan for providing the Class with notice of its securitization proposal." Begleiter Decl., Ex. G. In response, in a letter to the

_____

[5] Such information includes the maximum discount rate, the expected spread, what factors will affect the rate and how, and what experts and Lead Counsel anticipate the rate will be.

Special Master dated January 11, 2008, Lead Counsel expressly proposed that they would provide their securitization proposal when the placement agents were in a position to market the securitized notes, so that "both Lead Counsel's proposal and the Independent Expert's recommendation could be posted on the case web site *at the same time and could be considered simultaneously by Class Members and the Court.*" Begleiter Decl., Ex. H (emphasis added).

Professor Black's report was only posted to the case website this afternoon, the day any objections are due to be filed. Obviously, Class Claimants have had no opportunity to meaningfully review Professor Black's determinations regarding the proposal and his risk-reward analysis of securitization in the prevailing market conditions.[6] Class Claimants should be given an opportunity to do so.

In addition, there is other information that is relevant to securitization which has yet to be provided to Class Claimants. Lead Counsel has stated that they intend "to post certain information regarding the securitization on the case website" and to disclose its nature in trade publications. (Memo at 23). These materials have not yet been made available, even in confidential form, to help Class Claimants appreciate the risks and rewards of the proposed securitization in an uncertain market. There is no reason that this cannot be done before objections to the securitization must be made or the proposed securitization approved by the Court.

---

[6] Wal-Mart's limited review of the report established that none of the underlying documents provided to Professor Black were included as exhibits or otherwise made available on the case website. Moreover, even this cursory review showed that Professor Black's opinion was predicated on an assumption that the securitization will be "completed *during a period of normal credit market conditions,* that the Notes will receive an investment grade rating, and that the Notes can be issued at an interest rate consistent with that rating." (emphasis added). As the Motion notes, however, we are not operating in normal credit market conditions, as the market for investment grade securitization "shut down in 2008" and the credit markets have only recently "reopened on a limited basis." (Memo at 3, 12).

Information about the proposed securitization is particularly important given the risks that it presents to Class Claimants. In the Motion it is recognized that there are a number of factors relevant to the pricing of the securitization notes, including the novelty and uniqueness of the offering (this is a wholly untested "first-of-a-kind" securitization in a limited market), MasterCard's creditworthiness, and interest issues tied to the U.S. Treasuries.

It is particularly important that Class Claimants be given adequate information due to the volatile marketplace and the unproven nature of this type of security. It is not a forgone conclusion that the proposed securitization plan will serve the best interests of the Class. In the few cases where settlement payments have been securitized, the outcome to the claimants has been mixed. The most well-known example is the securitization of settlement payments pursuant to the seminal tobacco litigation settlement by a number of States. In the early 2000s, many States, facing serious shortfalls in their budgets, opted to take a lower lump-sum payment in lieu of annual payments through securitization – a decision that sparked substantial controversy. *See, e.g.*, Declaration of Nancy Hart, Ex. A (Dan Morain, *Burning the Tobacco Windfall: Facing a Budget Crisis, The State is Likely To Cash Out Its Cigarette Litigation Settlement For Immediate Aid – At a Cost of $8 Billion Over Time*, L.A. Times, July 24, 2002 at A.1 (citing one budget expert who likened the decision to taking out a mortgage on a house in order to buy groceries)); Ex. B (Jonathan Fuerbringer and Al Baker, *Shift in Bonds Has States Rethinking Tobacco Plans*, N.Y. Times, April 10, 2003 (reporting that States struggled with the decision whether to securitize their settlement payments given the risk and limited available market)); Ex. C (American Lung Association, *Securitization: Breaking the Promise, available at* http://www.lungusa.org (finding that the States that have securitized their settlement payments received about 30 to 40 cents for each dollar anticipated under the settlement agreement)). It is

entirely possible that Class Claimants may determine that it is in their best interests to securitize as set out in the proposed plan the future revenue stream of the settlement payments now and forgo millions of dollars in the long-term, but without additional information, it is impossible for them to make an informed decision to support such a proposal.

## C.    A Short Delay To Supply Needed Information to Class Claimants Should Not Prejudice Securitization

Waiting until Class Claimants have adequate information will not prejudice securitization but only impact its timing.  Markets remain very unsettled and from a financial market perspective, there is no demonstrated urgency to a securitization.  A short wait may prove beneficial to securitization as markets have improved since the first of the year and there is no reason to think that they will not continue to improve.  Most importantly, it cannot be guaranteed that a securitization will even move forward should the instant plan be approved by the Court. Lead Counsel state that once an S&P final credit rating is received, the "would review market conditions with the Bankers, its advisor, and the Independent Expert in order to make a final determination regarding commencement of the marketing of the securitization.  (Memo at 19). The Motion asserts that even if the preparation for the securitization is completed, Lead Counsel still intend to "wait until a favorable opportunity to effectuate the Securitization arises." *Id.* at 13.[7]

Further, not all of the steps necessary to effectuate the securitization have been completed.  For example, the review of the required tax reporting to Class Claimants that would be required after securitization has not even been completely resolved.  Begleiter Decl. at 36.  In

---

[7] It is particularly important for Class Claimants to get additional information on the proposed securitization given that Lead Counsel indicated their intention to go forward with a similar transaction with respect to the Visa settlement payments.

short, given that providing the opportunity for Class Claimants to make an informed decision will not prejudice any future securitization, there is no reason not to take the necessary time to provide this needed information to Class Claimants.

## CONCLUSION

The motion for approval of the securitization proposal is premature and should be re-filed only after Class Claimants have been provided with necessary information. For all of the foregoing reasons, this Court should deny the motion to approve the securitization of the MasterCard settlement account payment with leave to re-file after sufficient information and notice regarding the proposed securitization has been given to Class Claimants.

Dated:  New York, New York
       March 27, 2009

                       GIBSON, DUNN & CRUTCHER LLP

                       By: _Peter Sullivan_____
                           Peter Sullivan
                           Nancy E. Hart

                       200 Park Avenue, 47th Floor
                       New York, New York 10166-0193
                       Telephone: (212) 351-4000
                       Facsimile: (212) 351-4035

                       *Attorneys for Objector Wal-Mart Stores, Inc*