# EXHIBIT J

# 'Perry Mason' helped 'mold' Sotomayor

## No promises on abortion, nominee says

By Joan Biskupic and Kathy Kiely
USA TODAY

WASHINGTON — Like Supreme Court nominees before her, Judge Sonia Sotomayor came to her confirmation hearings armed with names of legal greats who inspired her. Wednesday, she invoked *Perry Mason*.

Sotomayor recalled watching the TV series about the fictional defense attorney as a child and said it inspired her to pursue a career in law. She remembered one of Mason's courtroom rivals telling him, "Justice is served when a guilty man is convicted and when an innocent man is not."

"That TV character said something that molded my life," Sotomayor said. Her more conventional choice of a role model is the late Justice Benjamin Cardozo, whose name she dropped earlier this week.

The Perry Mason reference was one of several moments in which Sotomayor flashed a down-to-earth personality and a grasp of pop culture that has helped charm Democratic and Republican senators on the Judiciary Committee, even as she refused to let them pin her down on controversial topics.

On abortion, Sotomayor said she made no promises to anyone about how she'd vote — including President Obama, who nominated her and said as a candidate that he would make "preserving a woman's right to choose under *Roe v. Wade* a priority."

"I was asked no question by anyone, including the president, about my views on any specific legal issue," Sotomayor said.

Republican senators such as John Cornyn of Texas pressed the nominee on her views of the landmark 1973 case that made abortion legal nationwide. She said only that she would follow court precedent on abortion.

In 17 years as a federal judge, Sotomayor has decided cases only on the fringes of the abortion debate.

Sen. Tom Coburn, R-Okla., an obstetrician and outspoken abortion opponent, asked whether medical technology that has improved the survival rate for babies born prematurely should alter justices' views about the constitutionality of abortion in the early stages of pregnancy. Sotomayor declined to engage the topic.

Despite her admiration for defense lawyer Perry Mason — a character who, as Sen. Al Franken, D-Minn., jokingly noted, won every week — Sotomayor became a prosecutor, a fact that she and her supporters emphasized. If confirmed, she would be the only former local prosecutor on the Supreme Court. From 1979 to 1984, she worked in the Manhattan district attorney's office that inspired another popular TV legal drama, *Law & Order*.

Under questioning from Sen. Amy Klobuchar, D-Minn., another former prosecutor, Sotomayor agreed that a high-court decision in June could make it more difficult to introduce routine lab reports on blood, drugs or ballistics. The justices ruled that when prosecutors present forensic reports, the analysts who prepared them must testify to fulfill a defendant's right to be confronted with the witnesses against him.

"I was a former prosecutor. And it's difficult proving cases as it is. Calling more witnesses adds some burdens to the process," Sotomayor said. "But, at the end, that case is a decided case."

Other senators focused on Sotomayor's experience in commercial law. Sotomayor told Sen. Ted Kaufman, D-Del., she left the Manhattan DA's office to get experience in commercial litigation. She told the committee she chose a small firm over a large one so she would not have to be the "fifth guy on the totem pole."

Sotomayor said she parlayed her knowledge of commercial law into volunteer work that included helping people obtain loans for affordable housing.

At another point, she emphasized her commitment to community work. She said that when she speaks to law students and other groups, she stresses "the importance of participation in bettering the conditions in our society. ... I tell people that. Just get involved in your communities. ... Work on your school boards. Work in your churches. Work in your community to improve it."

Franken, the newest senator, briefly stole the show when Judiciary Chairman Patrick Leahy's microphone malfunctioned. After offering Leahy, a Vermont Democrat, the use of his, Franken popped into the chairman's seat. "That's the quickest rise of any senator in history," quipped Sen. Jeff Sessions, R-Ala.

By Robert Deutsch, USA TODAY

**Sibling support:** Juan Sotomayor, the brother of Supreme Court nominee Sonia Sotomayor, shows her a message on his phone during a break in Senate Judiciary Committee confirmation hearings Wednesday.

**At usatoday.com**

**Streaming video:** Watch the Sotomayor hearing live. Also, catch live blogging of the hearing at The Oval.

**Interactives:** Take a quiz to test your Supreme Court knowledge. See the makeup of the committee and get the lowdown on how Senate political shifts will influence the nomination.

**Images of the nominee:** See photos of the hearing and look back at her life in pictures.

# Public pays for more congressional foreign trips

## Some assert economy calls for cutbacks

By Seung Min Kim
USA TODAY

Though new ethics rules have curbed privately funded travel by members of Congress in recent years, taxpayers are increasingly picking up the tab for lawmakers' foreign travel, according to congressional travel records.

In the 2007-08 term, Congress spent about $5.2 million on lawmakers' trips to countries such as France, Kuwait and Jordan, according to a USA TODAY analysis of Senate records contained in the *Congressional Record* and House of Representative records compiled by the non-partisan CQ MoneyLine.

That's up 6% compared with the previous congressional session in 2005-06, when members spent about $4.9 million on foreign travel, and up 30% compared with 2003-04, the data show.

Taxpayers also pay for the travel expenses of congressional aides on the official trips. In 2008 alone, Congress spent about $15.5 million on foreign travel for lawmakers and their aides, according to the analysis.

Meanwhile, the cost of all congressional travel funded by private groups dropped to $3.4 million during the 2007-08 congressional term from $5.2 million in 2005-06, according to CQ MoneyLine. That's because of ethics rules adopted in 2007 that placed restrictions on travel paid for by private groups.

Watchdog groups say these official trips can give lawmakers perspective on policy issues. However, they say more disclosure is needed to ensure lawmakers aren't vacationing on the taxpayers' dime. "Given the economic place that we are in right now, people all over the country are cutting back on travel," said Mary Boyle, spokeswoman for Common Cause. "It would make sense that Congress might consider that also."

Steve Ellis, vice president of Taxpayers for Common Sense, said itineraries and lodging should be more publicized. Information available in the *Congressional Record* lists only the cost of the trip, the country visited and the committee or congressional delegation that sponsored the trip. In addition, House members disclose the dates of their trips.

Representatives for members of Congress who take taxpayer-funded trips say the travels are critical.

In the six-year time period examined by USA TODAY, Rep. Robert Wexler, D-Fla., had the biggest travel bill paid for by Congress. He spent about $266,000 on 33 trips to countries such as Turkey, Israel and the Czech Republic. Wexler is the chairman of the House Subcommittee on Europe.

Wexler's travels abroad help him better understand issues such as foreign aid budgets, said Eric Johnson, Wexler's chief of staff. "He feels very strongly that to fully understand how to legislate on these issues that members of Congress need to get out and meet these foreign leaders and understand what they are working on," Johnson said.

The lawmaker with the biggest privately funded travel tab: Sen. Richard Lugar, R-Ind., who took eight trips worth $70,407 in 2007-08 and a total of 54 trips worth $291,977 since 2000.

All but one trip in 2007-08 was sponsored by the non-profit Aspen Institute, which sent Lugar to destinations such as Paris, San Juan, and Rome in the last two years. His wife, Charlene, accompanied him on those trips.

The Aspen events, attended by lawmakers of both parties, are a valuable way to build support for legislation, Lugar's spokesman Andy Fisher said. He said Charlene Lugar accompanies her husband because "she's interested in the topics as well."

Contributing: Fredreka Schouten

▶ Effect of ethics rules, 1A

By Moshe Milner, Israeli Government Press Office, via AP

**Big travel bill:** Israel's Prime Minister Benjamin Netanyahu, right, meets with Rep. Robert Wexler, D-Fla., in Jerusalem in May.

## Health plan clears 1st test as clamor grows

President Obama's health care overhaul cleared its first hurdle in Congress on a partisan vote Wednesday as his campaign organization rolled out television ads to build support for his top domestic priority.

Obama met with Republicans at the White House in search of an elusive bipartisan compromise on his call to expand coverage to the nearly 50 million Americans who lack insurance as well as restrain spending increases in health care.

But the 13-10 vote in the Senate health committee, with all 10 Republicans voting against, signaled a deepening rift.

The Senate health panel's $600 billion measure would require individuals to get health insurance and employers to contribute to the cost. The bill calls for the government to provide financial aid for individuals and families making up to four times the federal poverty level, or about $88,000 for a family of four, a broad cross-section of the middle class.

The president was in the Rose Garden for the latest public appeal to Congress to "step up and meet our responsibilities" and move legislation this summer. Obama also conducted a number of network television interviews to push his message.

### Pentagon: No threat to troops' tobacco

The Pentagon says it won't ban smoking by troops in war zones despite a recent study recommending a tobacco-free military.

Pentagon press secretary Geoff Morrell says troops already are under enough stress and making enough sacrifices from fighting the two wars in Iraq and Afghanistan. And he says Defense Secretary Robert Gates doesn't want to add to that stress by taking away one of the few outlets they have to relieve it.

Morrell says Gates will look at the study to see what other things can be done to move toward a goal of a tobacco-free force.

USA TODAY reported last week that military health officials were proposing to Gates that he follow a federal Institute of Medicine report commissioned by the Pentagon and Department of Veterans Affairs that recommended a ban on tobacco use that could be phased in over a period of years.

### Clinton: Clock ticking for Iran response

Secretary of State Hillary Rodham Clinton on Wednesday warned Iran it has only a limited time to accept a U.S. offer for engagement. She also urged Arab nations to take immediate steps to improve ties with Israel to bolster Middle East peace hopes.

In a speech to the Council on Foreign Relations, Clinton said the Obama administration was "appalled" by Iran's recent post-election crackdown on protesters.

She said Iran would face new penalties and increasing isolation over its nuclear program and support for extremists unless it soon took up the U.S. overture.

"We remain ready to engage with Iran, but the time for action is now," Clinton said. "The opportunity will not remain open indefinitely."

Last week, President Obama said Iran needs to respond positively by the fall or risk more bilateral and United Nations sanctions.

From staff and wire reports

USA TODAY
Subscriptions
1-800-USA-0001
Monday – Friday
6:30a.m. – 10p.m. ET

7950 Jones Branch Dr., McLean, Va. 22108, 703-854-3400
Published by Gannett, Volume 27, No. 215 ISSN0734-7456

Regular U.S. subscription rates: 13 wks, $65; 26 wks, $130; 52 wks, $260. Foreign rates available. Contact Mike Chisari, director, national customer service, P.O. Box 10444, McLean, VA 22102-8444, or fax 1-800-732-3631.

Advertising: All advertising published in USA TODAY is subject to the current rate card; copies available from the advertising department. USA TODAY may in its sole discretion edit, classify, reject or cancel at any time any advertising submitted.

Classified: 1-800-397-0070
National, Regional: 703-854-5903

Reprint permission, copies of articles, glossy reprints: 703-854-5619 Fax: 703-854-2112

USA TODAY is a member of The Associated Press; subscribes to Reuters and other news services. Published daily except Saturdays, Sundays and widely observed holidays. Periodicals postage paid at McLean, Va., and additional offices. USA TODAY, its logo and associated graphics are registered trademarks. All rights reserved.

Postmaster: Send address changes to USA TODAY, P.O. Box 50146, McLean, VA 22102-8946.

Legal Notice Legal Notice

**Merchant Advisory On The MasterCard Agreement To Prepay Future Payments At A Discount**

New York City, July 13, 2009

Dear Merchants,

Constantine Cannon LLP and Hagens Berman Sobol Shapiro LLP, together Lead Counsel for United States merchants in the *In re Visa Check/MasterMoney Antitrust Litigation*, CV 96-5238, advise Class Members as follows.

On July 2, 2009, Lead Counsel sought Court approval of a July 1, 2009 agreement with MasterCard International Incorporated ("MasterCard") pursuant to which MasterCard agreed to prepay the remaining payments due under the June 2003 Settlement Agreement by making a single payment of $335 million on September 30, 2009 (the "Prepayment Agreement"), in lieu of securitizing MasterCard's remaining four annual $100 million payments scheduled through 2012 (the "Securitization"). In connection with its request for approval of the Prepayment Agreement, Lead Counsel also sought the Court's approval to amend the Court's order entered April 29, 2009 approving the securitization (the "Proposed Amended Securitization Order").

If the Court approves Lead Counsel's application, as with the Securitization, Lead Counsel will be able to make lump-sum distributions of MasterCard's residual payments to Class Members with approved claims instead of making installment payments over the next four years of any residual amounts. While not only are the terms of the Prepayment Agreement equal to a discount rate well below the maximum discount rate already authorized by the Court in connection with the Securitization, but the Prepayment Agreement is also more beneficial to Class Members because the market risks and transaction and administration costs associated with the Securitization will be largely eliminated.

Objections to the Proposed Amended Securitization Order must be filed with the Court by August 3, 2009, and any objectors must appear before the Court on August 19, 2009, at 12:30 p.m., to show why the Proposed Amended Securitization Order should not issue. Merchants may visit the case website to review the papers Lead Counsel filed in connection with its application, the anticipated submission from the Independent Expert regarding the benefits of the Prepayment Agreement and the Court Order setting forth the schedule for objecting to the Proposed Amended Securitization Order, at www.inrevisacheckmastermoneyantitrustlitigation.com by clicking on the sidebar option entitled "MasterCard Agreement To Prepay Future Payments At A Discount." The papers are also available at Co-Lead Counsel's website at www.constantinecannon.com.

Details concerning merchant rights under the Settlement are available on the case website by clicking on the sidebar option entitled "Merchant/Class Member Rights Under the Settlement." Additional assistance is also available by calling 1-888-641-4437.

Sincerely,

CONSTANTINE CANNON LLP
(formerly Constantine & Partners)
*Co-Lead Counsel for the Class*
Counsel@InReVisacheckMastermoneyAntitrustLitigation.com

HAGENS BERMAN SOBOL SHAPIRO LLP
*Co-Lead Counsel for the Class*

*Para una notificación en Español, llame o visite nuestro sitio Web.*

THIS MAN WENT FROM
BANKRUPT TO BILLIONAIRE
DURING THE LAST
GOVERNMENT BAILOUT

His name is Bill Bartmann and he's at it again. And, this time, he wants to bring you with him.

The U.S. government has just announced two programs that let you purchase "bad loans" for pennies on the dollar. They are even providing loan guarantees, and much of the funding.

No one knows this business opportunity better than Bill Bartmann. His book *Bailout Riches* just hit #1 on Amazon and he's packing seminar rooms teaching people how to navigate and make money from these programs.

To learn more visit Billsbailoutriches.com and watch Bill's "How to Make Money Buying Bad Loans" video for free!

*Special for USA TODAY Readers. Get Bill's "How to Make Money Buying Bad Loans" Video ~~(Reg. $99)~~ FREE*

Get Your Free Video!
*Call 1-866-368-3328 or*
www.Billsbailoutriches.com

# LEGAL NOTICES

GLOBAL, NATIONAL, REGIONAL
TO ADVERTISE CALL 1.800.366.3975
FAX: 214.640.7900
ADVERTISING.WSJ.COM

## BANKRUPTCIES

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

In re: Metaldyne Corporation, et al., Debtors. | Chapter 11 | Case No. 09-13412 (MG) | (Jointly Administered)

**NOTICE OF DEADLINES FOR FILING OF PROOFS OF CLAIM (GENERAL BAR DATE IS AUGUST 14, 2009)**

PLEASE TAKE NOTICE OF THE FOLLOWING:

On July 7, 2009, the United States Bankruptcy Court for the Southern District of New York (the "Court") entered an order (the "Bar Date Order") establishing certain deadlines for the filing of proofs of claim in the chapter 11 cases of the following debtors and debtors in possession (collectively, the "Debtors"): [illegible] Products Corp., 09-13411; Metaldyne Corporation, 09-13412; Metaldyne Engine Co., LLC, 09-13413; Metaldyne Company, LLC, 09-13414; Metaldyne Lester Precision Die Casting, Inc., 09-13415; Metaldyne Sintered Components, LLC, 09-13416; Metaldyne Tubular Products, Inc., 09-13417; Metaldyne DuPage Die Casting Corporation, 09-13418; Metaldyne Machining and Assembly Company, Inc., 09-13419; Metaldyne Light Metals Company, Inc., 09-13420; Metaldyne Sintered Components St. Marys, Inc., 09-13421; NC-M Chassis Systems, LLC, 09-13422; Punchcraft Company, 09-13423; Windfall Specialty Powders, Inc., 09-13424; Metaldyne Asia, Inc., 09-13425; Metaldyne Driveline Co., LLC, 09-13426; Metaldyne Europe, Inc., 09-13427; Metaldyne Precision Forming - Fort Wayne, Inc., 09-13428; Metaldyne Services, Inc., 09-13429; Metaldyne Sintered Components of Indiana, Inc., 09-13430; Metaldyne US Holding Co., 09-13431; ER Acquisition Corp., 09-13432; GMTI Holding Company, 09-13433; Halyard Aviation Services, Inc., 09-13434; Mascotech Saturn Holdings, Inc., 09-13435; MASG Disposition, Inc., 09-13436; MASX Energy Service Group, Inc., 09-13437; Precision Headed Products, Inc., 09-13438; Slam International, Inc., 09-13439; W.C. McCurdy Co., 09-13440; Metaldyne Intermediate Holdco, Inc., 09-13441.

By the Bar Date Order, the Court established August 14, 2009 (the "General Bar Date") as the general claims bar date for filing proofs of claim in the Debtors' cases. The General Bar Date and other bar dates described herein apply to all entities as defined in section 101(15) of the Bankruptcy Code, 11 U.S.C. §§ 101, et seq. (the "Bankruptcy Code"), including all persons, estates, trusts, governmental units and the United States trustee.

As used in this Notice, the term "claim" means, as to or against any of the Debtors and in accordance with section 101(5) of the Bankruptcy Code: (a) any right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or (b) any right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

1. **THE BAR DATES.** The Bar Date Order establishes the following bar dates for filing proofs of claim in these cases (collectively, the "Bar Dates"):

(a) The General Bar Date. Pursuant to the Bar Date Order, except as described below, all entities holding claims against the Debtors that arose (or are deemed to have arisen prior to the commencement of these cases on May 27, 2009 (the "Filing Date") are required to file proofs of claim by the General Bar Date on August 14, 2009. *The General Bar Date applies to all types of claims against the Debtors that arose prior to the Filing Date, including secured claims, unsecured priority claims (including, without limitation, claims entitled to priority under section 507(a)(4), section 507(a)(5), section 507(a)(8) and section 503(b)(9) of the Bankruptcy Code) and unsecured non-priority claims.*

(b) The Rejection Bar Date. Any entity whose claims arise out of the Court-approved rejection of an executory contract or unexpired lease, in accordance with section 365 of the Bankruptcy Code and pursuant to an order entered prior to the confirmation of a plan of reorganization in the applicable Debtor's chapter 11 case, must file a proof of claim on or before the later of (i) the General Bar Date or (ii) 30 days after the entry of the order authorizing the Debtor's rejection of the applicable contract or lease. The later of these dates is referred to in this Notice as the "Rejection Bar Date."

(c) The Amended Schedule Bar Date. If, subsequent to the date of this Notice, a Debtor amends or supplements its schedules of assets and liabilities and statements of financial affairs (collectively, the "Schedules"), the parties affected will receive notice of the amendment or supplement and will be required to file a proof of claim in respect of the amended scheduled claim on or before the later of (i) the General Bar Date or (ii) 30 days after the date that notice of the applicable amendment or supplement to the Schedules is served on the claimant. The later of these dates is referred to in this Notice as the "Amended Schedule Bar Date."

(d) The Governmental Unit Bar Date. Proof of claim of a governmental unit must be filed by November 23, 2009, unless the Rejection Bar Date or the Amended Schedule Bar Date applies to such claim. The later of these dates is referred to in this Notice as the "Governmental Unit Bar Date."

2. **WHO MUST FILE A PROOF OF CLAIM.** Unless one of the exceptions described in Section 5 below applies, you MUST file a proof of claim to vote on a chapter 11 plan of reorganization or to share in distributions from the Debtors' bankruptcy estates if you have a claim that arose or is deemed to have arisen prior to the Filing Date. Claims based on acts or omissions of the Debtors that occurred before the Filing Date must be filed on or prior to the applicable Bar Date, even if such claims are not now fixed, liquidated or certain or did not mature or become fixed, liquidated or certain before the Filing Date.

Except where the Rejection Bar Date, the Amended Schedule Bar Date or the Governmental Unit Bar Date applies to establish a different deadline or one of the exceptions in Section 5 applies, the following entities MUST file proofs of claim on or before the General Bar Date:

(a) any entity (i) whose prepetition claim against a Debtor is not listed in the applicable Debtor's Schedules or is listed as "disputed," "contingent" or "unliquidated" and (ii) that desires to participate in any of these chapter 11 cases or share in any distribution in any of these chapter 11 cases; and

(b) any entity that believes its prepetition claim is improperly classified in the Schedules or is listed in an incorrect amount and that desires to have its claim allowed in a classification or amount other than that identified in the Schedules.

3. **WHAT TO FILE.** Claims should be asserted on proof of claim forms that conform substantially to Official Bankruptcy Form No. 10. Proof of claim forms may be obtained at the following websites: http://www.bmcgroup.com/metaldyne or http://www.uscourts.gov/bkforms.

All proof of claim forms must be **signed** by the claimant or, if the claimant is not an individual, by an authorized agent of the claimant. The proof of claim form must be written in English and be denominated in United States [illegible] for payment in accordance with section 503(a) of the Bankruptcy Code and shall not be deemed proper if made by proof of claim. No deadline has been established for the filing of administrative claims other than claims under section 503(b)(9) of the Bankruptcy Code. Claims under section 503(b)(9) must be filed by the General Bar Date.

4. **WHEN AND WHERE TO FILE.** All proofs of claim must be filed so as to be received on or before the applicable Bar Date, at one of the following addresses (together, the "Metaldyne Claims Processing Center"):

| IF SENT BY MAIL | IF DELIVERED BY HAND OR OVERNIGHT COURIER |
|---|---|
| Metaldyne Corporation<br>c/o BMC Group, Claims Processing<br>P.O. Box 3020<br>Chanhassen, MN 55317-3020 | Metaldyne Corporation<br>c/o BMC Group, Claims Processing<br>18750 Lake Drive East<br>Chanhassen, MN 55317 |

Proofs of claim will be deemed filed only when **actually received** by the Metaldyne Claims Processing Center on or before the Bar Dates. **Proofs of claim may not be delivered by facsimile or electronic mail transmission.** Any facsimile or electronic mail submissions will not be accepted and will not be deemed filed until a proof of claim is submitted by one of the methods described above.

5. **WHO NEED NOT FILE A PROOF OF CLAIM.** The Bar Date Order further provides that the following entities, who otherwise would be subject to the General Bar Date, need NOT file proofs of claim in these cases:

(a) Any entity that already has filed a signed proof of claim against the applicable Debtor(s) with the Clerk of the Bankruptcy Court for the Southern District of New York or the Metaldyne Claims Processing Center in a form substantially similar to Official Bankruptcy Form No. 10.

(b) Any entity whose claim is listed on the Schedules if (i) the claim is not scheduled as "disputed," "contingent" or "unliquidated;" and (ii) such entity agrees with the amount, nature and priority of the claim as set forth in the Schedules; and (iii) such entity does not dispute that its claim is an obligation only of the specific Debtor against which the claim is listed in the Schedules.

(c) A holder of a claim that previously has been allowed by order of the Court;

(d) A holder of a claim that has been paid in full by any of the Debtors in accordance with the Bankruptcy Code or an order of the Court;

(e) A holder of a claim for which a specific deadline previously has been fixed by the Court;

(f) Any officer, director or employee of any of the Debtors having a claim against any of the Debtors for indemnification, contribution or reimbursement;

(g) Any Debtor having a claim against another Debtor, or any of the wholly-owned direct and indirect nondebtor subsidiaries of the Debtors having a claim against any of the Debtors;

(h) The parties to the Debtors' prepetition asset-based revolving credit facility, the Debtors' prepetition senior secured credit facility and the Debtors' postpetition secured financing facility need not file proofs of claim related to such financing facilities, to the extent they are excused from doing so in paragraph 17 of the Interim DIP Order or any final debtor in possession financing order.

(i) Any holder of a claim allowable under sections 503(b) and 507(a)(2) of the Bankruptcy Code as an expense of administration (other than any claim allowable under section 503(b)(9) of the Bankruptcy Code); and

(j) Any entity whose claim is limited exclusively to the repayment of principal, interest and/or other applicable fees and charges (a "Debt Claim") on or under any bond or note issued by the Debtor pursuant to an indenture (collectively, the "Notes"), including: (A) the 11% senior subordinated notes due 2012; and (B) the 10% senior notes due 2013; provided, however, that (i) the foregoing exclusion in this subparagraph shall not apply to the indenture trustee or similar agent under the applicable Note (the "Indenture Trustee"); (ii) the Indenture Trustee for a Note is required to file a proof of claim, on or before the General Bar Date, with respect to all of the Debt Claims on or under such Note; and (iii) any holder of a Debt Claim wishing to assert a claim, other than a Debt Claim, arising out of or relating to a Note is required to file a proof of claim on or before the General Bar Date, unless another exception in this paragraph applies.

*In addition, the Bar Dates do not apply to any claims that may be asserted against any of the Debtors' non debtor affiliates, including the Debtors' non U.S. affiliates.*

If you are a holder of an equity interest in the Debtors, you need not file a proof of interest with respect to the ownership of such equity interest at this time. However, if you desire to assert a claim against the Debtors, including a claim relating to such equity interest or the purchase or sale of such interest, a proof of such claim must be filed on or prior to the General Bar Date pursuant to the procedures set forth in this Motion.

Notwithstanding anything in this Notice or the Bar Date Order to the contrary, the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, UAW (Locals 371, 1395, 3400 and 3520) and the United Steelworkers of America (Local 9491) (collectively the "Unions") may file proofs of claim for obligations arising under the applicable collective bargaining agreement or where applicable law appoints the Union as the authorized representative of Union-represented persons with respect to such obligation. Any such consolidated proof of claim shall be designated as an "Omnibus [Union] Proof of Claim" and may include aggregate claims of the type described above on behalf of the applicable Union and its represented persons. Based upon the foregoing, Union represented persons are not required to file individual proofs of claim for claims included in the Union's omnibus claim. If Union represented persons nevertheless choose to file separate proofs of claim, the provisions of this Notice and the Bar Date Order shall apply.

6. **CONSEQUENCES OF FAILURE TO FILE A PROOF OF CLAIM BY THE APPLICABLE BAR DATE.** ANY ENTITY THAT IS REQUIRED TO FILE A PROOF OF CLAIM, BUT THAT FAILS TO DO SO BY THE APPLICABLE BAR DATE DESCRIBED IN THIS NOTICE, SHALL BE FOREVER BARRED, ESTOPPED AND ENJOINED FROM ASSERTING SUCH CLAIM AGAINST THE DEBTORS OR VOTING UPON, OR RECEIVING DISTRIBUTIONS UNDER, ANY PLAN OR PLANS OF REORGANIZATION IN THESE CHAPTER 11 CASES OR OTHERWISE FROM THE DEBTORS' ESTATES IN RESPECT OF SUCH CLAIM, UNLESS THESE CASES ARE CONVERTED TO CHAPTER 7 CASES AND ANOTHER BAR DATE IS ESTABLISHED.

7. **THE DEBTORS' SCHEDULES AND ADDITIONAL INFORMATION.** You may be listed as the holder of a claim against one or more of the Debtors in the Debtors' Schedules. Copies of the Debtors' Schedules and other information regarding the Debtors' chapter 11 cases (including the Bar Date Order) are available for inspection free of charge on BMC's website at http://www.bmcgroup.com/metaldyne. The Schedules and other filings in the Debtors' chapter 11 cases also are available for a fee at the Court's website at http:// [illegible]

## CLASS ACTIONS

### Merchant Advisory On The MasterCard Agreement To Prepay Future Payments At A Discount

New York City, July 13, 2009

Dear Merchants,

Constantine Cannon LLP and Hagens Berman Sobol Shapiro LLP, together Lead Counsel for United States merchants in the *In re Visa Check/MasterMoney Antitrust Litigation*, CV 96-5238, advise Class Members as follows:

On July 2, 2009, Lead Counsel sought Court approval of a July 1, 2009 agreement with MasterCard International Incorporated ("MasterCard") pursuant to which MasterCard agreed to prepay the remaining payments due under the June 2003 Settlement Agreement by making a single payment of $335 million on September 30, 2009 (the "Prepayment Agreement"), in lieu of securitizing MasterCard's remaining four annual $100 million payments scheduled through 2012 (the "Securitization"). In connection with its request for approval of the Prepayment Agreement, Lead Counsel also sought the Court's approval to amend the Court's order entered April 29, 2009 approving the securitization (the "Proposed Amended Securitization Order").

If the Court approves Lead Counsel's application, as with the Securitization, Lead Counsel will be able to make lump-sum distributions of MasterCard's residual payments to Class Members with approved claims instead of making installment payments over the next four years of any residual amounts. While not only are the terms of the Prepayment Agreement equal to a discount rate well below the maximum discount rate already authorized by the Court in connection with the Securitization, but the Prepayment Agreement is also more beneficial to Class Members because the market risks and transaction and administration costs associated with the Securitization will be largely eliminated.

Objections to the Proposed Amended Securitization Order must be filed with the Court by August 3, 2009, and any objectors must appear before the Court on August 19, 2009, at 12:30 p.m. to show why the Proposed Amended Securitization Order should not issue. Merchants may visit the case website to review the papers Lead Counsel filed in connection with its application, the anticipated submission from the Independent Expert regarding the benefits of the Prepayment Agreement and the Court Order setting forth the schedule for objecting to the Proposed Amended Securitization Order, at www.inrevisacheckmastermoneyantitrustlitigation.com by clicking on the sidebar option entitled "MasterCard Agreement To Prepay Future Payments At A Discount." The papers are also available at Co-Lead Counsel's website at www.constantinecannon.com.

Details concerning merchant rights under the Settlement are available on the case website by clicking on the sidebar option entitled "Merchant/Class Member Rights Under the Settlement." Additional assistance is also available by calling 1-888-641-4437.

Sincerely,

CONSTANTINE CANNON LLP
(formerly Constantine & Partners)
*Co-Lead Counsel for the Class*
Counsel@InReVisacheckMastermoney
AntitrustLitigation.com

HAGENS BERMAN SOBOL SHAPIRO LLP
*Co-Lead Counsel for the Class*

*Para una notificación en Español, llame o visite nuestro sitio Web*

## PUBLIC NOTICES

### LEGAL NOTICE
### ATTENTION

The U.S. Secret Service gives notice that the following properties were seized in accordance with Title 18, U.S.C., Section 981. Laws and procedures applicable to the forfeiture process can be found at 18 U.S.C. 981-984 and 19 U.S.C. 1602, et seq. To contest the forfeiture of the property in U.S. District Court, file a claim with the U.S. Secret Service on or before the date indicated. A claim must meet the requirements set forth in 18 U.S.C. 983(a)(2)(C) and must be filed with the Secret Service, Asset Forfeiture Branch by the date indicated below. A claim form may be obtained by contacting the Secret Service Asset Forfeiture Branch at the address indicated below. A claimant may request immediate release of the seized property by filing a hardship petition in accordance with 18 U.S.C. 983(f). Interested parties who do not want to contest the forfeiture in U.S. District Court but seek to have the property returned, may file a Petition for Remission or Mitigation of the Forfeiture with the U.S. Secret Service on or before the date indicated below. The petition must contain proper documentation of the party's interest in the property and must include the facts and circumstances justifying return of the property. Submit claims, hardship petitions, and/or petitions for remission or mitigation to the U.S. Secret Service, Communication Center - CIO/AFB, 245 Murray Drive, SW, Building 410, Washington, D.C. 20223. For further information concerning the forfeiture process or to obtain copies of the statutes referenced above, contact the Secret Service Asset Forfeiture Branch at (202) 406-5327.

FIRST NOTICE
DEADLINE TO FILE CLAIM
08/20/2009 SEIZURE NUMBER, APPRAISED VALUE,
DEADLINE TO FILE PETITION
08/20/2009 DATE SEIZED,
SEIZED FROM, PLACE SEIZED

EASTERN DISTRICT OF ARKANSAS
309-2009-019; $3,355.00; 06/22/2009, Tyrell M. McKenzie, North Little Rock, AR. $3,355.00 in U.S. Currency

NORTHERN DISTRICT OF CALIFORNIA
408-2009-015; $22,100.00, 06/04/2009, Rosie Lee Carroll, San Leandro, CA. $22,100.00 in U.S. Currency

SOUTHERN DISTRICT OF [illegible]

Ramsey and Trilene Wilmore, San Leandro, CA; $19,000.00 in U.S. Currency; Comp. Equip.; Misc. Elec. Equip.; Gen. Merch., Men's Link Tag Heuer Watch

SOUTHERN DISTRICT OF FLORIDA
311-2009-043; $3,050.00; $1,200.00, $20.00; 05/28/2009, Juan Cardenas, Miami, FL. Misc. Comp. Equip.; Misc. Elec. Equip., TV Stand
311-2009-047; $770.00; 06/02/2009, Emigdio Hidalgo-Gato, Hialeah, FL. $770.00 in U.S. Currency

WESTERN DISTRICT OF KENTUCKY
209-2009-013; $2,660.00, $3,189.50, $1,792.13; $7,305.00, 05/20/2009, Michael Baker, Manfred King and Ernest Harris, Elizabethtown, KY. $2,680.00 in U.S. Currency; Comp. [illegible]

#2LMDU68C58J40025

NORTHERN DISTRICT OF TEXAS
303-2009-006; $12,406.00, 06/01/2009, Leopoldo Aguiar, Fort Worth, TX. $12,406.00 in U.S. Currency

SOUTHERN DISTRICT OF TEXAS
305-2009-003; $391,082.95; 05/28/2009, Richard Lansdale, Houston, TX. Sterling Bank Account #5000#### in the Name of Northwest Pre-Owned, Inc., Operating Account

SOUTHERN DISTRICT OF FLORIDA
311-2009-050; $2,000.00; 05/08/2009, Cesar Rosales, Doral, FL. $2,000.00 in U.S. Currency

DISTRICT OF DELAWARE

Be in the Legal Loop